UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAMILTON RESERVE BANK LTD.,<br><br>                              Plaintiff,<br><br>- v. -<br><br>THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA,<br><br>                              Defendant. | Civil Action No. 1:22-cv-5199<br><br>**COMPLAINT** |

Plaintiff Hamilton Reserve Bank Ltd. ("Plaintiff"), by and through its undersigned counsel, alleges as follows, based upon knowledge as to its own acts and upon information and belief as to all others:

## NATURE OF THE ACTION

1. This is a breach of contract action arising from Defendant the Democratic Socialist Republic of Sri Lanka's ("Sri Lanka's") default on its US$1 Billion 5.875% International Sovereign Bonds due July 25, 2022 (the "Bonds" or "ISB"). Plaintiff holds Bonds with principal amount of US$250,190,000 (Two Hundred Fifty Million and One Hundred Ninety Thousand United States Dollars), more than 25.0% of the aggregate principal amount of the Bonds. The Bonds are governed by New York law and enforceable in this Court. Under the Bonds' terms, Defendant owes Plaintiff a total of US$257,539,331.25, comprised of US$250,190,000 in principal and US$7,349,331.25 in interest.

2. The Bonds require full payment of principal and accrued interest in U.S. dollars upon the earlier of (a) the July 25, 2022 maturity date or (b) acceleration after the occurrence of an Event of Default, as defined in the Indenture dated as of July 25, 2012 (the "Indenture") by

and among Sri Lanka (as issuer) and HSBC Bank USA, National Association (as trustee, registrar, transfer agent, and paying agent).

3.  As detailed below, at least two Events of Default have occurred and the Bonds were accelerated on June 21, 2022 (the "Acceleration Date"). This means the full principal amount and the accrued interest on Plaintiff's Bonds are immediately due and payable. Plaintiff has duly notified the Defendant and its agent HSBC Bank USA pursuant to the notification provisions of the Indenture and demanded payment. However, Sri Lanka has nonetheless failed to pay the amount it owes Plaintiff, in breach of its obligations under the Bonds.

4.  Plaintiff is entitled to the damages resulting from Sri Lanka's breaches. Those damages include principal of US$250,190,000 and accrued interest, the additional interest that continues to accrue daily on Plaintiff's Bonds, pre-judgment interest through the entry of judgment and post-judgment interest thereafter until full payment in principal and interest is made, and costs and legal fees.

5.  Sri Lanka's default is a matter of choice, as Sri Lanka is capable of paying Plaintiff's Bonds in full. For example:

(a) In February 2022, Sri Lanka publicly stated in an official press release issued by its agent, the Central Bank of Sri Lanka (the "CBSL") (which is still available today on the CBSL's website) that "the Government and the CBSL have already taken necessary measures to **secure** . . . **funding** arrangements to **meet** the upcoming debt obligations, including the **US dollars 1 billion ISB maturing in July 2022**" (*i.e.*, the Bonds).[1]

(b) Funds to pay Plaintiff's Bonds in full have already been allocated and included in Sri Lanka's 2022 annual budget, which was adopted and approved by the Sri Lanka Parliament, Ministry of Finance, the President and Prime Minister when the Finance Minister Basil Rajapaksa presented the government's 2022 budget to the Sri Lanka Parliament for its approval, stating that "I will assure that every dollar that we have to

---

[1] *See* Central Bank of Sri Lanka, Reiteration of Sri Lanka's commitment to service forthcoming debt obligations (Feb. 9, 2022), *available at* https://www.cbsl.gov.lk/en/news/reiteration-of-sri-lankas-commitment-to-service-forthcoming-debt-obligations (emphasis added).

pay **will be paid**." Further, "Rajapaksa said the government has to make a USD 500 million debt payment in January 2022 and another **billion** dollars [the Bonds]. '**We have a plan to pay**', Rajapaksa said responding to the Opposition lawmakers . . . ."[2]

6.     Sri Lanka's default is being orchestrated by officials at the highest levels of its government. This includes the ruling Rajapaksa clan, whose members currently serve as President of Sri Lanka and in numerous other senior government positions. The Rajapaksa family members have repeatedly been accused of lining their own pockets through years of corruption.[3] Former U.S. government officials and investigative journalists have exposed that the Rajapaksa family has amassed a multibillion-dollar fortune and hidden part of it in bank accounts in offshore jurisdictions such as Dubai, Seychelles and St. Martin.[4]

7.     Basil Rajapaksa, a Member of Sri Lanka's Parliament and former Minister of Finance, is a Sri Lanka/U.S. dual citizen with homes and family members based in California. He has reportedly figured prominently in the Rajapaksa family's corrupt activity. For example, U.S. government documents report that in prior government appointments, Basil Rajapaksa "earned the nickname 'Mr. Ten Percent' for demanding a ten percent commission on every

---

[2] *See* Sri Lanka will not default on debt repayments despite forex crisis: Finance Minister (December 11, 2021), available at https://economictimes.indiatimes.com/news/international/world-news/sri-lanka-will-not-default-on-debt-repayments-despite-forex-crisis-finance-minister/articleshow/88224928.cms?from=mdr (emphasis added).

[3] *See, e.g.*, Neil DeVotta, Can Sri Lanka Turn Around its Corrupted Democracy? (Dec. 7, 2021), *available at* https://m.thewire.in/article/south/can-sri-lanka-turn-around-its-corrupted-democracy/amp; Neil DeVotta, The Rajapaksas to blame for Sri Lanka's disastrous 2021 (Jan. 19, 2022), *available at* https://www.eastasiaforum.org/2022/01/19/the-rajapaksas-to-blame-for-sri-lankas-disastrous-2021/; Pinaki Chakraborty, How corruption, politics led Lanka into a debt hole (Jan. 11, 2022), *available at* https://m.timesofindia.com/world/how-corruption-politics-led-lanka-into-a-debt-hole/amp_articleshow/88789054.cms.

[4] *See* Scilla Alecci, Sri Lankan power couple piled up luxury homes, artworks and cash offshore as ruling family rose and rose (Oct. 4, 2021), *available at* https://www.icij.org/investigations/pandora-papers/sri-lanka-rajapaksa-family-offshore-wealth-power/

project," "makes a habit of trying to 'buy people,'" and "continues to be accused of significant corruption in his current position."[5] Those same documents report that Sri Lanka's then-President, Mahindra Rajapaksa—Basil's elder brother and the Prime Minister until May 9, 2022—"consults Basil on most political matters . . . despite his limited education and lack of relevant work experience."

8. Further, Sri Lanka and the CBSL have publicly announced a "debt restructuring" that selectively excludes Sri Lanka's debt securities held by domestic (Sri Lankan) banks and their interested parties. As a result, these favored Sri Lankan parties stand to be paid principal and interest in full, while the Bonds—which are also broadly held by U.S. retirement systems including Fidelity Investments, BlackRock, T. Rowe Price, Lord Abbett, JP Morgan, PIMCO, Neuberger Berman and other U.S. investors[6]—remain indefinitely in default and unpaid, causing American retirees tremendous suffering from potentially massive losses of up to 80% of their original investment value. The discriminatory actions related to Sri Lanka's External Indebtedness (as defined below), including preferential payments to Sri Lankan holders, violate Sri Lanka's explicit guarantee of *pari passu* (*i.e.*, equal) treatment (the "Equal Treatment Provision").

9. Sri Lanka's scheme also warrants declaratory relief and specific performance of the Equal Treatment Provision. This includes specific performance of Sri Lanka's obligations by preliminarily and permanently enjoining Sri Lanka from making any payments on its External

---

[5] *See* Colombo Telegraph, WikiLeaks: Basil Is Corrupt, Education Limited And Expelled From School (originally published Jan. 5, 2012), *available at* https://www.colombotelegraph.com/index.php/wikileaks-basil-is-corrupt-education-limited-and-expelled-from-school/

[6] *See* Bloomberg, Fidelity Among Big Sri Lankan Debt Holders Staring Down Risk (April 5, 2022), *available at* https://www.bloomberg.com/news/articles/2022-04-05/fidelity-among-big-sri-lankan-debt-holders-staring-down-turmoil

4

Indebtedness (including its U.S. Dollar-denominated Sri Lanka Development Bonds) unless ratable payments are made on Plaintiff's Bonds, and from taking other discriminatory actions in connection with Sri Lanka's debt restructuring, as detailed below.

## PARTIES

10. Plaintiff Hamilton Reserve Bank Ltd. (formerly known as Nevis International Bank & Trust Ltd.) is a private limited company. Hamilton Reserve Bank Ltd. holds US$250,190,000 in principal amount of the Bonds, representing more than 25% of the aggregate principal amount of the Bonds.

11. Defendant Sri Lanka is a foreign state.

## JURISDICTION, VENUE AND CHOICE OF LAW

12. As provided in the Indenture (attached as <u>Exhibit A</u>), Sri Lanka has irrevocably waived any foreign sovereign immunity and immunity from suit, from jurisdiction, from attachment prior to judgment, from attachment in aid of execution of a judgment, from execution of a judgment, and from any other legal or judicial process or remedy, with respect to Sri Lanka and its revenues, assets, or properties, to the fullest extent permitted by law, in any action arising out of or based on the Bonds brought in this Court. Sri Lanka also consented to the granting of any relief or the issue of any process by this Court. As a result, Sri Lanka is not entitled to any immunity from jurisdiction, including under 28 U.S.C. §§ 1605-1607, and this Court has jurisdiction pursuant to 28 U.S.C. § 1330.

13. As provided in the Indenture, Sri Lanka has irrevocably submitted to this Court's jurisdiction for any action arising out of or based on the Bonds brought by any holder of a Bond. Sri Lanka also irrevocably designated and appointed the Ambassador/Permanent Representative of Sri Lanka to the United Nations in New York, New York, as its authorized

agent upon which process may be served in any suit or proceeding arising out of or relating to the Bonds or Indenture that may be instituted in this Court.

14. As provided in the Indenture, Sri Lanka waived any objection to any action arising out of or based on the Bonds being brought in this Court, whether on the grounds of venue, residence, domicile, or inconvenient forum, and venue is also proper in this district pursuant to 28 U.S.C. § 1391(f).

15. Further, as provided in the Indenture, Sri Lanka has agreed that any final, non-appealable judgment obtained in this Court shall be conclusive and binding upon Sri Lanka, and can be enforced in this Court (and in any other court where Sri Lanka is or may be subject to jurisdiction).

16. Sri Lanka expressly agreed that the Bonds and Indenture are governed by and shall be construed in accordance with the laws of the State of New York.

## FACTUAL ALLEGATIONS

**I.   The Bonds Require Payment in Full Immediately Upon Acceleration, Which Has Occurred**

17. As set forth below, Sri Lanka is required to make full payment of principal and accrued interest on Plaintiff's Bonds. The Bonds were issued in July 2012, with a portion sold in reliance on Regulation S under the Securities Act of 1933 (the "Securities Act") (CUSIP Y2029SAH7 / ISIN USY2029SAH77) and a portion sold in reliance on Rule 144A under the Securities Act (CUSIP 85227SAK2 / ISIN US85227SAK24). The Bonds' total principal amount is US$1 billion.

18. The Bonds provide for interest payments of 5.875% per annum (paid semi-annually on January 25 and July 25 on each year, commencing on January 25, 2013) and full repayment of principal and accrued interest on July 25, 2022, when the Bonds mature.

19. The Bonds also provide that "If an Event of Default shall occur and be continuing, the principal of all the Securities may be declared due and payable in the manner and with the effect provided in the Indenture." Pursuant to Section 5.1(a) of the Indenture, Events of Default include Sri Lanka's failure to pay any interest or principal on any of the Bonds when due and payable where such failure continues for a period of 7 days (in the case of principal) or 30 days (in the case of interest).

20. Pursuant to Section 5.1(c) of the Indenture, Events of Default also include Sri Lanka's cross-default on other External Indebtedness with an aggregate amount of at least US$25 million,[7] including (a) the acceleration of such External Indebtedness and (b) any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, any such External Indebtedness after such amounts become due and payable and the default continues for more than any applicable grace period. This Event of Default has occurred and the Bonds have been accelerated, requiring immediate payment.

21. Pursuant to Section 5.1(d) of the Indenture, Events of Default also include Sri Lanka's declaration of a general moratorium on the payment of principal of or interest on or the performance of the obligation in respect of Sri Lanka's External Indebtedness. This Event of Default has also occurred.

22. Further, pursuant to Section 5.1(b) of the Indenture, Events of Default include Sri Lanka's breach of any other covenants or agreements contained in the Bonds or in the Indenture for a period of 30 days after the date on which written notice specifying such failure and demanding that Sri Lanka remedy the same shall have been given (a) to Sri Lanka by the

---

[7] "External Indebtedness" means Indebtedness expressed or denominated or payable, or which, at the option of the relevant creditor, may be payable in or by reference to any currency other than the lawful currency of Sri Lanka. "Indebtedness" is further defined in the Indenture.

Trustee, or (b) to Sri Lanka and the Trustee by the Holders of at least 25.0% of the aggregate principal amount of the Outstanding Bonds.  Plaintiff is the holder of more than 25.0% of the aggregate principal amount of the Outstanding Bonds.  Plaintiff has duly notified the relevant parties regarding Sri Lanka's continuing Events of Default.

23. When an Event of Default occurs and is continuing, the holders of at least 25.0% in principal amount of Bonds may accelerate the Bonds.  Specifically, pursuant to Section 5.1 of the Indenture, if any Event of Default "occurs and is continuing, then the Holders of not less than 25% in aggregate principal amount of the Securities then Outstanding by notice in writing to the Trustee at its specified office, may declare the principal amount of all such Securities to be immediately due and payable whereupon they shall become immediately due and payable at their principal amount together with accrued interest without further formality unless such Event of Default shall have been remedied prior to the receipt of such notice by the Trustee."

**II.     Events of Default Have Occurred and the Bonds Are Immediately Due and Payable**

24. The Bonds have become immediately due and payable as a result of at least two continuing Events of Default (as defined in the Indenture).

25. First, Sri Lanka stopped servicing its sovereign debt in April 2022, and on April 12, 2022, declared a general moratorium on principal and interest payments on its External Indebtedness.[8]  This constitutes a continuing and uncured Event of Default with respect to the Bonds. To the present day, this Event of Default has not been cured by Defendant.

26. Second, a separate and independent Event of Default has occurred as a result of a cross-default (*i.e.*, Sri Lanka's default on another security).  Specifically, Sri Lanka failed to

---

[8] *See, e.g.*, Reuters, Sri Lanka unilaterally suspends foreign debt payments, says it needs money for essentials (April 12, 2022), *available at* https://www.reuters.com/world/asia-pacific/sri-lanka-temporarily-suspend-foreign-debt-payments-c-bank-governor-2022-04-12/

make interest payments due on April 18, 2022 on its 5.75% Bonds due April 18, 2023 (CUSIPs AS1797776 and 85227SAV8 / ISINs USY8137FAK40 and US85227SAV88) and 6.75% Bonds due April 18, 2028 (CUSIPs AS1797818 and 85227SAW6 / ISINs USY8137FAL23 and US85227SAW61) (the "2023 and 2028 Bonds").  The aggregate principal amount of the 2023 Bonds is $1.25 billion and the aggregate principal amount of the 2028 Bonds is $1.25 billion.  The 30-day grace period for these interest payments on the 2023 and 2028 Bonds expired on May 18, 2022, without Sri Lanka paying the interest owed.  When the grace period expired, "Sri Lanka fell into default for the first time in its history . . . ."[9]  These missed interest payments on the 2023 and 2028 Bonds constitute a continuing and uncured Event of Default with respect to the Bonds.  To the present day, this Event of Default has not been cured by Defendant.

27. On June 21, 2022, Plaintiff—as the holder of not less than 25.0% in aggregate principal amount of the Bonds currently outstanding—declared, by notice in writing to the Trustee (HSBC Bank USA, National Association) at its specified office located in New York City, that the principal amount of the Bonds and accrued interest is immediately due and payable in light of the continuing and uncured Events of Default outlined above.  A copy of the notice of acceleration is attached as Exhibit B.

28. As a result of this acceleration, the full principal amount and accrued interest on Plaintiff's Bonds is immediately due and payable.

---

[9] Bloomberg, Sri Lanka Falls Into Default For The First Time Ever (May 19, 2022), *available at* https://www.bloomberg.com/news/articles/2022-05-19/sri-lanka-enters-default-and-warns-inflation-may-surge-to-40; *see also* Financial Times, Sri Lanka becomes first Asia-Pacific country in decades to default on foreign debt (May 19, 2022), *available at* https://www.ft.com/content/0e02eef2-8482-4caa-9b3d-3ccda19b041a ("Sri Lanka's central bank has confirmed the country has missed a deadline for foreign debt repayments, the first sovereign default in the Asia-Pacific region this century, according to Moody's.").

### III. Sri Lanka Has Failed to Pay Plaintiff's Bonds

29. Notwithstanding Plaintiff's notice of acceleration and demand letter (attached as Exhibit B), Sri Lanka has failed to pay principal on Plaintiff's Bonds in the amount of US$250,190,000, and has also failed to pay any of the accrued interest.

30. These amounts, which were due on the Acceleration Date, remain unpaid. Additional interest and pre-judgment interest also continue to accrue daily on Plaintiff's Bonds.

### IV. Sri Lanka Announces Its Plan to Violate the Equal Treatment Provision

31. The Equal Treatment Provision provides an important guarantee of equal (*pari passu*) treatment among the Bonds themselves, and as between the Bonds and other present and future debt securities issued by Sri Lanka. Sri Lanka's purported "debt restructuring" will violate this important guarantee and result in yet another Event of Default.

32. The Offering Circular states that the "Bonds will at all times rank *pari passu* among themselves in all respects without any preference of one over the other by reason of priority of date of issue or otherwise. The Bonds will at all times rank at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined herein) of [Sri Lanka]." Likewise, the Indenture provides that the Bonds "will at all times rank p*ari passu* among themselves in all respects, without any preference of one over the other by reason of priority of date of issue or otherwise, and will at all times rank at least equally with all other present and future unsecured and unsubordinated External Indebtedness."

33. Under the Equal Treatment Provision, Sri Lanka cannot pay any Bond holders— or pay any other External Indebtedness (*i.e.*, debt issued in any currency other than Sri Lanka's)—without also making a ratable payment at the same time to Plaintiff.

34. Recent reports indicate that Sri Lanka and the CBSL will breach the Equal Protection Provision by making exactly such discriminatory payments, among other conduct in violation of the Equal Treatment Provision.

35. On April 9, 2022, news broke that the CBSL was issuing requests for proposals to "appoint legal and financial advisors for debt restructuring,"[10] and three days later, Reuters reported that Sri Lanka was suspending external debt payments, as explained above.  On April 27, 2022, the CBSL stated that it "intends to restructure only the foreign debt within the debt restructuring," including "all . . . sovereign bonds."[11]  During these developments, CBSL Governor Nandalal Weerasinghe reportedly announced that "Sri Lanka Development Bonds, dollar denominated bonds sold to domestic buyers[,] have been excluded from a planned re-structuring."[12]  Confirming the point, on April 12, 2022, Sri Lanka's Ministry of Finance released a purported "Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt"[13] and a related set of "Frequently Asked Questions"[14]; the latter confirmed that the "debt standstill" does not apply to the Sri Lanka Development Bonds.

---

[10] Economy Next, Sri Lanka to appoint legal, financial advisors for debt restructuring in 2 weeks (April 9, 2022), *available at* https://economynext.com/sri-lanka-to-appoint-legal-financial-advisors-for-debt-restructuring-in-2-weeks-92859/

[11] Ceylon Today, Sri Lanka to restructure only foreign debt – CBSL (April 27, 2022), *available at* https://ceylontoday.lk/2022/04/27/sri-lanka-to-restructure-only-foreign-debt-cbsl/

[12] Economy Next, Sri Lanka Development Bonds excluded from re-structuring (April 12, 2022), *available at* https://economynext.com/sri-lanka-development-bonds-excluded-from-re-structuring-92958/

[13] Sri Lanka Ministry of Finance, Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt (April 12, 2022), *available at* https://www.treasury.gov.lk/api/file/54a19fda-b219-4dd4-91a7-b3e74b9cd683

[14] Sri Lanka Ministry of Finance, Frequently Asked Questions (FAQs): "Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt" (April 12, 2022), *available at* https://www.treasury.gov.lk/api/file/1e2d4962-d635-4f77-9aa7-2f84ee385fed

36.     The Sri Lanka Development Bonds were funded through the U.S. banking system via the Federal Reserve Bank of New York, as directed in an CBSL wire instruction: "[Investors] shall make such payment by crediting the "Central Bank of Sri Lanka account number 021083514" maintained at the Federal Reserve Bank, New York, USA."[15]  The Sri Lanka Development Bonds are also denominated in U.S. dollars and thus constitute External Indebtedness subject to the Equal Treatment Provision.  By excluding the USD-denominated Sri Lanka Development Bonds from the planned debt restructuring, Sri Lanka has made clear that it will pay the Sri Lanka Development Bonds in full, even as Plaintiff's Bonds remain unpaid.  Unsurprisingly, the Sri Lanka Development Bonds are largely held by favored domestic (Sri Lankan) banks.  An April 12, 2022 article reported: "Out of 1.79 billion dollars of SLDBs outstanding, 1,593 million dollars were held by domestic banks, some 166 million by non-banks and 13.2 million dollars by individuals."[16]

37.     Any payments to holders of the Sri Lanka Development Bonds, without ratable payments at the same time on Plaintiff's Bonds, violate the Equal Treatment Provision.  *See, e.g.*, *NML Cap., Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012) (affirming injunctions that "direct Argentina to comply with its contractual obligations not to alter the rank of its payment obligations [and] prohibit[] Argentina from transferring money to some bondholders and not others.").  The fact that Sri Lanka intends to pay over $1.7 billion in Sri Lanka Development Bonds in full principal and interest also confirms that Sri Lanka is capable

---

[15] Public Debt Department of the Sri Lanka Central Bank, Sri Lanka Development Bonds Document of Offer (May 24, 2022), at 3, *available at* https://www.cbsl.gov.lk/sites/default/files/cbslweb_documents/about/sldb_direct_window_offer_document_20220524_e.pdf

[16] Economy Next, Sri Lanka Development Bonds excluded from re-structuring (April 12, 2022), *available at* https://economynext.com/sri-lanka-development-bonds-excluded-from-re-structuring-92958/

of immediately paying the smaller sum of principal and accrued interest due on Plaintiff's Bonds.

38. Sri Lanka will also violate the Equal Treatment Provision if it makes preferential payments with respect to other External Indebtedness (including by paying domestic or other Bond holders without ratable payments to Plaintiff); issues new External Indebtedness purporting to have a higher priority than Plaintiff's Bonds; or takes other discriminatory actions in connection with its announced debt restructuring. As one example, while Sri Lanka has declared a general moratorium on principal and interest payments on its External Indebtedness, the CBSL has publicly stated it may pay creditors in the equivalent amount of Sri Lanka Rupees, in lieu of U.S. dollars—directly contrary to the Bonds' requirement that Sri Lanka pay Plaintiff in U.S. dollars.

39. Sri Lanka—which has an annual economy of US$90 billion and is a member nation of the International Monetary Fund, United Nations, and The World Bank—is fully capable of performing its obligations pursuant to the Equal Protection Provision. Indeed, Sri Lanka currently has substantial assets and ties to New York and the United States. Sri Lanka currently has about US$2 billion in USD reserves and transacts in billions of U.S. dollars each month through the United States banking system, including USD wires through the Central Bank of Sri Lanka's accounts with the Federal Reserve Bank of New York (Account #021083514 and Account #021083527), Citibank, HSBC Bank USA, Deutsche Bank Trust Company Americas, Standard Chartered Bank, JP Morgan Chase, Wells Fargo, Habib American Bank, Mashreq Bank PSC, as well as other USD processing channels through Sri Lanka's government owned or affiliated banks, including Bank of Ceylon, HDFC Bank of Sri Lanka, National Savings Bank,

People's Bank, Regional Development Bank, Regional Development Department of the Central Bank of Sri Lanka, Sri Lanka Savings Bank, and State Mortgage and Investment Bank.[17]

### FIRST CAUSE OF ACTION: BREACH OF CONTRACT

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 above.

41. The Bonds are an enforceable contract in which Sri Lanka promised, among other things, to timely pay all principal and interest when due.

42. The Bonds require Sri Lanka to pay Plaintiff US$257,539,331.25 (US$250,190,000 in principal, and US$7,349,331.25 in accrued interest as of the July 25, 2022 maturity date). Interest on the Bonds continues to accrue daily until full principal and interest are paid.

43. At least two Events of Default have occurred and are continuing with respect to the Bonds, and upon Plaintiff's June 21, 2022 notice of acceleration, principal and accrued interest on Plaintiff's Bonds immediately became due and payable.

44. Despite Plaintiff's notice of acceleration and demand letter, Sri Lanka has failed to pay principal and interest due to Plaintiff with respect to its Bonds.

45. Sri Lanka's breach of the Bonds is continuing.

46. By reason of the foregoing, Sri Lanka breached its contractual obligations to Plaintiff pursuant to the Bonds and is liable to Plaintiff in the amount of unpaid principal and accrued interest on the Bonds, and the interest that continues to accrue daily on Plaintiff's Bonds.

### SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

---

[17] *See* Sri Lanka Government Information Center List of Government Owned Banks
https://www.gic.gov.lk/gic/index.php/en/component/org/?id=17&task=cat

47. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 above.

48. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

49. The Equal Treatment Provision requires *pari passu* treatment and prohibits Sri Lanka from making any payment of any External Indebtedness (including payments to other holders of the Bonds) without also making a ratable payment at the same time to Plaintiff. The Equal Treatment Provision also prohibits Sri Lanka from issuing new External Indebtedness with payment obligations that purportedly rank higher than those of Plaintiff's Bonds.

50. Plaintiff is entitled to a declaratory judgment that the Sri Lanka Development Bonds are External Indebtedness subject to the Equal Treatment Provision; and that Sri Lanka will violate the Equal Treatment Provision by making any payments on the Sri Lanka Development Bonds, or on other External Indebtedness (including External Indebtedness issued in the future), without ratable payments at the same time on Plaintiff's Bonds; by issuing new External Indebtedness with payment obligations that purportedly rank higher than those of Plaintiff's Bonds; and by restructuring Sri Lanka's External Indebtedness without equal treatment of Plaintiff's Bonds in all respects (including simultaneous ratable payment).

**THIRD CAUSE OF ACTION: SPECIFIC PERFORMANCE**

51. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 above.

52. Sri Lanka's scheme to exclude from restructuring and make full payments on over $1.7 billion in Sri Lanka Development Bonds, any preferential payments with respect to other External Indebtedness, any issuance of new External Indebtedness purporting to have a higher priority than Plaintiff's Bonds (or restructuring to similar effect), and any other discriminatory

actions in connection with its announced debt restructuring, without ratable payments at the same time on Plaintiff's Bonds, will violate the Equal Treatment Provision.

53. Plaintiff will suffer irreparable injury as a result of Sri Lanka's violations of the Equal Treatment Provision unless the Court specifically enforces that Provision with a mandatory injunction requiring Sri Lanka to pay Plaintiff ratably whenever it makes any payment to the holders of External Indebtedness (including the Bonds, the Sri Lanka Development Bonds, and any other External Indebtedness now existing or issued in the future).

54. Remedies available at law are inadequate to compensate for such injury.

55. Plaintiff has performed its part of the contract with Sri Lanka.

56. Sri Lanka is fully capable of performing its obligations pursuant to the Equal Protection Provision.

57. The balance of the equities tips toward the issuance of an injunction.

58. The public interest would not be disserved by a preliminary and permanent injunction.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment:

- A. Awarding Plaintiff compensatory damages in the amount of unpaid principal (US$250,190,000) and accrued interest (US$7,349,331.25 as of July 25, 2022) on Plaintiff's Bonds, plus interest that continues to accrue daily on Plaintiff's Bonds and pre-judgment and post-judgment interest;

- B. Declaring the parties' rights and obligations with respect to the Equal Treatment Provision, as set forth above;

- C. Ordering specific performance of the Equal Treatment Provision through injunctive relief, as set forth above; and

- D. Awarding Plaintiff its costs, attorneys' fees, and such other and further legal and equitable relief as the Court may deem just and proper.

Dated: New York, New York
      June 21, 2022                    **BLEICHMAR FONTI & AULD LLP**

By: /s/ Javier Bleichmar
     Javier Bleichmar
     Evan A. Kubota
     7 Times Square, 27th Floor
     New York, NY 10036
     Telephone: (212) 789-1340
     Facsimile: (212) 205-3960
     jbleichmar@bfalaw.com
     ekubota@bfalaw.com

**JENNER & BLOCK LLP**
Lee Wolosky
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
lwolosky@jenner.com

*Counsel for Plaintiff*