# EXHIBIT A

EXECUTION

# INDENTURE

**DATED AS OF JULY 25, 2012**

**THE GOVERNMENT OF THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA**

**as Issuer**

**and**

**HSBC BANK USA, NATIONAL ASSOCIATION**

**as Trustee**

**in respect of**

**U.S.$1,000,000,000**

**5.875% Bonds Due 2022**

# CONTENTS

**Article**                                                                                      **Page**

1.     Definitions and Other Provisions of General Application ........................................................... 1
       1.1    Definitions ................................................................................................. 1
       1.2    Rules of Construction ............................................................................... 6
       1.3    Compliance Certificates and Opinions...................................................... 7
       1.4    Form of Documents delivered to Trustee .................................................. 8
       1.5    Acts of Holders; Record Dates ................................................................ 8
       1.6    Notices, etc., to Trustee and Issuer .......................................................... 9
       1.7    Notice to Holders; Waiver ........................................................................ 9
       1.8    Trust Indenture Act ................................................................................ 10
       1.9    Effect of Headings, and Table of Contents ............................................ 10
       1.10   Successors ............................................................................................... 11
       1.11   Separability Clause ................................................................................. 11
       1.12   Benefits of Indenture .............................................................................. 11
       1.13   Governing Law ........................................................................................ 11
       1.14   Legal Holidays ........................................................................................ 11
       1.15   Conversion of Currency .......................................................................... 11
       1.16   Currency Equivalent ............................................................................... 12
       1.17   Agent for Service; Submission to Jurisdiction; Waiver of Immunities................ 12
2.     Security Forms ....................................................................................................................... 14
       2.1    Forms Generally ..................................................................................... 14
       2.2    Form of Face of Security......................................................................... 14
       2.3    Form of Reverse of Security ................................................................... 17
       2.4    Form of Trustee's Certificate of Authentication .................................... 19
3.     The Securities ......................................................................................................................... 20
       3.1    Title and Terms ....................................................................................... 20
       3.2    Denominations ........................................................................................ 21
       3.3    Execution, Authentication, Delivery and Dating ................................... 21
       3.4    Registration, Registration of Transfer and Exchange Generally........................ 22
       3.5    Temporary Securities .............................................................................. 26
       3.6    Mutilated, Destroyed, Lost and Stolen Securities ................................. 27
       3.7    Payment of Interest; Interest Rights Preserved ...................................... 27
       3.8    Persons Deemed Owners ......................................................................... 28
       3.9    Modifications and Amendments; Meetings of Holders of the Securities............ 28
       3.10   Cancellation ............................................................................................ 32
       3.11   Computation of Interest .......................................................................... 32
       3.12   Common Code/ISIN Numbers/ CUSIP Numbers ................................... 32
       3.13   Prescription ............................................................................................. 32
4.     Satisfaction and Discharge .................................................................................................... 32
       4.1    Satisfaction and Discharge of Indenture................................................. 32
       4.2    Application of Trust Money .................................................................... 33
5.     Remedies................................................................................................................................. 34
       5.1    Events of Default..................................................................................... 34
       5.2    Rescission and Annulment ...................................................................... 35

5.3     Collection of Indebtedness and Suits for Enforcement by Trustee ...................... 36
5.4     Trustee May File Proofs of Claim ............................................................. 37
5.5     Trustee May Enforce Claims Without Possession of Securities ......................... 37
5.6     Application of Money Collected ............................................................... 37
5.7     Limitation on Suits ............................................................................... 38
5.8     Unconditional Right of Holders to Receive Principal, Premium and Interest...... 38
5.9     Restoration of Rights and Remedies ......................................................... 38
5.10    Rights and Remedies Cumulative ............................................................ 39
5.11    Delay or Omission Not Waiver ............................................................... 39
5.12    Control by Holders .............................................................................. 39
5.13    Waiver of Past Defaults ........................................................................ 39
5.14    Undertaking for Costs .......................................................................... 40
5.15    Waiver of Stay or Extension Laws ........................................................... 40
6.      The Trustee .................................................................................................. 40
6.1     Certain Duties and Responsibilities ......................................................... 40
6.2     Notice of Defaults ............................................................................... 41
6.3     Certain Rights of Trustee ...................................................................... 41
6.4     Not Responsible for Recitals or Issuance of Securities .................................. 43
6.5     May Hold Securities and Engage in Business .............................................. 43
6.6     Money Held in Trust ............................................................................ 43
6.7     Compensation and Reimbursement .......................................................... 43
6.8     Disqualification; Conflicting Interests ...................................................... 44
6.9     Corporate Trustee Required; Eligibility .................................................... 44
6.10    Resignation and Removal; Appointment of Successor .................................. 45
6.11    Acceptance of Appointment by Successor .................................................. 46
6.12    Merger, Conversion, Consolidation or Succession to Business ......................... 46
6.13    Preferential Collection of Claims against Issuer .......................................... 47
6.14    Trustee's Application for Instructions from the Issuer.................................... 47
6.15    Appointment of Co-Trustee.................................................................... 47
7.      Holders' Lists and Reports by Trustee and Issuer ................................................. 48
7.1     Preservation of Information; Communications to Holders............................... 48
7.2     Reports by Trustee .............................................................................. 48
7.3     Reports by Issuer ................................................................................ 49
8.      Supplemental Indentures ................................................................................ 49
8.1     Supplemental Indentures Without Consent of Holders ................................... 49
8.2     Supplemental Indentures with Consent of Holders ....................................... 49
8.3     Execution of Supplemental Indentures ..................................................... 50
8.4     Effect of Supplemental Indentures .......................................................... 50
8.5     Reference in Securities to Supplemental Indentures ..................................... 50
8.6     Notice of Supplemental Indentures .......................................................... 50
9.      Covenants ................................................................................................... 50
9.1     Issuer Payment of Principal, Premium and Interest ..................................... 50
9.2     Payment of Additional Amounts ............................................................. 51
9.3     Limitation on Liens ............................................................................. 52
9.4     Maintenance of Office or Agency ............................................................ 53
9.5     Money for Security Payments to be Held in Trust ........................................ 54
9.6     Statement by Officials as to Default ......................................................... 55
9.7     Waiver of Certain Covenants ................................................................. 55

Signatory ................................................................................................................................ 56

**Schedule**

1.      Form of Regulation S Certificate ............................................................................ 57
2.      Form of Rule 144A Certificate ............................................................................... 59
3.      Form of Unrestricted Securities Certificate ........................................................... 61

Note:    This table of contents shall not, for any purpose, be deemed to be part of the Indenture.

THIS INDENTURE, dated as of July 25, 2012,

BETWEEN:

(1)     THE GOVERNMENT OF THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA (the "**Issuer**"); and

(2)     HSBC BANK USA, NATIONAL ASSOCIATION, a national banking association, as trustee, paying agent, registrar and transfer agent (the "**Trustee**").

RECITALS OF THE ISSUER:

(A)     The Issuer has duly authorized the creation of an issue of its U.S. $1,000,000,000 5.875% Bonds due 2022 (the "**Securities**") of substantially the tenor and amount hereinafter set forth, and to provide therefor the Issuer has duly authorized the execution and delivery of this Indenture. The Securities may consist of either Original Securities or Additional Securities, each as defined below. The Original Securities and Additional Securities shall rank *pari passu* with one another.

(B)     All things necessary to make the Securities, when executed by the Issuer and authenticated and delivered hereunder and duly issued by the Issuer, the valid obligations of the Issuer, and to make this Indenture a valid agreement of the Issuer, in accordance with their and its terms, have been done.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders thereof, it is mutually agreed, for the equal and proportionate benefit of all Holders of the Securities, as follows:

1.     **DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION**

1.1     **Definitions**

"**Act**", when used with respect to any Holder, has the meaning specified in Section 1.5;

"**Additional Amounts**" has the meaning specified in Section 9.2;

"**Additional Securities**" has the meaning specified in Section 3.1;

"**Affiliate**" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "**control**" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "**controlling**" and "**controlled**" have meanings correlative to the foregoing;

"**Applicable Procedures**" means, with respect to any transfer or transaction involving a Global Security or beneficial interest therein, the rules and procedures of any Depositary for such Security, in each case to the extent applicable to such transaction and as in effect from time to time;

1

"**Authorized Official**" means an officer or official of the Issuer duly authorized to perform acts required under this Indenture;

"**Business Day**" means each Monday, Tuesday, Wednesday, Thursday and Friday that is not a day on which banking institutions in London, New York or Singapore are authorized or obligated by law or executive order to close;

"**Central Bank**" means the Central Bank of Sri Lanka;

"**Certificate**" means a certificate signed by an Authorized Official;

"**Clearstream**" means Clearstream Banking, *société anonyme*, Luxembourg;

"**Commission**" means the U.S. Securities and Exchange Commission, as from time to time constituted, created under the Exchange Act, or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time;

"**Corporate Trust Office**" means the principal office of the Trustee (which at the date hereof is 452 Fifth Avenue New York, New York, 10018-2706) at which at any particular time its corporate trust business shall be administered;

"**Default**" means any event that is, or with the passage of time or the giving of notice or both would be, an Event of Default;

"**Defaulted Interest**" has the meaning specified in Section 3.7;

"**Depositaries**" shall mean Euroclear, Clearstream and DTC, their respective nominees and the successors of any of the foregoing;

"**Depositary**" will refer to either Euroclear or Clearstream or DTC, as the case may be;

"**Dollar**", "**U.S.$**" "and "**$**" means such coins or currency of the United States of America that is legal tender for payment of public and private debts;

"**DTC**" means The Depository Trust Company;

"**Euroclear**" means Euroclear Bank S.A./N.V.;

"**Event of Default**" has the meaning specified in Section 5.1;

"**Exchange Act**" means the U.S. Securities Exchange Act of 1934, as amended, and (unless the context otherwise requires) includes the rules and regulations of the Commission promulgated thereunder;

"**External Indebtedness**" has the meaning specified in Section 9.3(c);

"**Fitch Ratings**" means Fitch Ratings Limited;

2

"**Foreign Exchange**" has the meaning given to it in the IMF's publication entitled "International Financial Statistics" or such other meaning as shall be formally adopted by the IMF from time to time;

"**Global Security**" means a Security that is registered in the Security Register in the name of the Depositaries;

"**Government Obligations**" means U.S. Treasury securities;

"**Guarantee**" means any obligation of a Person to pay the Indebtedness of another Person including, without limitation: (i) an obligation to pay or purchase such Indebtedness; (ii) an obligation to lend money or to purchase or subscribe for shares or other securities or to purchase assets or services in order to provide funds for the payment of such Indebtedness; (iii) any indemnity against the consequences of a default in the payment of such Indebtedness; or (iv) any other agreement to be responsible for such Indebtedness;

"**Holder**" means a Person in whose name a Security is registered in the Security Register;

"**IFRS**" means the International Financial Reporting Standards;

"**IMF**" means the International Monetary Fund;

"**Indebtedness**" has the meaning specified in Section 9.3(c);

"**Indenture**" means this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof, including, for all purposes of this instrument and any such supplemental indenture, the provisions of the Trust Indenture Act that are deemed to be a part of this instrument and any such supplemental indenture, respectively;

"**Initial Purchasers**" means Barclays Bank PLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc. and The Hongkong and Shanghai Banking Corporation Limited;

"**Insolvency Law**" means any law (together with the rules and regulations made pursuant thereto) of any jurisdiction (including any political subdivision thereof) relating to bankruptcy, insolvency, winding up, liquidation, reorganization or relief of debtors;

"**Interest Payment Date**" means the Stated Maturity of an instalment of interest on the Securities;

"**International Monetary Assets**" means all (i) gold, (ii) Special Drawing Rights, (iii) Reserve Positions in the Fund and (iv) Foreign Exchange;

"**Issue Date**" means the date of original issuance of the Securities under this Indenture;

"**Issuer Request**" or "**Issuer Order**" means a written request or order signed in the name of the Issuer by Mr. Ajith Nivard Cabraal, Governor, Central Bank of Sri Lanka, and delivered to the Trustee;

"**Lien**" has the meaning specified in Section 9.3(c);

"**Long-term Debt**" means any note, bond or other similar evidence of indebtedness for money borrowed having a maturity of more than one year from the date such indebtedness was incurred or having a maturity of less than or equal to one year but by its terms being renewable or extendible, at the option of the borrower, beyond one year from the date such indebtedness was incurred;

"**Maturity**", when used with respect to any Security, means the date on which the principal of such Security becomes due and payable as therein or herein provided, whether at the Stated Maturity or by declaration of acceleration or otherwise;

"**Non-Global Security**" means a Security that is not a Global Security;

"**Notice of Default**" means a written notice of the kind specified in Section 6.2;

"**Opinion of Counsel**" means a written opinion, in form and substance acceptable to the Trustee, from legal counsel of recognized standing who is reasonably acceptable to the Trustee;

"**Original Securities**" means the Securities issued by the Issuer on the Issue Date pursuant to this Indenture;

"**Outstanding**" has the meaning specified in Section 3.9;

"**Paying Agent**" means any Person authorized by the Issuer to pay the principal of (and premium, if any) or interest on any Securities on behalf of the Issuer;

"**Person**" means any individual, company, corporation, firm, partnership, joint venture, association, organization, state or agency of a state or other entity, whether or not having a separate legal personality;

"**Predecessor Security**" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 3.6 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed to evidence the same debt as the mutilated, destroyed, lost or stolen Security;

"**Public External Indebtedness**" has the meaning specified in Section 9.3(c);

"**Public Sector Instrumentality**" means the Central Bank and any department, ministry or agency of the central government of Sri Lanka or any corporation, trust, financial institution or other entity owned or controlled by the central government of Sri Lanka or any of the foregoing, and "**control**" means the power, directly or indirectly, through the ownership of voting securities or other ownership interests or otherwise, to direct the management of or elect or appoint a majority of the board of directors or other Persons performing similar functions in lieu of, or in addition to, the board of directors of a corporation, trust, financial institution or entity.

"**Rating Agency**" means (1) each of Fitch Ratings and S&P; and (2) if either of Fitch Ratings or S&P ceases to rate the Securities or fails to make a rating of the Securities publicly available for reasons outside the Issuer's control, a "nationally recognised statistical rating organisation"

within the meaning of Rule 15c3-1(c)(2)(vi)(F) under the Exchange Act, selected by the Issuer (as certified by a resolution of the Issuer's board of directors) as a replacement agency for Fitch or S&P, as the case may be;

"**Regular Record Date**" for the interest payable on any Interest Payment Date means the fifteenth calendar day preceding each Interest Payment Date (whether or not a Business Day);

"**Regulation S**" means Regulation S under the Securities Act;

"**Regulation S Certificate**" means a certificate substantially in the form set forth in Schedule 1;

"**Regulation S Global Security**" has the meaning specified in Section 2.1;

"**Regulation S Legend**" means a legend substantially in the form of the legend required in the form of Security set forth in Section 2.2 to be placed upon a Regulation S Security;

"**Regulation S Securities**" means all Securities required pursuant to Section 3.4(c) to bear a Regulation S Legend. Such term includes the Regulation S Global Security;

"**Required Currency**" means the currency in which the Securities are denominated and in which payment is to be made in respect of at Maturity;

"**Reserve Position in the Fund**" has the meaning given to it in the IMF's publication entitled "International Financial Statistics" or such other meaning as shall be formally adopted by the IMF from time to time;

"**Responsible Officer**", when used with respect to the Trustee, means the chairman or any vice chairman of the board of directors, the chairman or any vice chairman of the executive committee of the board of directors, the chairman of the trust committee, the president, any vice president, the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject;

"**Rule 144**" means Rule 144 under the Securities Act;

"**Rule 144A**" means Rule 144A under the Securities Act;

"**Rule 144A Certificate**" means a certificate substantially in the form set forth in Schedule 2;

"**Rule 144A Global Security**" has the meaning specified in Section 2.1;

"**Rule 144A Legend**" means a legend substantially in the form set forth in Section 2.2 to be placed upon a Rule 144A Security;

"**Rule 144A Security**" means any Security required pursuant to Section 3.4(c) to bear a Rule 144A Legend;

"**S&P**" means Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc.;

"**Securities Act**" means the U.S. Securities Act of 1933, as amended, and (unless the context otherwise requires) includes the rules and regulations of the Commission promulgated thereunder;

"**Securities Act Legend**" means a Rule 144A Legend or a Regulation S Legend;

"**SGX-ST**" means the Singapore Exchange Securities Trading Limited;

"**Security Register**" and "**Security Registrar**" have the respective meanings specified in Section 3.4;

"**Special Drawing Rights**" has the meaning given to it in the IMF's publication entitled "International Financial Statistics" or such other meaning as shall be formally adopted by the IMF from time to time;

"**Special Record Date**" for the payment of any Defaulted Interest means a date fixed by the Trustee pursuant to Section 3.7;

"**Stated Maturity**", when used with respect to any Security or any instalment of interest thereon, means the date specified in such Security as the fixed date on which the principal of such Security or such instalment of interest is due and payable;

"**Successor Security**" of any particular Security means every Security issued after, and evidencing all or a portion of the same debt as that evidenced by, such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 3.6 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed to evidence the same debt as the mutilated, destroyed, lost or stolen Security;

"**Taxes**" means taxes, duties, assessments or other governmental charges of whatever nature, including penalties, interest and any other liabilities related thereto;

"**Trustee**" means the Person named as the "Trustee" in the first paragraph of this Indenture, until a successor Trustee shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean such successor Trustee;

"**Trust Indenture Act**" means the U.S. Trust Indenture Act of 1939 as in force at the date as of which this Indenture was executed; PROVIDED, however, that in the event the Trust Indenture Act of 1939 is amended after such date, "Trust Indenture Act" means, to the extent required by any such amendment, the Trust Indenture Act of 1939 as so amended; and

"**Unrestricted Securities Certificate**" means a certificate substantially in the form set forth in Schedule 3.

## 1.2   Rules of Construction

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

6

(a)     the terms defined in this Article or elsewhere in this Indenture have the meanings assigned to them;

(b)     all other terms used herein which are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(c)     all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with IFRS;

(d)     words in the singular include the plural, and words in the plural include the singular;

(e)     the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision;

(f)     mentioning anything after "include", "includes" or "including" does not limit what else might be included, and the use of "or" is not exclusive;

(g)     provisions apply to successive events and transactions;

(h)     references herein to Sections or Schedules are references to Sections of or Schedules to this Indenture;

(i)     unless the context otherwise requires, any reference to a statute, rule or regulation refers to the same (including any successor statute, rule or regulation thereto) as it may be amended from time to time; and

(j)     whenever in this Indenture there is referenced, in any context, the payment of principal, premium or interest, or any other amount under or with respect to any Security, that reference shall be deemed to include the payment of Additional Amounts to the extent that Additional Amounts are, were or would be payable in respect thereof.

**1.3     Compliance Certificates and Opinions**

Upon any application or request by the Issuer to the Trustee to take any action under any provision of this Indenture, the Issuer shall furnish to the Trustee such certificates and opinions as the Trustee may reasonably request. Each such certificate or opinion shall be given in the form of a Certificate, if to be given by an Authorized Official, or an Opinion of Counsel, if to be given by counsel, and shall comply with the requirements of the Trust Indenture Act and any other requirement set forth in this Indenture.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(a)     a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(b)     a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

7

(c)     a statement that, in the opinion of each such individual, he has made such examination or investigation as is necessary to enable him to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)     a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

## 1.4     Form of Documents delivered to Trustee

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an Authorized Official may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such Authorized Official knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which his certificate or opinion is based are erroneous. Any such certificate or opinion of counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an official or officials of the Issuer stating that the information with respect to such factual matters is in the possession of the Issuer, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

## 1.5     Acts of Holders; Record Dates

Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by agent duly appointed in writing; and, except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Issuer. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the **Act** of the Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and (subject to Section 6.1) conclusive in favor of the Trustee and the Issuer, if made in the manner provided in this Section.

The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity other than his individual capacity, such certificate or

8

affidavit shall also constitute sufficient proof of his authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any other manner which the Trustee deems sufficient.

The Issuer may fix any day as the record date for the purpose of determining the Holders entitled to give or take any request, demand, authorization, direction, notice, consent, waiver or other action, or to vote on any action, authorized or permitted to be given or taken by Holders. If not set by the Issuer prior to the first solicitation of a Holder made by any Person in respect of any such action, or, in the case of any such vote, prior to such vote, the record date for any such action or vote shall be the 30th day prior to such first solicitation or vote, as the case may be. With regard to any record date, only the Holders on such date (or their duly designated proxies) shall be entitled to give or take, or vote on, the relevant action.

The ownership of Securities shall be proved by the Security Register.

Any request, demand, authorization, direction, notice, consent, waiver or other Act of the Holder of any Security shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Issuer in reliance thereon, whether or not notation of such action is made upon such Security.

**1.6      Notices, etc., to Trustee and Issuer**

Any request, demand, authorization, direction, notice, consent, waiver or Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with:

(a)     the Trustee by any Holder or by the Issuer shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, Attention Corporate Trust & Loan Agency;

(b)     the Issuer by the Trustee or by any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to the Issuer addressed to it at Ministry of Finance and Planning, The Secretariat, Colombo 01, Sri Lanka, Attention, Secretary, Ministry of Finance and Planning, or at any other address previously furnished in writing to the Trustee by the Issuer; or

(c)     either the Trustee or the Issuer by the other party, shall be sufficient for every purpose hereunder if given by facsimile transmission, receipt, confirmed by telephone followed by an original copy delivered by guaranteed overnight courier; if to the Trustee at facsimile number +1-212-525-1300 or at any other facsimile number previously furnished in writing to the Issuer by the Trustee; and if to the Issuer at facsimile number +94-11-243-3349 or at any other facsimile number previously furnished in writing to the Trustee by the Issuer.

**1.7      Notice to Holders; Waiver**

Where this Indenture provides for notice to Holders of any event, such notice shall be sufficiently given (unless otherwise herein expressly provided) (a) for so long as the Securities are

represented by a Global Security held on behalf of DTC, if sent electronically to DTC (or its representatives) or (b) if the Securities are not represented by a Global Security held on behalf of DTC, if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at his address as it appears in the Security Register and published once in a leading daily newspaper of general circulation in London and in a leading daily newspaper of general circulation in the United States or, under certain limited circumstances, in other English language newspapers of general circulation in Europe or the United States. Any such Notice shall be deemed to have been given on the later of the date of such publication and the seventh day after being so mailed, as the case may be. In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders. Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

Any request, demand, authorization, directive, notice, consent or waiver required or permitted under this Indenture shall be in the English language.

## 1.8     Trust Indenture Act

Whenever this Indenture refers to a provision of the Trust Indenture Act, the provision is incorporated by reference in and made a part of this Indenture as if this Indenture were qualified under the Trust Indenture Act. The following Trust Indenture Act terms used in this Indenture have the following meanings:

"**Commission**" means the Commission as defined herein;

"**indenture securities**" means the Securities;

"**indenture security holder**" means a Holder;

"**indenture trustee**" or "**institutional trustee**" means the Trustee; and

"**obligor**" on the indenture securities means the Issuer or any other obligor in respect of the Securities.

All other Trust Indenture Act terms used in this Indenture that are defined by the Trust Indenture Act, defined by the Trust Indenture Act with reference to another statute or defined by Commission rule and not otherwise defined herein have the meanings assigned to them therein.

## 1.9     Effect of Headings, and Table of Contents

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

**1.10   Successors**

All covenants and agreements in this Indenture by the Issuer shall bind its successors, whether so expressed or not.

**1.11   Separability Clause**

In case any provision in this Indenture or in the Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**1.12   Benefits of Indenture**

Nothing in this Indenture or in the Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders of Securities, any benefit or any legal or equitable right, remedy or claim under this Indenture.

**1.13   Governing Law**

THIS INDENTURE AND THE SECURITIES SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

**1.14   Legal Holidays**

In any case where any Interest Payment Date or Stated Maturity of any Security shall not be a Business Day, then (notwithstanding any other provision of this Indenture or of the Securities) payment of interest or principal (and premium, if any) need not be made on such date, but may be made on the next succeeding Business Day with the same force and effect as if made on the Interest Payment Date or at the Stated Maturity, PROVIDED that no interest shall accrue for the period from and after such Interest Payment Date, or at the Stated Maturity, as the case may be, to and including such Business Day.

**1.15   Conversion of Currency**

The Issuer covenants and agrees that the following provisions shall apply to conversion of currency in the case of the Securities and this Indenture:

(a)   (i)   If, for the purpose of obtaining judgment in, or enforcing the judgment of, any court in any country, it becomes necessary to convert into any other currency (the "**judgment currency**") an amount due in the Required Currency, then the conversion shall be made at the rate of exchange prevailing on the Business Day before the day on which the judgment is given or the order of enforcement is made, as the case may be (unless a court shall otherwise determine).

(ii)   If there is a change in the rate of exchange prevailing between the Business Day before the day on which the judgment is given or an order of enforcement is made, as the case may be (or such other date as a court shall determine), and the date of receipt of the amount due, the Issuer will pay such additional (or, as the case may be, such lesser) amount, if any, as may be necessary so that the amount paid in the judgment currency when converted at the rate of exchange prevailing

11

on the date of receipt will produce the amount in the Required Currency originally due.

(b)     In the event that the Issuer ceases to exist at any time while any amount of damages owing under the Securities and this Indenture, or any judgment or order rendered in respect thereof, shall remain outstanding, the Issuer shall indemnify and hold the Holders and the Trustee harmless against any deficiency arising or resulting from any variation in rates of exchange between (i) the date as of which the equivalent of the amount in the Required Currency due or contingently due under the Securities and this Indenture (other than under this clause (b)) is calculated for the purposes of such winding-up and (ii) the final date for the filing of proofs of claim in such winding-up. For the purpose of this clause (b), the final date for the filing of proofs of claim in the winding-up of the Issuer shall be the date fixed by the liquidator or otherwise in accordance with the relevant provisions of applicable law as being the latest practicable date as at which liabilities of the Issuer may be ascertained for such winding-up before payment by the liquidator or otherwise in respect thereto.

(c)     The term "**rate(s) of exchange**" shall mean the rate(s) of exchange quoted by the Trustee at its foreign exchange desk in its office in London at 12:00 noon (Greenwich Mean Time) for purchases of the Required Currency with the judgment currency other than the Required Currency referred to in clauses (a) and (b) above and includes any premiums and costs of exchange payable.

## 1.16    Currency Equivalent

Except as provided in Section 1.15, for purposes of the construction of the terms of this Indenture or of the Securities, in the event that any amount is stated herein in the Required Currency, as of any date such amount in the Required Currency shall also be deemed to represent the amount in any other relevant currency that is required to purchase such amount in the Required Currency at the rate of exchange quoted by the Trustee at its foreign exchange desk in its office in London at 12:00 noon (Greenwich Mean Time) on the date of determination.

## 1.17    Agent for Service; Submission to Jurisdiction; Waiver of Immunities

By the execution and delivery of this Indenture:

(a)     The Issuer acknowledges that it has, by separate written instrument, irrevocably designated and appointed the Ambassador/Permanent Representative of Sri Lanka to the United Nations in New York, New York as its authorized agent upon which process may be served in any suit or proceeding arising out of or relating to the Securities or this Indenture that may be instituted in any federal or state court in The City of New York or brought under federal or state securities laws or brought by the Trustee in its capacity as a trustee hereunder, and acknowledges that the Ambassador/Permanent Representative of Sri Lanka to the United Nations in New York, New York has accepted such designation;

(b)     The Issuer submits to the non-exclusive jurisdiction of any State or Federal Court in the Borough of Manhattan, the City of New York and the courts of the Democratic Socialist Republic of Sri Lanka (the "**Specified Courts**") in any action arising out of or based on the Securities brought by any Holder of a Bond (a "**Related Proceeding**"). The Issuer

12

hereby waives any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Issuer hereby agrees that a final non-appealable judgment obtained in any such Related Proceeding (a "**Related Judgment**") shall be conclusive and binding upon it and, may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Issuer is or may be subject (the "**Other Courts**"), by a suit upon such judgment or appropriate enforcement proceedings in Sri Lanka;

(c)     The Issuer agrees that service of process upon the Ambassador/Permanent Representative of Sri Lanka to the United Nations of New York, New York shall be deemed in every respect effective service of process upon the Issuer in any Related Proceeding in the City of New York; and

(d)     To the extent that the Issuer or any of its revenues, assets or properties are entitled, in any jurisdiction in which any Specified Court is located, in which any Related Proceeding may at any time be brought against it or any of its revenues, assets or properties, or in any jurisdiction in which any Specified Court is located in which any suit, action or proceeding may at any time be brought solely for the purpose of enforcing or executing any Related Judgment, to any immunity from suit, from the jurisdiction of any such court, from attachment prior to judgment, from attachment in aid of execution of a judgment, from execution of a judgment or from any other legal or judicial process or remedy, and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Issuer hereby irrevocably agrees not to claim and hereby irrevocably waives such immunity to the fullest extent permitted by the laws of such jurisdiction (and hereby consents generally for the purposes of the U.S. Foreign Sovereign Immunities Act of 1976, as amended, to the giving of any relief or the issue of any process in connection with any Related Proceeding or Related Judgment). The waiver of immunities given above constitutes only a limited and specific waiver for the purposes of the Securities and under no circumstances shall it be interpreted as a general waiver by the Issuer or a waiver with respect to proceedings unrelated to the payment under the Securities. The Issuer does not hereby waive such immunity in respect of property which is (i) used by a diplomatic or consular mission of the Issuer (except as may be necessary to effect service of process), (ii) property of a military character and under the control of a military authority or defense agency or (iii) located in Sri Lanka and dedicated to a public or governmental use (as distinct from patrimonial property or property dedicated to a commercial use).

The Issuer further agrees to take any and all action, including the execution and filing of any and all such documents and instruments, as may be necessary to continue such designation and appointment of the Ambassador/Permanent Representative of Sri Lanka to the United Nations in New York, New York in full force and effect so long as this Indenture shall be in full force and effect and for the continuous period from the date hereof through and including the date which is two years after the date upon which the last of the Securities shall be outstanding. The Trustee agrees to mail or deliver a copy of any service referred to in clause (c) above and actually received by it to the Issuer at the address set out in Section 1.6(b) of this Indenture or at any other address previously notified in writing to the Trustee.

To the extent that the Issuer has or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service of notice, attachment before judgment, attachment in aid of execution or otherwise) with respect to itself or its property, it hereby irrevocably waives such immunity in respect of its respective obligations under this Indenture and the Securities to the fullest extent permitted by law.

**2.      SECURITY FORMS**

**2.1      Forms Generally**

The Securities and the Trustee's certificates of authentication shall be in substantially the forms set forth in this Article, with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with the rules of any securities exchange or as may, consistently herewith, be determined by the officials or authorized Persons executing such Securities, as evidenced by their execution of the Securities.

The Securities will be initially issued as one or more Global Securities. Each Global Security authenticated under this Indenture shall be in global registered form without coupons, and each such Global Security shall constitute a single Security for all purposes of this Indenture.

Upon their original issuance, Rule 144A Securities and Regulation S Securities shall be issued in the form of separate Global Securities. The Global Securities representing Rule 144A Securities, together with their Successor Securities that are Global Securities, are collectively herein called the "**Rule 144A Global Securities**". The Global Securities representing Regulation S Securities, together with their Successor Securities that are Global Securities, are collectively herein called the "**Regulation S Global Securities**".

**2.2      Form of Face of Security**

The form of the face of each Security shall be as follows:

"The Government of the Democratic Socialist Republic of Sri Lanka

5.875% Bonds due 2022

| | | | | | | |
|---|---|---|---|---|---|---|
| No. R-1 | $213,644,000 | CUSIP | No. | 85227S | AK2; | ISIN |
| US85227SAK24; Common Code 080475349 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| No. S-1 | $500,000,000 | CUSIP | No. | Y2029S | AH7; | ISIN |
| USY2029SAH77; Common Code 080475284 | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| No. S-2 | $286,356,000 | CUSIP | No. | Y2029S | AH7; | ISIN |
| USY2029SAH77; Common Code 080475284 | | | | | | |

[*Legend if the Security is a Rule 144A Security*]:

THE SECURITIES EVIDENCED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES**

14

ACT"), OR WITH ANY SECURITIES REGULATORY AUTHORITY OF ANY STATE OF THE UNITED STATES OR ANY OTHER JURISDICTION AND (A) ACCORDINGLY, THE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT (1) TO A PERSON WHOM THE SELLER REASONABLY BELIEVES IS A QUALIFIED INSTITUTIONAL BUYER WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT PURCHASING FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER IN A TRANSACTION COMPLYING WITH THE REQUIREMENTS OF RULE 144A, (2) IN AN OFFSHORE TRANSACTION COMPLYING WITH RULE 903 OR 904 OF REGULATION S UNDER THE SECURITIES ACT, (3) PURSUANT TO AN EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT PROVIDED BY RULE 144 THEREUNDER (IF AVAILABLE), (4) PURSUANT TO ANY OTHER AVAILABLE EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT, OR (5) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THE SECURITIES ACT, IN EACH CASE IN ACCORDANCE WITH ALL APPLICABLE SECURITIES LAWS OF THE STATES OF THE UNITED STATES; (B) THE HOLDER WILL, AND EACH SUBSEQUENT HOLDER IS REQUIRED TO, NOTIFY ANY SUBSEQUENT PURCHASER OF THESE SECURITIES FROM IT OF THE RESALE RESTRICTIONS REFERRED TO IN (A) ABOVE; AND (C) NO REPRESENTATION CAN BE MADE AS TO THE AVAILABILITY OF THE EXEMPTION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT FOR RESALES OF THE SECURITIES.]

[*Legend if the Security is a Regulation S Security:*

THE SECURITIES EVIDENCED HEREBY HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), AND MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED IN THE UNITED STATES OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, ANY U.S. PERSON, EXCEPT PURSUANT TO AN AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT AND ALL APPLICABLE STATE SECURITIES LAWS. TERMS USED ABOVE HAVE THE MEANINGS GIVEN TO THEM IN REGULATION S UNDER THE SECURITIES ACT.]

[*If the Security is a Global Security, then insert the following paragraph:*

THIS SECURITY IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITARY OR A NOMINEE THEREOF. THIS SECURITY MAY NOT BE EXCHANGED IN WHOLE OR IN PART FOR A SECURITY REGISTERED, AND NO TRANSFER OF THIS SECURITY IN WHOLE OR IN PART MAY BE REGISTERED, IN THE NAME OF ANY PERSON OTHER THAN SUCH DEPOSITARY OR A NOMINEE THEREOF, EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE INDENTURE.]

[*Include if Security is a Global Security and the Depository Trust Company is the Depositary:*

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, 55 WATER STREET, NEW YORK, NEW YORK 10004 (OR SUCH OTHER ADDRESS NOTIFIED BY THE DEPOSITORY TRUST COMPANY TO THE ISSUER), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS

15

REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF CEDE & CO., AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF CEDE & CO., ANY TRANSFER, PLEDGE, OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL BECAUSE THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.]

The Government of the Democratic Socialist Republic of Sri Lanka (herein called the "**Issuer**", which term includes any successor Person under the Indenture hereinafter referred to), for value received, hereby promises to pay to          , or registered assigns, the principal sum [of [     ]] Dollars [*if the security is a Global Security replace bracketed language with*: indicated on Schedule A hereof] on July 25, 2022, and to pay interest thereon from July 25, 2012 or from the most recent Interest Payment Date to which interest has been paid or duly provided for, semi-annually on January 25 and July 25 in each year, commencing January 25, 2013 at the rate of 5.875% per annum. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in such Indenture, be paid to the Person in whose name this Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the Holder on such Regular Record Date and may either be paid to the Person in whose name this Security (or one or more Predecessor Securities) is registered at the close of business on a Special Record Date for the payment of such Defaulted Interest to be fixed by the Trustee, notice whereof shall be given to Holders of Securities not less than 10 days prior to such Special Record Date, or be paid at any time in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Securities may be listed, and upon such notice as may be required by such exchange, all as more fully provided in said Indenture.

Interest on the Securities shall be computed based on a 360-day year of twelve 30-day months.

Payments in respect of this Security will be made by wire transfer of immediately available funds to the accounts specified by the holder of such Security. All such payments are subject to the provisions in Section 1.14 of the Indenture relating to legal holidays.

Reference is hereby made to the further provisions of this Security set forth on the reverse hereof, which further provisions shall for all purposes have the same effect as if set forth at this place.

Unless the certificate of authentication hereon has been executed by the Trustee referred to on the reverse hereof by manual signature, this Security shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose.

IN WITNESS WHEREOF, the Issuer has caused this instrument to be duly executed.

Dated:

By:      _____

Name:

16

Title:"

### 2.3    Form of Reverse of Security

The form of the reverse of each Security shall be as follows:

"This Security is one of a duly authorized issue of Securities of the Issuer designated as its 5.875% Bonds due 2022 (herein called the "**Securities**") issued and to be issued under an Indenture, dated as of July 25, 2012 (herein called the "**Indenture**"), between the Issuer and HSBC Bank USA, National Association, as Trustee (herein called the "**Trustee**", which term includes any successor trustee under the Indenture), to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Issuer, the Trustee and the Holders of the Securities and of the terms upon which the Securities are, and are to be, authenticated and delivered.

The Issuer may at any time purchase Securities in the open market or otherwise at any price. Any Security so purchased by the Issuer (including upon any redemption) shall be cancelled and shall not be re-issued or resold except in compliance with the Securities Act and other applicable laws.

If an Event of Default shall occur and be continuing, the principal of all the Securities may be declared due and payable in the manner and with the effect provided in the Indenture.

Unless the context requires otherwise, the Original Securities and the Additional Securities shall constitute one series for all purposes under the Indenture, including amendments, waivers and redemptions.

The Indenture permits, with certain exceptions as therein provided, the amendment thereof and the modification of the rights and obligations of the Issuer and the rights of the Holders of the Securities under the Indenture at any time by the Issuer and the Trustee with the consent of the Holders of not less than 66 2/3% or 75%, as applicable, of the aggregate principal amount of the Securities at the time Outstanding. The Indenture also contains provisions permitting the Holders of specified percentages in aggregate principal amount of the Securities at the time Outstanding, on behalf of the Holders of all the Securities, to waive compliance by the Issuer with certain provisions of the Indenture and certain past defaults under the Indenture and their consequences. Any such consent or waiver by the Holder of this Security shall be conclusive and binding upon such Holder and upon all future Holders of this Security and of any Security issued upon the registration of transfer hereof or in exchange herefor or in lieu hereof, whether or not notation of such consent or waiver is made upon this Security.

No reference herein to the Indenture and no provision of this Security or of the Indenture shall alter or impair the obligation of the Issuer, which is absolute and unconditional, to pay the principal of (and premium, if any) and interest on this Security at the times, place and rate, and in the coin or currency, herein prescribed.

As provided in the Indenture and subject to certain limitations therein set forth, the transfer of this Security is registrable in the Security Register, upon surrender of this Security for registration of transfer at an office or agency of the Issuer designated pursuant to Section 9.4 of the Indenture, duly endorsed by, or accompanied by a written instrument of transfer in form satisfactory to the

Issuer and the Security Registrar duly executed by, the Holder hereof or his attorney duly authorized in writing, and thereupon one or more new Securities, of authorized denominations and for the same aggregate principal amount, will be issued to the designated transferee or transferees.

The Securities are issuable only in registered form without coupons in denominations of U.S.$200,000 and integral multiples of U.S.$1,000 in excess thereof.

No service charge shall be made for any such registration of transfer or exchange, but the Issuer may require payment of a sum sufficient to cover any tax or other governmental charge payable in connection therewith.

Prior to due presentment of this Security for registration of transfer, the Issuer, the Trustee and any agent of the Issuer or the Trustee may treat the Person in whose name this Security is registered as the owner hereof for all purposes, whether or not this Security be overdue, and neither the Issuer, the Trustee nor any such agent shall be affected by notice to the contrary.

All terms used in this Security which are defined in the Indenture shall have the meanings assigned to them in the Indenture.

**THE INDENTURE AND THIS SECURITY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.**

(HK) 09974/048/INDENTURE/2012.Olympic.Indenture.doc

SCHEDULE A

SCHEDULE OF PRINCIPAL AMOUNT

The initial principal amount at maturity of this Security shall be U.S.$[●]. The following decreases/increases in the principal amount at maturity of this Security have been made:

| Date of Decrease/ Increase | Decrease in Principal Amount at Maturity | Increase in Principal Amount at Maturity | Total Principal Amount at Maturity Following such Decrease/ Increase | Notation Made by or on Behalf of Trustee |
|---|---|---|---|---|
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ | _____ |

**2.4     Form of Trustee's Certificate of Authentication**

This is one of the Securities referred to in the within-mentioned Indenture.

HSBC Bank USA, National Association
*as Trustee*

By  _____

*Authorized Officer*"

**3.      THE SECURITIES**

**3.1     Title and Terms**

The Securities constitute direct, unconditional, unsubordinated and unsecured general obligations of the Issuer and will at all times rank *pari passu* among themselves in all respects, without any preference of one over the other by reason of priority of date of issue or otherwise, and will at all times rank at least equally with all other present and future unsecured and unsubordinated External Indebtedness. The full faith and credit of the Democratic Socialist Republic of Sri Lanka will be pledged for the due and punctual payment of the principal of, and interest on, the Securities.

On the Issue Date the Issuer shall issue U.S.$1,000,000,000 aggregate principal amount of Securities (constituting the "**Original Securities**"). The Issuer may from time to time issue additional Securities of the same series (such duly executed and authenticated additional Securities to be referred to as "**Additional Securities**") subject to Section 3.3, PROVIDED that such issuance does not result in a breach or violation of any of the covenants contained herein.

The Securities shall be known and designated as the "5.875% Bonds due 2022" of the Issuer. The Stated Maturity of the Securities shall be July 25, 2022. The Securities shall bear interest at the rate of 5.875% per annum, from and including July 25, 2012 or from the most recent Interest Payment Date to which interest has been paid or duly provided for, as the case may be, and to and excluding, the Stated Maturity. Interest on the Securities shall be payable semi-annually in arrears on January 25 and July 25 of each year, commencing on January 25, 2013.

Payment of the principal of any Non-Global Security shall be made, upon presentation and surrender of such Security, by check drawn on a bank in The City of New York at the option of the Holder, either:

(i)      at the corporate trust office of the Trustee, or

(ii)     subject to any applicable laws or regulations and the right of the Issuer to terminate the appointment of any Paying Agent, at the offices of such other paying agents as the Issuer may designate from time to time.

Unless the manner of payment is otherwise agreed by the Issuer and the Trustee, payments of interest on any Non-Global Security shall be made solely in Dollars by check drawn on a bank in The City of New York, mailed to the address of the Person entitled thereto as such address shall appear on the Security Register. The Issuer and the Trustee may deem and treat the Holder in whose name a Non-Global Security is registered at the close of business on the fifteenth day preceding such Interest Payment Date as the absolute owner of the Non-Global Security (notwithstanding any notice of ownership or other writing on such Non-Global Security) for the purposes of receiving payment on such Non-Global Security or on account of such Non-Global Security and for all other purposes.

20

**3.2**     **Denominations**

The Securities shall be issuable only in global or in definitive registered form without coupons and only in denominations of U.S.$200,000 and in integral multiples of U.S.$1,000 in excess thereof.

**3.3**     **Execution, Authentication, Delivery and Dating**

The Securities shall be executed on behalf of the Issuer by Mr. Ajith Nivard Cabraal, Governor, Central Bank of Sri Lanka. The signature of this official or authorized Person on the Securities may be manual or facsimile.

Securities bearing the manual or facsimile signatures of individuals who were at any time the proper officials or authorized Persons of the Issuer shall bind the Issuer, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the Issue Date of such Securities.

At any time and from time to time after the execution and delivery of this Indenture, the Issuer may deliver Securities executed by the Issuer to the Trustee for authentication, together with an Issuer Order for the authentication and delivery of such Securities; and the Trustee in accordance with such Issuer Order shall authenticate and deliver such Securities as provided in this Indenture and not otherwise.

Each Security shall be dated the date of its authentication.

No Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder.

The Issuer shall be entitled, subject to Section 3.1, to issue Additional Securities under this Indenture, which shall have identical terms as the Securities issued on the Issue Date, other than with respect to the date of issuance, issue price and the first Interest Payment Date. The Securities issued on the Issue Date and any Additional Securities may be consolidated to form a single series and class for all purposes under this Indenture; PROVIDED that Additional Securities that are so consolidated with the Outstanding Securities must be fungible with the Securities for U.S. federal income tax purposes.

With respect to any Additional Securities, the Issuer shall provide the Trustee with a Certificate or such other appropriate evidence satisfactory to the Trustee evidencing and setting forth the following information:

(a)     the aggregate principal amount of such Additional Securities to be authenticated and delivered pursuant to this Indenture;

(b)     the issue price, the issue date and the common code, ISIN numbers or CUSIP numbers (which shall be the same as the Securities) of such Additional Securities and the amount of interest payable on the first payment date applicable thereto;

21

(c)     the Additional Securities have been duly authorized and issued; and

(d)     the issuance of Additional Securities will not conflict with, result in a breach or violation of or constitute a default under the terms of any agreement or instrument binding upon the Issuer.

Additionally, the Issuer shall provide to the Trustee with respect to any Additional Securities, an Opinion of Counsel stating in substance:

(a)     that all conditions hereunder precedent to the authentication and delivery of such Additional Securities have been complied with and that such Additional Securities have been duly executed and, when such Additional Securities have been duly authenticated and delivered by the Trustee, will be duly issued and delivered and will constitute valid and legal binding obligations of the Issuer, enforceable in accordance with their terms, subject to bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles; and

(b)     that either the Additional Securities have been registered under the Securities Act or that no registration of such Additional Securities under the Securities Act is required for the issuance of such Additional Securities to comply with the Securities Act.

**3.4     Registration, Registration of Transfer and Exchange Generally**

(a)     The Issuer shall cause to be kept at the Corporate Trust Office of the Trustee or any Paying Agent a register (the register maintained in such office and in any other office or agency designated pursuant to Section 9.4 being herein sometimes collectively referred to as the "**Security Register**") in which, subject to such reasonable regulations as it may prescribe, the Issuer shall provide for the registration of Securities and of transfers of Securities. The Trustee or such Paying Agent is hereby appointed Security Registrar for the purpose of registering Securities and transfers of Securities as herein provided.

Upon surrender for registration of transfer of any Security at an office or agency of the Issuer designated pursuant to Section 9.4 for such purpose, and subject to the other provisions of this Section 3.4, the Issuer shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Securities of any authorized denominations and of a like aggregate principal amount, each such Security bearing such legends as are required by this Indenture.

At the option of the Holder, and subject to the other provisions of this Section 3.4, Securities may be exchanged for other Securities of any authorized denominations and of a like aggregate principal amount, upon surrender of the Securities to be exchanged at such office or agency. Whenever any Securities are so surrendered for exchange, and subject to the other provisions of this Section 3.4, the Issuer shall execute and the Trustee shall authenticate and deliver the Securities which the Holder making the exchange is entitled to receive.

All Securities issued upon any registration of transfer or exchange of Securities shall be the valid obligations of the Issuer, evidencing the same debt and, subject to the other provisions of this

Section 3.4, entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Issuer or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Issuer and the Security Registrar duly executed, by the Holder thereof or his attorney duly authorized in writing.

No service charge shall be made for any registration of transfer or exchange of Securities, but the Issuer, the Trustee or the Paying Agent may require (i) payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Sections 3.6 or 8.5 not involving any transfer and (ii) appropriate endorsements and transfer documents.

The Issuer shall not be required to (i) issue, register the transfer of or exchange any Security during a period beginning at the opening of business 15 days before the due date for any payment of principal of or interest on the Securities and ending at the close of business on such due date or (ii) register the transfer of or exchange any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

(b)  Notwithstanding any other provisions of this Indenture or the Securities, transfers and exchanges of Securities and beneficial interests therein of the kinds specified in this Section 3.4(b) shall be made only in accordance with this Section 3.4(b). Transfers and exchanges subject to this Section 3.4(b) shall also be subject to the other provisions of this Indenture that are not inconsistent with this Section 3.4(b).

(i)  **Rule 144A Global Security to Regulation S Global Security.** If the holder of a beneficial interest in the Rule 144A Global Security wishes at any time to transfer such interest in whole or in part to a Person who wishes to take delivery thereof in the form of a beneficial interest in the Regulation S Global Security, such transfer may be effected only in accordance with the provisions of this clause (b)(i) and Section 3.4(c) and subject to the Applicable Procedures. Upon receipt by the Trustee or any Paying Agent, as Security Registrar, of (A) an order in a form satisfactory to the Trustee or Paying Agent given by the holder of a beneficial interest in the Rule 144A Global Security directing that the principal amount represented by such Regulation S Global Security be increased by a specified amount and that the principal amount represented by such Rule 144A Global Security be reduced by an equal amount and (B) a Regulation S Certificate, satisfactory to the Trustee or Paying Agent and duly executed by the holder of such beneficial interest or his attorney in fact duly authorized in writing, then the Trustee or the Paying Agent, as Security Registrar but subject to Section 3.4(c), shall reduce the principal amount of such Rule 144A Global Security and increase the principal amount of such Regulation S Global Security by such specified principal amount.

(ii)  **Regulation S Global Security to Rule 144A Global Security.** If the holder of a beneficial interest in the Regulation S Global Security wishes at any time to transfer such interest in whole or in part to a Person who wishes to take delivery thereof in the form of a beneficial interest in the Rule 144A Global Security, such

(HK) 09974/048/INDENTURE/2012.Olympic.Indenture.doc

transfer may be effected only in accordance with this clause (b)(ii) and Section 3.4(c) and subject to the Applicable Procedures. Upon receipt by the Trustee or any Paying Agent, as Security Registrar, of (A) an order in a form satisfactory to the Trustee or Paying Agent given by the holder of a beneficial interest in the Regulation S Global Security directing that the principal amount represented by such Regulation S Global Security be reduced by a specified amount and that the principal amount represented by such Rule 144A Global Security be increased by an equal amount and (B) a Rule 144A Certificate, satisfactory to the Trustee or Paying Agent and duly executed by the holder of such beneficial interest or his attorney in fact duly authorized in writing, then the Trustee or the Paying Agent, as Security Registrar but subject to Section 3.4(c), shall reduce the principal amount of such Regulation S Global Security and increase the principal amount of such Rule 144A Global Security by such specified principal amount.

(iii) **Non-Global Security for Non-Global Security.** If issued, a Non-Global Security may be transferred, in whole or in part, to a Person who takes delivery in the form of another Non-Global Security, PROVIDED that a Non-Global Security that bears a Securities Act legend may be transferred, in whole or in part, only (A) if the Trustee or the Paying Agent shall have received a Rule 144A Certificate, satisfactory to the Trustee or the Paying Agent and duly executed by the transferor Holder or his attorney duly authorized in writing, in which case the transferee Holder shall take delivery in the form of a Rule 144A Security or (B) if Trustee or the Paying Agent shall have received a Regulation S Certificate, satisfactory to the Trustee or the Paying Agent and duly executed by the transferor Holder or his attorney duly authorized in writing, in which case the transferee Holder shall take delivery in the form of a Regulation S Security.

(iv) **Exchanges between Global Security and Non-Global Security.** A Global Security may be exchanged, in whole but not in part, for one or more Non-Global Securities only as provided in Section 3.4(d). If issued, Non-Global Securities may not be exchanged, in whole or in part, for beneficial interests in a Global Security.

(c) Rule 144A Securities and their Successor Securities shall bear a Rule 144A Legend and Regulation S Securities and their Successor Securities shall bear a Regulation S Legend, subject to the following:

(i) Subject to the following clauses of this Section 3.4(c), a Security or any portion thereof that is exchanged, upon transfer or otherwise, for a Global Security or any portion thereof shall bear the Securities Act Legend borne by such Global Security while represented thereby.

(ii) Subject to the following clauses of this Section 3.4(c), a new Non-Global Security that is issued in exchange for either a Non-Global Security or a Global Security or any portion thereof, upon transfer or otherwise, shall bear the Securities Act Legend borne by such other Security, PROVIDED that, if such new Security is required pursuant to Section 3.4(b)(iv)to be issued in the form of a Rule 144A Security, it shall bear a Rule 144A Legend and, if such new

Security is so required to be issued in the form of a Regulation S Security, it shall bear a Regulation S Legend.

(iii)     Securities that are sold or otherwise disposed of pursuant to an effective registration statement under the Securities Act shall not bear a Securities Act Legend.

(iv)     After the applicable restricted period under Rule 144, a new Security that does not bear a Securities Act Legend may be issued in exchange for or in lieu of a Security (other than a Global Security) or any portion thereof that bears such a legend if the Trustee has received an Unrestricted Securities Certificate, satisfactory to the Trustee and duly executed by the Holder of such legended Security or his attorney duly authorized in writing, and after such date and receipt of such certificate, the Trustee shall authenticate and deliver such a new Security in exchange for or in lieu of such other Security as provided in this Article 3.

(v)     A new Security that does not bear a Securities Act Legend may be issued in exchange for or in lieu of a Security (other than a Global Security) or any portion thereof that bears such a legend if, in the Issuer's judgment, placing such a legend upon such new Security is not necessary to ensure compliance with the registration requirements of the Securities Act, and the Trustee, at the direction of the Issuer shall authenticate and deliver such a new Security as provided in this Article 3.

(vi)     Notwithstanding the foregoing provisions of this Section 3.4(c), a Successor Security of a Security that does not bear a particular form of Securities Act Legend shall not bear such form of legend unless the Issuer has reasonable cause to believe that such Successor Security is a "restricted security" within the meaning of Rule 144, in which case the Trustee at the direction of the Issuer, shall authenticate and deliver a new Security bearing a Rule 144A Legend in exchange for such Successor Security as provided for in this Article 3.

(d)     The following provisions shall apply only to Global Securities:

(i)     Each Global Security authenticated under this Indenture shall be registered in the name of the Depositary or a nominee thereof and delivered to such Depositary or a nominee thereof or custodian therefor, and each such Global Security shall constitute a single Security for all purposes of this Indenture.

(ii)     Notwithstanding any other provision in this Indenture or the Securities, no Global Security may be exchanged in whole or in part for Securities registered, and no transfer of a Global Security in whole or in part may be registered, in the name of any Person other than the Depositary or a nominee thereof unless:

(A)     DTC has notified the Issuer in writing that it is unwilling or unable to continue as depositary for such Global Security or has ceased to be a clearing agency registered under the Exchange Act, and, in either case, the Issuer thereupon fails to appoint a successor depositary within 90 days after the date of such notice; or

(B)      the Securities have become immediately due and payable pursuant to this Indenture.

(iii)      A Global Security may not be exchanged for a Non-Global Security other than as provided in Section 3.4(d)(ii).

(iv)      Non-Global Securities issued in exchange for a Global Security or any portion thereof pursuant to clause (ii) above shall be issued in definitive, fully registered form, without interest coupons, shall have an aggregate principal amount equal to that of such Global Security or portion thereof to be so exchanged, shall be registered in such names and be in such authorized denominations as the Depositary shall designate and shall bear any Securities Act Legends required hereunder. Any Global Security to be exchanged in whole shall be surrendered by the Depositary to the Trustee, as Security Registrar, for cancellation. Upon any such surrender or adjustment, the Trustee shall authenticate and deliver the Non-Global Security issuable on such exchange to or upon the order of the Depositary or an authorized representative thereof.

(v)      All Non-Global Securities issued in exchange for a Global Security or any portion thereof shall be registered in such names as the Depositary shall instruct (which instruction shall reflect the instruction of the Holder of the Securities) the Trustee or the Paying Agent (without any liability on the Trustee's or the Paying Agent's part). Every Security authenticated and delivered in exchange for or in lieu of a Global Security or any portion thereof, pursuant to Sections 3.6 or 8.5 or otherwise, shall be authenticated and delivered in the form of, and shall be, a Global Security.

(vi)      In the event of the occurrence of any of the events specified in clause (ii) above, the Issuer will promptly make available to the Trustee a reasonable supply of Non-Global Securities in definitive, fully registered form, without interest coupons. The Issuer will pay the cost of preparing, printing, packaging and delivering the Non-Global Securities.

## 3.5    Temporary Securities

Pending the preparation of definitive Securities, the Issuer may execute, and upon Issuer Order the Trustee shall authenticate and deliver, temporary Securities which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Securities in lieu of which they are issued and with such appropriate insertions, omissions, substitutions and other variations as the officials or authorized Persons executing such Securities may determine, as evidenced by their execution of such Securities.

If temporary Securities are issued, the Issuer will cause definitive Securities to be prepared without unreasonable delay. After the preparation of definitive Securities, the temporary Securities shall be exchangeable for definitive Securities upon surrender of the temporary Securities at any office or agency of the Issuer designated pursuant to Section 9.4, without charge to the Holder. Upon surrender for cancellation of any one or more temporary Securities the Issuer shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of definitive Securities of authorized denominations. Until so exchanged the temporary

Securities shall in all respects be entitled to the same benefits under this Indenture as definitive Securities.

**3.6     Mutilated, Destroyed, Lost and Stolen Securities**

If any mutilated Security is surrendered to the Trustee, the Issuer shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Issuer and the Trustee (a) evidence to their satisfaction of the destruction, loss or theft of any Security and (b) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Issuer or the Trustee that such Security has been acquired by a bona fide purchaser, the Issuer shall execute and the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new Security of like tenor and principal amount and bearing a number not contemporaneously outstanding.

In case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Issuer in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section 3.6, the Issuer may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security issued pursuant to this Section 3.6 in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Issuer, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities duly issued hereunder.

The provisions of this Section 3.6 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

**3.7     Payment of Interest; Interest Rights Preserved**

Interest on any Security which is payable and is punctually paid or duly provided for on any Interest Payment Date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest.

Any interest on any Security which is payable but is not punctually paid or duly provided for on any Interest Payment Date (herein called "**Defaulted Interest**") shall forthwith cease to be payable to the Holder on the relevant Regular Record Date by virtue of having been such Holder, and such Defaulted Interest may be paid by the Issuer, at its election in each case, as provided in clause (a) or (b) below:

27

(a)     the Issuer may elect to make payment of any Defaulted Interest to the Persons in whose names the Securities (or their respective Predecessor Securities) are registered at the close of business on a Special Record Date for the payment of such Defaulted Interest, which shall be fixed in the following manner. The Issuer shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Security and the date of the proposed payment, and at the same time the Issuer shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this Article provided. Thereupon the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment. The Trustee shall promptly notify the Issuer of such Special Record Date and, in the name and at the expense of the Issuer, shall cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder at his address as it appears in the Security Register, not less than 10 days prior to such Special Record Date. Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been so mailed, such Defaulted Interest shall be paid to the Persons in whose names the Securities (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date and shall no longer be payable pursuant to the following clause (b); or

(b)     the Issuer may make payment of any Defaulted Interest in any other lawful manner not inconsistent with the requirements of any securities exchange on which the Securities may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Issuer to the Trustee of the proposed payment pursuant to this Article, such manner of payment shall be deemed practicable by the Trustee.

Subject to the foregoing provisions of this Section 3.7, each Security delivered under this Indenture upon registration of transfer of or in exchange for or in lieu of any other Security shall carry the rights to interest accrued and unpaid, and to accrue, which were carried by such other Security.

**3.8     Persons Deemed Owners**

Prior to due presentment of a Security for registration of transfer, the Issuer, the Trustee and any agent of the Issuer or the Trustee may treat the Person in whose name such Security is registered as the owner of such Security for the purpose of receiving payment of principal of (and premium, if any) and (subject to Section 3.7) interest on such Security and for all other purposes whatsoever, whether or not such Security be overdue, and neither the Issuer, the Trustee nor any agent of the Issuer or the Trustee shall be affected by notice to the contrary.

**3.9     Modifications and Amendments; Meetings of Holders of the Securities**

(a)     A meeting of the Holders of the Securities may be called by the Trustee at any time. The Issuer or the Holders of at least 10% in aggregate principal amount of the outstanding Securities may call a meeting if the Issuer or such Holders have requested the Trustee in

28

writing to call such a meeting and the Trustee has not given notice of such a meeting within 20 days of receiving the request. Notices of meetings must include the time and place of the meeting and a general description of the action proposed to be taken at the meeting and must be given not less than 30 days nor more than 60 days before the date of the meeting, except that notices of meetings reconvened after adjournment must be given not less than 10 days nor more than 60 days before the date of the meeting. Any modifications to or waivers in respect of the Indenture or the Securities will be conclusive and binding on all Holders, whether or not they have given their consent (unless required under this Indenture) or were present at any duly held meeting.

(b)     To be entitled to vote at any meeting of Holders, a Person shall be a Holder of Outstanding Securities or, in the case of registered Securities, a Person duly appointed by an instrument in writing as proxy for such a Holder. At any meeting of Holders, other than a meeting to discuss a Reserved Matter (as defined below), the Persons entitled to vote a majority of the aggregate principal amount of the Outstanding Securities shall constitute a quorum, and at the reconvening of any such meeting adjourned for a lack of a quorum, the Persons entitled to vote 25% of the aggregate principal amount of the Outstanding Securities shall constitute a quorum for the taking of any action set forth in the notice of the original meeting. At any meeting of Holders held to discuss a Reserved Matter, the Persons entitled to vote 75% of the aggregate principal amount of the Outstanding Securities shall constitute a quorum, and at the reconvening of any such meeting adjourned for a lack of quorum, the Persons entitled to vote 75% of the aggregate principal amount of the Outstanding Securities shall constitute a quorum for the taking of any action set forth in the original meeting. The Trustee may make such reasonable and customary regulations as it shall deem advisable for any meeting of Holders with respect to the appointment of proxies in respect of Holders of registered Securities, the record date for determining the registered owners of registered Securities who are entitled to vote at such meeting (which date shall be set forth in the notice calling such meeting hereinabove referred to and which shall be not less than 15 nor more than 30 days prior to such meeting), the adjournment and chairmanship of such meeting, the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.

(c)     Non-material Amendments

The Issuer and the Trustee may, without the vote or consent of any Holder, amend this Indenture or the Securities to (i) add to the covenants of the Issuer for the benefit of the Holders, (ii) surrender any right or power conferred upon the Issuer, (iii) secure the Securities pursuant to the requirements of the Securities or otherwise, (iv) cure any ambiguity or cure, correct, supplement or waive any defective provision in this Indenture or the Securities; or (v) amend this Indenture or the Securities in any other manner which the Issuer and the Trustee may determine and which shall not be inconsistent with the provisions of the Securities and shall not adversely affect the interests of any Holder of Securities in any material respect.

(d)     Binding Nature of Amendments, Notice, Notations, etc.

It shall not be necessary for the vote or consent of the Holders to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof. Any instrument given by or on behalf of any Holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent Holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof. Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be conclusive and binding on all Holders, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities. Notice of any modification or amendment of, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities or this Indenture (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereto or thereof) shall be given to each Holder of Securities affected thereby, in all cases as provided in the Securities. Securities authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action may bear a notation in the form approved by the Trustee and the Issuer as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action. New Securities, modified to conform, in the opinion of the Trustee and the Issuer, to any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, may be prepared by the Issuer, authenticated by the Trustee and delivered in exchange for Outstanding Securities.

(e)     Modifications and Amendments; Certain Definitions

(i)     The Issuer and the Trustee may modify, amend, supplement or waive the terms of the Securities or, insofar as respects the Securities, this Indenture in any way, other than a modification, amendment, supplement or waiver constituting a Reserved Matter (as defined below), and the Holders may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture or the Securities to be made, given or taken by Holders, other than a waiver or other action constituting a Reserved Matter, (A) at any meeting of Holders duly called and held as specified above, upon the affirmative vote, in person or (in the case of registered owners of the Securities) by proxy thereunto duly authorized in writing, of the Holders of not less than 66 2/3% of the aggregate principal amount of the Securities then Outstanding represented at such meeting (or of such other percentage as may be set forth in the text of the Securities with respect to the action being taken), or (B) with the written consent of the Holders of not less than 66 2/3% of the aggregate principal amount of the Securities then Outstanding (or of such other percentage as may be set forth in the text of the Securities with respect to the action being taken).

(ii)     The Issuer and the Trustee may make any modification, amendment, supplement or waiver of the Indenture or the terms and conditions of the Securities that constitutes a Reserved Matter, (A) at any meeting of Holders duly called and held as specified above, upon the affirmative vote, in person or (in the case of registered owners of the Securities) by proxy thereunto duly authorized in writing, of the Holders of not less than 75% of the aggregate principal amount of the Securities then Outstanding (for the avoidance of doubt, not of only the Outstanding Securities represented at such meeting but of all the Securities Outstanding at that time), or (B) with the written consent of the owners of not less than 75% of the aggregate principal amount of the Securities then Outstanding,

"**Reserved Matters**" consist of any modification, amendment, supplement or waiver of this Indenture or the terms and conditions of the Securities that would (i) change the due date for the payment of the principal of or any installment of interest on, any Security, (ii) reduce the principal amount of, or the portion of such principal amount which is payable upon acceleration of the maturity of, or the interest rate on, any Security, (iii) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of Securities is payable, (iv) permit the Issuer to redeem the Securities prior to the Maturity, (v) reduce the proportion of the principal amount of Securities the vote or consent of the Holders of which is necessary to modify, amend or supplement this Indenture or the terms and conditions of the Securities or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or change the definition of "Outstanding" with respect to the Securities, (vi) change the obligation of the Issuer to pay additional amounts with respect to the Securities, (vii) change the governing law provision of the Securities, (viii) change the courts to the jurisdiction of which the Issuer has submitted, the Issuer's obligation to appoint and maintain an Authorized Agent in the Borough of Manhattan, The City of New York, as set forth in Section 1.17, or the Issuer's waiver of immunity, in respect of actions or proceedings brought by any Holder based upon the Securities, as set forth in Section 1.17, (ix) in connection with an exchange offer for the Securities, amend any Event of Default (as defined in the terms of the Securities), or (x) change the *pari passu* ranking of the Securities.

"**Outstanding**" means any Security authenticated and delivered pursuant to this Indenture, as of any date of determination, except: (i) Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation or held by the Trustee for reissuance but not reissued by the Trustee; (ii) Securities which have been called for redemption in accordance with their terms or which have become due and payable at maturity or otherwise and with respect to which monies sufficient to pay the principal thereof (and, premium, if any) and any interest thereon shall have been made available to the Trustee; or (iii) Securities in lieu of or in substitution for which other Securities shall have been authenticated and delivered pursuant to this Indenture; PROVIDED, however, that in determining whether the requisite principal amount of Outstanding Securities are present at a meeting of Holders for quorum purposes or have consented to or voted in favor of any request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement hereunder, Securities owned, directly or indirectly, by the Issuer or any Public Sector Instrumentality shall be disregarded and deemed not to be Outstanding, except that in determining whether the Trustee shall be

31

protected in relying upon any such request, demand, authorization, direction, notice, consent, waiver, amendment, modification or supplement, only Securities which the Trustee knows to be so owned shall be so disregarded.

**3.10   Cancellation**

All Securities surrendered for payment, redemption, registration of transfer or exchange shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee or any Paying Agent and shall be promptly cancelled by it. The Issuer may at any time deliver to the Trustee or any Paying Agent for cancellation any Securities previously authenticated and delivered hereunder which the Issuer may have acquired in any manner whatsoever, and all Securities so delivered shall be promptly cancelled by the Trustee or such Paying Agent. No Securities shall be authenticated in lieu of or in exchange for any Securities cancelled as provided in this Section 3.10, except as expressly permitted by this Indenture. All cancelled Securities held by the Trustee shall be disposed of as directed by an Issuer Order.

**3.11   Computation of Interest**

Interest on the Securities shall be computed on the basis of a 360-day year of twelve 30-day months.

**3.12   Common Code/ISIN Numbers/ CUSIP Numbers**

The Issuer in issuing the Securities may use "common code", "ISIN" numbers or "CUSIP" numbers (if then generally in use), and, if so, "common code", "ISIN" numbers and "CUSIP" numbers shall be included in notices of redemption as a convenience to Holders; PROVIDED that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuer will promptly notify the Trustee of any change in the "common code", "ISIN" numbers or "CUSIP" numbers.

**3.13   Prescription**

Claims against the Issuer for the payment of principal of, or premium, if any, or interest, or Additional Amounts, if any, on the Securities will become void unless presentation for payment is made as required in this Indenture within a period of 10 years, in the case of principal or premium, if any, or five years, in the case of interest, or Additional Amounts, if any, from the applicable original payment date therefor.

**4.   SATISFACTION AND DISCHARGE**

**4.1   Satisfaction and Discharge of Indenture**

This Indenture shall cease to be of further effect (except as to any surviving rights of registration of transfer or exchange of Securities herein expressly provided for), and the Trustee, on demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture, when:

(HK) 09974/048/INDENTURE/2012.Olympic.Indenture.doc

(a)     either:

    (i)     all Securities previously authenticated and delivered (other than (A) Securities which have been destroyed, lost or stolen and which have been replaced or paid as provided in Section 3.6 or (B) Securities for whose payment money has previously been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 9.5) have been delivered to the Trustee or any Paying Agent for cancellation; or

    (ii)    all such Securities not previously delivered to the Trustee or any Paying Agent for cancellation:

        (A)     have become due and payable; or

        (B)     will become due and payable at their Stated Maturity within one year; or

        (C)     are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice of redemption by the Trustee in the name, and at the expense, of the Issuer;

and the Issuer, in the case of (A), (B) or (C) above, has irrevocably deposited or caused to be deposited with the Trustee as trust funds in trust for the purpose an amount sufficient to pay and discharge the entire indebtedness on such Securities not previously delivered to the Trustee or any Paying Agent for cancellation, for principal (and premium, if any) and interest, if any, and Additional Amounts, if any, to the date of such deposit (in the case of Securities which have become due and payable) or to the Stated Maturity, as the case may be, together with irrevocable instructions from the Issuer directing the Trustee to apply such funds to the payment thereof at maturity or redemption, as the case may be;

(b)     the Issuer has paid or caused to be paid all other sums payable hereunder by the Issuer; and

(c)     the Issuer has delivered to the Trustee a Certificate and an Opinion of Counsel, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.

Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Issuer to the Trustee under Section 6.7 and, if money shall have been deposited with the Trustee pursuant to Section 4.1(a)(ii), the obligations of the Trustee under Section 4.2 and the last paragraph of Section 9.5 shall survive such satisfaction and discharge.

**4.2    Application of Trust Money**

Subject to the provisions of the last paragraph of Section 9.5, all money deposited with the Trustee pursuant to Section 4.1 shall be held in trust and applied by it, in accordance with the provisions of the Securities and this Indenture, to the payment, either directly or through any Paying Agent (including the Issuer acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.

5.    **REMEDIES**

5.1   **Events of Default**

The occurrence and continuance of any of the following will constitute "**Events of Default**" with respect to the Securities:

(a)    *Non-payment*

The Issuer fails to pay any interest or principal on any of the Securities when due and payable and such failure continues for a period of 7 days (in the case of principal) or 30 days (in the case of interest), or

(b)    *Breach of other obligations*

The Issuer fails to duly observe or perform any of the other covenants or agreements contained in the Securities or in this Indenture for a period of 30 days after the date on which written notice specifying such failure and demanding that the Issuer remedy the same shall have been given to the Issuer by the Trustee or to the Issuer and the Trustee by the Holders of at least 25% of the aggregate principal amount of the Outstanding Securities, or

(c)    *Cross-default*

(i)    any External Indebtedness shall become (or shall become capable of being declared) due and payable prior to its stated maturity (otherwise than at the option of the Issuer); or

(ii)   any default shall occur in the payment of principal of, or premium or prepayment charge (if any) or interest on, any External Indebtedness when and as the same shall become due and payable if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(iii)  any default shall occur in the payment when due and called upon (after the expiry of any originally applicable grace period) of any Guarantee of the Issuer in respect of any External Indebtedness of any other Person,

PROVIDED that the aggregate amount of the relevant External Indebtedness in respect of which one or more of the events mentioned in this Section 5.1(c) have occurred equals or exceeds U.S.$25,000,000 (or its equivalent in any other currency or currencies), or

(d)    *Moratorium*

A general moratorium on the payment of principal of or interest on or the performance of the obligation in respect of the External Indebtedness of the Issuer shall be declared by the Issuer, or

(e)    *IMF Membership*

The Issuer shall cease to be a member of the IMF or shall cease to be eligible to use the general resources of the IMF, or

(f)     *Validity*

The validity of the Securities shall be contested by the Issuer or any legislative, executive or judicial body or official of Sri Lanka which is authorized in each case by law to do so and, acting alone or together with another such body or official, has the legal power and authority to declare the Securities invalid or unenforceable, or the Issuer shall deny any of its obligations under the Securities (whether by a general suspension of payments or a moratorium on the payment of debt or otherwise), or any constitutional provision, treaty, convention, law, regulation, official communiqué, decree, ordinance or policy of Sri Lanka or any final and non-appealable decision by any court in Sri Lanka having jurisdiction, shall purport to render any provision of the Securities invalid or unenforceable or shall purport to prevent or delay the performance or observance by the Issuer of any of its obligations thereunder or hereunder, or

(g)     *Revocation of Authority*

Any constitutional provision, treaty, convention, law, regulation, ordinance, decree, consent, approval, licence or other authority necessary to enable the Issuer to make or perform its obligations under the Securities or for the validity or enforceability thereof, shall expire, be withheld, revoked, terminated or otherwise cease to remain in full force and effect or remain valid and subsisting, or shall be modified in a manner which adversely affects or will adversely affect any rights or claims of any of the Holders, or

(h)     *International Monetary Assets*

The Issuer or the Central Bank shall not at any time exercise full ownership, power and control over any of their International Monetary Assets as they exist from time to time (unless, prior to the occurrence of such an event, a public sector entity has substantially all powers and assets of the Central Bank (including, without limitation, all of its International Monetary Assets) and performs the functions of a central bank shall assume and acquire such assets, powers and functions).

If any of the above Events of Default occurs and is continuing, then the Holders of not less than 25% in aggregate principal amount of the Securities then Outstanding by notice in writing to the Trustee at its specified office, may declare the principal amount of all such Securities to be immediately due and payable whereupon they shall become immediately due and payable at their principal amount together with accrued interest without further formality unless such Event of Default shall have been remedied prior to the receipt of such notice by the Trustee.

**5.2     Rescission and Annulment**

At any time after a declaration of acceleration as described in Section 5.1 has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter in this Article provided, the Holders of a majority in principal amount of the Outstanding Securities, by written notice to the Issuer and the Trustee, may rescind and annul such declaration and its consequences if:

(a)    the Issuer has paid or deposited with the Trustee a sum sufficient to pay:

    (i)    all overdue interest on all Securities;

    (ii)    the unpaid principal of (and premium, if any, on) any Securities which have become due otherwise than by such declaration of acceleration and interest thereon at the rate borne by the Securities;

    (iii)    to the extent that payment of such interest is lawful, interest upon overdue interest at the rate borne by the Securities;

    (iv)    all sums paid or advanced by the Trustee hereunder and the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel; and

(b)    all Events of Default, other than the non-payment of the principal of Securities that have become due solely by such declaration of acceleration, have been cured or waived as provided in Section 5.13.

No such rescission shall affect any subsequent default or impair any right consequent thereon.

**5.3    Collection of Indebtedness and Suits for Enforcement by Trustee**

The Issuer covenants that if:

(a)    default is made in the payment of any interest on any Security when such interest becomes due and payable and such default continues for a period of 10 days; or

(b)    default is made in the payment of the principal of (and premium, if any, on) any Security at the Maturity thereof,

the Issuer will, upon demand of the Trustee, pay to it, for the benefit of the Holders of such Securities, the whole amount then due and payable on such Securities for principal (and premium, if any) and interest, and, to the extent that payment of such interest shall be legally enforceable, interest on any overdue principal (and premium, if any) and on any overdue interest, at the rate borne by the Securities, and, in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel.

If the Issuer fails to pay such amounts immediately upon such demand, the Trustee, in its own name and as trustee of an express trust, may institute a judicial proceeding for the collection of the sums so due and unpaid, may prosecute such proceeding to judgment or final decree and may enforce the same against the Issuer or any other obligor upon such Securities and collect the moneys adjudged or decreed to be payable in the manner provided by law out of the property of the Issuer or any other obligor upon the Securities, wherever situated.

If an Event of Default occurs and is continuing, the Trustee may in its discretion proceed to protect and enforce its rights and the rights of the Holders by such appropriate judicial proceedings as the Trustee shall deem most effectual to protect and enforce any such rights,

whether for the specific enforcement of any covenant or agreement in this Indenture or in aid of the exercise of any power granted herein, or to enforce any other proper remedy.

The Trustee shall not be bound to institute any proceedings or take any other actions described in the two preceding paragraphs of this Section 5.3 unless (a) it shall have been so directed by the Holders of a majority in aggregate principal amount of the Outstanding Securities pursuant (and subject) to Section 5.12 and (b) it shall have received an indemnity satisfactory to it against the costs, expenses and liabilities to be incurred in compliance with such direction.

**5.4      Trustee May File Proofs of Claim**

In case of any judicial proceeding relative to the Issuer (or any other obligor upon the Securities), its property or its creditors, the Trustee shall be entitled and empowered, by intervention in such proceeding or otherwise, to take any and all actions authorized under the Trust Indenture Act in order to have claims of the Holders and the Trustee allowed in any such proceeding. In particular, the Trustee shall be authorized to collect and receive any moneys or other property payable or deliverable on any such claims and to distribute the same; and any custodian, receiver, assignee, trustee, liquidator, sequestrator or other similar official in any such judicial proceeding is hereby authorized by each Holder to make such payments to the Trustee and, in the event that the Trustee shall consent to the making of such payments directly to the Holders, to pay to the Trustee any amount due to it for the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, and any other amounts due the Trustee under Section 6.7.

No provision of this Indenture shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of any Holder any plan of reorganization, arrangement, adjustment or composition affecting the Securities or the rights of any Holder thereof or to authorize the Trustee to vote in respect of the claim of any Holder in any such proceeding.

**5.5      Trustee May Enforce Claims Without Possession of Securities**

All rights of action and claims under this Indenture or the Securities may be prosecuted and enforced by the Trustee without the possession of any of the Securities or the production thereof in any proceeding relating thereto, and any such proceeding instituted by the Trustee shall be brought in its own name as trustee of an express trust, and any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Trustee, its agents and counsel, be for the ratable benefit of the Holders of the Securities in respect of which such judgment has been recovered.

**5.6      Application of Money Collected**

Any money collected by the Trustee pursuant to this Article shall be applied in the following order, at the date or dates fixed by the Trustee and, in case of the distribution of such money on account of principal (and premium, if any) or interest, upon presentation of the Securities and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

FIRST:  To the payment of all amounts due the Trustee under Section 6.7.

SECOND:  To the payment of the amounts then due and unpaid for principal of (and premium, if any) and interest on the Securities in respect of which or for the benefit of which such money has

been collected, ratably, without preference or priority of any kind, according to the amounts due and payable on such Securities for principal (and premium, if any) and interest, respectively.

THIRD:  The balance, if any, to the Issuer (without prejudice to, or liability in respect of, any question as to how such payment to the Issuer shall be dealt with as between the Issuer and any other Person) or to such party as a court of competent jurisdiction shall direct in writing.

**5.7    Limitation on Suits**

No Holder of any Security shall have any right to institute any suit, action or proceeding, judicial or otherwise, in equity or at law, or otherwise, with respect to this Indenture, or for the appointment of a receiver or trustee, or for any other remedy hereunder, unless:

(a)      such Holder has previously given written notice to the Trustee of a continuing Event of Default;

(b)      the Holders of not less than 25% in aggregate principal amount of the Outstanding Securities shall have made written request to the Trustee to institute proceedings in respect of such Event of Default in its own name as Trustee hereunder;

(c)      such Holder or Holders have offered to the Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request;

(d)      the Trustee for 30 days after its receipt of such notice, request and offer of indemnity has failed to institute any such proceeding; and

(e)      no direction inconsistent with such written request has been given to the Trustee during such 30-day period by the Holders of a majority in principal amount of the Outstanding Securities;

it being understood and intended that no one or more Holders shall have any right in any manner whatever by virtue of, or by availing of, any provision of this Indenture to affect, disturb or prejudice the rights of any other Holders, or to obtain or to seek to obtain priority or preference over any other Holders or to enforce any right under this Indenture, except in the manner herein provided and for the equal and ratable benefit of all the Holders.

**5.8    Unconditional Right of Holders to Receive Principal, Premium and Interest**

Notwithstanding any other provision in this Indenture, the Holder of any Security shall have the right, which is absolute and unconditional, to receive payment of the principal of (and premium, if any) and (subject to Section 3.7) interest on such Security on the respective Stated Maturities expressed in such Security and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder.

**5.9    Restoration of Rights and Remedies**

If the Trustee or any Holder has instituted any proceeding to enforce any right or remedy under this Indenture and such proceeding has been discontinued or abandoned for any reason, or has been determined adversely to the Trustee or to such Holder, then and in every such case, subject to any determination in such proceeding, the Issuer, the Trustee and the Holders shall be restored

(HK) 09974/048/INDENTURE/2012.Olympic.Indenture.doc

severally and respectively to their former positions hereunder and thereafter all rights and remedies of the Trustee and the Holders shall continue as though no such proceeding had been instituted.

**5.10    Rights and Remedies Cumulative**

Except as otherwise provided with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities in the last paragraph of Section 3.6, no right or remedy herein conferred upon or reserved to the Trustee or to the Holders is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. The assertion or employment of any right or remedy hereunder, or otherwise, shall not prevent the concurrent assertion or employment of any other appropriate right or remedy.

**5.11    Delay or Omission Not Waiver**

No delay or omission of the Trustee or of any Holder of any Security to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

**5.12    Control by Holders**

The Holders of a majority in principal amount of the Outstanding Securities shall have the right to direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on the Trustee, PROVIDED that:

(a)      such direction shall not be in conflict with any rule of law or with this Indenture; and

(b)      the Trustee may take any other action deemed proper by the Trustee which is not inconsistent with such direction.

**5.13    Waiver of Past Defaults**

Subject to Section 5.2, the Holders of not less than a majority in principal amount of the Outstanding Securities may on behalf of the Holders of all the Securities waive any past default hereunder and its consequences, except a default:

(a)      in the payment of the principal of (and premium, if any) or interest on any Security; or

(b)      in respect of a covenant or provision hereof which under Article 8 cannot be modified or amended without the consent of the Holder of each Outstanding Security affected.

Upon any such waiver, such default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon.

(HK) 09974/048/INDENTURE/2012.Olympic.Indenture.doc

**5.14    Undertaking for Costs**

In any suit for the enforcement of any right or remedy under this Indenture, or in any suit against the Trustee for any action taken, suffered or omitted by it as Trustee, a court may require any party litigant in such suit to file an undertaking to pay the costs of such suit, and may assess costs against any such party litigant, in the manner and to the extent provided in the Trust Indenture Act; PROVIDED that neither this Section 5.14 nor the Trust Indenture Act shall be deemed to authorize any court to require such an undertaking or to make such an assessment in any suit instituted by the Issuer.

**5.15    Waiver of Stay or Extension Laws**

The Issuer covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, which may affect the covenants or the performance of this Indenture; and the Issuer (to the extent that it may lawfully do so) hereby expressly waives all benefit or advantage of any such law and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

**6.    THE TRUSTEE**

**6.1    Certain Duties and Responsibilities**

The duties and responsibilities of the Trustee shall be as provided by the Trust Indenture Act as if this Indenture were qualified under the Trust Indenture Act. Notwithstanding the foregoing, no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it in its sole discretion against such risk or liability is not reasonably assured to it. The Trustee shall have no obligation to pay any amounts to Holders unless the Issuer has previously deposited with it funds sufficient for such purposes. Whether or not therein expressly so provided, every provision of this Indenture relating to the conduct or affecting the liability of or affording protection to the Trustee shall be subject to the provisions of this Section 6.1. In no event shall the Trustee be responsible or liable under, in connection with or pursuant to this Indenture, for any action or inaction taken or not taken in connection therewith, to any Person for punitive, special, indirect or consequential loss or damage of any kind whatsoever (including, but not limited to, loss of profit or opportunity) whether or not foreseeable and irrespective of whether the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action.

No provision of this Indenture shall require the Trustee to do anything which, in its reasonable opinion, may be illegal or contrary to applicable law or regulation; and the Trustee will not be liable to any Person if prevented or delayed in performing any of its obligations or discretionary functions under or in connection with this Indenture by reason of any circumstances beyond its control, including, but not limited to, acts of God, flood, war (whether declared or undeclared), terrorism, fire, riot, embargo, government or regulatory authority or action (including any laws, ordinances or regulations) or the like which delay, restrict or prohibit the providing of the services contemplated by this Indenture.

40

The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee.

**6.2    Notice of Defaults**

The Trustee shall give the Holders notice of any Default hereunder as and to the extent provided by Section 313(c) of the Trust Indenture Act; PROVIDED, however, that in the case of any default of the character specified in Section 5.1(c), no such notice to Holders shall be given until at least 30 days after the occurrence thereof.

**6.3    Certain Rights of Trustee**

Subject to the provisions of Section 6.1:

(a)    the Trustee may rely on, and shall be protected in acting or refraining from acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document (whether in its original or facsimile form) believed by it to be genuine and to have been signed or presented by the proper party or parties;

(b)    any request or direction of the Issuer mentioned herein shall be sufficiently evidenced by the Issuer Request or Issuer Order;

(c)    before the Trustee acts or refrains from acting, it may require a Certificate or an Opinion of Counsel or both. In the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon such Certificate or Opinion of Counsel, and the Trustee will not be liable for any action it takes or omits to take in good faith in reliance on such Certificate or Opinion of Counsel;

(d)    the Trustee may consult with counsel and the written advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon;

(e)    the Trustee shall be under no obligation to exercise any of the rights or powers vested in it by this Indenture at the request or direction of any of the Holders pursuant to this Indenture, unless such Holders shall have offered to the Trustee security or indemnity satisfactory to it in its sole discretion against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction;

(f)    the Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, direction, consent, order, bond, debenture, note, other evidence of indebtedness or other paper or document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Issuer, personally or by agent or attorney;

(g)     the Trustee shall have no duty to inquire as to the performance of the covenants of the Issuer in Article 9 hereof;

(h)     the Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys and the Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by it hereunder;

(i)     the Trustee shall not be liable for any action taken, suffered, or omitted to be taken by it in good faith and reasonably believed by it to be authorized or within the discretion or rights or powers conferred upon it by this Indenture, except in case of gross negligence or bad faith;

(j)     the Trustee shall not be deemed to have notice of any Default or Event of Default unless a Responsible Officer of the Trustee has actual knowledge thereof or unless written notice of any event which is in fact such a default is received by the Trustee at the Corporate Trust Office of the Trustee, and such notice references the Securities and this Indenture;

(k)     the Trustee shall not be required to give any bond or surety with respect to the performance of its duties or the exercise of its powers under this Indenture;

(l)     in the event the Trustee receives inconsistent or conflicting requests and indemnity from two or more Holders or groups of Holders, each representing less than a majority in aggregate principal amount of the Securities then outstanding, each pursuant to the provisions of this Indenture, the Trustee, in its sole discretion, may determine what action, if any, shall be taken;

(m)     The permissive rights of the Trustee to do things enumerated in this Indenture shall not be construed as a duty and the Trustee shall not be answerable for other than its gross negligence or wilful default;

(n)     the rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder, and to each agent, custodian and other Person employed to act hereunder;

(o)     the Trustee may request that the Issuer deliver a Certificate setting forth the names of Authorized Officials and/or individuals and/or titles of officers authorized at such time to take specified actions pursuant to this Indenture, which Certificate may be signed by any Person authorized to sign a Certificate, including any Person as so authorized in any such certificate previously delivered and not superseded;

(p)     delivery of reports, information and documents to the Trustee under Section 7.3 is for informational purposes only and the Trustee's receipt of the foregoing shall not constitute constructive notice of any information contained herein or determinable from information contained therein, including the Issuer's compliance with any of their covenants hereunder (as to which the Trustee is entitled to rely exclusively on Certificates);

(q)     neither the Trustee nor any clearing house through which the Securities are traded shall have any obligation or duty to monitor, determine or inquire as to compliance, and shall not be responsible or liable for compliance, with restrictions on transfer, exchange, redemption, purchase or repurchase, as applicable, of minimum denominations imposed under this Indenture or under applicable law or regulation with respect of any transfer, exchange, redemption, purchase or repurchase, as applicable, of any interest in any Security;

(r)     the Trustee and the Holders shall be joint creditors for all claims and/or similar rights arising out of or in connection with this Indenture and the Trustee shall be entitled to claim and sue for all amounts due in connection herewith on behalf of itself and the Holders of the Securities, in any such case subject to the provisions of this Article 6; and

(s)     the Trustee will treat information relating to the Issuer as confidential, but (unless consent is prohibited by law) the Issuer consents to the transfer and disclosure by the Trustee of any information relating to the Issuer to and between branches, subsidiaries, representative offices, affiliates and agents of the Trustee and third parties selected by any of them, wherever situated, for confidential use (including in connection with the provision of any service and for data processing, statistical and risk analysis purposes).

## 6.4     Not Responsible for Recitals or Issuance of Securities

The recitals contained herein and in the Securities, except the Trustee's certificates of authentication, shall be taken as the statements of the Issuer, and the Trustee assumes no responsibility for their correctness. The Trustee makes no representations as to the validity or sufficiency of this Indenture or of the Securities. The Trustee shall not be accountable for the use or application by the Issuer of Securities or the proceeds thereof.

## 6.5     May Hold Securities and Engage in Business

The Trustee, any Paying Agent, any Security Registrar or any other agent of the Issuer, in its individual or any other capacity, (a) may become the owner or pledgee of Securities and, subject to Sections 6.8 and 6.13, may otherwise deal with the Issuer with the same rights it would have if it were not Trustee, Paying Agent, Security Registrar or such other agent; and (b) may accept deposits from, lend money to and generally engage in any kind of banking or other business with the Issuer as if it were not Trustee, Paying Agent, Security Registrar or such other agent.

## 6.6     Money Held in Trust

Money held by the Trustee in trust hereunder need not be segregated from other funds or otherwise manage money in HSBC's possession except to the extent required by law. The Trustee shall be under no liability for interest on any money received by it hereunder except as otherwise agreed with the Issuer in writing.

## 6.7     Compensation and Reimbursement

The Issuer agrees:

(a)     to pay to the Trustee such compensation as separately agreed and other reasonable compensation for all services rendered by it hereunder (which compensation shall not be

limited by any provision of law in regard to the compensation of a trustee of an express trust);

(b)      except as otherwise expressly provided herein, to reimburse the Trustee upon its request for all expenses, disbursements and advances properly incurred or made by the Trustee in accordance with any provision of this Indenture (including the compensation and the expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its gross negligence or bad faith; and

(c)      to indemnify the Trustee for, and to hold it harmless against, any loss, liability or expense incurred without gross negligence or bad faith on its part, arising out of or in connection with the acceptance or administration of this trust, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its powers or duties hereunder.

When the Trustee incurs expenses or renders services in connection with an Event of Default, specified in Sections 5.1(f) or 5.1(g), the expenses (including the properly incurred charges and expenses of its agents and counsel) and the compensation for the services are intended to constitute expenses of administration under any applicable Insolvency Law.

The Trustee shall have a Lien prior to the Securities on all property and funds held by it hereunder for any amount owing it or any predecessor Trustee pursuant to this Section 6.7, except with respect to funds held in trust for the benefit of the Holders of particular Securities.

The provisions of this Section 6.7 shall survive the termination of this Indenture and the resignation or removal of the Trustee.

## 6.8      Disqualification; Conflicting Interests

If the Trustee has or shall acquire a conflicting interest as provided in Section 310(b) of the Trust Indenture Act, the Trustee shall either

(a)      eliminate such interest within 90 days; or

(b)      resign, to the extent and in the manner provided by the Trust Indenture Act and subject to Section 6.10.

## 6.9      Corporate Trustee Required; Eligibility

There shall at all times be a Trustee hereunder which shall be a Person that is eligible pursuant to Section 310(a)(1) of the Trust Indenture Act to act as such and has a combined capital and surplus of at least U.S.$50,000,000 and its Corporate Trust Office in New York. If such Person publishes reports of condition at least annually, pursuant to law or to the requirements of said supervising or examining authority, then, for the purposes of this Section 6.9, the combined capital and surplus of such Person shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section 6.9, it shall resign immediately in the manner and with the effect hereinafter specified in this Article.

44

This Indenture shall always have a Trustee that satisfies the requirements of the Trust Indenture Act Sections 310(a)(1), (2) and (5) as if this Indenture were required to be qualified under the Trust Indenture Act. For the purposes of this Indenture, the Trustee will be deemed to be subject to Trust Indenture Act Section 310(b); PROVIDED, however that there shall be excluded from the operation of Trust Indenture Act Section 310(b)(1) any indenture or indentures under which other securities of, or certificates of interest or participation in other securities of, the Issuer are outstanding if the requirements for such exclusion as set forth in Trust Indenture Act Section 310(b)(1) are met.

**6.10   Resignation and Removal; Appointment of Successor**

(a)   No resignation or removal of the Trustee and no appointment of a successor Trustee pursuant to this Article shall become effective until the acceptance of appointment by the successor Trustee under Section 6.11.

(b)   The Trustee may resign at any time by giving written notice thereof to the Issuer. If an instrument of acceptance by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may petition any court of competent jurisdiction for the appointment of a successor Trustee.

(c)   The Trustee may be removed at any time by Act of the Holders of a majority in principal amount of the Outstanding Securities, delivered to the Trustee and to the Issuer.

(d)   If at any time:

(i)   the Trustee shall fail to comply with Section 6.8 after written request therefor by the Issuer or by any Holder who has been a bona fide Holder of a Security for at least six months; or

(ii)   the Trustee shall cease to be eligible under Section 6.9 and shall fail to resign after written request therefor by the Issuer or by any Holder who has been a bona fide Holder of a Security for at least six months; or

(iii)   the Trustee (or the controlling shareholder thereof) shall become incapable of acting or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee (or the controlling shareholder thereof) or of its property shall be appointed or any public officer shall take charge or control of the Trustee (or the controlling shareholder thereof) or of its property or affairs for the purpose of rehabilitation, conservation or liquidation,

then, in any such case, (A) the Issuer may remove the Trustee, or (B)  any Holder who has been a bona fide Holder of a Security for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(e)   If the Trustee shall resign, be removed or become incapable of acting, or if a vacancy shall occur in the office of Trustee for any cause, the Issuer shall promptly appoint a successor Trustee. If, within one year after such resignation, removal or incapability, or

the occurrence of such vacancy, a successor Trustee shall be appointed by Act of the Holders of a majority in principal amount of the Outstanding Securities delivered to the Issuer and the retiring Trustee, the successor Trustee so appointed shall, forthwith upon its acceptance of such appointment, become the successor Trustee and supersede the successor Trustee appointed by the Issuer. If no successor Trustee shall have been so appointed by the Issuer or the Holders and accepted such appointment in the manner hereinafter provided, any Holder who has been a bona fide Holder of a Security for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the appointment of a successor Trustee.

(f)     The Issuer shall give notice of each resignation and each removal of the Trustee and each appointment of a successor Trustee to all Holders in the manner provided in Section 1.7. Each notice shall include the name of the successor Trustee and the address of its Corporate Trust Office.

## 6.11    Acceptance of Appointment by Successor

Every successor Trustee appointed hereunder shall execute, acknowledge and deliver to the Issuer and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee; but, on request of the Issuer or the successor Trustee, such retiring Trustee shall, upon payment of its charges, execute and deliver an instrument transferring to such successor Trustee all the rights, powers and trusts of the retiring Trustee and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder. Upon request of any such successor Trustee, the Issuer shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers and trusts.

No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article.

## 6.12    Merger, Conversion, Consolidation or Succession to Business

Any corporation into which the Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any corporation succeeding to all or substantially all the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder, PROVIDED such corporation shall be otherwise qualified and eligible under this Article, without the execution or filing of any paper or any further act on the part of any of the parties hereto. In case any Securities shall have been authenticated, but not delivered, by the Trustee then in office, any successor by merger, conversion or consolidation to such authenticating Trustee may adopt such authentication and deliver the Securities so authenticated with the same effect as if such successor Trustee had itself authenticated such Securities. In case any of the Securities shall not have been authenticated by such predecessor Trustee, any successor Trustee may authenticate such Securities either in the name of any predecessor hereunder or in the name of the successor Trustee. In all such cases such certificates shall have the full force and effect which this Indenture provides for the certificate of authentication of the Trustee; PROVIDED, however, that the right to adopt the certificate of authentication of any predecessor Trustee or to authenticate Securities

46

in the name of any predecessor Trustee shall apply only to its successor or successors by merger, conversion or consolidation.

**6.13**     **Preferential Collection of Claims against Issuer**

If and when the Trustee shall be or become a creditor of the Issuer (or any other obligor upon the Securities), the Trustee shall be subject to Section 311 of the Trust Indenture Act regarding the collection of claims against the Issuer (or any such other obligor).

**6.14**     **Trustee's Application for Instructions from the Issuer**

Any application by the Trustee for written instructions from the Issuer may, at the option of the Trustee, set forth in writing any action proposed to be taken or omitted by the Trustee under this Indenture and the date on and/or after which such action shall be taken or such omission shall be effective. The Trustee shall not be liable for any action taken by, or omission of, the Trustee in accordance with a proposal included in such application on or after the date specified in such application (which date shall not be less than three Business Days after the date any Authorized Official actually receives such application, unless any such Authorized Official shall have consented in writing to any earlier date) unless before taking any such action (or the effective date in the case of an omission), the Trustee shall have received written instructions in response to such application specifying the action to be taken or omitted.

**6.15**     **Appointment of Co-Trustee**

It is the purpose of this Indenture that there shall be no violation of any law of any jurisdiction denying or restricting the right of banking corporations or associations to transact business as trustee in such jurisdiction. It is recognized that in case of litigation under this Indenture or the Securities, and in particular in case of the enforcement thereof on default, or in the case the Trustee deems that by reason of any present or future law of any jurisdiction it may not exercise any of the powers, rights or remedies herein granted to the Trustee or hold title to the properties, in trust, as herein granted or take any action which may be desirable or necessary in connection therewith, it may be necessary that the Trustee appoint an individual or institution as a separate or co-trustee. The following provisions of this Section 6.15 are adopted to these ends.

In the event that the Trustee appoints an additional individual or institution as a separate or co-trustee, each and every remedy, power, right, claim, demand, cause of action, immunity, estate, title, interest and Lien expressed or intended by this Indenture to be exercised by or vested in or conveyed to the Trustee with respect thereto shall be exercisable by and vest in such separate or co-trustee but only to the extent necessary to enable such separate or co-trustee to exercise such powers, rights and remedies, and only to the extent that the Trustee by the laws of any jurisdiction is incapable of exercising such powers, rights and remedies and every covenant and obligation necessary to the exercise thereof by such separate or co-trustee shall run to and be enforceable by either of them.

Should any instrument in writing from the Issuer be required by the separate or co-trustee so appointed by the Trustee for more fully and certainly vesting in and confirming to him or it such properties, rights, powers, trusts, duties and obligations, any and all such instruments in writing shall, on request, be executed, acknowledged and delivered by the Issuer; PROVIDED that if an Event of Default shall have occurred and be continuing, if the Issuer does not execute any such

47

instrument within 15 days after request therefor, the Trustee shall be empowered as an attorney-in-fact for the Issuer to execute any such instrument in the Issuer's name and stead. In case any separate or co-trustee or a successor to either shall die, become incapable of acting, resign or be removed, all the estates, properties, rights, powers, trusts, duties and obligations of such separate or co-trustee, so far as permitted by law, shall vest in and be exercised by the Trustee until the appointment of a new trustee or successor to such separate or co-trustee.

Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(a)     all rights and powers, conferred or imposed upon the Trustee shall be conferred or imposed upon and may be exercised or performed by such separate trustee or co-trustee; and

(b)     no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder.

Any notice, request or other writing given to the Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article.

Any separate trustee or co-trustee may at any time appoint the Trustee as its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all of its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

## 7.     HOLDERS' LISTS AND REPORTS BY TRUSTEE AND ISSUER

### 7.1     Preservation of Information; Communications to Holders

(a)     The Trustee shall preserve, in as current a form as is reasonably practicable the names and addresses of Holders received by the Trustee in its capacity as Security Registrar.

(b)     Every Holder of Securities, by receiving and holding the same, agrees with the Issuer and the Trustee that neither the Issuer nor the Trustee nor any agent of either of them shall be held accountable by reason of any disclosure of information as to names and addresses of Holders made in a manner consistent with the Trust Indenture Act.

### 7.2     Reports by Trustee

(a)     The Trustee shall transmit to Holders such reports concerning the Trustee and its actions under this Indenture to the extent provided in Section 313(a) of the Trust Indenture Act at the times and in the manner provided in Section 313(c) of the Trust Indenture Act.

(b)     A copy of each such report shall, at the time of such transmission to Holders, be filed by the Trustee with each stock exchange upon which the Securities are listed and with the

48

Issuer. The Issuer will notify the Trustee when the Securities are listed on any stock exchange.

**7.3**    **Reports by Issuer**

The Issuer shall file with the Trustee and transmit to Holders, such information, documents and other reports, and such summaries thereof, as may be contemplated by Section 314(a)(4) of the Trust Indenture Act at the times and in the manner provided therein.

**8.**    **SUPPLEMENTAL INDENTURES**

**8.1**    **Supplemental Indentures Without Consent of Holders**

Without the consent of any Holders, the Issuer and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(a)    to evidence the succession of another Person to the Issuer and the assumption by any such successor of the covenants of the Issuer herein and in the Securities; or

(b)    to add to the covenants of the Issuer for the benefit of the Holders or otherwise provide additional rights to the Holders, or to surrender any right or power herein conferred upon the Issuer; or

(c)    to secure or guarantee the Securities; or

(d)    to provide for uncertificated Securities in addition to or in place of certificated Securities; or

(e)    to evidence the appointment of a co-trustee pursuant to Section 6.15; or

(f)    to modify the restrictions on and procedures for resales and other transfers of the Securities to reflect any change in applicable law or regulation (or the interpretation thereof) or in practices relating to the resale or transfer of restricted securities generally, PROVIDED that such action pursuant to this clause (f) shall not adversely affect the interests of Holders in any material respect; or

(g)    to cure any ambiguity, to correct or supplement any provision herein that may be inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising under this Indenture that shall not be inconsistent with the provisions of this Indenture, PROVIDED that such action pursuant to this clause (g) shall not adversely affect the interests of the Holders in any material respect; or

(h)    to provide for issuance of the Additional Securities in accordance with this Indenture.

**8.2**    **Supplemental Indentures with Consent of Holders**

Upon approval of Holders in accordance with the provisions of Section 3.9, the Issuer and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of changing in any manner or eliminating any of the provisions of this Indenture.

It shall not be necessary for any Act of Holders under this Section 8.2 to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act of Holders shall approve the substance thereof.

**8.3     Execution of Supplemental Indentures**

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Section 6.1) shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

**8.4     Effect of Supplemental Indentures**

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Securities theretofore or thereafter authenticated and delivered hereunder shall be bound thereby.

**8.5     Reference in Securities to Supplemental Indentures**

Securities authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Issuer shall so determine, new Securities so modified as to conform, in the opinion of the Trustee and the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and authenticated and delivered by the Trustee in exchange for Outstanding Securities.

**8.6     Notice of Supplemental Indentures**

Promptly after execution by the Issuer of any supplemental indenture pursuant to Section 8.2, the Issuer shall transmit to the Holders a notice setting forth the substance of the supplemental indenture. Notices will be given in a manner consistent with Section 1.7.

**9.     COVENANTS**

**9.1     Issuer Payment of Principal, Premium and Interest**

The Issuer hereby agrees to pay or to cause to be paid to the account of the Trustee at the Corporate Trust Office or at such other place as the Trustee shall direct, not later than 10:00 a.m. (New York time) on the Business Day prior to each interest or principal payment date or the maturity date (each, a "**Payment Date**") of the Securities, in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts, in immediately available funds, an amount which (together with any funds then held by the Trustee and available for the purpose) shall be sufficient to pay the aggregate amount of principal (and premium, if any) and/or interest, as the case may be, becoming due in respect of such Securities by such Payment Date. The Trustee shall apply such amount to the payment due on such date and, pending such application, such amounts shall be held in trust by the Trustee for

the benefit of the Persons entitled thereto and the Issuer shall have no proprietary interest in such amounts.

**9.2**   **Payment of Additional Amounts**

All payments of principal and interest by the Issuer in respect of the Securities will be made free and clear of, and without withholding or deduction for, or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed by or on behalf of Sri Lanka, or any political subdivision or any authority therein or thereof having power to tax (collectively, "**Withholding Taxes**"), unless deduction or withholding of such Withholding Taxes is required by law. In that event, the Issuer will pay such additional amounts (the "**Additional Amounts**") as may be necessary in order that the net amounts received by the Holders of the Securities after such withholding or deduction, together with such additional amounts, shall equal the respective amounts of principal and interest which would have been receivable in respect of the Securities in the absence of such Withholding Taxes, except that no such additional amounts shall be payable in respect of any Security:

(a)    to or on behalf of a Holder or beneficial owner who is subject to Withholding Taxes by reason of having some connection with Sri Lanka other than by reason only of the holding of or the receipt of principal or interest in respect of, any Securities, or

(b)    to or on behalf of a Holder or beneficial owner who would not be liable for or subject to such Withholding Taxes by complying with any certification, identification or other reporting requirements whether imposed by statute or regulation concerning nationality, residence or connection with Sri Lanka if such compliance is required as a precondition to relief or exemption from such Withholding Taxes and if, after having been reasonably requested to make such certification or identification or comply with such reporting requirements, such Holder or beneficial owner fails to do so in a timely manner, or

(c)    to or on behalf of a Holder or beneficial owner who presents such Security (where presentation is required) for payment more than 30 days after the Relevant Date (as defined below) except to the extent that the Holder or beneficial owner thereof would have been entitled to such additional amounts on presenting the same for payment on the last day of such 30-day period, or

(d)    any combination of (a), (b) or (c) above.

The obligation to pay such additional amounts shall not apply to (a) any estate, inheritance, gift, sales, transfer, personal property or any similar tax, assessment or other governmental charge or (b) any tax, assessment or other governmental charge which is payable otherwise than by deduction or withholding from payments of principal of or interest on the Securities; PROVIDED that, except as otherwise set forth in the Securities and in this Indenture, the Issuer shall pay all stamp and other duties, if any, which may be imposed by Sri Lanka or any political subdivision thereof or any taxing authority of or in the foregoing, with respect to this Indenture or as a consequence of the initial issuance of the Securities.

If the Issuer is required to pay additional amounts in respect of Withholding Taxes, it will deliver to the Trustee at the time of any such payment a statement specifying the amount of taxes so paid.

51

The Trustee will make a copy of such documentation available to any Holder or beneficial owner of the Securities upon request.

As used herein, the "**Relevant Date**" means the date on which such payment first becomes due, except that, if the amount of the monies payable has not been received by the Trustee or the Paying Agent on or prior to such date, it means the date on which, the full amount of such monies having been so received, notice to that effect shall have been duly given to the Holders.

Any reference in the Securities or herein to principal or interest shall be deemed also to refer to any Additional Amounts which may be payable with respect thereto as described above.

**9.3     Limitation on Liens**

(a)     So long as any Security remains Outstanding, the Issuer shall not create, incur, assume or permit to subsist any Lien upon the whole or any part of its present or future assets or revenues to secure (i) any Public External Indebtedness; (ii) any Guarantees in respect of Public External Indebtedness; or (iii) the Public External Indebtedness of any other Person, without at the same time or prior thereto securing the Securities equally and ratably therewith or providing such other arrangement (whether or not comprising a Lien) as shall be approved by not less than 66 2/3% of the aggregate principal amount of Outstanding Securities which are represented at a meeting of Holders duly convened in accordance with this Indenture.

(b)     The restriction set out above in Section 9.3(a) does not apply to:

(i)     any Lien upon property to secure Public External Indebtedness incurred for the purpose of financing the acquisition of such property and any renewal and extension of such Lien which is limited to the original property covered thereby and which (in either case) secures any renewal or extension of the original secured financing;

(ii)     any Lien existing on any property or asset at the time of its acquisition (or arising after its acquisition pursuant to an agreement entered into prior to, and not in contemplation of, such acquisition), and extensions and renewals of such Lien limited to the original property or asset covered thereby and securing any extension or renewal of the original secured financing;

(iii)     any Lien arising by operation of law, PROVIDED that any such Lien is not created or permitted to be created by the Issuer to secure any Public External Indebtedness; and

(iv)     any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project; PROVIDED that (i) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project or the proceeds of insurance thereon as the principal source of repayments of such Public External Indebtedness and (ii) the property over which such Lien is granted consists solely of such assets and revenues.

52

(c)      Certain Definitions

"**External Indebtedness**" means Indebtedness expressed or denominated or payable, or which, at the option of the relevant creditor, may be payable in or by reference to any currency other than the lawful currency of Sri Lanka.

"**Indebtedness**" means all unsecured, unsubordinated obligations of the Issuer or any Public Sector Instrumentality (whether present or future) in respect of money borrowed or raised (including money raised by forward sale or purchase agreements, acceptances and leasing or under any other transaction having the commercial effect of a borrowing) and any guarantee given by the Issuer in respect of money borrowed by others. "**Indebtedness**" shall not include the borrowings of any Public Sector Instrumentality so long as such Indebtedness does not carry the full faith and credit of Sri Lanka.

"**Lien**" means any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest with respect to the payment of any obligations with or from the proceeds of any assets or revenues of any kind, whether in effect on the date the Indenture becomes effective or at any time thereafter.

"**Public External Indebtedness**" means any External Indebtedness of, or guaranteed by, Sri Lanka, which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, bonds, notes or other securities or instruments or any guarantees thereof and (iii) is, or was intended at the time of issue to be, or is eligible to be, quoted, listed on any stock exchange, automated trading system or traded on any over-the-counter or other established securities market (including securities eligible for sale pursuant to Rule 144A under the Securities Act (or any successor law or regulation of similar effect)).

**9.4      Maintenance of Office or Agency**

The Issuer will maintain in Singapore an office or agency where Securities may be presented or surrendered for payment, where Securities may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Issuer in respect of the Securities and this Indenture may be served. The Issuer will give prompt written notice to the Trustee of the location, and any change in the location, of such office or agency. If at any time the Issuer shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee, and the Issuer hereby appoints the Trustee as its agent to receive all such presentations, surrenders, notices and demands.

The Issuer may also from time to time designate one or more other offices or agencies (in or outside Singapore) where the Securities may be presented or surrendered for any or all such purposes and may from time to time rescind such designations; PROVIDED, however, that no such designation or rescission shall in any manner relieve the Issuer of its obligation to maintain an office or agency in Singapore for such purposes. The Issuer will give prompt written notice to the Trustee of any such designation or rescission and of any change in the location of any such other office or agency.

If the European Council Directive 2003/48/EC or any European Union Directive implementing the conclusions of the European Union Council of Economic and Finance ("**ECOFIN**") meeting of November 26-27, 2000 on the taxation of savings income or any law implementing or complying with, or introduced in order to conform with, such directive is implemented, the Issuer shall ensure that it maintains a paying and transfer agent in a Member State of European Union that will not be obliged to withhold or deduct tax pursuant to any such directive or law.

9.5     **Money for Security Payments to be Held in Trust**

If the Issuer shall at any time act as its own Paying Agent, it will, on or before each due date of the principal of (and premium, if any) or interest on any of the Securities, segregate and hold in trust for the benefit of the Persons entitled thereto a sum sufficient to pay the principal (and premium, if any) or interest so becoming due until such sums shall be paid to such Persons or otherwise disposed of as herein provided and will promptly notify the Trustee of its action or failure so to act.

Whenever the Issuer shall have one or more Paying Agents, it will, prior to each due date of the principal of (and premium, if any) or interest on any Securities, deposit with a Paying Agent a sum sufficient to pay such amount, such sum to be held as provided by the Trust Indenture Act, and (unless such Paying Agent is the Trustee) the Issuer will promptly notify the Trustee of its action or failure so to act.

The Issuer will cause each Paying Agent other than the Trustee to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section 9.5, that such Paying Agent will:

(a)     hold all sums held by it for the payment of the principal of (and premium, if any) or interest or any other amounts due on Securities in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided;

(b)     give the Trustee notice of any default by the Issuer (or any other obligor upon the Securities) in the making of any payment of principal (and premium, if any) or interest or any other amounts due on the Securities; and

(c)     at any time during the continuance of any such default, upon the written request of the Trustee, immediately pay to the Trustee all sums so held in trust by such Paying Agent.

The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuer or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuer or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money.

Any money deposited with the Trustee or any Paying Agent, or then held by the Issuer, in trust for the payment of the principal of (and premium, if any) or interest on any Security and remaining unclaimed for two years after such principal (and premium, if any) or interest has become due and payable shall be paid to the Issuer on Issuer Request, or (if then held by the

54

Issuer) shall be discharged from such trust; and the Holder of such Security shall thereafter, as an unsecured general creditor, look only to the Issuer for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Issuer as trustee thereof, shall thereupon cease; PROVIDED, however, that the Trustee or such Paying Agent, before being required to make any such repayment, may at the expense of the Issuer cause to be published once, in a manner consistent with Section 1.7, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication, any unclaimed balance of such money then remaining will be repaid to the Issuer.

9.6     **Statement by Officials as to Default**

The Issuer will deliver to the Trustee, within 120 days after the end of each fiscal year of the Issuer ending after the date hereof, a Certificate, stating whether or not to the best knowledge of the signers thereof the Issuer is in default in the performance and observance of any of the terms, provisions and conditions of this Indenture (without regard to any period of grace or requirement of notice provided hereunder) and, if the Issuer shall be in default, specifying all such defaults and the nature and status thereof of which they may have knowledge.

If a Default has occurred and is continuing, the Issuer shall deliver to the Trustee, and so long as the Securities are listed on the SGX-ST and the rules of such exchange shall so require and such requirement shall not have been waived by the SGX-ST, to such exchange, a Certificate specifying such default and the circumstances relating thereto within five Business Days of its occurrence.

9.7     **Waiver of Certain Covenants**

The Issuer may omit in any particular instance to comply with any covenant or condition set forth in Section 9.3, if before the time for such compliance the Holders of at least a majority in principal amount of the Outstanding Securities shall, by Act of such Holders, either waive such compliance in such instance or generally waive compliance with such covenant or condition, but no such waiver shall extend to or affect such covenant or condition except to the extent so expressly waived, and, until such waiver shall become effective, the obligations of the Issuer and the duties of the Trustee in respect of any such covenant or condition shall remain in full force and effect.

The Issuer will not, directly or indirectly, pay or cause to be paid any consideration, whether by way of interest, fee or otherwise, to any Holder for or as an inducement to any consent, waiver or amendment of any of the terms or provisions hereof or of the Securities unless such consideration is offered to be paid or agreed to be paid to all Holders that consent, waive or agree to amend in the time frame set forth in the solicitation documents relating to such consent, waiver or agreement.

(HK) 09974/048/INDENTURE/2012.Olympic.Indenture.doc

## SIGNATORY

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed all as of the day and year first above written.

**FOR AND ON BEHALF OF THE GOVERNMENT OF THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA**

By: _____

Name:   Ajith Nivard Cabraal

Title:    Governor, Central Bank of Sri Lanka

**HSBC BANK USA, NATIONAL ASSOCIATION**

By: _____

Name:

Title:

[Indenture]

HSBC BANK USA, NATIONAL ASSOCIATION

By: _____

Name:   Ignazio Tamburello

Title:   Vice President

## SCHEDULE 1

## FORM OF REGULATION S CERTIFICATE

(For transfers pursuant to Section 3.4(b)(i) and (iii) of this Indenture)


HSBC Bank USA, National Association
Corporate Trust and Loan Agency
452 Fifth Avenue
New York, New York 10018-2706


Attn:    Corporate Trust Department

Re:    5.875% Bonds due 2022 (the "**Securities**")

Reference is made to the Indenture, dated July 25, 2012 (the "**Indenture**"), between the Democratic Socialist Republic of Sri Lanka (the "**Issuer**") and HSBC Bank USA, National Association, as Trustee. Terms used herein and defined in the Indenture or in Regulation S or Rule 144 under the U.S. Securities Act of 1933, as amended (the "**Securities Act**") are used herein as so defined.

This certificate relates to US$786,356,000 principal amount of Securities, which are evidenced by the following certificate(s) (the "**Specified Securities**"):

| | |
|---|---|
| COMMON CODE No(s). | 080475284 |
| ISIN No(s). | USY2029SAH77 |
| CUSIP No(s). | Y2029S AH7 |
| CERTIFICATE No(s). | S-1, S-2 |

The person in whose name this certificate is executed below (the "**Undersigned**") hereby certifies that either (i) it is the sole beneficial owner of the Specified Securities, (ii) it is acting on behalf of all the beneficial owners of the Specified Securities and is duly authorized by them to do so or (iii) it is the Holder of a Global Security and has received a certification to the effect set forth below. Such beneficial owner or owners are referred to herein collectively as the "**Owner**". If the Specified Securities are not represented by a Global Security, they are registered in the name of the Undersigned, as or on behalf of the Owner.

The Owner has requested that the Specified Securities be transferred to a person (the "**Transferee**") who will take delivery in the form of a Regulation S Security. In connection with such transfer, the Owner hereby certifies or has certified that, unless such transfer is being effected pursuant to an effective registration statement under the Securities Act, it is being effected in accordance with Rule 904 of Regulation S or Rule 144 under the Securities Act and with all applicable securities laws of the states of the United States and other jurisdictions. Accordingly, the Owner hereby further certifies or has certified as follows:

**(1)    Rule 904 Transfers**

If the transfer is being effected in accordance with Rule 904 of Regulation S:

(A)    the Owner is not a distributor of the Securities, an affiliate of the Issuer or any such distributor or a person acting on behalf of any of the foregoing;

(B)    the offer of the Specified Securities was not made to a person in the United States;

(C)    either:

(i)    at the time the buy order was originated, the Transferee was outside the United States or the Owner and any person acting on its behalf reasonably believed that the Transferee was outside the United States, or

(ii)    the transaction is being executed in, on or through the facilities of the Eurobond market, as regulated by the International Securities Market Association or another designated offshore securities market and neither the Owner nor any person acting on its behalf knows that the transaction has been prearranged with a buyer in the United States;

(D)    no directed selling efforts have been made in the United States by or on behalf of the Owner or any affiliate thereof; and

(E)    the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act.

**(2)    Rule 144 Transfers**

If the transfer is being effected pursuant to Rule 144, the Securities have been transferred in a transaction permitted by Rule 144 and the undersigned has delivered to the Trustee, the Paying Agent or the Security Registrar such additional evidence that the Issuer, the Trustee, the Paying Agent or the Security Registrar may require as to compliance with such available exemption.

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer and the Initial Purchasers.

Dated:                    ......................................
                         (Print the name of the Undersigned, as such term is defined in the second paragraph of this certificate.)

                         By:_____
                            Name:
                            Title:

                         (If the Undersigned is a corporation, partnership or fiduciary, the title of the person signing on behalf of the Undersigned must be stated.)

## SCHEDULE 2

## FORM OF RULE 144A CERTIFICATE

(For transfers pursuant to Section 3.4(b)(ii) and (iii) of this Indenture)

HSBC Bank USA, National Association
Corporate Trust and Loan Agency
452 Fifth Avenue
New York, New York 10018-2706

Attn:   Corporate Trust Department

Re:   5.875% Bonds due 2022 (the "**Securities**")

Reference is made to the Indenture, dated July 25, 2012 (the "**Indenture**"), between the Democratic Socialist Republic of Sri Lanka (the "**Issuer**") and HSBC Bank USA, National Association, as Trustee. Terms used herein and defined in the Indenture or in Regulation S or Rule 144 under the U.S. Securities Act of 1933, as amended (the "**Securities Act**") are used herein as so defined.

This certificate relates to US$213,644,000 principal amount of Securities, which are evidenced by the following certificate(s) (the "**Specified Securities**"):

|  |  |
|---|---|
| COMMON CODE No(s). | 080475349 |
| ISIN No(s). | US85227SAK24 |
| CUSIP No(s). | 85227S AK2 |
| CERTIFICATE No(s). | R-1 |

The person in whose name this certificate is executed below (the "**Undersigned**") hereby certifies that either (i) it is the sole beneficial owner of the Specified Securities, (ii) it is acting on behalf of all the beneficial owners of the Specified Securities and is duly authorized by them to do so or (iii) it is the Holder of a Global Security and has received a certification to the effect set forth below. Such beneficial owner or owners are referred to herein collectively as the "**Owner**". If the Specified Securities are not represented by a Global Security, they are registered in the name of the Undersigned, as or on behalf of the Owner.

The Owner has requested that the Specified Securities be transferred to a person (the "**Transferee**") who will take delivery in the form of a Rule 144A Security. In connection with such transfer, the Owner hereby certifies or has certified that, unless such transfer is being effected pursuant to an effective registration statement under the Securities Act, it is being effected in accordance with Rule 144A or Rule 144 under the Securities Act and all applicable securities laws of the states of the United States and other jurisdictions. Accordingly, the Owner hereby further certifies or has certified that:

**(1)     Rule 144A Transfers**

If the transfer is being effected in accordance with Rule 144A:

(A)     the Specified Securities are being transferred to a person that the Owner and any person acting on its behalf reasonably believe is a "qualified institutional buyer" within the meaning of Rule 144A, acquiring for its own account or for the account of a qualified institutional buyer; and

(B)     the Owner and any person acting on its behalf have taken reasonable steps to ensure that the Transferee is aware that the Owner may be relying on Rule 144A in connection with the transfer.

**(2)     Rule 144 Transfers**

If the transfer is being effected pursuant to Rule 144, the Securities have been transferred in a transaction permitted by Rule 144 and the undersigned has delivered to the Trustee, the Paying Agent or the Security Registrar such additional evidence that the Issuer, the Trustee, the Paying Agent or the Security Registrar may require as to compliance with such available exemption.

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer and the Initial Purchasers.

Dated:                      .......................................
                            (Print the name of the Undersigned, as such term is defined in the second
                            paragraph of this certificate.)


                            By:_____
                               Name:
                               Title:

                            (If the Undersigned is a corporation, partnership or fiduciary, the title of the
                            person signing on behalf of the Undersigned must be stated.)

**SCHEDULE 3**

**FORM OF UNRESTRICTED SECURITIES CERTIFICATE**

(For removal of Securities Act legends pursuant to § 3.4(c)(iv))

HSBC Bank USA, National Association
Corporate Trust and Loan Agency
452 Fifth Avenue
New York, New York 10018-2706

Attn:   Corporate Trust Department

Re:   5.875% Bonds due 2022 (the "**Securities**")

Reference is made to the Indenture, dated July 25, 2012 (the "**Indenture**"), between the Democratic Socialist Republic of Sri Lanka (the "**Issuer**") and HSBC Bank USA, National Association, as Trustee. Terms used herein and defined in the Indenture or in Regulation S or Rule 144 under the U.S. Securities Act of 1933, as amended (the "**Securities Act**") are used herein as so defined.

This certificate relates to US$[•] principal amount of Securities, which are evidenced by the following certificate(s) (the "**Specified Securities**"):

COMMON CODE No(s).   _____

ISIN No(s).   _____

CUSIP No(s).   _____

CERTIFICATE No(s).   _____

The person in whose name this certificate is executed below (the "**Undersigned**") hereby certifies that either (i) it is the sole beneficial owner of the Specified Securities, (ii) it is acting on behalf of all the beneficial owners of the Specified Securities and is duly authorized by them to do so or (iii) it is the Holder of a Global Security and has received a certification to the effect set forth below. Such beneficial owner or owners are referred to herein collectively as the "**Owner**". If the Specified Securities are not represented by a Global Security, they are registered in the name of the Undersigned, as or on behalf of the Owner.

The Owner has requested that the Specified Securities be exchanged for Securities bearing no Securities Act legend pursuant to Section 3.4(c) of the Indenture. In connection with such exchange, the Owner hereby certifies or has certified that the exchange is occurring after [•], and the Owner is not, and during the preceding three months has not been, an affiliate of the Issuer. The Owner also acknowledges or has acknowledged that any future transfers of the Specified Securities must comply with all applicable securities laws of the states of the United States and other jurisdictions.

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer and the Initial Purchasers.

Dated:                  ......................................
                              (Print the name of the Undersigned, as such term is defined in the second paragraph of this certificate.)

By:_____
     Name:
     Title:

(If the Undersigned is a corporation, partnership or fiduciary, the title of the person signing on behalf of the Undersigned must be stated.)