UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
HAMILTON RESERVE BANK LTD.,             :
                                        :
                      Plaintiff,        :    22cv5199 (DLC)
                                        :
             -v-                        :    OPINION AND
                                        :    ORDER
THE DEMOCRATIC SOCIALIST REPUBLIC OF    :
SRI LANKA,                              :
                                        :
                      Defendant.        :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff:
Javier Bleichmar
Evan Asher Kubota
Bleichmar Fonti & Auld LLP
7 Times Square
New York, NY 10036

Lee Scott Wolosky
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036

For defendant:
Robert G. Houck
John P. Alexander
Benjamin Armstrong Berringer
Clifford Chance US, LLP (NYC)
31 West 52nd Street
New York, NY 10019

DENISE COTE, District Judge:

     Hamilton Reserve Bank Ltd. ("Hamilton") is the beneficial

holder of bonds issued by The Democratic Socialist Republic of

Sri Lanka ("Sri Lanka").  Sri Lanka -- which is currently

experiencing an economic and humanitarian crisis -- defaulted on the bonds, and Hamilton has brought this breach of contract action to recover the principal and accrued interest owed.  Sri Lanka has moved to dismiss on the grounds that plaintiff lacks contractual standing.  For the following reasons, the motion to dismiss is denied.

## Background

The following facts are drawn from the amended complaint and documents upon which it relies.  In 2012, Sri Lanka (as issuer) entered into an indenture (the "Indenture") with HSBC Bank USA, National Association as trustee (the "Trustee").  The Indenture governs Sri Lanka's issuance of $1 billion[1] in aggregate principal amount of bonds (the "Bonds").  The Bonds and Indenture are governed by New York law.  Hamilton owns over $250 million in principal amount of the Bonds.  On April 12, 2022, Sri Lanka announced a moratorium on foreign debt repayments, including the Bonds, and since then has made no payments on the Bonds.  The Bonds matured on July 25, 2022. Hamilton alleges that, as a result of Sri Lanka's default, it is owed $250,190,000.00 in principal and $7,349,331.25 in accrued interest (before accounting for pre- and post-judgment interest).

---

[1] All monetary amounts are denoted in U.S. Dollars.

Cede & Company ("Cede"), nominee of the Depository Trust Company ("DTC"), is the registered holder of the Bonds. Hamilton concedes that it is a beneficial owner -- rather than the registered holder -- of the Bonds.  In a letter dated September 23, 2022, Cede authorized plaintiff "to take any and all actions and exercise any and all rights and remedies that Cede & Co. as the holder of record" is "entitled to take" (the "Cede Authorization").

The Indenture contains several provisions relevant to this dispute.  Section 1.12 -- the "Negating Clause" -- expresses a limitation on the powers granted by the Indenture.  It provides

> Nothing in this Indenture or in the Securities, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder and the Holders of Securities, any benefit or any legal or equitable right, remedy or claim under this Indenture.

(emphasis added).  Section 3.8 provides that Sri Lanka may treat Cede as the Bonds' owner for all purposes and shall not be "affected by notice to the contrary."  In addition, § 5.8 addresses the right of the holder of the Bonds to institute suit to obtain payment.  It provides:

> Notwithstanding any other provision in this Indenture, the Holder of any Security shall have the right, which is absolute and unconditional, to receive payment of [principal and interest] on the respective Stated Maturities . . . and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Holder.

3

(emphasis added).

Hamilton initiated this action on June 21, 2022.  On September 21, Sri Lanka filed a motion to dismiss the complaint. On September 22, the Court gave Hamilton an opportunity to amend the complaint and warned that another opportunity to amend was unlikely.  On September 23, Hamilton received the Cede Authorization.  Plaintiff filed its amended complaint on October 13, alleging one count of breach of contract based on non-payment of the Bonds at maturity.  Sri Lanka renewed its motion to dismiss on October 4.  The motion became fully submitted on December 16.

## Discussion

To survive a motion to dismiss for failure to state a claim, the complaint "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Charles v. Orange Cnty., 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "In determining if a claim is sufficiently plausible to withstand dismissal," a

court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted).  Additionally, a court may "consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice." Lively v. WAFRA Inv. Advisory Group, Inc., 6 F.4th 293, 305 (2d Cir. 2021) (citation omitted).

The crux of this dispute is whether the Cede Authorization confers upon Hamilton standing to sue given the absence of a contractual provision expressly allowing such authorization and the presence of the Negating Clause.[2]  Neither the Second Circuit nor the New York Court of Appeals has directly addressed this issue.  Nonetheless, the Circuit's decision in Applestein v. Province of Buenos Aires, 415 F.3d 242 (2d Cir. 2005), and its progeny establish Hamilton's standing to sue.

In Applestein, the defendant argued that the indenture at issue reserved the right to sue to the registered holder only, and that the plaintiff, who was a beneficial owner but not the registered holder: (1) did not have standing to sue and (2)

---

[2] Plaintiff also argues that it has a right to sue under the Bonds.  Because the Court finds that the Cede Authorization confers contractual standing for plaintiff to sue, it is unnecessary to address this question.

received ineffective permission to sue from the registered holder because it was obtained after the action was initiated. Id. at 245.  The Applestein contract expressly provided that the registered holder of the notes could "grant proxies or otherwise authorize its participants (or persons holding beneficial interests in the Global Registered Notes through such participants) to exercise any rights of a holder or take any other actions which a holder is entitled to take under the Indenture or the Notes."  Id. at 244-45.  The Second Circuit held that the plaintiff had standing based on its receipt of authorization to sue from the registered holder.  Id. at 245.

Relying on New York's law that "contracts are freely assignable absent language which expressly prohibits assignment," Diverse Partners, LP v. AgriBank, FCB, No. 16CV9526 (VEC), 2017 WL 4119649, at *4 (S.D.N.Y. Sept. 14, 2017) (citation omitted), courts in this District have consistently extended Applestein to contracts that do not include an authorization provision and to contracts that include a negating clause.  See, e.g., id. (contract had no authorization provision); see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co., No. 14CV4394 (AJN), 2016 WL 439020, at *3 (S.D.N.Y. Feb. 3, 2016) (contract contained negating clause). Indeed, courts have recognized that the plaintiff had standing

in circumstances just as difficult as those present in this
case.  For instance, the negating clause in Phoenix Light SF
Ltd. v. Deutsche Bank Nat'l Tr. Co., 172 F. Supp. 3d 700
(S.D.N.Y. 2016), stated

> Nothing in this Agreement or in the Certificates,
> expressed or implied, shall give to any Person, other
> than the Certificateholders and the parties hereto and
> their successors hereunder, any benefit or any legal
> or equitable right, remedy or claim under this
> Agreement.

Id. at 711.  The court held that this language did not bar
plaintiff's suit where they had received authorization to sue
from Cede.  Id. at 712.  This language is nearly identical to
the Negating Clause at issue here.  See also Royal Park Invs.
SA/NV v. HSBC Bank USA, Nat. Ass'n, 109 F. Supp. 3d 587, 607–08
(S.D.N.Y. 2015).

Sri Lanka argues that the Cede Authorization is defective
on its face.  It is not.  The language of the authorization
closely tracks Cede authorizations regularly accepted in this
District.  See, e.g., Royal Park, 2016 WL 439020 at *2 ("CEDE &
Co. . . . hereby authorizes . . . [Plaintiff] to take any and
all actions and exercise any and all rights . . . that CEDE &
Co. . . . is entitled to take.").  As such, Sri Lanka's
arguments fail.

  
## Conclusion

The defendant's October 4, 2022 motion to dismiss is denied.[3]


Dated:      New York, New York
            March 24, 2023


                                        _____
                                              DENISE COTE
                                        United States District Judge


---

[3] This Opinion does not address the serious policy concerns raised by the filing of this litigation while the International Monetary Fund ("IMF") is actively working with Sri Lanka to resolve its financial crisis.  Indeed, as recently as March 20, 2023, the IMF approved a $3 billion loan to help Sri Lanka through its financial crisis.  This ruling is confined solely to the legal issue presented and should not be construed either as an endorsement of litigation filed by beneficial holders of sovereign debt while the IMF addresses a grave crisis over that debt or an indication that such plaintiffs should be given priority in recovery during any debt restructuring negotiations that occur.