**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAMILTON RESERVE BANK LTD.,<br><br>                    Plaintiff,<br><br>         - v. -<br><br>THE DEMOCRATIC SOCIALIST REPUBLIC OF<br>SRI LANKA,<br><br>                    Defendant. | No. 1:22-cv-5199 (DLC) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ................................................................................................... 1

    A.   Plaintiff Invests in the Bonds ................................................................. 1

    B.   Sri Lanka's Breach ................................................................................. 2

    C.   Plaintiff Obtains Cede's Express Authorization to Sue ............................ 3

ARGUMENT ....................................................................................................... 3

I.    SRI LANKA IS NOT ENTITLED TO SOVEREIGN IMMUNITY ................................. 3

    A.   Sri Lanka Has Expressly Waived Sovereign Immunity ........................... 3

    B.   The FSIA's Commercial Activity Exception Defeats Sovereign Immunity ... 5

II.   UNDISPUTED EVIDENCE SHOWS THAT SRI LANKA BREACHED ITS
OBLIGATIONS UNDER THE BONDS ..................................................................... 7

III.  PLAINTIFF IS ENTITLED TO DAMAGES ......................................................... 10

    A.   Plaintiff Is Entitled to Principal and Overdue Interest on the Bonds ......... 10

    B.   Plaintiff Is Entitled to 9% Pre-Judgment Interest on All Overdue Amounts ..... 10

    C.   Plaintiff Is Entitled to Post-Judgment Interest ...................................... 11

CONCLUSION.................................................................................................... 12

## **TABLE OF AUTHORITIES**

### **CASES**

*Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*,
  415 F.3d 242 (2d Cir. 2005) ..................................................................... 8

*Arch Ins. Co. v. Precision Stone, Inc.*,
  584 F.3d 33 (2d Cir. 2009) ....................................................................... 9

*Cap. Ventures Int'l v. Republic of Argentina*,
  552 F.3d 289 (2d Cir. 2009) ................................................................... 10

*Carter v. HealthPort Techs.*, LLC,
  822 F. 3d 47 (2d Cir. 2016) ..................................................................... 8

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
  492 F. Supp. 3d 222 (S.D.N.Y. 2020) ........................................... 5, 8, 9, 10

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012) .................................................................. 4, 5

*KLS Diversified Master Fund, L.P. v. McDevitt*,
  532 F. Supp. 3d 126 (S.D.N.Y. 2021) ....................................................... 11

*KLS Diversified Master Fund, L.P. v. McDevitt*,
  No. 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022)................................ 11

*Lovati v. Petroleos de Venezuela, S.A.*,
  No. 19-CV-4799 (ALC), 2021 WL 5908953 (S.D.N.Y. Dec. 14, 2021) ................. 8

*Mazzini v. Republic of Argentina*,
  No. 03-cv-8120, 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005)................................ 8

*Mun. Cap. Appreciation Partners, I, L.P. v. Page*,
  181 F. Supp. 2d 379 (S.D.N.Y. 2002) ....................................................... 9

*NML Cap. v. Republic of Argentina*,
  17 N.Y.3d 250 (2011)............................................................................. 10

*Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*,
  109 F.3d 850 (2d Cir. 1997) ..................................................................... 9

*Republic of Argentina v. NML Capital, Ltd.*,
  573 U.S. 134 (2014).................................................................................. 4

*Republic of Argentina v. Weltover*,
  504 U.S. 607 (1992)................................................................................ 6, 7

*Shapiro v. Republic of Bolivia,*
   930 F.2d 1013 (2d Cir. 1991) ........................................................................ 5, 7

*Spodek v. Park Prop. Dev. Assocs.,*
   96 N.Y.2d 577 (2001) ...................................................................................... 10

*Turkmani v. Republic of Bolivia,*
   193 F. Supp. 2d 165 (D.D.C. 2002) ................................................................. 7

*United States v. Bankasi,*
   16 F.4th 336 (2d Cir. 2021) .............................................................................. 6

## STATUTES

28 U.S.C. § 1603 .................................................................................................... 6

28 U.S.C. § 1605 ........................................................................................... 3, 5, 6, 7

28 U.S.C. § 1961 .................................................................................................. 11

New York C.P.L.R. § 5001 .................................................................................... 10

New York C.P.L.R. § 5004 ............................................................................... 10, 11

## RULES

Fed. R. Civ. P. 56 ................................................................................................... 3

Plaintiff Hamilton Reserve Bank Ltd., by and through its undersigned counsel, moves for summary judgment in this action.[1]

## PRELIMINARY STATEMENT

This is a simple breach of contract action:  Plaintiff is the current beneficial owner of $242,990,000 in Bonds issued by Defendant Sri Lanka.  Principal and accrued interest on the Bonds were due on July 25, 2022, when the Bonds matured.  The undisputed facts warrant judgment for Plaintiff as a matter of law:  There is no dispute that Sri Lanka failed to pay the Bonds by their July 25, 2022 maturity, when the Bonds were due and payable by their terms.  Sri Lanka has expressly waived sovereign immunity and has no defenses to liability.

Plaintiff is thus entitled to judgment for (1) $250,127,831.25 in overdue principal and interest on Plaintiff's Bonds; (2) pre-judgment interest on those amounts from the Bonds' July 25, 2022 maturity through entry of judgment; and (3) post-judgment interest thereafter.

## BACKGROUND

### A.    Plaintiff Invests in the Bonds

The undisputed facts are as follows:  In 2012, Sri Lanka issued $1 billion in Bonds due July 25, 2022.  (Rule 56.1 Statement ¶3.)  The Bonds are governed by New York law and enforceable in this Court.  (*Id.* ¶¶20, 29-40.)

The Bonds provide for interest payments of 5.875% per annum, paid semi-annually on January 25 and July 25 of each year, from January 25, 2013 through July 25, 2022.  (*Id.* ¶14.)  The Bonds further provide for full repayment of principal and accrued interest on July 25, 2022, the "Stated Maturity."  (*Id.* ¶15.)

---

[1] Capitalized terms not defined herein have the meanings specified in the Amended Complaint (ECF 23).  Citations to "Ex." are to the exhibits to the Declaration of Evan A. Kubota in Support of Plaintiff's Motion for Summary Judgment.  Emphasis is added, and internal citations and quotation marks are omitted, unless otherwise stated.

Plaintiff is a long-term investor in Sri Lanka. (Kenyatta Decl. ¶6.) Plaintiff began to purchase the Bonds in August 2021 and is the current beneficial owner of $242,990,000 in Bonds (*id.* ¶¶3, 6; Rule 56.1 Statement ¶4).

Sri Lanka has long known that Plaintiff is a significant bondholder. Indeed, at the invitation of the Central Bank of Sri Lanka ("CBSL"), representatives of Plaintiff visited Sri Lanka in January 2022 for meetings with CBSL and other senior government officials. (Kenyatta Decl. ¶7.)

On February 9, 2022, the CBSL issued an official press release titled "Reiteration of Sri Lanka's commitment to service forthcoming debt obligations," which stated that "the Government and the CBSL have already taken necessary measures to secure . . . funding arrangements to meet the upcoming debt obligations, including the US dollars 1 billion ISB maturing in July 2022" (*i.e.*, the Bonds). (Rule 56.1 Statement ¶21.)

**B.    Sri Lanka's Breach**

There is no dispute that Sri Lanka has defaulted on the Bonds by failing to pay the principal and accrued interest due on July 25, 2022, the Bonds' Stated Maturity.

On April 12, 2022—just two months after claiming it had "already taken necessary measures to secure . . . funding arrangements" to repay the Bonds—Sri Lanka issued an "Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt" stating that Sri Lanka would "suspend normal debt servicing," including on the Bonds. (Rule 56.1 Statement ¶22.)

On July 25, 2022, the Bonds matured, yet Sri Lanka failed to repay the entire principal amount and accrued interest. (*Id.* ¶¶23-25.)

As a result, under the Bonds' terms, Sri Lanka owes Plaintiff $242,990,000 in principal and US$7,137,831.25 in accrued interest (*id.* ¶26), and pre-judgment interest on these amounts, which continues to accrue.

C.    **Plaintiff Obtains Cede's Express Authorization to Sue**

On September 23, 2022, Plaintiff obtained Cede's written authorization for Plaintiff to "take any and all actions and exercise any and all rights and remedies that Cede & Co. as the holder of record" is entitled to take.  (Rule 56.1 Statement ¶28.)

<u>**ARGUMENT**</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Plaintiff is entitled to summary judgment:  it is undisputed (and there can be no genuine dispute) that Sri Lanka has expressly waived its sovereign immunity, that Sri Lanka has breached its obligations under the Bonds, and that Sri Lanka has no defenses to liability.

I.    **SRI LANKA IS NOT ENTITLED TO SOVEREIGN IMMUNITY**

Sri Lanka has expressly waived sovereign immunity, and in all events is not entitled to sovereign immunity under the commercial activity exception of the Foreign Sovereign Immunities Act (the "FSIA").

A.    **Sri Lanka Has Expressly Waived Sovereign Immunity**

Under Section 1605 of the FSIA, a "foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1).  Here, Sri Lanka "irrevocably agree[d] not to claim" and "irrevocably waive[d]" sovereign immunity for cases brought in this Court related to the Bonds:

> To the extent that the Issuer or any of its revenues, assets or properties are entitled, in any jurisdiction in which any **Specified Court** is located, in which any **Related Proceeding** may at any time be brought against it or any of its revenues, assets or properties, . . . **to any immunity from suit, from the jurisdiction of any such court, . . . and to the extent that in any such jurisdiction there shall be attributed such an immunity, the Issuer hereby**

> **irrevocably agrees not to claim and hereby irrevocably waives
> such immunity to the fullest extent permitted by the laws of such
> jurisdiction** (and hereby consents generally for the purposes of the
> U.S. Foreign Sovereign Immunities Act of 1976, as amended, to the
> giving of any relief or the issue of any process in connection with
> any Related Proceeding or Related Judgment).

(Ex. C, Indenture Section 1.17(d); Rule 56.1 Statement ¶29.)  Plaintiff's action on the Bonds is a

Related Proceeding, and this Court is a Specified Court.  (Rule 56.1 Statement ¶¶31-32.)[2]

Thus, because Sri Lanka has "irrevocably agree[d] not to claim" and "irrevocably

waive[d]" sovereign immunity in this action, the FSIA poses no barrier to this Court's jurisdiction.

*See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 209 & 203 n.1 (2d Cir. 2012) (Argentina

waived sovereign immunity using similar language in indenture), *aff'd sub nom. Republic of

Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014).

Sri Lanka's express waiver of sovereign immunity is dispositive.  While Sri Lanka's

second motion to dismiss argued that the waiver only applies to actions brought by Cede itself

(ECF 27 at 18 of 27 n.12), this argument fails because Cede has "authorize[d]" Plaintiff "to take

any and all actions and exercise any and all rights and remedies that Cede & Co. as the holder of

record of Subject Notes on July 15, 2022 is entitled to take."  (ECF 23-1.)  In other words, Plaintiff

steps into Cede's shoes—including with respect to Sri Lanka's sovereign immunity waiver.  The

Court held that "Sri Lanka's arguments fail" because Cede's authorization "closely tracks Cede

---

[2] Indenture Section 1.17(b) provides:  "The Issuer submits to the non-exclusive jurisdiction of any
State or Federal Court in the Borough of Manhattan, the City of New York and the courts of the
Democratic Socialist Republic of Sri Lanka (the "Specified Courts") in any action arising out of
or based on the Securities brought by any Holder of a Bond (a "Related Proceeding")."  (Ex. C,
Section 1.17(b).)  In the same provision, Sri Lanka "agree[d] that a final nonappealable judgment
obtained in any such Related Proceeding (a "Related Judgment") shall be conclusive and binding
upon it . . . ."  (*Id.*)

authorizations regularly accepted in this District" and establishes "Hamilton's standing to sue." (ECF 33 at 5, 7.)  As a result, Sri Lanka's express waiver of sovereign immunity applies.

Indeed, it is well established in this District and Circuit that beneficial owners like Plaintiff, with Cede's authorization, are fully entitled to rely on debtors' sovereign immunity waivers and bring suit.  Like Sri Lanka, debtors like Venezuela and Argentina waived sovereign immunity for cases brought by Cede, and beneficial owners (with Cede's authorization) properly invoked those waivers.[3]  Sri Lanka has cited no case where any court held that sovereign immunity barred an action by a beneficial owner who obtained the registered holder's written authorization, as here.

To the extent Sri Lanka advances any new or additional arguments for sovereign immunity, Plaintiff reserves all rights.

### B.    The FSIA's Commercial Activity Exception Defeats Sovereign Immunity

Independently of Sri Lanka's waiver, the FSIA's commercial activity exception defeats sovereign immunity because "the particular conduct giving rise to the claim is a part of commercial activity having substantial contact with the United States."  *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1018 (2d Cir. 1991).  This exception applies where:

> [T]he action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

---

[3] *See, e.g.*, *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 229 (S.D.N.Y. 2020) ("In the fiscal agency agreements governing the bonds at issue in these actions, Defendant expressly waived its sovereign immunity. *See* 1998 Fiscal Agency Agreement § 14; 2001 Fiscal Agency Agreement § 14. Accordingly, the court has jurisdiction to consider Plaintiffs' claims."); *EM Ltd.*, 695 F.3d at 209 & 203 n.1 (Argentina waived sovereign immunity using similar language in indenture).

28 U.S.C. § 1605(a)(2).  Thus, "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA."  *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992).[4]

Here, Sri Lanka's commercial actions "in the manner of a private player"—including issuing the Bonds denominated in U.S. dollars and payable in New York—readily meet this standard and trigger the commercial activity exception for two independent reasons.

<u>First</u>, this action is based upon a "commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(2).  Like any private corporate bond issuer, Sri Lanka:

- Issued bonds denominated in U.S. dollars, governed by New York law, and payable in New York (Rule 56.1 Statement ¶¶20, 33-34);

- Marketed the Bonds in the U.S. (*id.* ¶35);

- Appointed a trustee required to be located in New York (*id.* ¶36);

- Irrevocably appointed an authorized agent in New York (*id.* ¶37); and

- Consented to service and jurisdiction in New York (*id.* ¶¶38-40).

This is classic commercial activity under the FSIA.  In *Weltover*, the Supreme Court held that "by issuing negotiable debt instruments denominated in United States dollars and payable in New York and by appointing a financial agent in that city," a defendant "purposefully avail[s] itself of the privilege of conducting activities within the United States."  *Weltover*, 504 U.S. at 619–20.  Indeed, "it is self-evident that issuing a public debt is a commercial activity within the

---

[4] Under the FSIA, "the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."  28 U.S.C. § 1603(d).  The Second Circuit has held that "*purpose* is the reason why the foreign state engages in the activity and *nature* is the outward form of the conduct that the foreign state performs or agrees to perform.  Put another way, the issue is whether the particular actions that the foreign state performs . . . are the *type* of actions by which a private party engages in trade and traffic or commerce."  *United States v. Bankasi*, 16 F.4th 336, 349 (2d Cir. 2021) (emphases in original; internal quotation marks omitted).

meaning of Section 1605(a)(2)." *Shapiro v. Republic o" Bolivia*, 930 F.2d 1013, 1018 (2d Cir. 1991); *see also Turkmani v. Republic of Bolivia*, 193 F. Supp. 2d 165, 176 (D.D.C. 2002) ("In light of the fact that the defendant issued bonds in New York City, among other factors that identically correspond to those named by the Supreme Court in *Weltover*, the defendant's activities constitute commercial activity carried on in the United States by a foreign state . . . .").

Second, the commercial activity exception also applies because this action "is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). In cases involving a foreign state's default on its commercial obligations, an act has a direct effect in the United States if the defaulting party is contractually obligated to pay in this country. For example, in *Weltover*, the Supreme Court held that where New York was the place for the payment of principal and interest on Argentine bonds, "New York was thus the place of performance for Argentina's ultimate contractual obligations, [and] the rescheduling of those obligations necessarily had a 'direct effect' in the United States." 504 U.S. at 619.

Here, Sri Lanka is contractually obligated to pay in New York, the place of performance for its ultimate contractual obligation, and failed to do so. (Rule 56.1 Statement ¶¶25, 34.) As in *Weltover*, this establishes the commercial activity exception.

## II.    UNDISPUTED EVIDENCE SHOWS THAT SRI LANKA BREACHED ITS OBLIGATIONS UNDER THE BONDS

Plaintiff is entitled to judgment because (1) Plaintiff has contractual standing to bring its claim against Sri Lanka, as this Court has held; (2) Sri Lanka has breached its payment obligation under the Bonds; and (3) Sri Lanka has no defenses. Each issue is addressed in turn.

Plaintiff Has Contractual Standing:    On March 24, 2023, the Court denied Sri Lanka's motion to dismiss, holding that the written authorization from Cede & Co., the nominee of the

Bonds' registered holder (Ex. P), establishes Plaintiff's standing to sue with respect to the Bonds. ECF 33 (Order); *see also Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242 (2d Cir. 2005) (authorization from Cede established beneficial owner's standing).[5]

Plaintiff is the beneficial owner of Bonds with $242,990,000 in principal amount, which are held in Plaintiff's own name and for its own account.  (Rule 56.1 Statement ¶¶4-10; Kenyatta Decl. ¶¶3-5, 11.)  No person or entity other than Hamilton is a beneficial owner or has a beneficial interest in Hamilton's Bonds.  (Rule 56.1 Statement ¶4; Kenyatta Decl. ¶11.)

Plaintiff's documentation of its ownership—including recent account statements, a letter from Morgan Stanley confirming that Plaintiff "currently maintains" the Morgan Stanley brokerage account that "owns" the Bonds, the declaration from Plaintiff's CFO, Antonio Kenyatta, and other proof—is consistent with evidence that other Courts in this District have regularly accepted in granting summary judgment in sovereign debt litigation.

For example, in *Casa Express*, 492 F. Supp. 3d at 230, Judge Torres granted summary judgment for the plaintiffs—Florida and Cayman Islands entities—based on account statements and declarations that established beneficial ownership of the bonds.  *See* 1:19-cv-03123 (S.D.N.Y.), ECF 40 and 41 (declarations); ECF 42-10 and 42-11 (account statements).  Likewise, in *Mazzini v. Republic of Argentina*, No. 03-cv-8120, 2005 WL 743090, at *3-4 (S.D.N.Y. Mar. 31, 2005), Judge Griesa accepted a "properly executed declaration and an account statement" to "prove [plaintiffs'] ownership of the bonds" at summary judgment.

---

[5] For the avoidance of doubt, Plaintiff has Article III standing as the Bonds' beneficial owner. Plaintiff alleges a "monetary loss, directly traceable to Defendant's alleged breach," which is "redressable by this Court."  *See Lovati v. Petroleos de Venezuela, S.A.*, No. 19-CV-4799 (ALC), 2021 WL 5908953, at *1-2 (S.D.N.Y. Dec. 14, 2021) (Carter, J.) ("As beneficial owners, the plaintiffs satisfied Article III standing . . . .") (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47 at 55 (2d Cir. 2016)).

<u>Sri Lanka's Breach Is Undisputed</u>:  "In New York, a bond is a contract . . . ."  *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 n.4 (2d Cir. 2009).  "Under New York law, to establish a breach of contract a plaintiff must plead and prove the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach."  *Mun. Cap. Appreciation Partners, I, L.P. v. Page*, 181 F. Supp. 2d 379, 390 (S.D.N.Y. 2002).

It is undisputed that (i) the Bonds are a contract; (ii) Sri Lanka has breached its contractual obligations by failing to pay the Bonds when due; and (iii) Plaintiff has suffered damages as a result of the breach.  Specifically:

- Under the Bonds' terms, the Bonds accrue interest at 5.875% per year and required Sri Lanka to make interest payments on January 25 and July 25 of each year from 2013 to 2022.  (Rule 56.1 Statement ¶14.)

- The Bonds matured on July 25, 2022, at which time the entire principal amount became due and payable.  (*Id.* ¶¶15, 23-24.)

- Sri Lanka failed to pay the $242,990,000 in principal and $7,137,831.25 in accrued interest due on July 25, 2022.  (*Id.* ¶¶25-26.)

Sri Lanka's "failure to make payments required by the [B]onds' terms constitutes a breach of contract."  *Casa Express*, 492 F. Supp. 3d at 230.  As a result of Sri Lanka's undisputed breach, Plaintiff is entitled to damages in the amounts stated below.

<u>Sri Lanka Has No Defenses</u>:  Finally, Sri Lanka has no defenses to its undisputed breach.  Its purported "affirmative defenses" of sovereign immunity and "standing" are refuted above, and its assertion of "international comity" fails.[6]  Plaintiff is entitled to a judgment under the New York law that Sri Lanka chose to govern the Bonds.  (Rule 56.1 Statement ¶20.)

---

[6] *See, e.g.*, *Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru*, 109 F.3d 850, 855 (2d Cir. 1997) (recognizing "clear United States policy" allowing creditors to recover on foreign debts); *Casa Express*, 492 F. Supp. 3d at 227–28 (rejecting stay and granting summary judgment for plaintiff beneficial owners despite Venezuela's invocation of "international comity").  To the extent Sri Lanka moves for a stay, Plaintiff will oppose in due course (*see* ECF 40).

### III.    PLAINTIFF IS ENTITLED TO DAMAGES

As a result of Sri Lanka's breaches, Plaintiff is entitled to the missed principal payment and missed interest payment on the Bonds; pre-judgment interest; and post-judgment interest.

#### A.    Plaintiff Is Entitled to Principal and Overdue Interest on the Bonds

Plaintiff is entitled to the $242,990,000 in principal and $7,137,831.25 in accrued interest that came due on July 25, 2022.  (Rule 56.1 Statement ¶¶24-26.)

#### B.    Plaintiff Is Entitled to 9% Pre-Judgment Interest on All Overdue Amounts

Under New York law, which governs the Bonds, pre-judgment interest on Sri Lanka's missed payments of principal and interest accrues at the statutory rate of 9% (CPLR 5004).  The total amount of pre-judgment interest is $20,722,919.50 as of today (June 26, 2023), and pre-judgment interest continues to accrue at $61,675.36 per day.

Pre-Judgment Interest Is Owed from July 25, 2022 Through Entry of Judgment:  "Under New York C.P.L.R. § 5001, a creditor is entitled to pre-judgment interest on all sums due, as of the date they became due."  *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 296 (2d Cir. 2009).  CPLR 5001(a) "permits a creditor to recover prejudgment interest on unpaid interest and principal payments awarded from the date each payment became due under the terms of the promissory note to the date liability is established."  *Spodek v. Park Prop. Dev. Assocs.*, 96 N.Y.2d 577, 581 (2001).  Here, Sri Lanka owed the unpaid principal and interest by July 25, 2022, the Bonds' Stated Maturity.  Pre-judgment interest began to accrue on July 25, 2022, and will continue to accrue through entry of judgment.

The Pre-Judgment Interest Rate Is 9%:  As the New York Court of Appeals has held, where the contract does not specify "the interest rate that governs after principal is due or in the event of breach, New York's statutory rate will be applied as the default rate.  CPLR 5004 sets forth a statutory rate of 9% per annum."  *NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250 (2011).

CPLR 5004's default 9% rate applies because nothing in the Bond or Indenture purports to apply the Bonds' 5.875% interest rate after the Stated Maturity (July 25, 2022).  Instead, the Bonds only "bear interest at the rate of 5.875% per annum . . . ***to and excluding, the Stated Maturity***." (Ex. C, Indenture Section 3.1.)  Thus, the 5.875% interest rate only applied until July 24, 2022. Starting on July 25, 2022—the Stated Maturity and the date of Sri Lanka's breach by non-payment—pre-judgment interest accrues at CPLR 5004's 9% rate.  *See KLS Diversified Master Fund, L.P. v. McDevitt*, 532 F. Supp. 3d 126, 138–39 (S.D.N.Y. 2021) (awarding 9% pre-judgment interest under CPLR 5004 where "[t]here [was] no language in the Note to the effect that [debtor] was obligated to pay the contractual rate of interest until the principal was paid"), *aff'd*, No. 21-1263, 2022 WL 2759055 (2d Cir. July 13, 2022).

Plaintiff therefore requests damages as follows:

- $242,990,000 in missed principal payments that were due on July 25, 2022.

- $7,137,831.25 in missed interest payments that were due on July 25, 2022.

- Pre-judgment interest on the $250,127,831.25 in missed principal and interest payments at the 9% statutory rate from July 25, 2022, when the payments were due, through the entry of judgment.  The total amount of pre-judgment interest is $20,722,919.50 as of June 26, 2023, and pre-judgment interest continues to accrue at $61,675.36 per day.

### C.    Plaintiff Is Entitled to Post-Judgment Interest

Finally, once the Court enters judgment against Sri Lanka, Plaintiff will be entitled to statutory post-judgment interest (governed by federal law) on the entire judgment amount.  Under 28 U.S.C. § 1961(a), post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."

## <u>CONCLUSION</u>

Plaintiff respectfully requests that the Court grant Plaintiff's motion for summary judgment and enter judgment against Sri Lanka in the amount of $250,127,831.25, along with pre-judgment interest at 9% from July 25, 2022 through entry of judgment, and post-judgment interest thereafter.

Dated: New York, New York
June 26, 2023

**BLEICHMAR FONTI & AULD LLP**

By: */s/ Javier Bleichmar*
    Javier Bleichmar
    Evan A. Kubota
    7 Times Square, 27th Floor
    New York, NY 10036
    Telephone: (212) 789-1340
    Facsimile: (212) 205-3960
    jbleichmar@bfalaw.com
    ekubota@bfalaw.com

**JENNER & BLOCK LLP**
Lee Wolosky
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
lwolosky@jenner.com

*Counsel for Plaintiff*