**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAMILTON RESERVE BANK LTD., | |
| Plaintiff, | |
| v. | No. 22 Civ. 5199 (DLC) |
| THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Robert G. Houck
John P. Alexander
Benjamin A. Berringer
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for Defendant The Democratic Socialist Republic of Sri Lanka*

Dated: July 17, 2023

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ........................................................................................................................3

      I.        The Indenture. ...................................................................................................3

      II.      The Bonds. ........................................................................................................4

      III.     The Humanitarian and Economic Crisis in Sri Lanka. ....................................4

      IV.    Sri Lanka's Interim Policy Regarding Foreign Debt Payments. .....................5

      V.      HRB and Its Claimed Acquisition of the Bonds. ............................................5

      VI.    HRB Demands Payment and Commences These Proceedings. .......................6

      VII.   The Amended Complaint and the Cede & Co. Letter. .....................................7

      VIII.  Sri Lanka's Motion to Dismiss the Amended Complaint. ...............................8

      IX.    Sri Lanka's Discovery Requests. .....................................................................8

      X.      HRB's Failure to Produce the Requested Documents. .....................................8

      XI.    Discovery Conference. ...................................................................................10

ARGUMENT ...........................................................................................................................10

      I.       Sri Lanka Has Not Waived Sovereign Immunity. .........................................11

               A.       Sri Lanka's Waiver of Sovereign Immunity Applies
                      Only to Suits by a Holder. ................................................................11

               B.       The Cede & Co. Letter Does Not Change the Scope
                      of Sri Lanka's Waiver. .....................................................................12

               C.       HRB Cites No Authority to the Contrary. .........................................13

      II.      HRB Is Not Entitled to Summary Judgment Because of Factual
             Questions Regarding Its Claimed Beneficial Ownership. ..............................14

               A.       HRB Must Establish That It Is the Beneficial Owner
                      of the Bonds. .....................................................................................14

               B.       The Record Does Not Establish HRB's Beneficial
                      Ownership. .........................................................................................16

          1.      There Is Good Cause to Doubt HRB's Beneficial Ownership. .......16

          2.      The Evidence Submitted by HRB Is Insufficient. .........................18

     C.     Additional Discovery Is Appropriate Under Fed. R. Civ. P. 56(d). .............................................................................................20

III.    Any Award of Prejudgment Interest Should Be at the Contract Rate. ...........................................................................................................23

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adams v. City of New York*,
No. 16 Civ. 3445, 2021 WL 1791182 (S.D.N.Y. May 5, 2021) ............................................... 19

*Am. Home Assur. Co. v. Zim Jamaica*,
418 F. Supp. 2d 537 (S.D.N.Y. 2006) .................................................................. 20, 21, 22

*Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*,
347 F.3d 436 (2d Cir. 2003) ...................................................................................... 17

*Ass'n of Car Wash Owners Inc. v. N.Y.C.*,
911 F.3d 74 (2d Cir. 2018) ....................................................................................... 11

*BMaddox Enterprises LLC v. Milad Oskouie, Osko M Ltd.*,
No. 17 Civ. 1889, 2021 WL 3675072 (S.D.N.Y. Aug. 18, 2021) ........................................... 19

*Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*,
No. 99 Civ. 9623, 2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007) .............................................. 19

*Cabiri v. Gov't of Republic of Ghana*,
165 F.3d 193 (2d Cir. 1999) ...................................................................................... 11

*Cap Ventures Int'l v. Republic of Argentina*,
552 F.3d 289 (2d Cir. 2009) ...................................................................................... 11

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
991 F.2d 1012 (2d Cir. 1993) .................................................................................... 13

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
492 F. Supp. 3d 222 (S.D.N.Y. 2020) .................................................................... 13, 20

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*,
444 F.3d 158 (2d Cir. 2006) ...................................................................................... 10

*Citibank, N.A. v. Liebowitz*,
110 A.D.2d 615 (2d Dep't 1985) ................................................................................ 23

*Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*,
234 F. Supp. 3d 462 (S.D.N.Y. 2017) ........................................................................ 14

*D'Amico v. N.Y.C.*,
132 F.3d 145 (2d Cir. 1998) ...................................................................................... 10

*Delaware v. New York*,
   507 U.S. 490 (1993) ...................................................................................................... 14

*Diverse Partners, LP v. AgriBank, FCB*,
   No. 16 Civ. 9526, 2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019) ...................................... 14, 15

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012) ............................................................................................. 13

*Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*,
   No. 05 Civ. 0620, 2006 WL 1120632 (E.D.N.Y. Apr. 26, 2006) ....................................... 22

*In re AXA Equitable Life Ins. Co. COI Litig.*,
   No. 16 Civ. 740, 2022 WL 3018104 (S.D.N.Y. July 29, 2022) ......................................... 15, 16

*In re Chowaiki & Co. Fine Art Ltd.*,
   593 B.R. 699 (Bankr. S.D.N.Y. 2018) ............................................................................... 19

*In re Dana Corp.*,
   574 F.3d 129 (2d Cir. 2009) ............................................................................................. 21

*In re Pali Holdings, Inc.*,
   491 B.R. 389 (Bankr. S.D.N.Y. 2013) ............................................................................... 24

*In re Realty Associates Securities Corp.*,
   163 F.2d 387 (2d Cir. 1947) ............................................................................................. 24

*Indemnified Cap. Invs., SA. v. R.J. O'Brien & Assocs., Inc.*,
   12 F.3d 1406 (7th Cir. 1993) ............................................................................................ 16

*India.Com, Inc. v. Dalal*,
   412 F.3d 315 (2d Cir. 2005) ............................................................................................. 14

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
   313 F.3d 70 (2d Cir. 2002) ............................................................................................... 19

*Kern v. Oesterreichische Elektrizitaetswirtschaft AG*,
   178 F. Supp. 2d 367 (S.D.N.Y. 2001) ............................................................................... 13

*Knox v. Cnty of Putnam*,
   No. 10 Civ. 1671, 2012 WL 4462011 (S.D.N.Y. Sept. 27, 2012) ..................................... 19

*Lovati v. Petroleos De Venezuela, S.A.*,
   No. 19 Civ. 4799, 2022 WL 1416646 (S.D.N.Y. May 5, 2022) ......................................... 15

*MacKay Shields LLC v. Sea Containers, Ltd.*,
    300 A.D.2d 165 (1st Dep't 2002) ............................................................ 14

*Mazzini v. The Republic of Argentina*,
    No. 03 Civ. 8120, 2005 WL 743090 (Mar. 31, 2005) .............................. 20

*Meloff v. N.Y. Life Ins. Co.*,
    51 F.3d 372 (2d Cir. 1995) ...................................................................... 22

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003) .................................................................... 20

*Morales v. New Valley Corp.*,
    999 F. Supp. 470 (S.D.N.Y. 1998) .......................................................... 19

*NML Cap. v. Republic of Argentina*,
    17 N.Y.3d 250 (2011) .............................................................................. 23

*Nyambal v. Int'l Monetary Fund*,
    772 F.3d 277 (D.C. Cir. 2014) ................................................................ 12

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ................................................................................. 11

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    No. 14 Civ. 4394, 2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017) ............... 15

*S & S Mach. Co. v. Masinexportimport*,
    706 F.2d 411 (2d Cir. 1983) .................................................................... 12

*Speedfit LLC v. Woodway USA, Inc.*,
    -- F. Supp. 3d --, No. 22 Civ. 4733, 2022 WL 17167985 (S.D.N.Y. Nov. 22, 2022) ............. 23

*Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*,
    No. 20 Civ. 5015, 2022 WL 621957 (S.D.N.Y. Mar. 3, 2022) ............... 18

*Vergari v. Kraisky*,
    120 A.D.2d 739 (2d Dep't 1986) ............................................................ 19

*Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004) .................................................................... 10

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008) .................................................................... 15

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
   296 F.3d 1154 (D.C. Cir. 2002) ................................................................................ 11, 13

Statutes

28 U.S.C. § 1605(a)(1) ................................................................................................... 11

28 U.S.C. § 1605(a)(2) ................................................................................................... 11

28 U.S.C. § 1610 ............................................................................................................. 11

N.Y. U.C.C. Law § 8-503(a) ......................................................................................... 14

N.Y. U.C.C. Law § 8-505 ............................................................................................. 14

Rules

Fed. R. Civ. P. 30(b)(6) ................................................................................................. 21

Fed. R. Civ. P. 34 .......................................................................................................... 22

Fed. R. Civ. P. 56(a) ..................................................................................................... 10

Fed. R. Civ. P. 56(d) ................................................................................... ii, 2, 5, 10, 20

Fed. R. Civ. P. 56(f) ................................................................................................. 20, 21

Fed. R. Evid. 803(6) ...................................................................................................... 18

Regulations

12 C.F.R. §§ 1.2-1.5 ...................................................................................................... 17

Other Authorities

72 NY. Jur. Investment Securities § 154 ...................................................................... 14

Defendant The Democratic Socialist Republic of Sri Lanka ("Sri Lanka") submits this Memorandum of Law in opposition to the Motion for Summary Judgment filed by Plaintiff Hamilton Reserve Bank Ltd. ("HRB").

## PRELIMINARY STATEMENT

HRB claims to own approximately $250 million in bonds (the "Bonds") issued by Sri Lanka.  HRB is not the Bonds' registered owner, or "Holder."  Instead, HRB claims to beneficially own them and, on that purported basis, has procured the Holder's authorization to sue.  However, if HRB is not the beneficial owner—*i.e.*, if it holds for some other person who has the real economic interest—then HRB lacks standing to sue.  As discussed below, there is very good reason to believe that, despite HRB's conclusory assertions, it is ***not*** a beneficial owner of the Bonds.

As a licensed bank in Saint Kitts and Nevis, HRB is subject to various requirements regarding its capital and investments for the protection of customers.  For instance, although a bank generally is free to purchase "investment grade" securities—*i.e.*, those with high credit ratings and low risk of default—this is not so for riskier investments.  For below-investment grade securities, a bank would have to (among other things) put aside large amounts of capital in reserve.[1]

Here, the Bonds have been rated well below investment grade since 2020.  Yet HRB claims that in August 2021—and in numerous purchases since then—it made a massive investment in the Bonds for its own account.  Under the applicable regulatory framework, HRB would have had to set aside approximately $30 million in capital reserves to make this investment.

HRB is not a hedge fund in the business of making risky investments.  Given HRB's

---

[1]    The Declaration of Avinash Persaud dated July 17, 2023 ("Persaud Decl.") describes these matters in detail; Sri Lanka also refers to the Declaration of Robert G. Houck dated July 17, 2023 ("Houck Decl.").

conservative approach and emphasis on the safety of customer deposits, it is highly unlikely that HRB purchased the Bonds for its own account, as opposed to holding for some other person.

HRB's conclusory assertions of beneficial ownership cannot be taken at face value.  For instance, HRB points to (redacted) documentation showing accounts with third-party brokers in which HRB holds interests in the Bonds.  But these documents do not address the critical question—*i.e.*, **how HRB holds the Bonds on its own books**.

The documents likely to reflect ***that*** information include HRB's audited financial statements, annual reports, board materials, and any agreements concerning the acquisition of the Bonds.  Sri Lanka requested these materials in discovery, but HRB refused to produce them.  For the reasons discussed above, those documents are likely to show that the situation is far more complicated than HRB lets on and, in fact, that some other person holds the real economic interest. In any event, without those documents, it is impossible to assess HRB's claim of ownership. Sri Lanka respectfully asks the Court to direct HRB to produce these documents (and sit for a deposition) under Rule 56(d) of the Federal Rules of Civil Procedure.

HRB's summary judgment motion overreaches in other areas as well.  *First*, HRB argues that Sri Lanka has waived sovereign immunity for this suit.  But Sri Lanka waived immunity only as to suits "brought by any Holder of a Bond," and this language must be narrowly construed. Since HRB is not a Holder, it is not covered by the waiver.  *Second*, HRB argues that it is entitled to prejudgment interest at the 9% statutory rate under New York law.  Not so—the contract specifically provides for the 5.875% rate to apply to interest on "overdue" principal and interest.

For the foregoing reasons, and those set forth below, HRB's motion for summary judgment should be denied or deferred pending additional discovery.

# BACKGROUND

## I.    The Indenture.

Sri Lanka, as issuer, and HSBC Bank USA, National Association, as trustee (the "Trustee"), entered into an Indenture as of July 25, 2012 (the "Indenture"). (*See* Am. Compl. Ex. B.)  The Indenture governs Sri Lanka's issuance of US$1,000,000,000 in aggregate principal amount of bonds, at the rate of 5.875% per annum, and with a "Stated Maturity" of July 25, 2022 (the "Bonds").  (*Id.* § 3.1.)  As relevant here, several provisions of the Indenture are summarized below:

***First***, the Indenture defines a "Holder" as the person "in whose name a Security is registered in the Security Register[.]"  (*Id.* § 1.1, at 3; *see also id.* § 1.5.)  The initial Holder is DTC.  (*See id.* §§ 1.1, at 2–3, 2.1, 3.4(d)(i); *see also* Am. Compl. ¶ 11.)  The Holder can transfer the Bonds to other persons, including beneficial owners, in certain circumstances. (Am. Compl. Ex. B §§ 3.4, 3.10.)  Absent a registered transfer, Sri Lanka may treat the person "in whose name such Security is registered" as the owner for payment "and for all other purposes whatsoever," and shall not be "affected by notice to the contrary."  (*Id.* § 3.8.)

***Second***, Sri Lanka provided a "limited and specific waiver" of sovereign immunity solely with respect to a "Related Proceeding," defined as "any action arising out of or based on the Securities ***brought by any Holder of a Bond***" (and to the extent described in the Indenture).  (*Id.* § 1.17(b), (d) (emphasis added).)  Consistent with this, the Indenture's "negating clause" makes clear that persons other than the "Holder" lack "any benefit or any legal or equitable right, remedy or claim under this Indenture."  (*Id.* § 1.12.)

***Third***, the Trustee has primary responsibility to collect payments.  In the ordinary course, Sri Lanka pays principal and interest to the Trustee, who then pays the Holder.  (*Id.* §§ 4.2, 9.1.) If Sri Lanka defaults on a payment, it must pay to the Trustee all overdue amounts and "interest

on any overdue principal (and premium, if any) and on any overdue interest, at the rate borne by the Securities . . . ."  (*Id.* § 5.3.)  If Sri Lanka "fails to pay such amounts," then the Trustee "may institute a judicial proceeding for the collection of the sums so due and unpaid . . . ."  (*Id.*)

**Fourth**, the Holders may not bring suit on their own except in certain circumstances.  (*Id.* § 5.7.)  However, Holders have the right to "receive payment" of principal and interest at maturity and "to institute suit for the enforcement of any such payment . . . ."  (*Id.* § 5.8.)

## II.    The Bonds.

The Bonds themselves incorporate the Indenture and its terms, explaining that they are "issued and to be issued" under the Indenture, and:

> to which Indenture and all indentures supplemental thereto reference is hereby made for a statement of the respective rights, limitations of rights, duties and immunities thereunder of the Issuer, the Trustee and the Holders of the Securities and of the terms upon which the Securities are, and are to be, authenticated and delivered.

(Kubota Exs. A, B.)  The face of the Bonds state that Sri Lanka "promises to pay to ***Cede & Co., or registered assigns*** . . . ."  (*Id.* (emphasis added).)  The Bonds also reiterate that, absent a registered transfer, Sri Lanka and the Trustee "may treat the Person in whose name this Security is registered as the owner hereof" and shall not "be affected by notice to the contrary."  (*Id.*)

## III.    The Humanitarian and Economic Crisis in Sri Lanka.

Sri Lanka's ongoing economic and humanitarian crisis is a matter of public record.  In March 2022, the IMF found that Sri Lanka's "public debt has become unsustainable, and gross reserves are critically low and insufficient to cover near-term debt service needs."  (Houck Ex. 22 at 1.)    Sri Lanka has since sought relief from the IMF and is currently working on a debt restructuring.  These matters are the subject of Sri Lanka's concurrently filed Motion to Stay Proceedings.

As Sri Lanka's economic condition deteriorated, so did its credit rating and that of the Bonds.  Since at least September 2020, the Bonds have been rated well below investment grade with all the major credit ratings agencies.  (Houck Ex. 20.)[2]

## IV.    Sri Lanka's Interim Policy Regarding Foreign Debt Payments.

On April 12, 2022, Sri Lanka announced an "Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt" (the "Interim Policy").  (Houck Ex. 23.)  The policy explained that, due to the economic crisis, Sri Lanka was adopting certain "emergency measures as temporary expedients," including to suspend debt servicing in the ordinary course.  (*Id*.)  There is no dispute that Sri Lanka has not made payment on the Bonds since issuance of the Interim Policy.

## V.    HRB and Its Claimed Acquisition of the Bonds.

HRB is a private company based in Saint Kitts and Nevis.  (First Kenyatta Decl. ¶ 2.)  HRB is wholly-owned by its parent, Fintech Holdings, Ltd. ("Fintech").  (Kubota Ex. E.)   HRB describes itself as a "fully regulated leading bank" and the "largest global bank in the entire region." (Houck Ex. 9.)   It is licensed as an "international bank" with the Nevis Financial Services Regulatory Commission ("FSRC").  (*Id.* Ex. 13.)  As such, HRB is subject to various regulatory requirements regarding its capital and investments, as described in more detail in the Persaud Declaration.[3]

HRB touts the safety of its customer deposits.  In response to an FAQ on its website ("What are the Bank's policies relating to customer deposit safety?"), HRB states:

---

[2]    For instance, S&P has rated the Bonds at CCC+ or lower since December 2020 (now at D); Moody's has rated them at Caa1 or lower since September 2020 (now with no rating); and Fitch has rated them at CCC or lower since November 2020 (now with no rating).  (Houck Ex. 20; *see also* Persaud Decl. ¶ 19).

[3]    Sri Lanka had not expected to offer expert evidence in this matter, and does so now only to help explain what the documents requested from HRB are likely to show, pursuant to Fed. R. Civ. P. 56(d).  In the circumstances, no prior disclosure was required or possible.

> The Bank was established on a simple business model: No cash, no checks,
> no loans, and no customer lending.  As a cash reserve bank, 100% of the
> Bank's customer deposits are held in cash or government bonds[.]

(*Id.* Ex. 10; *see also id.* Ex. 12.)  Consistent with this, HRB advertises that it is "subject to rigorous regulatory oversight."  (*Id.* Ex. 11.)

HRB asserts that it began to purchase the Bonds on the secondary market in August 2021. (Kenyatta Decl. ¶ 6.)[4]  These purchases occurred in more than 275 individual transactions, as many 10 times a day.  (*See* Kubota Decl. Ex. G.)  They continued even as Sri Lanka's financial condition spun further into crisis.  For instance, HRB acquired more than $5 million in face value of the Bonds during May-June 2022—*i.e.*, immediately after Sri Lanka announced the Interim Policy. (Kubota Ex. G.)   HRB has continued to purchase Bonds since then, as recently as July 2023. (Kenyatta Decl. ¶ 5 & Kubota Exs. H-I; Second Kenyatta Decl. Ex. 1.)

At the time of its summary judgment motion, HRB claimed to hold $242,990,000 in face value of the Bonds.  ***Since then***, HRB claims to have acquired an additional $7.5 million in face value, bringing the total to $250,490,000.  (Kenyatta Decl. ¶ 3; Second Kenyatta Decl. ¶¶ 3-4.) HRB has purported to redact price information from its purchase documentation, so it is not clear exactly how much HRB has paid to make the various acquisitions discussed above.  But assuming HRB paid the prevailing market rates at the time of the purchases, it would have spent more than $181 million.  (*See* Houck Decl. ¶ 19 & Ex. 21.)

## VI.   HRB Demands Payment and Commences These Proceedings.

By letter dated May 4, 2022, counsel for HRB and its parent Fintech wrote to Sri Lanka demanding payment in full of the Bonds.  The letter referred to Fintech and HRB as "our clients,"

---

[4]    At the time, S&P rated the Bonds as CCC+, Moody's as Caa1, and Fitch as CCC.  (Houck Ex. 20; *see also* Persaud Decl. ¶ 19)

stating "*[o]ur clients hold* approximately US$250 million" in the Bonds, and that "*our clients hold* about 25% of the entire issuance."  (Houck Ex. 24 (emphasis added).)

On June 21, 2022, HRB sent a letter to the Trustee, purporting to accelerate the Bonds and demanding immediate payment.  (*See* Compl. Ex. B.)  The very same day, HRB commenced the instant action.  On September 21, 2022, Sri Lanka moved to dismiss based on HRB's lack of standing—*i.e.*, that HRB is not a "Holder"—and failure to allege a breach of the Indenture's *pari passu* clause.  (*See* Docs. 19, 21.)  At a conference with the Court on September 28, 2022, HRB indicated that it would file an amended complaint.  No schedule for discovery was set.

## VII.   The Amended Complaint and the Cede & Co. Letter.

On October 13, 2022, HRB filed the Amended Complaint, alleging a single count for breach of contract based on non-payment.  HRB invokes subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), based on Sri Lanka's alleged waiver of immunity in the Indenture.  (Am. Compl. ¶ 13.)

HRB claims to have cured its lack of standing because it obtained an "authorization" letter from the Holder.  (*See* Am. Compl. ¶ 11; Kubota Ex. P.)  That letter (the "Cede & Co. Letter") states that Cede & Co., as nominee of DTC, is the "holder of record" and that:

> DTC is informed by its Participant, Interactive Brokers LLC (the "Participant"), that the Notes credited to the Participant's DTC account on July 15, 2022 include $248,183,000 in principal amount thereof ("Subject Notes") that the Participant held as custodian for beneficial owner Nevis International Bank & Trust Ltd [now HRB] (the "Beneficial Owner.")

(*Id.* at 1; *id.* at 1–2 (noting that "DTC is informed by its Participant" that HRB "is the holder of the account in which beneficial ownership of the Subject Notes is held").)  The Cede & Co. Letter states that it "authorizes the Beneficial Owner" to "take any and all actions and exercise any and

all rights and remedies" that Cede & Co. (as Holder) could take respecting the Subject Notes.  (*Id.* at 1)

## VIII.   Sri Lanka's Motion to Dismiss the Amended Complaint.

On November 4, 2022, Sri Lanka moved to dismiss the Amended Complaint on the grounds that HRB lacks standing as a non-Holder, and that the Cede & Co. Letter did not cure this problem.  (*See* Docs. 25, 27.)  By Opinion and Order dated March 24, 2023, the Court denied the motion, reasoning that the Cede & Co. Letter "confers upon Hamilton standing to sue[.]"  (Doc. 33, at 5.)

## IX.   Sri Lanka's Discovery Requests.

On April 7, 2023, Sri Lanka filed an answer to the Amended Complaint.  (Doc. 35.)  On April 17, 2023, Sri Lanka served document requests on HRB, seeking, among other things:

- "Documents sufficient to show" the nature of HRB's ownership interest, including "whether such interest is held in Your name, whether You are the direct or beneficial owner of such interest, and whether such interest is held for Your own account or on behalf of some other person" (Request for Production ("RFP") 1(c));

- "Documents sufficient to show" the "nature of the transaction or transactions pursuant to which such interest was acquired, including as to each such transaction the date thereof, the counterparties thereto, the price paid in connection therewith, and the agreement or agreements governing each such transaction" (RFP 1(d));

(Houck Ex. 1.)  On April 20, 2023, the Court held a status conference.  (*See* Doc. 36.) Sri Lanka explained, among other things, that it was seeking discovery concerning HRB's claim of beneficial ownership.  HRB assured the Court that its production would be complete within a week.

On May 15, 2023, the Court entered an agreed-upon schedule for proceedings, including a discovery deadline of June 20, 2023.  (Doc. 40.)

## X.   HRB's Failure to Produce the Requested Documents.

In the meantime, on April 28, 2023, HRB served objections to Sri Lanka's document

requests.  (Houck Ex. 2.)  HRB asserted various blanket objections, failing to specify which categories of documents it would produce on the beneficial ownership issue.  (*Id.* (RFP 1).)  On May 2, 2023, Sri Lanka raised concerns about HRB's responses.  (Houck Ex. 3.)  Sri Lanka also noted that it expected to review HRB's documents before any potential deposition.  (*Id.*)

HRB did not produce any documents until May 8, 2023.[5]  This production consisted of five (heavily redacted) documents, and did not reflect HRB's internal accounting for the Bonds.  (*See* Houck Decl. ¶ 7.)  Sri Lanka promptly raised its concerns, including by meet-and-confer on May 11, 2023.  (*Id.* Decl. ¶ 8 & Ex. 5.)  After not hearing back, Sri Lanka followed-up by email on May 19, 2023.  (*Id.*  ¶ 9 & Ex. 6.)  Sri Lanka identified certain documents that were responsive to its requests and likely would address the key issue of how HRB holds the Bonds (*e.g.*, audited financial statements, annual reports, board materials, agreements), and specifically requested their production.  (*Id.* Ex. 6.)  The parties again discussed this issue on May 25, 2023.  (*Id.* Decl. ¶ 9.)

On May 26, 2023, HRB made a second production of 15 total documents.  This consisted mostly of publicly available press releases and news reports regarding Sri Lanka's financial condition.  It also included some slightly less redacted versions of account statements with its brokers.  (*Id.* ¶ 10.)  On June 6, 2023, HRB produced a declaration from its CFO.  (*Id.*)

None of the roughly ***20 total documents*** produced by HRB show how HRB holds the Bonds on its own books—*i.e.*, contemporaneous, internal documents confirming that HRB invested in the Bonds for its own account and not on behalf of some other person.  On June 14, 2023, Sri Lanka notified HRB that it planned to seek Court intervention.  (*Id.* Ex. 7.)  Following another meet-and-confer, and further correspondence by email, no agreement was reached.  (*Id.*

---

[5]   HRB had withheld its first production pending agreement on a confidentiality order.  (Houck Ex. 4.) This delay was clearly unnecessary, as HRB has now publicly filed less redacted versions of two of the documents from its initial production.  (Kubota Exs. E, F.)

Decl. ¶ 12 & Ex. 8.)[6]

## XI.     Discovery Conference.

On June 20, 2023, Sri Lanka wrote to the Court to raise a discovery dispute and ask for a

pre-motion conference.  In particular, Sri Lanka sought (1) the production of certain documents,

and (2) a three-week extension of the existing schedule to allow for that production and a potential

HRB deposition.  (*See* Doc. 41.)

On June 23, 2023, the Court held a conference and denied Sri Lanka's request.  However,

the Court also noted that Sri Lanka could make its arguments in opposition to HRB's summary

judgment motion.  (Doc. 49, at 8.)   On June 26, 2023, HRB moved for summary judgment.

(Doc. 44.)[7]

## ARGUMENT

Summary judgment is appropriate if there is "no genuine issue of material fact and, based

on the undisputed facts, the moving party is entitled to judgment as a matter of law."  *D'Amico v.

N.Y.C.*, 132 F.3d 145, 149 (2d Cir. 1998); Fed. R. Civ. P. 56(a).  Courts "view[] the facts in the

light most favorable to [the nonmoving party] and resolv[e] all factual ambiguities in [its] favor[.]"

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006).  If the movant

fails to meet its "burden to show that no genuine factual dispute exists . . . summary judgment must

be denied *even if no opposing evidentiary matter is presented*."  *Vermont Teddy Bear Co., Inc. v.

1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks omitted).

A motion for summary judgment should be denied or deferred when "a nonmovant shows

---

[6]     On June 19, 2023, HRB said that it was willing to produce some of the requested documents but would
not agree on any schedule extension to allow for review and a potential deposition.  (Houck Ex. 8.)

[7]     On July 7, 2023, HRB purported to submit a declaration in "further support" of its motion, regarding
claimed additional acquisitions of the Bonds.  (Doc. 52.)

by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]"  Fed. R. Civ. P. 56(d).  Indeed, "[s]ince summary judgment is a drastic device, it should not be granted when there are major factual contentions in dispute[,]" and "the nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment."  *Ass'n of Car Wash Owners Inc. v. N.Y.C.*, 911 F.3d 74, 83 (2d Cir. 2018) (internal quotation marks and alterations omitted).

## I.        Sri Lanka Has Not Waived Sovereign Immunity.

HRB argues that there is subject matter jurisdiction because (1) Sri Lanka has waived sovereign immunity, and (2) the transaction satisfies the FSIA's "commercial activity" exception. Sri Lanka does not dispute that—although not alleged in the Amended Complaint—the commercial activity exception applies.  *See* 28 U.S.C. § 1605(a)(2); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992).  Thus, the Court need not address HRB's claim of waiver.[8]  But for the avoidance of doubt, Sri Lanka has not waived sovereign immunity for this suit.

### A.        Sri Lanka's Waiver of Sovereign Immunity Applies Only to Suits by a Holder.

A foreign state may waive immunity "either explicitly or by implication[.]"  28 U.S.C. § 1605(a)(1).  A waiver is "explicit" when it is "clear and unambiguous"; it does not apply to "inadvertent, implied, or constructive waiver in cases where the intent of the foreign state is equivocal or ambiguous."  *Cap. Ventures Int'l v. Republic of Argentina*, 552 F.3d 289, 293 (2d Cir.

---

[8]    The issue of waiver may become relevant in connection with potential judgment enforcement issues, *see* 28 U.S.C. § 1610, but does not affect the issue of liability.

2009) (internal quotation marks omitted). [9]  Implied waiver also must be "unmistakable" and "construed narrowly." *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 201 (2d Cir. 1999).

Here, Sri Lanka waived sovereign immunity only as to suits "***brought by any Holder*** of a Bond." (Indenture § 1.17 (emphasis added).)  There is no dispute that HRB is not a Holder.  (*See, e.g.*, Doc. 33, at 3; Am. Compl. ¶ 11 & Ex. A.)  Thus, Section 1.17 does not apply.

**B.      The Cede & Co. Letter Does Not Change the Scope of Sri Lanka's Waiver.**

HRB argues that, by virtue of the Cede & Co. Letter, it "steps into Cede's shoes—including with respect to Sri Lanka's sovereign immunity waiver." (HRB Mem. 4.)  This does not follow. [10]

There is no provision in Section 1.17 or anywhere else in the governing documents allowing a Holder to authorize suit by a beneficial owner.  (*See* Doc. 33, at 5 (noting "the absence of a contractual provision expressly allowing such authorization"); *see also* Doc. 27, at 17-20; Doc. 29, at 2-4.)  Because immunity waivers must be narrowly construed, that should end the matter. But other contract terms further support a narrow reading of Section 1.17.  For instance, the Indenture's negating clause provides that only Holders have "any benefit or any legal or equitable right, remedy or claim under this Indenture." (Indenture § 1.12.)  And the Indenture and the Bonds provide that Sri Lanka may treat the Holder as the Bonds' owner for "all purposes" and Sri Lanka shall not be "affected by notice to the contrary."  (*Id.* §§ 2.3, 3.8; Kubota Exs. A-C.)

In these circumstances, Section 1.17 cannot be read as a clear and unambiguous waiver as to suits brought by a purportedly authorized beneficial owner.  *See S & S Mach. Co. v.*

---

[9]    *See also World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1161 (D.D.C. Cir. 2002) ("In general, explicit waivers of sovereign immunity are narrowly construed in favor of the sovereign and are not enlarged beyond what the language requires." (internal quotation marks omitted)).

[10]    The Court's ruling on the motion to dismiss did not discuss the issue of sovereign immunity.  Whether the Cede & Co. Letter confers standing on HRB under New York contract law is a different question from whether it satisfies the FSIA.

*Masinexportimport*, 706 F.2d 411, 418 (2d Cir. 1983) (finding waiver of immunity too "scant and hazy" to cover matter at hand).[11]  Moreover, "***a court should be even more hesitant to extend the waiver in favor of third parties***."  *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993) (emphasis added) (foreign sovereign's waiver as to contractual counterparty did not apply to other person involved in transaction); *see also Kern v. Oesterreichische Elektrizitaetswirtschaft AG*, 178 F. Supp. 2d 367, 375 (S.D.N.Y. 2001).

## C.    HRB Cites No Authority to the Contrary.

HRB contends that "it is well established" that an authorization-to-sue letter makes beneficial owners "fully entitled to rely on debtors' sovereign immunity waivers [to] bring suit." (HRB Mem. 5.)  This is incorrect.

HRB cites *EM Ltd. v. Republic of Argentina*, 695 F.3d 201 (2d Cir. 2012), but that case did not even address the scope of a sovereign immunity waiver, much less in the context of an authorization-to-sue letter.  Rather, the Court was considering discovery issues, and noted only in passing that jurisdiction was based on Argentina's "broad waiver" of immunity.  *Id.* at 203 & n.1. And the language of that broad waiver was different from Sri Lanka's in a crucial respect. Argentina waived immunity as to a "Related Proceeding," but—unlike here—there was no

---

[11]   *See also Nyambal v. Int'l Monetary Fund*, 772 F.3d 277, 282 (D.C. Cir. 2014) (finding no waiver of immunity because no contract language "directly contradicts Article 28's broad language of non-waiver"; rejecting argument for a "curiously obscure form of express waiver buried in a clause intended to limit the scope of liability owed"); *World Wide*, 296 F.3d at 1162-63 (no waiver because "regardless of what *could* be argued," the agreements' language "creates real ambiguity as to Kazakhstan's intent").

restriction on **who** could initiate such a proceeding.[12]  Here, by contrast, a "Related Proceeding" is specifically defined as a suit "brought by any Holder."   (Indenture § 1.17.)[13]

## II.     HRB Is Not Entitled to Summary Judgment Because of Factual Questions Regarding Its Claimed Beneficial Ownership.

HRB is not entitled to summary judgment because of factual questions concerning its claimed beneficial ownership of the Bonds.

### A.     HRB Must Establish That It Is the Beneficial Owner of the Bonds.

As discussed *supra*, there is no dispute that HRB is not a Holder.  Under the contract terms, this would ordinarily bar its claim.[14]  However, HRB alleges that it is a "beneficial owner" and has been authorized to sue by the Holder.  (Am. Compl. ¶ 11.)  On that basis, the Court denied Sri Lanka's motion to dismiss.  (Doc. 33.)  But at this stage of proceedings, HRB's allegations are not presumed to be true, and HRB must show with admissible evidence that it is both a beneficial owner of the Bonds and has received authorization to sue from the Holder.

In this context, the beneficial owner of a security is the party with the genuine economic interest in it.  Thus, when an intermediary holds a security for the benefit of a third person, the third person—**not the intermediary**—is the beneficial owner.[15]  Identifying the beneficial owner

---

[12]   "Related Proceeding" was defined as "any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement . . . ."  *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203 n.1 (2d Cir. 2012) (emphasis added; citing Joint Appendix); *id.* No. 11-4065, Doc. 86, Joint Appendix 1126-1127 (attached as Houck Ex. 25).

[13]   Venezuela's waiver in *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 229 (S.D.N.Y. 2020) was essentially the same as Argentina's—*i.e.*, it did not specify that a Related Proceeding must be brought by a Holder.  *Id.* No. 18 Civ. 11940, Doc. 64-1 & 64-2, § 14.  In addition—and unlike here—the relevant agreements expressly allowed an authorization-to-sue procedure.  *Id.*, Doc. 64-1, § 5(c) & Doc. 64-2 § 1(e)(ii).

[14]   *See, e.g., India.Com, Inc. v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005); *MacKay Shields LLC v. Sea Containers, Ltd.*, 300 A.D.2d 165, 166 (1st Dep't 2002); *Commerzbank AG v. Deutsche Bank Nat'l Tr. Co.*, 234 F. Supp. 3d 462, 476 (S.D.N.Y. 2017).

[15]   Interests in an asset held by an intermediary "are not property of the securities intermediary"; rather, "the securities intermediary passes through to the entitlement holders the economic benefit of ownership

therefore requires analyzing not just **whether** a person holds a security but **how**.  This is especially so where—as here—securities are held in "book entry" form by an entity like DTC on behalf of "various participating banks and brokerage firms," in which case, "the customers of those participating banks and brokerage firms (**or the customers' customers**) are, in turn, the ultimate beneficial owners of the Notes."  *Diverse Partners, LP v. AgriBank, FCB*, No. 16 Civ. 9526, 2019 WL 4305008, at *3 (S.D.N.Y. Sept. 11, 2019) (emphasis added); *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14 Civ. 4394, 2017 WL 1331288, at *6 (S.D.N.Y. Apr. 4, 2017) (same).  In these circumstances:

> Identifying those beneficial owners [] demands individualized proof: verifying that any purported beneficial owner actually held an interest in the Notes—and, even more importantly, confirming that the interest was ***genuine beneficial ownership rather than yet another tier in the "street name" waterfall***—requires scrutinizing a set of banking records and related documents . . . .

*Diverse Partners*, 2019 WL 4305008, at *3 (emphasis added).

Here, the Cede & Co. Letter does not itself establish that HRB is a beneficial owner.  The letter recites that DTC "is informed by" Interactive Brokers that HRB "is the holder of the account in which beneficial ownership of the Subject Notes is held."  (Kubota Ex. P.)  This is far from conclusive, and, in any event, does not address whether HRB holds such interests for another person.[16]  If HRB is not actually the beneficial owner, then this letter would be defective.  And without a valid authorization-to-sue, the contract terms would bar HRB's suit.

---

of the financial asset."  *See* N.Y. U.C.C. Law § 8-503(a); *id.* § 8-505 cmt. 1; 72 N.Y. Jur. Investment Securities § 154.  *See also Delaware v. New York*, 507 U.S. 490, 501-05 (1993) (describing intermediary as lacking "property interest" in security and as "debtor" to the beneficial owner).

[16]   In discovery, HRB refused to produce any communications concerning the procurement of the Cede & Co. Letter.  (*See* Houck Decl. ¶ 5 & Ex. 2.)  *See also Lovati v. Petróleos de Venezuela, S.A.*, No. 19 Civ. 4799, 2022 WL 1416646, at *3 (S.D.N.Y. May 5, 2022) (noting that "at this stage in the proceedings, there is no support for Plaintiffs' assertion that the [authorization-to-sue] letter constitutes 'proof,' rather than evidence that can properly be rebutted by other evidence").

Moreover, if HRB is not the beneficial owner, then it has not suffered an injury-in-fact and lacks standing to sue.  *See W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (Article III requires "that a plaintiff must have personally suffered an injury"—*i.e.*, a party may not "seek redress for injuries done to others" (internal quotation mark omitted)).  On this ground, courts have denied standing to plaintiffs where the interests at issue are really held by third persons.  *Id.* at 109 (investment advisor lacked standing to sue on behalf of its clients, "who are the beneficial owners of the underlying securities"); *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16 Civ. 740, 2022 WL 3018104, at *3 (S.D.N.Y. July 29, 2022) (noting that "courts have denied standing to 'straw' owners who do indeed 'own' the property, but hold title to it for somebody else, because such owners do not themselves suffer an injury when the property is taken"); *see also Indemnified Cap. Invs., SA. v. R.J. O'Brien & Assocs., Inc.*, 12 F.3d 1406, 1409 (7th Cir. 1993) ("For the purposes on Article III standing, the losses incurred by the ICI customer accounts accrued only to ICI's customers and are too attenuated to create standing for ICI.").[17]

### B.     The Record Does Not Establish HRB's Beneficial Ownership.

As discussed below, the current record does not allow the conclusion that HRB is the beneficial owner of the Bonds—*i.e.*, that HRB is really trading for its own account and not on behalf of some other person.  For this reason, summary judgment should be denied.

### 1.     There Is Good Cause to Doubt HRB's Beneficial Ownership.

There is good reason to doubt HRB's claims of beneficial ownership.

***First***, HRB is a regulated bank in Nevis.  (Houck Ex. 9.)  It is therefore subject to Nevis's "strong built-in regulatory framework" designed to ensure that, among other things, "the bank

---

[17]   Because the Holder is Sri Lanka's contractual counterparty, this rule would not bar a suit by the Holder—"in a contract case, the failure to perform is itself an injury-in-fact, regardless of any economic loss."  *AXA*, 2022 WL 3018104, at *3 (internal quotation marks omitted).

maintains acceptable accounting standards and satisfies capital requirements." (Houck Ex. 13.) Nevis regulators are guided by the "Core Principles for Effective Banking Supervision, released by the Basel Committee on Banking Supervision" and must "set prudent and appropriate capital adequacy requirements not less than those established in the Basel Capital Accord and its Amendments." (Houck Ex. 14, at 10, 12; *see also* Persaud Decl. ¶¶ 9–11.)

Under Basel guidance, a regulated bank must satisfy steep requirements to invest in sovereign-issued securities that are below investment grade. Among other things, the bank would have to put aside significant amounts of capital in reserve. (Houck Decl. Exs. 16, 18; Persaud Decl. ¶¶ 12–23.)[18]

Here, the Bonds were rated well below investment grade when HRB began its claimed acquisitions in August 2021. And the Bonds' credit rating only fell as the crisis in Sri Lanka intensified. (Houck Ex. 20.)[19] Given the relevant regulatory requirements, it is "highly unlikely" that HRB would have purchased $250 million in principal amount of the Bonds for its own account. (Persaud Decl. ¶¶ 20, 22; *see also* Houck Ex. 21.) Indeed, this would have required putting aside approximately $30 million of capital in reserve, which is not indicative of a regulated bank investing for its own account. (Persaud Decl. ¶¶ 20-23.) Rather, it suggests HRB is likely acting on behalf of some other investor—*e.g.*, a sophisticated investor using HRB's safekeeping, escrow, or trust services. (*Id.* at ¶¶ 6, 20).

---

[18]    There are similar restrictions under U.S. law. *See Am. Sav. Bank, FSB v. UBS Fin. Servs., Inc.*, 347 F.3d 436, 437 (2d Cir. 2003) (noting that OTS regulations "prohibit savings banks from buying securities that are not investment grade and liquid"); *see also* 12 C.F.R. §§ 1.2-1.5.

[19]    Indeed, the documentation for HRB's most recent transaction specifically notes that the Bonds are "below investment grade and speculative in nature." (Second Kenyatta Decl. Ex. 1.)

*Second*, apart from regulatory requirements, HRB touts the safety of customer deposits. (Houck Ex. 10; Persaud Decl. ¶¶ 5, 20–23.)   A massive investment in the Bonds with its own capital seems totally at odds with HRB's conservative reputation and messaging to customers.

*Third*, HRB advertises that its customers "can transfer their existing investment portfolio" (including bonds) to HRB "through our collaboration with global asset custodian banks including **Morgan Stanley**," so that customers can "view both deposits and investment portfolios" on the same statement.  (Houck Ex. 10.)  The account statements produced by HRB are entirely consistent with such an arrangement.  For instance, the numerous individual trades reflected in the Morgan Stanley statements—sometimes as many as 10 purchases of the Bonds in a single day—suggest possible involvement by multiple investors.  Moreover, HRB's account with Interactive Brokers is an "Institution Master" account.  (Kubota Ex. J.)  Such an account allows for the use of sub-accounts for individual customers.  (Houck Ex. 26.)

*Fourth*, in correspondence with Sri Lanka, HRB has claimed to own the Bonds with its parent Fintech.  Although HRB has since disavowed this assertion as "imprecise" (Doc. 49, at 8), it still raises questions as to whether HRB is investing on behalf of other related persons.

## 2. The Evidence Submitted by HRB Is Insufficient.

The evidence submitted by HRB to show its claimed beneficial ownership is insufficient and does not entitle HRB to judgment as a matter of law.

HRB primarily relies on documents showing that it holds interests in the Bonds at accounts with Morgan Stanley and Interactive Brokers.[20]  (*See* HRB Rule 56.1 Statement ¶¶ 4-10.) However, these documents do not show how HRB accounts for the Bonds on its own books.[21]

HRB emphasizes that the accounts are held in its "own name"—*i.e.*, they do not on their face indicate they are held for another person's benefit.  (HRB Mem. 8.)  But this is not at all dispositive.  Indeed, given HRB's focus on customer confidentiality, it is not surprising that the accounts would not identify third party names.  (*See* Houck Ex. 10.)[22]  Moreover, any presumption of ownership that comes with an account name can be rebutted with evidence that the property is held for another person (as is the case here).  *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 86 (2d Cir. 2002).[23]

HRB also cites a declaration from its CFO, stating that it is the "beneficial owner" of the Bonds, and holds them "in its own name and for its own account.  (Kenyatta Decl. ¶¶ 3; *see also*

---

[20]  HRB also cites a board resolution from May 2022, which purports to describe the Bonds as part of HRB's "investment management portfolio."  (Kubota Ex. K.)  This conclusory assertion is hearsay, and HRB makes no effort to qualify the document as a business record under Fed. R. Evid. 803(6).  Given the timing (months after the initial investment), and self-serving context (expressly in contemplation of litigation), this statement should not be credited.

[21]  In addition, because HRB apparently keeps trading in the Bonds to this day, the continuing accuracy of these documents—at the present and potentially post-judgment—is open to question.

[22]  In addition, HRB's redactions make it impossible to know the full name and identifying information of its accounts.  (*See, e.g.*, Kubota Ex. G.)  *See also Trireme Energy Holdings, Inc. v. Innogy Renewables US LLC*, No. 20 Civ. 5015, 2022 WL 621957, at *2-3 (S.D.N.Y. Mar. 3, 2022) ("In this Circuit, the weight of authority goes against allowing a party to redact information from admittedly responsive and relevant documents based on that party's unilateral determinations of relevancy.  Similarly, unilateral redactions based on concerns about personal privacy or business sensitivity are routinely disallowed, particularly where a protective order is in place[.]" (citations and alternations omitted).

[23]  *See also In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 713 (Bankr. S.D.N.Y. 2018) (presumption of ownership "may be rebutted by evidence that another person actually owns the property," including that "the ostensible owner holds the property for his benefit"); *Vergari v. Kraisky*, 120 A.D.2d 739 (2d Dep't 1986) (a certificate of title "is not conclusive proof of ownership and it may be rebutted").

*id.* ¶ 11.)  But an assertion about beneficial ownership is a legal conclusion,[24] not evidence.  *See BMaddox Enterprises LLC v. Milad Oskouie, Osko M Ltd.*, No. 17 Civ. 1889, 2021 WL 3675072, at *9 (S.D.N.Y. Aug. 18, 2021) (denying summary judgment because "allegations of substantial similarity are a legal conclusion that the Court cannot credit").  These conclusory statements should not be credited, especially given the questions discussed above.[25]

*     *     *

HRB argues that the kind of evidence it offers in this case is "regularly accepted" in sovereign debt litigation.  (HRB Mem. 8.)  Even if that is so generally, it does not address the unique concerns raised here regarding HRB's status as a regulated bank.  Notably, the cases cited by HRB do not address this issue, presumably because they involved differently situated plaintiffs—*i.e.*, hedge funds, other business entities, and/or individuals.  *See generally Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222 (S.D.N.Y. 2020); *Mazzini v. The Republic of Argentina*, No. 03 Civ. 8120, 2005 WL 743090 (Mar. 31, 2005).

### C.     Additional Discovery Is Appropriate Under Fed. R. Civ. P. 56(d).

Summary judgment also should be denied or deferred because HRB has failed to produce sufficient information regarding its claimed ownership interest in the Bonds.  In the circumstances, Sri Lanka requests an opportunity for additional discovery.  The standard for relief under Rule 56(d) of the Federal Rules of Civil Procedure (formerly Rule 56(f)) is well-settled:

---

[24]  *See, e.g., Briarpatch Ltd., L.P. v. Geisler Roberdeau, Inc.*, No. 99 Civ. 9623, 2007 WL 1040809, at *4 (S.D.N.Y. Apr. 4, 2007) ("Whether [plaintiff] became the beneficial owner of the TRL project is an issue of law."); *Morales v. New Valley Corp.*, 999 F. Supp. 470, 472 (S.D.N.Y. 1998) (noting that whether parties are "beneficial owners" of securities is a "legal question").

[25]  *See Adams v. City of New York*, No. 16 Civ. 3445, 2021 WL 1791182, at *9 (S.D.N.Y. May 5, 2021) (denying summary judgment where testimony did not "explain[] in any detail" and so "a reasonable juror could decline to credit [witness's] conclusory testimony on this issue"); *Knox v. Cnty of Putnam*, No. 10 Civ. 1671, 2012 WL 4462011, at *5 (S.D.N.Y. Sept. 27, 2012) ("If the credibility of the movant's witness is challenged by the opposing party and specific bases for possible impeachment are shown, summary judgment should be denied." (internal quotation marks omitted)).

> A party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (internal quotation marks and alterations omitted).[26]  As described below and in the accompanying Houck Declaration, this standard is more than satisfied here.

*First*, Sri Lanka seeks evidence regarding whether HRB really purchased the Bonds for its own account, and not on behalf of some other person.  As to documents, Sri Lanka seeks:

- HRB's 2021-2023 (i) audited financial statements; (ii) annual financial reports or returns; (iii) minutes and resolutions of HRB's board of directors, investment committee, or any other HRB committee or governing body authorized or required to approve investment decisions, with respect to HRB's investment decision regarding the Bonds.

- Any agreements concerning the transaction(s) in connection with HRB's interest.  These would reflect whether another person holds the economic interest in the Bonds.

These documents are likely to exist and would address this crucial issue.  (*See* Persaud Decl. ¶¶ 24–25; Houck Decl. ¶ 23 & Exs., 14, 15.)  They are within HRB's control and are a proper subject of discovery.  *See In re Dana Corp.*, 574 F.3d 129, 148–51 (2d Cir. 2009) ("[A] party against which summary judgment is sought must be afforded a reasonable opportunity to elicit information within the control of his adversaries." (reversing grant of summary judgment)).  Given the stakes and HRB's minimal document production, Sri Lanka's request is hardly excessive.  *See id.* at 149-50 ("[w]ith respect to a suit seeking $20 million in damages," and a claim that was "hardly a fanciful allegation," the discovery thus far "cannot reasonably be viewed as extensive").

---

[26] "A district court gives less weight to the final two requirements . . . ."  *Am. Home Assur. Co. v. Zim Jamaica*, 418 F. Supp. 2d 537, 548 (S.D.N.Y. 2006).

Sri Lanka also requests an opportunity (after production of these documents) to depose an HRB corporate witness pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, regarding HRB's claimed ownership interest.  *See Am Home*, 418 F. Supp. 2d at 550 (granting Rule 56(f) application in part because a deposition is "perhaps, the best method" of assessing credibility); *see also Dana*, 574 F.3d at 150 ("[D]epositions, at which there can be cross-examination, may serve to clarify statements in documents that are ambiguous; and deposition testimony may be shown to have been false after documentary evidence is obtained.").

**Second**, the requested information is likely to create a genuine issue of material fact (if there is not one already).  In particular, further discovery likely will show that HRB's claimed ownership interest is far more complicated than it suggests, and, in fact, that another person holds the real economic interest in the Bonds.  (*See* Houck Decl. ¶ 14–25; Persaud Decl. ¶¶ 20–23.)  If HRB is not a beneficial owner, then it lacks standing to sue and the case should be dismissed.

**Third**, Sri Lanka has attempted to obtain this discovery through repeated requests to HRB and through an application to the Court.  (*See* Houck Decl. ¶¶ 5–13 & Exs. 1–8; Doc. 41.) Sri Lanka served its document requests shortly after filing its Answer,[27] moved diligently to seek compliance, and reserved its right to take a deposition after the completion of document production,[28] all before the close of discovery.  *See Meloff*, 51 F.3d at 375 (summary judgment was "over-hasty" where non-movant received responsive information shortly before opposition was

---

[27]  Although Sri Lanka could in theory have sought discovery prior to this time, it was not required to do so.  *See Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 374 (2d Cir. 1995) (rejecting argument that party had forfeited opportunity for discovery where, among other things, there were "no discovery deadlines set").

[28]  HRB asserts that it offered to sit for a deposition during discovery, but as Sri Lanka repeatedly explained, it needed HRB's documents prior to a deposition. (*See* Houck Ex. 5.)  HRB also said that it would sit for a deposition only if Sri Lanka made a witness available for a deposition in-person in New York. (*Id.*)  Given the limited issues remaining in the case, HRB's position seemed designed only to increase costs and deter Sri Lanka from pursuing its own discovery.

due, and "she could hardly have had time to digest either the documentation that was supplied . . . much less to take depositions"); *Am. Home*, 418 F. Supp. 2d at 552 (rejecting movant's argument on timeliness "because the request was made within the discovery period established by the Court").

HRB has argued that Sri Lanka "never served any RFP" seeking the above-described documents.  (Doc. 42, at 2.)  This is incorrect.  Sri Lanka asked for documents sufficient to show whether HRB holds the Bonds for its own account or on behalf of others.  (Houck Ex. 1 (RFP 1).) When HRB failed to produce documents sufficient to show this subject, Sri Lanka specified the documents described herein as likely to satisfy the request.  (*Id.* ¶ 9 & Ex. 6.)[29]

***Fourth***, Sri Lanka was unsuccessful in its efforts because HRB refused to produce the requested documents.  The Court denied Sri Lanka's application for relief, but noted that it could raise this argument in opposition to summary judgment.  (*See* Houck Decl. ¶ 13.)

## III.    Any Award of Prejudgment Interest Should Be at the Contract Rate.

HRB argues that any prejudgment interest should run at the New York statutory rate of 9% per annum.  (HRB Mem. 10-11.)  This argument fails.

Under New York law, the statutory rate generally applies "after principal is due or in the event of a breach."  *NML Cap. v. Republic of Argentina*, 17 N.Y.3d 250, 258 (2011).  However, if the contract provides that interest accrues at a particular rate "'until the principal is paid' (or words to that effect)," then that contract rate applies.  *Id.* at 258-59.  No magic words are required to accomplish this result.  *See id.* at 259 n.2; *Citibank, N.A. v. Liebowitz*, 110 A.D.2d 615, 616 (2d

---

[29]   Even if not covered by RFP 1, Sri Lanka made clear it was seeking these documents by email on May 19, 2023 (more than a month before the close of discovery).  *See Emps. Ins. Co. of Wausau v. Nationwide Mut. Fire Ins. Co.*, No. 05 Civ. 0620, 2006 WL 1120632, at *2 (E.D.N.Y. Apr. 26, 2006) ("Plaintiffs exalt form over substance in claiming that defendant's letter . . . was not a proper discovery request which complied with various procedural requirements under Fed.R.Civ.P. 34." (granting motion to compel)).

Dep't 1985) ("There is no merit to defendant's contention that only the specific words 'until the principal is fully paid' can be used to express such an agreement.").

Here, the Indenture provides that, upon default, Sri Lanka must pay to the Trustee—and the Trustee may sue to collect—unpaid principal and interest and "*interest on any overdue principal* (and premium, if any) *and on any overdue interest, at the rate borne by the Securities[.]*" (Indenture § 5.3 (emphasis added).)  This Section 5.3 should be read together with Section 5.8 (governing suits by a Holder, and which says nothing about interest on overdue amounts), so that the same prejudgment interest rate applies to either type of suit. [30]  Indeed, it would be very odd if an individual Holder—whose right to sue is strictly circumscribed—could collect more interest than the Trustee.  In a similar context, the Second Circuit has explained:

> It would introduce an inconsistency into the debtor's obligations which the parties cannot reasonably be believed to have intended, for it would result in making it necessary for all the bondholders to sue personally, or in a class action, in order to recover the full amount of their claims, and would prevent the trustee from adequately asserting their rights. Certainly the trustee is not to be understood to be so crippled; their individual rights are supplementary to his, but he is fully armed to protect them. Accordingly we think it clear that the contract of the parties provides that interest is to continue at the 5% rate after maturity of the bonds.

*In re Realty Associates Securities Corp.*, 163 F.2d 387, 389-90 (2d Cir. 1947).[31]

HRB argues that the Indenture provides for the 5.875% rate to run only "*to and excluding, the Stated Maturity.*"  (HRB Mem. 11 (quoting Indenture § 3.1).)  Thus, HRB contends, starting

---

[30]   *See, e.g., Speedfit LLC v. Woodway USA, Inc.*, -- F. Supp. 3d --, No. 22 Civ. 4733, 2022 WL 17167985, at *8 (S.D.N.Y. Nov. 22, 2022) (noting that "where there is an inconsistency between a specific provision and a general provision of a contract, the specific provision controls" and that courts should "adopt an interpretation which gives meaning to every provision of a contract or, in the negative, no provision of a contract should be left without force and effect").

[31]   *See also In re Pali Holdings, Inc.*, 491 B.R. 389, 394–95 (Bankr. S.D.N.Y. 2013) (where contract language was unclear, "the better reading of the note is that the parties intended to provide for interest to be paid at the contract rate until the principal was paid").

on July 25, 2022, the statutory prejudgment rate controls.  This misreads the contract.  The Indenture elsewhere requires Sri Lanka to pay principal and interest "on **the Business Day prior** to each interest or principal payment date or the maturity date . . . ."  (Indenture § 9.1 (emphasis added).)  Thus, if Sri Lanka makes the required payment on time (*i.e.*, the day before the Stated Maturity), it need not pay any interest at all for the final day of the period.

## CONCLUSION

For the reasons set forth above, HRB's motion for summary judgment should be denied and/or deferred.

Dated: July 17, 2023                           Respectfully submitted,
      New York, New York

 s/ Robert G. Houck
Robert G. Houck
John P. Alexander
Benjamin A. Berringer
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019

*Attorneys for The Democratic Socialist Republic of Sri Lanka*

- 25 -