```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
HAMILTON RESERVE BANK LTD.,            :
                      Plaintiff,       :
                                       :     22cv5199 (DLC)
           -v-                         :
                                       :     OPINION AND
THE DEMOCRATIC SOCIALIST REPUBLIC OF   :        ORDER
SRI LANKA,                             :
                      Defendant.       :
                                       :
-------------------------------------- X
```

APPEARANCES:

For plaintiff:
Javier Bleichmar
Evan Asher Kubota
Bleichmar Fonti & Auld LLP
7 Times Square
New York, NY 10036

Lee Scott Wolosky
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036

For defendant:
Robert G. Houck
John P. Alexander
Benjamin Armstrong Berringer
Clifford Chance US, LLP (NYC)
31 West 52nd Street
New York, NY 10019

DENISE COTE, District Judge:

Hamilton Reserve Bank Ltd. ("Hamilton") asserts that it is

the beneficial holder of bonds issued by The Democratic

Socialist Republic of Sri Lanka ("Sri Lanka").  Sri Lanka --

which is currently experiencing an economic and humanitarian

crisis -- defaulted on the bonds, and Hamilton has brought this breach of contract action to recover the principal and accrued interest owed.  Hamilton has moved for summary judgment.  In response, Sri Lanka cross-moved to stay the proceedings for a period of six months while it conducts sovereign debt restructuring negotiations with sovereign and commercial creditors.  For the following reasons, the motion to stay is granted.

## Background

I.   Factual Background

Sri Lanka's ongoing economic, political, and humanitarian crisis is a matter of public record.  As described by the International Monetary Fund ("IMF") earlier this year:

> Sri Lanka fell into an unprecedented crisis as a
> result of a series of shocks and policy missteps.
> Debt rose to unsustainable levels resulting from large
> fiscal imbalances, and access to international capital
> markets was lost soon after large tax cuts and the
> onset of the COVID-19.  Reserves were depleted,
> leading to a sharp exchange rate depreciation, and
> debt service was suspended in the spring of 2022.
> Sizable monetary financing to meet fiscal obligations
> contributed to a surge in inflation.  Sri Lanka's
> economy is in deep recession and financial stability
> is at risk given the tight financial-sovereign nexus.
> People are suffering from food and energy shortages,
> exacerbating deep-rooted public dissatisfaction and
> creating a vulnerable political and social
> environment.

IMF, Sri Lanka: Request for an Extended Arrangement Under the Extended Fund Facility-Press Release; Staff Report; and

Statement by the Executive Director for Sri Lanka, IMF Staff Country Report No. 23/116 (Mar. 2023) (hereinafter IMF Staff Report), Executive Summary at 1.

On April 12, 2022, Sri Lanka's Ministry of Finance issued an "Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt" (the "Interim Policy"), announcing a moratorium on foreign debt repayments. See Ministry of Fin., Interim Policy Regarding the Servicing of Sri Lanka's External Public Debt (2022). The Interim Policy suspended "normal debt servicing of all Affected Debts . . . pending an orderly and consensual restructuring of those obligations in a manner consistent with an economic adjustment program supported by the IMF." Id. at 1–2. Sri Lanka formally defaulted on its international sovereign bonds on May 18, 2022. IMF Staff Report, at 5.

On March 20, 2023, the IMF approved a $2.9 billion[1] arrangement under an Extended Fund Facility ("EFF")[2] to support Sri Lanka's economic policies and reforms. The objective of the program is:

> [T]o restore macroeconomic stability and debt sustainability, safeguarding financial stability, and

---

[1] All monetary amounts are denoted in U.S. Dollars.

[2] The IMF EFF provides financial assistance to countries facing serious medium-term balance of payments problems because of structural weaknesses that require time to address.

> stepping up structural reforms to unlock Sri Lanka's
> growth potential.  All program measures are mindful of
> the need to protect the most vulnerable and improving
> governance.

The program allows Sri Lanka to receive funds in phases over a

48-month period.  The EFF program is subject to semi-annual

review based on Sri Lanka's continued progress toward IMF

targets.  As relevant here, Sri Lanka must commit to a debt

restructuring with official bilateral creditors (i.e.,

sovereigns such as the United States) and private commercial

creditors.

On May 16, 2023, the IMF held a press briefing in Sri

Lanka.  Krishna Srinivasan, Director of the IMF's Asia and

Pacific Department, reported that "the authorities are making

good faith efforts to negotiate with all the creditors, both

private creditors and official creditors. . . . In terms of the

timeline, it's [our] expectation that the restructuring exercise

will be completed by the first review of the program, which is

in September or October of this year."

The IMF is in the process of conducting its first review of

Sri Lanka's EFF program.  On October 19, the IMF and Sri Lanka

reached a staff-level agreement ("SLA") on the first review.

The SLA is

> subject to the approval by IMF management and the IMF
> Executive Board in the period ahead, contingent on . .
> . the completion of financing assurances reviews,

which will include confirming whether adequate
progress has been made with debt restructuring to give
confidence that the restructuring will be concluded in
a timely manner and in line with the program's debt
targets.

In August 2021, Hamilton began to purchase the bonds at
issue here.[3]  Hamilton asserts that it is the beneficial owner of
over $240 million in principal amount of Sri Lanka's
international sovereign bonds that were due in July 2022 (the
"Bonds").[4]  The Bonds provide for interest payments of 5.875% per
annum, paid semi-annually on January 25 and July 25 of each
year, from January 25, 2013 through July 25, 2022.  Following
Sri Lanka's moratorium on foreign debt repayments in the Spring
of 2022, Sri Lanka failed to pay the principal and interest
amount due to the plaintiff when those bonds matured on July 25,
2022.  Hamilton alleges that, as a result of Sri Lanka's
default, it is owed $242,990,000 in principal and $7,137,831.25
in accrued interest (before accounting for pre- and post-
judgment interest).  Hamilton represents that it has not
participated, and does not wish to participate, in Sri Lanka's
restructuring negotiations.

---

[3] As of August 2021, it was clear that Sri Lanka was in acute
financial distress.

[4] Sri Lanka contests Hamilton's beneficial ownership of the
Bonds.

II.   Procedural History

Hamilton initiated this action on June 21, 2022.  On September 21, Sri Lanka filed a motion to dismiss the complaint. Plaintiff filed an amended complaint on October 13, alleging one count of breach of contract based on non-payment of the Bonds at maturity.

On November 4, 2022, Sri Lanka renewed its motion to dismiss on the ground that the plaintiff lacks contractual standing.  In an Opinion and Order of March 24, 2023, the Court denied Sri Lanka's motion to dismiss.  See Hamilton Rsrv. Bank Ltd. v. Democratic Socialist Republic of Sri Lanka, 22cv5199 (DLC), 2023 WL 2632199 (S.D.N.Y. Mar. 24, 2023).  The Court held that Hamilton had standing to sue because Hamilton had obtained an authorization-to-sue letter from the Bonds' registered owner. Id. at *2.  The Court noted, however:

> This Opinion does not address the serious policy concerns raised by the filing of this litigation while the International Monetary Fund ("IMF") is actively working with Sri Lanka to resolve its financial crisis. . . . This ruling is confined solely to the legal issue presented and should not be construed either as an endorsement of litigation filed by beneficial holders of sovereign debt while the IMF addresses a grave crisis over that debt or an indication that such plaintiffs should be given priority in recovery during any debt restructuring negotiations that occur.

Id. at *3 n.3.

6

On June 26, 2023, the plaintiff moved for summary judgment. On July 17, Sri Lanka cross-moved to stay the proceedings for a period of six months.  In its July 17 brief, Sri Lanka stated that it "hopes to implement restructuring agreements by the fourth quarter of 2023."  The motion for summary judgment became fully submitted on July 31.

On August 30, 2023, the United States Attorney for the Southern District of New York informed the Court that the United States was considering whether to file a statement of interest with respect to the defendant's motion to stay and requested until October 2 to do so.  An Order of September 6 granted the Government's request.  Also on September 6, the French Republic and the United Kingdom ("UK") sought leave, as members of the Paris Club[5], to file an amicus brief in support of Sri Lanka's motion to stay (the "Paris Club Amicus Brief").  That request was granted the same day.

France and the UK support the request by Sri Lanka for a temporary stay "in order to safeguard the ongoing debt restructuring process."  They assert that a judgment in favor of

---

[5] As stated in their brief, the Paris Club is an "informal group of official creditors whose role is to find coordinated and sustainable solutions to the payment difficulties experienced by debtor countries. . . . As debtor countries undertake reforms to stabilize and restore their macroeconomic and financial situation, Paris Club creditors provide an appropriate debt treatment."

Hamilton before that process is completed "would risk disrupting the ongoing negotiations by creating an incentive for holdout creditors, thereby jeopardizing the comparability of treatment between different categories of creditors."  They explain that such a disruption "would lead to delays in the negotiations, delaying the cash disbursement by the IMF to the debtor country and resulting in significant costs for Sri Lanka and the official creditors' taxpayers."

On October 2, the Government filed a statement of interest in support of Sri Lanka's motion for a stay ("U.S. Statement of Interest").  The U.S. Statement of Interest was filed pursuant to 28 U.S.C. §§ 517 and 518, which authorize the United States Department of Justice "to attend to the interests of the United States" by "argu[ing] any case in a court of the United States in which the United States is interested."  It is the Government's assessment that the stay "would facilitate an orderly and consensual sovereign debt restructuring process" and "also facilitate negotiations with private creditors, an estimated majority of which have conditioned their participation on the application of comparable treatment."

Hamilton submitted a joint response in opposition to the Paris Club Amicus Brief and the U.S. Statement of Interest on

October 19.  Thus, the motion for a stay became fully submitted on October 19.

## Discussion

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96 (2d Cir. 2012) (quoting Landis v. N. Am. co., 299 U.S. 248, 254 (1936)).  "The person seeking a stay bears the burden of establishing its need."  Id. at 97 (citation omitted).  When considering whether to stay a case pending the resolution of related proceedings, courts in this District generally consider five factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

Loftus v. Signpost Inc., 464 F. Supp. 3d 524, 526 (S.D.N.Y. 2020).[6]

---

[6] Sri Lanka argues that in cases where a foreign sovereign seeks a stay to facilitate the restructuring of its debts, courts also look to the principles of international comity to determine whether a stay is warranted.  See, e.g., Pravin Banker Assocs., Ltd. v. Banco Popular Del Peru, 109 F.3d 850, 854-855 (2d Cir. 1997).

These factors weigh strongly in favor of a stay.  The Court recognizes that a stay will prejudice the plaintiff's ability to obtain a prompt judgment.[7]  The requested stay, however, is not indefinite.  Sri Lanka seeks a six-month stay of this litigation while it conducts sovereign debt restructuring negotiations with sovereign and commercial creditors.  Moreover, if Hamilton prevails on its claim at some future date, any judgment will be subject to pre-judgment interest.  Accordingly, the prejudice to the plaintiff is limited.

The third factor -- the interests of the courts -- weighs against the plaintiff.  It is true that Hamilton's dispositive motion for summary judgment is ripe for determination, and letting this motion linger on the Court's docket is not an efficient use of judicial resources.  Any interest in judicial economy in this particular litigation, however, is strongly outweighed by a decision that would encourage a "rush-to-the-courthouse" by private creditors holding Sri Lanka's sovereign debt in an attempt to secure priority.

The three remaining factors also weigh in favor of a stay, given the exigent circumstances in Sri Lanka and the complex international negotiations that are ongoing.  The private

---

[7] The Court takes no position on the merits of the plaintiff's pending motion for summary judgment.

interests of and burden on the defendant are significant -- a judgment for Hamilton would likely threaten the complex debt negotiations and, hence, the successful economic rehabilitation of Sri Lanka.  Hamilton's claim that any such prejudice is "wholly speculative and implausible" must be rejected.  A judgment for Hamilton would provide an incentivize to other bondholders to engage in line-jumping litigation and deter commercial creditors from participating in the restructuring negotiations.  As France and the UK explain, a decision in favor of Hamilton would provide a "strong incentive" for holdout creditors to forgo participation in voluntary restructuring.  Moreover, the IMF funding is contingent on "a sovereign debt restructuring that meets debt sustainability targets."  A breakdown in restructuring negotiations could threaten Sri Lanka's progress towards these IMF targets, its economic recovery, and the well-being of its citizenry.

A stay also supports the interests of persons not parties to the civil litigation, including Sri Lanka's official bilateral creditors and private commercial creditors.  If judgment were entered for Hamilton, the plaintiff may assert that it has priority in recovery while the debt restructuring negotiations are ongoing.  As described in the Paris Club Amicus Brief, "the implementation of comparability of treatment among

creditors is of the utmost significance, as it serves as the bedrock for obtaining creditors' consent to the debt restructuring."  Again, an immediate judgment for Hamilton could complicate the complex debt negotiations by creating an incentive for creditors to holdout from those negotiations. Thus, a stay significantly benefits the interest of Sri Lanka's bilateral creditors and private commercial creditors that are actively engaged in the debt restructuring negotiations.

In opposition to Sri Lanka's motion for a stay, Hamilton emphasized that neither the U.S. Government nor any other creditor had joined Sri Lanka's motion.  Now that not only the U.S. Government but also France and the UK have joined the motion, it argues that no private creditors have done so.  This Court has no hesitation in finding that the interests of many nations, entities, and individuals who are not parties to this lawsuit strongly support the entry of a stay.

Finally, the public interest counsels strongly in favor of a stay.  Two important aspects of U.S. policy are implicated by this suit.  First, "the United States encourages participation in, and advocates the success of, IMF foreign debt resolution procedures."  Pravin Bankers Assocs., Ltd. v. Banco Popular Del Peru, 109 F.3d 850, 855 (2d Cir. 1997) ("Pravin IV").  Second, "the United States has a strong interest in ensuring the

enforceability of valid debts under the principles of contract law, and in particular, the continuing enforceability of foreign debts owed to United States lenders." Id. As the Second Circuit explained, the

> second interest limits the first so that, although the United States advocates negotiations to effect debt reduction and continued lending to defaulting foreign sovereigns, it maintains that creditor participation in such negotiations should be on a strictly voluntary basis. It also requires that debts remain enforceable throughout the negotiations.

Id. (emphasis added). Thus, as the U.S. explains in its Statement of Interest, U.S. policy is "to afford sovereigns who are negotiating in good faith -- as here -- a limited opportunity to achieve a consensual resolution before judgments are entered or enforced against their debts" so long as the restructuring is voluntary and does not vitiate pre-existing contractual rights. See also id. (affirming the district court's initial six-month stay of plaintiff-creditor's motion for summary judgment when restructuring efforts were ongoing).

The stay sought by Sri Lanka accords with U.S. policy. Sri Lanka is engaged in negotiations intended to achieve a consensual resolution. Sri Lanka has reached an SLA with the IMF on its first semi-annual review under the EFF arrangement. In accordance with U.S. policy, the stay sought here affords Sri Lanka an opportunity to carry out a consensual resolution of its

debt crisis and does nothing to vitiate Hamilton's pre-existing contractual rights.

Hamilton argues that the U.S. Statement of Interest "contradicts four decades of U.S. policy and law without any supporting evidence justifying such radical departure." Hamilton asserts that U.S. policy "is that sovereign debt restructuring must be strictly voluntary, such that the underlying obligations to pay nevertheless remain valid and enforceable" (citation omitted).  Hamilton mischaracterizes the Government's stance.

In the U.S. Statement of Interest, the Government expressly rejects Hamilton's assertion that a stay violates U.S. policy. The U.S. explains that "Sri Lanka is not trying to unilaterally change the terms of the contract, but to seek time and space to conduct a restructuring that is necessary to allow it to equitably pay its debts."  A stay does not vitiate Sri Lanka's underlying obligation to Hamilton and does not force Hamilton to participate in the restructuring.  Rather, "granting a temporary stay would allow time for Sri Lanka and its creditors to finalize the restructuring so that all creditors, including Hamilton Bank, are incentivized to accept repayment on comparable terms."  As the U.S. Government explains:

> Consistent with the position expressed here by the
> United States, France and the United Kingdom

emphasized that (1) the sovereign debt restructuring
process necessary for Sri Lanka to return to a
sustainable path is ongoing and relies on creditor
coordination and (2) an early judgment could disrupt
the debt restructuring process by running the risk of
deterring other private creditors' restructuring
endeavors. . . .

Sri Lanka has made significant progress in negotiating
a debt restructuring and seeks a defined stay that
generally aligns with the expected timetable for
resolution of negotiations.  Moreover, it does so in
the unusual circumstances where one creditor, Hamilton
Bank, is pursuing its claim and demanding immediate
payment at an early stage in collective and ongoing
negotiations.  Under these circumstances, the public
interest and the interests of persons not parties to
this litigation support granting Sri Lanka's motion
for a stay.

If Hamilton opts out of the restructuring process, it may renew

its motion for summary judgment when the stay is lifted.

In sum, the balance of the factors weighs heavily in favor

of a stay in this action.  Accordingly, Sri Lanka's cross-motion

to stay the proceedings is granted.

### Conclusion

Sri Lanka's July 17, 2023 motion is granted.  This action

is stayed through February 29, 2024.

Dated:    New York, New York
          November 1, 2023

DENISE COTE
United States District Judge

15