UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAMILTON RESERVE BANK LTD.,

       Plaintiff,

  v.

THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA,

       Defendant.

No. 22 Civ. 5199 (DLC)

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR A FURTHER STAY OF PROCEEDINGS

Robert G. Houck
John P. Alexander
Benjamin A. Berringer
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001

*Attorneys for Defendant*
*The Democratic Socialist Republic*
*of Sri Lanka*

Dated:  August 21, 2024

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT .....................................................................................................................................2

    I.     The Court Should Grant an Additional Four-Month Stay of These Proceedings. ..........................................................................................2

          A.     The Discretionary Factors Strongly Favor the Requested Stay.............................................................................................2

          B.     HRB's Proposed Alternative Stay Is Too Short. .........................................3

          C.     HRB Is Not Entitled to a "Confirmation" of Its Purported Rights. .............................................................................................4

CONCLUSION ..............................................................................................................................5

## TABLE OF AUTHORITIES

Page(s)

Cases

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
    109 F.3d 850 (2d Cir. 1997)................................................................................................. 3

Defendant The Democratic Socialist Republic of Sri Lanka ("Sri Lanka") submits this Reply Memorandum of Law in further support of its Motion for a Further Stay of Proceedings.[1]

## PRELIMINARY STATEMENT

Sri Lanka is close to completing its debt restructuring process, but is not quite finished. With the breathing room afforded by this Court's past stays of proceedings, Sri Lanka has now formalized agreements with its major official creditors. This has allowed significant advancement of discussions with private commercial creditors. For instance, in July 2024, Sri Lanka and the ad hoc committee of international bondholders reached a Joint Working Framework regarding the core financial terms of a restructuring. As announced at the time, however, the Joint Working Framework was subject to confirmation both by International Monetary Fund ("IMF") staff and the Official Creditor Committee ("OCC") to ensure compliance with IMF program debt sustainability targets and the comparability of treatment principle respectively. IMF staff and the OCC have now provided feedback, and Sri Lanka is currently engaged in good faith discussions with the bondholders, IMF staff, and the OCC to incorporate that feedback. Sri Lanka is working as expeditiously as possible to complete this process.

For the reasons set out in Sri Lanka's opening brief, an additional four-month stay of proceedings is of the utmost importance. Indeed, a judgment for HRB at this time would pose severe risks to the success of these highly sensitive negotiations. This is further confirmed by the accompanying letter of support from France, Canada, Denmark, Japan, the Netherlands, the Russian Federation, Spain, and the United Kingdom.[2]

---

[1]  Capitalized terms used herein and not otherwise defined have the meanings given them in Sri Lanka's opening brief (Doc. 108).

[2]  That letter is attached to Sri Lanka's reply brief (*see* Berringer Decl. Ex. 3), and a separate copy will be delivered to the Court.

HRB does not meaningfully engage with any of the traditional discretionary factors, which overwhelmingly favor Sri Lanka. Instead, HRB makes two different arguments. *First*, HRB contends that a stay should last only until September 30, 2024 because the restructuring supposedly will already be done by then. But this misreads the record. With negotiations still underway, a stay until September would not provide enough time to incorporate feedback from IMF staff and the OCC, complete negotiations with bondholders, and then finalize the restructuring. *Second*, HRB insists that Sri Lanka promise not to "challenge" any of HRB's purported rights in relation to the Bonds. HRB cites no authority for this novel proposition, and we are aware of none. As Sri Lanka has made clear, the debt restructuring is to be done on a voluntary basis and the hope is that all bondholders will join in that process. HRB's claimed contract rights (if any) are what they are. But HRB should not be placed in a better position—with un-bargained-for "confirmations" about supposed rights that have not been established—than any other creditor.

For the foregoing reasons and those set forth below, Sri Lanka respectfully requests that the Court further stay these proceedings for a period of four months.

## ARGUMENT

**I.   The Court Should Grant an Additional Four-Month Stay of These Proceedings.**

**A.   The Discretionary Factors Strongly Favor the Requested Stay.**

As set out in its opening papers, Sri Lanka expects to finalize its debt restructuring negotiations in the coming months. A judgment prior to that time would disrupt the restructuring process with devastating effects for Sri Lanka. As such, the discretionary factors strongly favor the requested additional four-month stay of proceedings.

HRB barely addresses these matters. For instance, HRB does not dispute the Court's prior finding that a judgment would likely threaten the debt restructuring process, and therefore "Sri Lanka's progress towards these IMF targets, its economic recovery, and the well-being of its

citizenry." (Nov. 2023 Opinion at 11; *see also* Apr. 2024 Opinion at 6.) Consistent with this, IMF staff have noted that the Sri Lankan economy "is still vulnerable," that "the path to debt sustainability remains knife-edged," and that restructuring efforts are "critical" to that process. (Doc. 107-1 (Press Release) at 1; *id.* at 17.).)[3]

### B. HRB's Proposed Alternative Stay Is Too Short.

HRB asserts that negotiations with private creditors are "effectively complete," and so the stay should last only until September 30, 2024. This is incorrect.

HRB's position is based on a misreading of the announcement of the Joint Working Framework. (*See* HRB Opp. at 2, 4 (citing Doc. 107-8, at 1).) The announcement included a description of the "*[i]ndicative terms* of new bonds," which contemplated that interest payments would begin in September 2024. (*See* Doc. 107-8, at 1 (emphasis added).) HRB apparently takes this to mean that the deal is already done, and that nothing is left but purely "administrative" tasks. But this ignores that those terms were "indicative" only and were expressly subject to confirmation by IMF staff and the OCC. (*See* Doc. 107-7, at 3.)

HRB states that "the IMF and OCC reviews appear to be complete," suggesting that the Joint Working Framework has already been approved as-is. (HRB Opp. at 4.) Again, this misreads the record. Specifically, in an August 2, 2024 press release, IMF staff stated:

> The authorities have made commendable progress with putting debt on a path towards sustainability. The execution of the domestic debt restructuring and finalizing the agreements with the Official Creditor Committee and China EXIM Bank are major milestones. ***IMF staff assessed the "Joint Working Framework" announced at the conclusion of the second round of restricted***

---

[3] In a footnote, HRB argues that the requested stay here would be inconsistent with the approach in the Peru sovereign debt litigation. (HRB Opp. at 3 n.2.) As previously detailed, however, this misconstrues the relevant case law. (*See* Doc. 98, at 6-9.) Moreover, HRB continues to ignore the Second Circuit's guidance that even after a summary judgment motion in that case was pending for 18 months, the district court still had discretion to grant a further stay. *See Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 855-56 (2d Cir. 1997).

> ***discussions with the bondholder committee and have provided this assessment to the authorities and, on their request, the financial advisors of the bondholders**. We encourage a swift resolution of the remaining steps* to achieve debt sustainability and regain investor confidence. We will continue to support Sri Lanka's ongoing debt restructuring efforts.

(Berringer Decl. Ex. 2 at 2 (emphasis added).) And in an August 2, 2024 press release, Sri Lanka stated:

> Sri Lanka has also received an initial assessment from its Official Creditor Committee (OCC) on Comparability of Treatment (COT) as it relates to the JWF [Joint Working Framework], on which further details are being sought. ***Once these have been received, it will be possible to engage further with bondholders on the basis of the information provided by these assessments and conclude the process***.

(*Id.* Ex. 1 at 1 (emphasis added).) In other words, IMF staff and the OCC have provided feedback to Sri Lanka on the Joint Working Framework. This feedback requires further negotiations among the relevant parties. Indeed, as the accompanying Paris Club letter explains:

> ***Discussions are currently ongoing among all stakeholders – Sri Lanka, the OCC, the IMF and the bondholders*** – to facilitate this resolution while ensuring comparability of treatment between official creditors and the private sector.

(*Id.* Ex. 3 at 2 (emphasis added).)

Sri Lanka is hopeful to reach such a deal with the bondholder group in the near term, so that the parties can then document and finalize the transaction. The requested four-month stay of proceedings is necessary to allow that process to take place.

### C. HRB Is Not Entitled to a "Confirmation" of Its Purported Rights.

HRB argues that Sri Lanka should have to "confirm" HRB's purported contract rights in relation to the Bonds—including, *e.g.*, HRB's claimed "blocking position and rights to recover the full amount owed . . . " (HRB Opp. at 2.) This novel and un-supported request should be rejected.

Sri Lanka has repeatedly emphasized that the restructuring process is voluntary, and this remains the case. HRB speculates that Sri Lanka will somehow seek to impose a non-consensual

restructuring at odds with the contract terms. HRB provides no basis for this assertion. Moreover, while HRB has whatever contract rights (if any) it has, so does Sri Lanka. For example, it is no secret that Sri Lanka challenges HRB's ownership of the Bonds. (*See generally* Doc. 56.) Sri Lanka does not waive its rights in this, or any other, regard. HRB should not be allowed to use its precipitous lawsuit as leverage to obtain greater contractual rights than any creditor.

## CONCLUSION

For the reasons set forth above, Sri Lanka's Motion for a Further Stay of Proceedings should be granted.

Dated: August 21, 2024
New York, New York

Respectfully submitted,

 s/ Robert G. Houck
Robert G. Houck
John P. Alexander
Benjamin A. Berringer
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001
Telephone: (212) 878-8000
Robert.Houck@CliffordChance.com
John.Alexander@CliffordChance.com
Benjamin.Berringer@CliffordChance.com

*Attorneys for The Democratic Socialist Republic of Sri Lanka*