UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HAMILTON RESERVE BANK LTD.,

        Plaintiff,

  v.

THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA,

        Defendant.

No. 22 Civ. 5199 (DLC)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT'S MOTION FOR A FURTHER STAY OF PROCEEDINGS

Robert G. Houck
John P. Alexander
Benjamin A. Berringer
CLIFFORD CHANCE US LLP
Two Manhattan West
375 9th Avenue
New York, New York 10001

*Attorneys for Defendant
The Democratic Socialist Republic
of Sri Lanka*

Dated: November 26, 2024

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND .................................................................................................................3

    I.      Sri Lanka's Sovereign Debt Restructuring. ..........................................................3

    II.     HRB's Lawsuit. ....................................................................................................3

    III.    Sri Lanka's Progress During the Stays of Proceedings. .......................................4

    IV.    Sri Lanka's Presidential Election and Renewed Commitment
           to the Restructuring. .............................................................................................5

    V.     The Ongoing Debt Exchange. ...............................................................................7

         A.     The Structure and Timing of the Exchange. .............................................7

         B.     International Support for the Debt Exchange. ..........................................8

ARGUMENT .......................................................................................................................9

    I.      The Court Should Grant an Additional 45-Day Stay of These
           Proceedings. ........................................................................................................10

         A.     Sri Lanka Is at a Final Critical Stage of the
               Restructuring Process. .............................................................................10

         B.     The Discretionary Factors Weigh Strongly in
               Support of a Further Stay. .......................................................................11

             1.     HRB's Private Interests Are Minimal. ........................................11

             2.     An Immediate Judgment Would Have Devastating Effects on
                  Sri Lanka. ....................................................................................11

             3.     A Stay Is in the Interest of Judicial Economy ..............................12

             4.     Non-Party Interests Strongly Support the Requested Stay. ...........12

             5.     International Comity and U.S. Policy Interests
                  Overwhelmingly Favor a Stay. ......................................................13

CONCLUSION ....................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

Cases

*Clinton v. Jones*,
    520 U.S. 681 (1997) .................................................................................................................. 9

*Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*,
    No. 11 Civ. 4141, 2012 WL 252139 (S.D.N.Y. Jan. 25, 2012) ................................................ 10

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ................................................................................................................ 10

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012) ........................................................................................................ 9

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
    109 F.3d 850 (2d Cir. 1997) ........................................................................................ 10, 13, 14

*Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*,
    895 F. Supp. 660 (S.D.N.Y. 1995) .......................................................................................... 14

*United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*,
    216 F. Supp. 2d 198 (S.D.N.Y. 2002) ..................................................................................... 10

Defendant The Democratic Socialist Republic of Sri Lanka ("Sri Lanka") submits this Memorandum of Law in support of its Motion for a Further Stay of Proceedings.

## PRELIMINARY STATEMENT

Sri Lanka respectfully asks this Court for a further 45-day stay of proceedings. Sri Lanka is happy to report that, yesterday, it formally launched an exchange offer and consent solicitation process to implement the restructuring of its private bondholder debt (the "Exchange Offer and Consent Solicitation"). Subject to the terms and conditions of the transaction, bondholders may now exchange their existing bonds for restructured bonds over the coming weeks. The successful completion of the exchange will go a long way toward finalizing Sri Lanka's sovereign debt restructuring process and restoring sovereign debt sustainability. The requested 45-day stay is of the utmost importance to getting this matter across the finish line.

As this Court recently noted, the prior stays of proceedings in this matter have allowed Sri Lanka to "achieve a massive and complex reorganization of its debt." (Doc. 124 ("Nov. 2024 Opinion") at 6.) Sri Lanka is deeply grateful for the Court's consideration and patience. Indeed, thanks in large part to the prior stays, Sri Lanka reached a memorandum of understanding with its official bilateral creditors in June 2024. And in September 2024, Sri Lanka reached an agreement in principle with groups representing more than 50% of Sri Lanka's outstanding sovereign bonds. These multi-party discussions have been extraordinarily complex. Among other things, they have required not only coming to commercial terms but also doing so in a manner consistent with International Monetary Fund ("IMF") program parameters and ensuring comparability of treatment among official and private creditors. Sri Lanka appreciates the good faith negotiations with creditors, as well as the support of the IMF, which have brought this process so near to conclusion.

Now, to actually implement the restructuring, Sri Lanka has commenced the debt exchange

with private bondholders.  In a press release issued earlier today, the steering committee of the ad hoc group of Sri Lanka international bondholders—which includes some of the world's largest financial institutions—announced its strong support for the exchange.  The group also encouraged all bondholders to participate "as early as possible."  A consortium of Sri Lanka's local bondholders—domestic commercial banks and financial institutions—also announced its support for the deal.  In addition, the IMF issued a statement of support, commending Sri Lanka on its progress, and noting that "rapid completion of the debt operation with high creditor participation would be vital for the success of the program."  Sri Lanka is committed to completing the transaction as soon as possible and encourages private sector creditors to participate in the debt restructuring process.

We expect that plaintiff Hamilton Reserve Bank ("HRB"), a claimed beneficial owner of Sri Lanka's international sovereign bonds,[1] may oppose this requested stay.  But as the Court recently noted, the relevant discretionary factors "have continued throughout this entire period to weigh heavily in favor of the stay."  (Nov. 2024 Opinion, at 6.)  And now that the debt exchange has been launched, these factors weigh even more powerfully in favor of the requested 45-day stay.  A judgment for HRB at this critical time—as bondholders are actively considering in real-time whether to participate in the restructuring—would be potentially catastrophic.  Indeed, it could disrupt the exchange and deter participation, with disastrous results for Sri Lanka's broader efforts to achieve sovereign debt sustainability and put itself on a path to economic recovery.

For the foregoing reasons and those set forth below, Sri Lanka respectfully requests that the Court further stay these proceedings for a period of 45 days.

---

[1] As previously noted, Sri Lanka believes that there are serious factual questions remaining as to whether HRB is indeed the beneficial owner of the bonds.  (*See generally* Doc. 56.)

## BACKGROUND[2]

**I.     Sri Lanka's Sovereign Debt Restructuring.**

The economic and humanitarian crisis in Sri Lanka is a matter of public record.  (*See* Nov. 2024 Opinion at 1-2.)   In April 2022, Sri Lanka announced a suspension of payment on its sovereign debt for the first time in its history and sought emergency financial assistance from the IMF.  (*See* Doc. 77 ("Nov. 2023 Opinion") at 3.)  In March 2023, the IMF approved an arrangement for Sri Lanka under a 48-month Extended Fund Facility ("EFF") of approximately $3 billion.  (*Id*.)  The goal of the IMF-supported program is:

> [T]o restore Sri Lanka's macroeconomic stability and debt sustainability, mitigate the economic impact on the poor and vulnerable, safeguard financial sector stability, and strengthen governance and growth potential.

(*See* Doc. 55-18 (Press Release), at 1.)  The program requires that Sri Lanka implement several significant reforms, including among other things, "restoration of public debt sustainability, including through a debt restructuring."  (*See* Doc. 55-18, at 1.)  Access to IMF funding is phased over the duration of the arrangement, and depends on Sri Lanka's progress toward meeting program goals.  (*See* Nov. 2023 Opinion at 4, 11.)[3]

**II.     HRB's Lawsuit.**

HRB claims to own $250 million in Sri Lanka-issued international sovereign bonds due in

---

[2]   The full background to this matter is described in more detail in the papers supporting Sri Lanka's prior motions to stay proceedings (Docs. 53, 84, 106).  To avoid repetition, Sri Lanka incorporates those papers by reference and includes only a brief summary here.  Sri Lanka also refers to the Declaration of John P. Alexander dated November 26 ("Alexander Decl.") for additional information.

[3]   Specifically, the IMF-supported program is subject to semi-annual review, and subsequent disbursements depend on Sri Lanka's progress toward meeting program goals, including the restoration of debt sustainability.  Where a sovereign's debt is unsustainable, IMF policy precludes providing financing "unless the member takes steps to restore debt sustainability."  (Doc. 55-4, at 9.)

- 3 -

July 2022 (the entire July 2022 issuance, the "2022 Bonds"). (*See* Am. Compl. ¶ 1.)[4] On June 21, 2022—as the crisis in Sri Lanka was intensifying—HRB commenced this proceeding.

On June 26, 2023, HRB moved for summary judgment. (*See* Doc. 44.) Sri Lanka opposed that motion on the grounds that there are serious factual questions about the legitimacy of HRB's ownership of the Bonds. (*See* Doc. 56, at 16-18; Doc. 65, at 9.) On July 17, 2023, Sri Lanka moved for a stay of proceedings. (*See* Doc. 53.)

Since that time, the Court stayed proceedings by order dated November 1, 2023 and April 23, 2024. (*See* Nov. 2023 Opinion; Doc. 102 ("Apr. 2024 Opinion").) Most recently, on November 15, 2024, the Court granted a stay *nunc pro tunc* until November 30, 2024. (*See* Nov. 2024 Opinion.)

### III. Sri Lanka's Progress During the Stays of Proceedings.

In the November 2024 Opinion, the Court noted that "the length of the stays issued to date has been appropriate," and that Sri Lanka has used the time afforded it to "achieve a massive and complex reorganization of its debt." (Nov. 2024 Opinion at 6.) Indeed, as briefly summarized below, Sri Lanka has made great progress and is very near the end of the debt restructuring process:

IMF. The IMF completed reviews of Sri Lanka's EFF program in December 2023 and June 2024. This resulted in IMF approval of further disbursements under the program. (*See* Doc. 108, at 4, 6-7.) In connection with these review processes, IMF staff have repeatedly commended Sri Lanka's efforts to achieve debt sustainability. (*See* Apr. 2024 Opinion at 3; Doc. 107-1 (Press Release), at 3; *see also* Doc. 54, at 11-12.).

---

[4] HRB is a Nevis-based bank and apparently a corporate vehicle of Benjamin Wey. (*See* Doc. 65, at 10; Doc. 86, at 5; Doc. 108, at n. 4.) In May 2022, shortly before bringing suit, HRB and its corporate parent, Fintech Holdings Ltd., threatened Sri Lanka that they would block IMF funding unless Sri Lanka made immediate payment in full. (*See* Docs. 54, at 6-7, 55-3, at 6-7.)

Official Creditors.  In June 2024, Sri Lanka and the Official Creditor Committee ("OCC") announced that they had finalized a Memorandum of Understanding on debt restructuring consistent with the parameters of the IMF-supported program and the comparability of treatment principle.  (*See* Nov. 2024 Opinion at 2; *see also* Doc. 108, at 8-9.).[5]  The Paris Club has repeatedly commended Sri Lanka on its debt restructuring progress.  (*See* Apr. 24 Opinion at 4; *see also* Doc. 108, at 9; Doc. 86, at 9-10.)

Private Commercial Creditors.  Sri Lanka has had extensive negotiations with its private commercial creditors.  (HRB has refused to participate in this process.)  As part of the discussions, Sri Lanka and the bondholders have discussed, among other things, various novel proposals around linking future payouts to Sri Lanka's GDP.  In addition, these discussions have involved consideration of the deal's compatibility with the parameters of the IMF-supported program, as well as the comparability of treatment principle.  (*See* Nov. 24 Opinion at 2-3; Doc. 108, at 11.).

Ultimately, on September 19, 2024, Sri Lanka and the ad hoc group of international bondholders, along with Sri Lanka's local bondholders, reached an agreement in principle (the "AIP") on the core financial terms of a restructuring.  (*See* Nov. 24 Opinion at 3; *see also* Doc. 121, at 1.).

**IV.    Sri Lanka's Presidential Election and Renewed Commitment to the Restructuring.**

A few days later, Sri Lanka elected its new President, Anura Kumara Dissanayake.  The United States issued a statement of support, commending Sri Lanka on its commitment to democratic principles, and stating:

> We look forward to working with President-elect Anura Kumara Dissanayake to further strengthen our bilateral ties, which are based on shared democratic values and respect for national sovereignty. We also look forward

---

[5] At about the same time, Sri Lanka also finalized a debt restructuring agreement with the China Exim Bank.  (Nov. 2024 Opinion at 2-3.)

> to promoting economic growth, security, and deeper cooperation between our nations.

(Alexander Decl. Ex. 1.)

On October 4, 2024, the new Sri Lankan government confirmed its endorsement of the IMF-supported program debt targets and the AIP with bondholders. Sri Lanka also confirmed its intention to expedite the implementation of the restructuring in line with these terms. (Doc. 123.)

In the meantime, Sri Lanka completed consultations with the OCC and IMF staff regarding the comparability of treatment principle and the parameters of the IMF-supported program. (*Id.* at 1-2.) Specifically, the OCC confirmed that the terms of the AIP as it stands are compatible with the comparability of treatment principle. (*Id.* at 2.) In addition, IMF staff confirmed that the AIP meets program parameters under the EFF arrangement second review macro framework, when considered in conjunction with the restructuring of official claims in line with the terms agreed with the OCC and China Exim Bank in June 2024. (*Id.*)

Also on October 4, 2024, Sri Lanka announced the appointment of Citigroup Global Markets, Inc. ("Citi") to act as dealer manager to support the execution of the bond exchange, consent solicitation, legal documentation, and other processes involved in design and successful implementation of the exchange. (*Id.*)

On November 22, 2024, IMF staff and Sri Lankan authorities reached a staff-level agreement on economic policies to conclude the third review of Sri Lanka's program under the EFF arrangement. (*See* Alexander Decl. Ex. 2.) An IMF press release states that Sri Lanka's program performance has been "strong," and IMF staff "thank the authorities for the excellent collaboration." (*Id.*) The press release also notes that the AIP is an "important milestone," and that the "critical next steps" are finalizing the restructuring to help restore Sri Lanka's debt sustainability. (*Id.*) The staff-level agreement is subject to approval by IMF management and the

IMF Executive board.  (*Id.*)

V.     **The Ongoing Debt Exchange.**

As of November 25, 2024, Sri Lanka formally launched the debt exchange process.  In a November 26, 2024 press release, the President and Minister of Finance, Planning, and Economic Development stated:

> Today's official announcement of the commencement of the International Sovereign Bond restructuring with private creditors marks an important milestone for Sri Lanka.  We extend our gratitude to our external creditors, the IMF and the Official Creditor Committee for the good faith negotiations that have enabled us to reach this point.  With the successful achievement of Staff-Level Agreement on the third review of our IMF-supported program last 22 November, I urge private sector creditors to participate in the debt restructuring process to provide essential relief, thereby laying the groundwork for a brighter future for Sri Lanka and its people.

(*See id.* Ex. 3.)

The proposal is described in more detail in an Announcement of Invitation published with the London Stock Exchange (*see id.* Ex. 4) and is briefly summarized below.[6]

A.     **The Structure and Timing of the Exchange.**

The proposal relates to all eleven series of Sri Lanka's international sovereign bonds. Subject to the terms and conditions of the overall deal, bondholders may exchange their existing bonds for newly restructured bonds.  Some aspects of the transaction vary across different bond series, which themselves may have different terms relating to, *e.g.*, collective action clauses and voting thresholds.

As it relates to the 2022 Bonds—*i.e.*, the series in which HRB claims an ownership interest—the proposal involves solely a voluntary exchange.  Thus, subject to the relevant terms

---

[6]   The Announcement of Invitation itself summarizes a more detailed Invitation Memorandum, which is available to bondholders at https://projects.sodali.com/srilanka.  We do not undertake to summarize all deal terms here.

and conditions, bondholders who choose to participate will have their old bonds replaced with new ones; those who do not choose to participate will keep their existing bonds. The proposal does not contemplate amendments to the terms of the Indenture governing the 2022 Bonds.

The exchange is expected to be open until December 12, 2024. Settlement of the process is expected by December 20, 2024, with a deadline of December 31, 2024. However, Sri Lanka has the right to extend that deadline to January 15, 2025. The schedule is described in further detail in the Announcement of Invitation. (*See id.* at 7-8.)[7]

### B. International Support for the Debt Exchange.

Earlier today, the Steering Committee of the Ad Hoc Group of Sri Lanka's Bondholders (the "Ad Hoc Group")[8] and the Local Consortium of Sri Lanka ("LCSL")[9] announced their strong support for the Exchange Offer and Consent Solicitation. (*See id.* Exs. 5, 6.) Together, these groups represent more than 50% of the outstanding amount of Sri Lanka's sovereign bonds. In their press releases, the groups explain that the terms of the debt exchange reflect the key terms of the AIP.

The members of the Steering Group of the Ad Hoc Group have confirmed their intention to participate in the exchange, and state their belief that the "successful completion" of the

---

[7] The requested 45-day stay is meant to account for this period, which might involve potential administrative delays at year-end.

[8] The Steering Committee of the Ad Hoc Group includes, among others, funds and/or accounts managed or advised by Amundi Asset Management, Barings LLC, BlackRock and its subsidiaries, Eaton Vance Management, Fidelity International, Grantham, Mayo, Van Otterloo & Co. LLC, HBK Capital Management, Morgan Stanley Investment Management, Neuberger Berman, T. Rowe Price Associates, Inc., and Wellington Management. *See id.* Ex. 5.

[9] The LCSL consists of domestic Sri Lankan commercial banks and financial institutions that hold Sri Lanka's international sovereign bonds. The LCSL includes Commercial Bank of Ceylon PLC, DFCC Bank PLC, Hatton National Bank PLC, National Development Bank PLC, Nations Trust Bank PLC, Pan Asia Banking Corporation PLC, Seylan Bank PLC, LOLC Finance PLC, LOLC Financial Sector Holdings (Private) Limited, Softlogic Life Insurance PLC. *See id.* Ex. 6.

contemplated transactions will "make a substantial contribution to ensuring the sustainability of Sri Lanka's external debt in the medium term, paving the way for the country to achieve strong, sustainable, and inclusive economic growth." (*Id.* Ex. 5.) Consistent with this, the Steering Group has encouraged all other bondholders to "participate in the exchange as early as possible." (*Id.*) Similarly, all members of the LCSL plan to participate, and state that they "fully appreciate and recognise their responsibility to finance the economic recovery and look forward to fulfilling this role." (*Id.* Ex. 6.)

In addition, in its own press release today, the IMF commended Sri Lanka's "significant step forward" toward debt sustainability. Among other things, the IMF states:

> To capitalize on this momentum, ***rapid completion of the debt operation with high creditor participation would be vital for the success of the program.*** In parallel, the authorities continue to finalize other remaining debt restructuring agreements. This collective effort is key to supporting the success of Sri Lanka's debt restructuring efforts.
>
> The Sri Lanka authorities have reaffirmed their determination to persevere with their reform agenda and put the economy on a path of sustained and high growth. ***The continued support from international financial institutions and other official creditors, together with the participation of bondholders in a debt exchange consistent with debt sustainability, is necessary to underpin the success of these reform efforts.***

(*Id.* Ex. 7 (emphasis added).)

## ARGUMENT

The Court has the inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) (noting courts' "broad discretion to stay proceedings"). As the Supreme Court has explained:

> We must be on our guard against depriving the processes of justice of their suppleness of adaptation to varying conditions. ***Especially in cases of***

> ***extraordinary public moment***, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted.

*Landis v. N. Am. Co.*, 299 U.S. 248, 256 (1936) (emphasis added).

As part of exercising this discretion, courts generally consider the following factors:

> (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation, as balanced against the prejudice to the plaintiffs if the litigation is delayed, (2) the private interests of and burden on the defendants, (3) the interests of the courts, (4) the interests of persons not party to the civil litigation, and (5) the public interest.

*Fried v. Lehman Bros. Real Est. Assocs. III, L.P.*, No. 11 Civ. 4141, 2012 WL 252139, at *5 (S.D.N.Y. Jan. 25, 2012). In addition, the Court may stay proceedings in the interest of international comity. *See Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 109 F.3d 850, 854-55 (2d Cir. 1997) (hereinafter "*Pravin IV*"); *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F. Supp. 2d 198, 211-12 (S.D.N.Y. 2002).

## I. The Court Should Grant an Additional 45-Day Stay of These Proceedings.

### A. Sri Lanka Is at a Final Critical Stage of the Restructuring Process.

Sri Lanka has nearly completed the key aspects of its debt restructuring process, which will allow it to move forward toward debt sustainability. Among other things, in June 2024, Sri Lanka completed a memorandum of understanding with its official bilateral creditors. In September 2024, following extensive negotiations, it reached the AIP with private bondholder groups representing more than 50% of Sri Lanka's outstanding bonds.

This significant progress has been made possible by the Court's prior stays of proceedings. The process has taken slightly longer than expected because of the complex, multi-party nature of the negotiations. But now that Sri Lanka has formally launched the Exchange Offer and Consent Solicitation, the process is nearly complete. The Ad Hoc Group, the LCSL, and the IMF have all offered their strong support for the exchange, encouraging bondholder participation. (*See*

Alexander Decl. Exs. 5, 6, 7.) An additional 45-day stay of proceedings would allow the completion of that process, whereas an immediate judgment for HRB would severely undermine it.

### B. The Discretionary Factors Weigh Strongly in Support of a Further Stay.

As the Court recently noted, the discretionary factors "have continued throughout this entire period to weigh heavily in favor of the stay." (Nov. 2024 Opinion at 6.) That is doubly true now, with a successful conclusion of the restructuring so near at hand.

#### 1. HRB's Private Interests Are Minimal.

An additional 45-day stay of proceedings would cause HRB minimal prejudice, at most. Even if HRB does not wish to participate in a voluntary restructuring, allowing that process to play out prior to a judgment "does nothing to vitiate Hamilton's pre-existing contractual rights." (Nov. 2023 Opinion at 13-14; Doc. 73 ("U.S. Statement") at 17.) And any harm from the brief additional delay requested can be remedied by prejudgment interest. (Nov. 2024 Opinion at 6.)[10]

#### 2. An Immediate Judgment Would Have Devastating Effects on Sri Lanka.

Sri Lanka would suffer tremendous harm absent a further stay of proceedings. As the Court has previously noted, a judgment prior to the completion of debt restructuring "would likely threaten the complex debt negotiations" and would therefore also threaten "the successful economic rehabilitation of Sri Lanka." (Nov. 2023 Opinion at 11; Apr. 2024 Opinion at 6.) Indeed, a judgment for HRB would "incentivize [] other bondholders to engage in line-jumping litigation"

---

[10] Moreover, HRB's claimed interest in expedition (even assuming it is a bona fide beneficial owner of the 2022 Bonds) should be heavily discounted. HRB purports to have purchased the 2022 Bonds well after it was clear that Sri Lanka was in dire straits. And as the United States has noted, HRB is the only alleged creditor in the world to have "jump[ed] the queue" with a lawsuit against Sri Lanka, and "at an early stage in collective and ongoing negotiations." (U.S. Statement at 19, 22; Apr. 2024 Opinion at 5.) In addition, HRB's repeated attempts to bully Sri Lanka—*e.g.*, threatening to block IMF funding—and its unseemly touting of what it calls the "lucrative" business of suing a sovereign in the midst of a debt crisis, should weigh against it. (*See* Doc. 55-3; Doc. 54, at 22; Doc. 85-1, at 9.)

and to "forgo participation in voluntary restructuring." (Nov. 2023 Opinion at 11 (citing Doc. 69 ("Paris Club Br.") at 1); *see also* Apr. 2024 Opinion at 6; Paris Club Br. at 5 ("The occurrence of a judgment in favor of the plaintiff Hamilton Reserve Bank prior to the end of the debt restructuring process could potentially jeopardize the intricate ongoing negotiations."); U.S. Statement at 2 ("Hamilton Bank's request that this Court order its immediate repayment undermines these ongoing negotiations."); Doc. 90 ("Paris Club Support Letter"), at 2; Doc. 54, at 16.)

Although the restructuring process is nearly complete, things are at a critical point. Bondholders are actively considering whether to participate in the restructuring. Thus, the risks to the process are even more immediate than before—a judgment now could deter creditor participation in real-time and jeopardize the entire IMF-supported program, including the restoration of sovereign debt sustainability. (*See* Nov. 2023 Opinion at 11 (noting that "[a] breakdown in restructuring negotiations could threaten Sri Lanka's progress towards these IMF targets, its economic recovery, and the well-being of its citizenry"); Apr. 2024 Opinion at 6 ("A judgment for Hamilton would threaten the complex ongoing debt negotiations that are now at an advanced stage, thus endangering Sri Lanka's ability to reach economic stability.").)

### 3. A Stay Is in the Interest of Judicial Economy.

Judicial economy also supports the requested stay. A judgment at this time could "encourage a 'rush-to-the-courthouse' by private creditors holding Sri Lanka's sovereign debt in an attempt to secure priority" and would therefore greatly strain judicial resources. (Nov. 2023 Opinion at 10; Apr. 2024 Opinion at 6.)

### 4. Non-Party Interests Strongly Support the Requested Stay.

The Ad Hoc Group and LCSL have stated their strong support for the debt exchange, and the Ad Hoc Group press release expressly encourages all bondholders to participate. (*See* Alexander Decl. Ex. 5.) As noted above, however, a judgment for HRB would deter participation

and thus undermine the interests of these bondholders—including many U.S.-based financial institutions—who have taken a leading role in the process.

In addition, this Court has explained the risk that, with an immediate judgment, HRB may assert that it has "priority in recovery while the debt restructuring negotiations are ongoing." (Nov. 2023 Opinion at 11; *see also* Apr. 2024 Opinion at 6.) This would undermine the important comparability of treatment principle to the detriment of official and private commercial creditors alike. Such a result would be particularly unfair to the many private bondholders that—unlike HRB—are engaging in the internationally-supported restructuring process. (*See* Doc. 54, at 12.)

### 5. International Comity and U.S. Policy Interests Overwhelmingly Favor a Stay.

As before, the public interests of international comity and U.S. policy overwhelmingly support a further stay of proceedings.

As the Second Circuit has noted, international comity may warrant a stay of proceedings to facilitate a foreign sovereign's "efforts to negotiate a settlement of its unpaid debt to foreign creditors," so long as doing so is "consistent with United States government policy." *Pravin IV*, 109 F.3d at 854-55. In this case, a further stay of proceedings to facilitate Sri Lanka's debt restructuring discussions would be of the utmost importance to a U.S. partner in distress. And it would also be an important showing of comity to the various nations around the world that have invested considerable time and money in supporting the success of Sri Lanka's debt restructuring efforts. (*See* Paris Club Support Letter; Doc. 54, at 10-13; *see also* U.S. Statement at 14.)

Such a stay would be fully consistent with U.S. policy. As the United States has explained, although it has an interest generally in the enforceability of contract rights:

> ***U.S. policy is to afford sovereigns who are negotiating in good faith—as here—a limited opportunity to achieve a consensual resolution before judgments are entered or enforced against their debts.***

(U.S. Statement at 17 (emphasis added); *see also* Doc. 91 ("2d U.S. Statement") at 1.)  Sri Lanka is very near the end of that consensual debt restructuring process.  An additional 45-day stay would be of the utmost importance to completing that process and restoring debt sustainability.  While a further stay would briefly delay the enforcement of HRB's purported contract rights, a temporary pause "does nothing to vitiate" HRB's claimed contract rights and "does not force Hamilton to participate in the restructuring."  (Nov. 2023 Opinion at 13-14.)

Notably, in the Peru sovereign debt litigation, even after plaintiff's summary judgment motion had been pending for "almost eighteen months," the Second Circuit stated that the district court had discretion to grant a further stay of proceedings.  *See Pravin IV*, 109 F.3d at 855-56; *Pravin Banker Assocs., Ltd. v. Banco Popular del Peru*, 895 F. Supp. 660, 662 (S.D.N.Y. 1995).  (*See also* U.S. Statement at 21.)  For the reasons discussed above, an additional 45-day stay of proceedings here would be an entirely appropriate exercise of discretion.

## CONCLUSION

For the reasons set forth above, Sri Lanka's Motion for a Further Stay of Proceedings should be granted.

Dated:  November 26, 2024  
　　　　New York, New York

Respectfully submitted,

　s/Robert G. Houck　

Robert G. Houck  
John P. Alexander  
Benjamin A. Berringer  
CLIFFORD CHANCE US LLP  
Two Manhattan West  
375 9th Avenue  
New York, New York 10001  
212-878-8000  
robert.houck@cliffordchance.com

*Attorneys for The Democratic Socialist Republic of Sri Lanka*