# CLIFFORD
# CHANCE

**CLIFFORD CHANCE US LLP**

TWO MANHATTAN WEST
375 9TH AVENUE
NEW YORK, NY 10001

TEL +1 212 878 8000
FAX +1 212 878 8375

www.cliffordchance.com

**By ECF**

The Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street, Room 1910
New York, NY 10007

Direct Dial: +1 212 878 3224
E-mail: robert.houck@cliffordchance.com

January 31, 2025

Re:   *Hamilton Reserve Bank Ltd. v. The Democratic Socialist Republic of Sri Lanka*,
      No. 22 Civ. 5199 (DLC)

Your Honor:

We write on behalf of the Defendant The Democratic Socialist Republic of Sri Lanka ("Sri Lanka") pursuant to the Court's Order of January 22, 2025 and in opposition to the renewed motion for summary judgment by Plaintiff Hamilton Reserve Bank, Ltd. ("HRB"). In addition to Sri Lanka's previously filed opposition papers (Docs. 56, 57, 58, 59), Sri Lanka also refers to the accompanying Supplemental Declaration of Robert G. Houck dated January 31, 2025 ("Houck Supp. Decl."). For the reasons set forth in our prior papers, and as further explained herein, HRB's motion for summary judgment should be denied or deferred pending additional discovery.

## Sri Lanka's Position[1]

HRB claims that, beginning in August 2021—and continuing over the next year and more—it purchased a total of approximately $250 million in face value of Sri Lanka-issued international sovereign bonds due in July 2022 (the "Bonds").[2] HRB supposedly did so while Sri Lanka's economic condition was in very steep decline, and while the Bonds were rated well below investment grade with all the major credit ratings agencies. (*See* Doc. 56, at 5.)

We submit that it is highly unlikely that HRB—a regulated bank, not a hedge fund—made such a risky investment for its own account. Indeed, banks are subject to regulatory requirements that would, among other things, require putting aside significant capital reserves to make such an

---

[1]   This letter concerns only HRB's purported beneficial ownership of the Bonds, and so Sri Lanka briefly summarizes its position as relevant to that issue. HRB's motion for summary judgment also should be denied to the extent it seeks a ruling (i) that Sri Lanka waived sovereign immunity as to this suit; it did not (*see* Doc. 56, at 11-14); and (ii) that any judgment should include prejudgment interest at the statutory, rather than the agreed-upon contract, rate (*see id.* at 23-25).

[2]   In December 2024, Sri Lanka successfully completed a sovereign debt restructuring of all other series of international sovereign bonds, as well as virtually all of the July 2022 Bonds other than those that HRB claims to own. (*See* Doc. 133.)

**C L I F F O R D**  
**C H A N C E**

CLIFFORD CHANCE US LLP

investment. In addition, at the relevant time, HRB publicly touted its conservative approach and the safety of customer deposits, which seems totally at odds with a massive investment in the Bonds at the peak of Sri Lanka's economic crisis. In the circumstances, therefore, there is good reason to believe that HRB holds the Bonds on behalf of some third person. In that case, HRB is not the Bonds' true beneficial owner, and thus lacks standing to sue. (*See* Doc. 56, at 14-20.)

Adequately addressing this issue, however, requires meaningful discovery into HRB's claimed ownership—*e.g.,* contemporaneous internal documents concerning HRB's purported investment decision and agreements related thereto. Unfortunately, HRB has utterly failed to produce such information. Indeed, HRB produced a total of only about **20 documents**, much of which is publicly available press releases and news reports regarding Sri Lanka's financial condition. (*See* Doc. 56, at 8-10.) As to evidence of its claimed beneficial ownership, HRB purports to rely principally on (i) statements from third party brokers showing that HRB holds the Bonds with those brokers, but which, critically, ***do not show how HRB itself holds the Bonds on its own books***; and (ii) conclusory, post-dispute statements by its executives that have ***not been subject to cross-examination***, much less with relevant documents in hand. This evidence should not be taken at face value, and HRB's motion should be denied or deferred pending additional discovery.

**Matters Not Previously Addressed**

Sri Lanka writes herein to address certain new matters. *First*, HRB argued in its reply brief (Doc. 60) to preclude Sri Lanka from using the July 17, 2023 Declaration of Avinash Persaud (Doc. 57) (the "Persaud Declaration") and related exhibits. As discussed below, this argument should be rejected. *Second*, new evidence has come to light regarding HRB's purported beneficial ownership that further supports Sri Lanka's position in this matter.

**I.    HRB's Argument for Excluding Evidence Should Be Rejected.**

In its reply brief, HRB asserts that the Court should disregard the Persaud Declaration as that of an undisclosed expert. (*See* Doc. 60, at 5-6.) HRB has not filed a motion for such relief, and its argument should be rejected.

The expert disclosure rules apply only to a witness that a party "may use ***at trial*** to present evidence." Fed. R. Civ. P. 26(a)(2) (emphasis added). Prior disclosure is not required for an expert that is not intended for use at trial, *i.e.*, where the expert is used for "non-merits purposes." *See Advanced Analytics, Inc. v. Citigroup Glob. Mkts., Inc.*, 301 F.R.D. 31, 42-43 (S.D.N.Y. Mar. 26, 2014) ("Non-merits-related issues, such as the admissibility of expert testimony or whether an adversary has engaged in discovery misconduct, stand on a different footing.").

Here, because information concerning HRB's purported beneficial ownership is uniquely within HRB's control, Sri Lanka had expected to make its defense based on HRB's own documents. Sri Lanka diligently sought to obtain such documents until the end of the discovery period. Although the Court denied Sri Lanka's motion to compel, it noted that Sri Lanka could make its

**C L I F F O R D**
**C H A N C E**

CLIFFORD CHANCE US LLP

arguments in opposition to summary judgment. (*See* Doc. 56, at 8-10.) Thus, when HRB moved for summary judgment, Sri Lanka sought to establish why the requested discovery was necessary to oppose the motion and what that discovery was likely to show. *See* Fed. R. Civ. P. 56(d); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003). In this way, the Persaud Declaration serves a vital discovery-related role quite apart from any potential "use at trial." And indeed, in the circumstances—when it was not clear until the end of the discovery period that HRB would not produce the requested material—Sri Lanka could not have provided prior disclosure. *See Advanced Analytics*, 301 F.R.D. at 43 ("To conclude that expert disclosures used in connection with a Rule 702/*Daubert* motion or used for other non-merits purposes must comply with Rule 26(a)(2)'s disclosure requirements would create a standard with which compliance is impossible because the non-merits issues could not be known at the time the Rule 26(a)(2) disclosures are required.").[3]

Moreover, even assuming Rule 26(a)(2) applied, preclusion is a "drastic remedy" and is not warranted where the non-disclosure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 548 (S.D.N.Y. 2018) ("Before granting the extreme sanction of preclusion, the Court should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." (internal quotation marks and alterations omitted)). In this respect, courts generally consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (internal quotation marks and alterations omitted).

These factors all support allowing the evidence here. *First*, as discussed above, there was no apparent need for the Persaud Declaration until it became clear HRB would not provide meaningful discovery. *Second*, the evidence is of the utmost importance in assessing questions of HRB's claimed ownership. *Third*, it is not clear what, if any, prejudice HRB suffers. Indeed, HRB has not expressed any need to depose Mr. Persaud or to offer contrary expert evidence in support of its position. Instead, HRB asserts more broadly that Mr. Persaud lacks personal knowledge and that, as a factual matter, HRB is supposedly correct. (*See* Doc. 60, at 6.) *Fourth*, to the extent HRB does claim a need for further expert discovery, a short additional discovery period would address that. *See, e.g., Regalado v. Ecolab Inc.*, No. 14 Civ. 6020, 2016 WL 94139 at *3 (S.D.N.Y. Jan. 7, 2016) (permitting the party moving to strike expert testimony to instead offer a rebuttal expert); *Disabled in Action v. City of New York*, No. 16-CV-08354, 2018 WL 11243575 at *3 (S.D.N.Y. Dec. 10, 2018) (reopening discovery to depose an undisclosed expert).

Finally, HRB argues that the Court should not consider certain banking regulatory materials attached to the Houck Declaration as Exhibits 14-19. (*See* Doc. 60, at 6.) This argument also should be rejected. Indeed, it is not at all clear why HRB believes that prior production of

---

[3] Depending on what, if any, additional discovery HRB produces, Sri Lanka reserves the right to disclose an expert for use at trial in accordance with Rule 26(a)(2).

**C L I F F O R D**  CLIFFORD CHANCE US LLP
**C H A N C E**

these documents was required or how their use results in any prejudice. For one thing, these regulatory materials were not in any sense documents in Sri Lanka's "possession, custody, or control." Consistent with this, courts routinely reject arguments for excluding publicly available documents. *See, e.g., Twelve Sixty LLC v. Extreme Music Libr. Ltd.*, No. 17-CV-1479, 2020 WL 2749708, at *5 (S.D.N.Y. May 26, 2020) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties." (internal quotation marks omitted)); *Melini v. 71st Lexington Corp.*, No. 07 Civ. 701, 2009 WL 1905032, at *3 (S.D.N.Y. July 2, 2009) ("Since the plaintiff has always had the same access to these publicly available records, there is no basis for precluding them."). Moreover, the documents are offered to show the need for additional discovery under Rule 56(d), *see supra*, and in any event, are properly used for impeachment.

## II. Newly Available Evidence Further Supports Sri Lanka's Position.

Since the completion of summary judgment briefing in July 2023, new evidence has come to light that further casts doubt on HRB's claimed beneficial ownership, and thus supports Sri Lanka's position that additional discovery is warranted. This evidence is summarized below and is attached to the accompanying Supplemental Houck Declaration.[4]

### A. Financial Times Article About Benjamin Wey.

Most notably, in September 2023, the Financial Times ("FT") published a story about the controversial Benjamim Wey, whom it dubs the "mysterious 'global financier' suing Sri Lanka." (Houck Supp. Decl. Ex. 1.)[5] The article notes that "[s]omehow, a small bank based in a country with 50,000 inhabitants and GDP of under $1bn has amassed a $250mn face-value stake in a Sri Lankan bond." (*Id.*) The article recognizes that hedge funds sometimes act as "holdouts"—*i.e.*, "sniffing out vulnerable sovereign bonds, amassing a blocking stake, waiting patiently for a broader restructuring to take place, and holding out for full repayment once a country has secured debt relief from other creditors." (*Id.*) But as a small bank, HRB is differently situated:

> [T]he size of HRB's stake – and the unusual aggressiveness of its lawsuit against Sri Lanka, which began almost as soon as it defaulted in April 2022 – ***always smelled a bit fishy***.

(*Id.* (emphasis added).)

---

[4] Sri Lanka hereby incorporates this evidence into Paragraph 4 of its Response to HRB's Rule 56.1 Statement (Doc. 58).

[5] Although Sri Lanka has referred to this article in connection with its prior motions to stay proceedings (*see, e.g.*, Doc. 86, at 5), it has not had the opportunity to argue its significance in connection with HRB's motion for summary judgment.

**C L I F F O R D**  CLIFFORD CHANCE US LLP
**C H A N C E**

The article continues by noting that although Benjamin Wey "appears nowhere on the website of HRB," he appears to be the person ultimately behind HRB and its corporate parent Fintech Holdings, Ltd. (*See id.*)  Before HRB commenced this litigation, Mr. Wey apparently "had contacted several creditors about joining forces against Sri Lanka, and had even emailed a presentation laying out their case." (*Id.*)  Sri Lanka has not seen a copy of this presentation, but according to the article:

> The presentation is on ***behalf of something called Fintech Holdings***, which the document says is the parent company of Hamilton Reserve Bank but stresses that "***we need to limit public exposure of HRB as a private bank***."

(*Id.* (emphasis added).)  The presentation also includes the name of Warren Raiti, whom the article identifies as an assistant general counsel at another entity affiliated with Mr. Wey, New York Global Group. (*Id.*)

The presentation describes an early 2022 meeting in Sri Lanka between Mr. Wey (described as an "FH 'senior advisor'"), Ghassan Nasr (described as an "FH executive"), and the former governor of the Central Bank of Sri Lanka about Sri Lanka's intention to repay the Bonds, and that, in reliance on this discussion, "***we bought*** the July 2022 ISB in large quantities . . . ." (*Id.* (emphasis added).)  The presentation also includes an argument that "Fintech Holdings can block IMF payments to Sri Lanka until it is paid off," and "makes a big deal out of how 'suing a sovereign for non-debt payment can be a justified and lucrative business[.]'" (*Id.*) [6]

In sum, the FT's description of this presentation, and surrounding circumstances, indicate a high level of involvement by Mr. Wey and Fintech Holdings in HRB's purported purchase of the Bonds.  For example, the article does not describe the presentation as having been made by HRB—the Bonds' purported owner—but rather "***on behalf of something called Fintech Holdings***."  Similarly, the presentation apparently describes the purchase of the Bonds as involving not just HRB but also Fintech ("***we bought*** the July 2022 ISB").  And the presentation also indicates apparent sensitivity about the nature of HRB's claimed ownership and its potential status as a plaintiff—"***we need to limit public exposure of HRB as a private bank***."

All of this is consistent with, and corroborates, Sri Lanka's position that HRB likely holds the Bonds on behalf of some other person or entity.  Indeed, this new evidence suggests that HRB may hold the Bonds on behalf of Mr. Wey, Fintech Holdings, or some other HRB affiliate.  Taken together with the various other reasons to doubt HRB's beneficial ownership (*see* Doc. 56, at 16-20), this evidence raises even more questions about HRB's claimed ownership.

---

[6]  HRB and Fintech made a similar argument directly to Sri Lanka in a May 2022 letter. (*See* Doc. 59-25 (Houck Decl. Ex. 24).)

**C L I F F O R D**  
**C H A N C E**

CLIFFORD CHANCE US LLP

### B. Court Filings in Other Litigation.

Moreover, court filings in other litigation provide further support for Sri Lanka's position that HRB may be holding the Bonds on behalf of one or more affiliated persons. Indeed, inter-company wire transfers among HRB and its affiliates were the subject of some controversy in a New York state court lawsuit filed in July 2024. *See Grand Fame Co., Ltd. et al. v. Hamilton Reserve Bank, Ltd.*, No. 653437/2024 (Sup. Ct. N.Y. Cnty. dismissed Jul. 25, 2024). In that action, the plaintiffs alleged that HRB had improperly failed to return their deposits and, in connection therewith, plaintiffs sought an attachment in aid of an anticipated arbitration in Nevis. (Houck Supp. Decl. Ex. 2 ¶¶ 1-2.)[7]

As relevant here, the plaintiffs alleged that, in March 2022, they had opened accounts with Fintech Bank, Ltd. ("FBL"), an HRB affiliate in Labuan, Malaysia. (*Id.* Ex. 3 ¶¶ 6-7.) FBL explained to them that "because it did not yet have its own banking system, the accounts would be held at its parent bank, HRB, which housed the core banking operational systems for both banks." (*Id.* ¶ 7.) The deposited funds were then transferred to HRB, via Hamilton International Reserve Bank ("HIRB"), an HRB affiliate in Puerto Rico. (*Id.* ¶¶ 8-13.) The plaintiffs attached to their papers an FBL customer agreement effective as of June 2021, which stated, among other things:

> <u>Introducing and Custodian Account</u>. FBL is the introduction agent for its parent company, Hamilton Reserve Bank ("HRB"). **HRB is the custodian of funds held at FBL** and the provider of the banking services which are offered and made available to you by FBL. This mean, **all funds transfer by you to FBL for any transaction purposes will be held by HRB**. As such, in addition to this Agreement, you agree that the services provided to you hereunder are limited to those available at HRB, to execute any additional agreements and be legally bound by all terms and conditions, policies and practices applicable to direct customers of HRB to the same degree as if you were a principal banking customer of HRB.

(*Id.* Ex. 4 ¶ 1 (emphasis added).)

Later, in November 2022, HRB informed plaintiffs that "HRB would be migrating its banking systems back to FBL in Malaysia[.]" (*Id.* Ex. 3 ¶¶ 24-25.) After being unable to access their accounts from FBL, plaintiffs complained to FBL's regulator, the Labuan FSA. (*Id.* ¶¶ 30-31.) Soon after, the Labuan FSA "placed FBL on its business restriction list, and FBL currently remains on that business restriction list." (*Id.* ¶ 31; *see also id.* Ex. 5 (identifying FBL as having a restricted status by its Labuan regulator for "non-compliance to minimum capital and/or other

---

[7] Different HRB customers made similar allegations about HRB failing to return deposits in their proposed intervention in this action. (*See* Doc. 82.)

**CLIFFORD CHANCE**

CLIFFORD CHANCE US LLP

regulatory requirements").)  Then again in June 2023, "FBL transferred the accounts back to HRB . . . ."  (*Id.* Ex. 3 ¶ 32.)

In other words, during the time HRB claims to have purchased the Bonds (mainly 2021-2022), HRB acted as "custodian" for funds held at an affiliate bank, with which it apparently engaged in back-and-forth transfers.  This is consistent with Sri Lanka's position that HRB may be holding the purported investment in the Bonds on behalf of some other person.

## Conclusion

In sum, the evidence described in Sri Lanka's previously filed papers, as well as the new evidence described herein, shows that there are sufficiently serious questions concerning HRB's purported beneficial ownership to preclude summary judgment and, on the contrary, that additional discovery is warranted.

In particular, Sri Lanka submits that additional limited discovery is required as to the following documents, as well as an opportunity for a subsequent deposition under Rule 30(b)(6):

- HRB's 2021-2024[8] (i) audited financial statements; (ii) annual financial reports or returns; (iii) minutes and resolutions of HRB's board of directors, investment committee, or any other HRB committee or governing body authorized or required to approve investment decisions, with respect to HRB's investment decision regarding the Bonds.

- Any agreements concerning the transaction(s) in connection with HRB's interest.

- The presentation (and any cover correspondence) to Sri Lanka's creditors that is described in the 2023 FT article as having been shared by Benjamin Wey and/or Fintech Holdings (*see* Houck Supp. Decl. Ex. 1).

(Doc. 59, ¶¶ 21-27; Houck Supp. Decl. ¶¶ 9-11.)  These documents are likely to exist and likely would address the critical issue.  Without this information, HRB cannot show that, as a matter of law, it owns the Bonds, nor can Sri Lanka adequately oppose HRB's motion.[9]

Respectfully submitted,

*s/ Robert G. Houck*

---

[8] In its previously filed papers, Sri Lanka had sought documents from 2021 to 2023.  Given the passage of time, we believe that documents from 2024 should be included as well.

[9] Depending on what information is contained in the discovery requested herein, Sri Lanka reserves the right to seek additional discovery if necessary.