

Javier Bleichmar
212 789 1341 direct
212 205 3961 fax
jbleichmar@bfalaw.com

February 6, 2025

**BY ECF**

Hon. Denise Cote
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, New York 10007

Re:   *Hamilton Reserve Bank Ltd. v. The Democratic Socialist Republic of Sri Lanka*, No. 1:22-cv-05199-DLC (S.D.N.Y.)

Dear Judge Cote:

On behalf of Plaintiff Hamilton Reserve Bank Ltd. ("Plaintiff"), we respond to Defendant Sri Lanka's January 31, 2025 letter (ECF 139). As set forth below, there is no genuine dispute that Plaintiff owns the Bonds at issue, and Sri Lanka does not show that any of its purported "new" evidence or arguments raises a triable fact issue. Instead, nearly 20 months after discovery closed on June 20, 2023 (ECF 40), Sri Lanka argues that these materials justify additional discovery under Rule 56(d). Sri Lanka is wrong and merely recycles arguments the Court has already rejected (ECF 49).[1] Plaintiff's summary judgment motion should be granted.

**I.   Plaintiff Owns the Bonds at Issue**

The documentary record demonstrating Plaintiff's ownership of the Bonds is clear and undisputed, including:

- Account statements from Morgan Stanley and Interactive Brokers showing that Plaintiff purchased the Bonds and holds them under Plaintiff's own name and for its own account (ECF 46-7, 46-8 & 46-10);

- An April 24, 2023 letter from Morgan Stanley confirming that Plaintiff's account is in Plaintiff's name and "owns" the Bonds (ECF 46-6);

---

[1] In a footnote, Sri Lanka erroneously suggests that sovereign immunity provides a defense. To be clear, Sri Lanka's own opposition brief conceded that the FSIA "commercial activity" exception defeats sovereign immunity. (ECF 56 at 18 of 32.)



February 6, 2025
Page 2

- A resolution of Plaintiff's Board confirming that Plaintiff "owns" the Bonds and "acquired" them "from the public market" (ECF 46-11);

- Four declarations from Plaintiff's CFO confirming that Plaintiff is the sole owner of the Bonds, which are held by Plaintiff in its own name and for its own account (ECF 48, 52, 61, 138); the most recent, submitted on January 24, 2025, confirms Plaintiff's continuing Bond ownership (ECF 138).

These records are squarely in line with the proof of ownership that courts regularly accept at summary judgment in sovereign debt cases. *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 230 (S.D.N.Y. 2020) (granting summary judgment for plaintiffs based on account statements and CFO declaration that established beneficial ownership).

Sri Lanka largely ignores this record and offers no contrary evidence. Instead, Sri Lanka merely speculates that "there is good reason to believe that [Plaintiff] holds the Bonds on behalf of some third person" because the Bonds were a "risky investment." (ECF 139.) But as Plaintiff explained, such "speculation alone is insufficient to defeat" summary judgment, *McPherson v. Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir. 2006); Sri Lanka has failed to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015).

Further, recent events have underscored Plaintiff's Bond ownership. Sri Lanka admits in a footnote that Plaintiff's Bonds were not restructured. That is because Plaintiff holds more than 25% of the Bonds—a blocking position that prevents Sri Lanka from restructuring Plaintiff's Bonds without Plaintiff's consent. (ECF 129 at 5 of 6.) Thus, when Sri Lanka initiated its voluntary debt exchange last year, it made no attempt to restructure Plaintiff's Bonds (*id.*)— effectively recognizing Plaintiff's ownership.

To distract from its fatal lack of evidence, Sri Lanka complains about Plaintiff's document production, but this untimely complaint misses the mark because it is the result of Sri Lanka's own delay tactics and failure to pursue discovery. For one thing, Sri Lanka never served a Rule 34 request for the additional documents it now seeks.[2] For another, courts in this District have rejected other sovereigns' similar demands where the existing discovery proves ownership, as here. *See Mazzini v. Republic of Argentina*, 2005 WL 743090 at *4 (S.D.N.Y. March 31, 2005) (granting summary judgment and denying request for further "proof of ownership"), *aff'd*, 282 F. App'x 907, 909-10 (2d Cir. 2008) ("any further discovery request on this issue was properly denied"; "account statements, computer printouts of the account statements, and custodial letters" were "sufficient evidence to establish ownership of the bonds").

---

[2] Sri Lanka only requested documents "sufficient to show" Plaintiff's "ownership interest" (ECF 59-1, RFP 1). Satisfying this request, Plaintiff produced, among other things, the documents summarized above. Nothing more is required.



February 6, 2025
Page 3

Consistent with this authority, during a telephonic conference on June 23, 2023, this Court properly rejected Sri Lanka's request—made on the last day of discovery—for further discovery (ECF 49). The Court held "that no further documentation need be produced at this time" (Ex. A at 2:24-25). As relevant here, the Court noted that securities "held for the benefit for another would be held in an account reflecting that," not "an account in the plaintiff's own name" (*id.* at 5:9-11); and was "at a loss to understand how [financial statements and reports] would show ownership or lack of ownership" of the Bonds (*id.* at 5:18-21). The Court's reasoning continues to apply and defeats Sri Lanka's demands for more discovery under Rule 56(d).

## II.     Sri Lanka's "New Evidence" and Arguments Fail

### A. Rule 37(c)(1) Bars the Untimely Persaud Declaration and Related Documents Not Produced During Discovery

Sri Lanka's summary judgment and Rule 56(d) arguments largely rest on the Persaud Declaration (ECF 57). Mr. Persaud is a purported expert "retained by" Sri Lanka's counsel (ECF 57 ¶1) who offers unsupported speculation about Plaintiff's Bond ownership—without any personal knowledge and without reviewing any of Plaintiff's evidence of ownership.

Among other defects, the Persaud Declaration is barred under Rule 37(c)(1)'s automatic preclusion sanction because it is undisputed that Sri Lanka did not disclose Mr. Persaud's identity or opinions until July 17, 2023—nearly a month after discovery closed on June 20, 2023. (*See* ECF 60 at 10-12 of 16.) Sri Lanka also violated Rule 26(a)'s requirements to disclose Mr. Persaud's compensation and prior testimony (among other things). As a result, Rule 37(c)(1) mandates that Sri Lanka "is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or harmless."

Sri Lanka does not dispute that (a) Mr. Persaud is offered as an expert, and (b) Sri Lanka did not comply with Rule 26(a)'s disclosure requirements. Instead, Sri Lanka offers a novel argument that the disclosure rules do not apply to experts used for "non-merits purposes" who are "not intended for use at trial." Sri Lanka is wrong.

<u>First</u>, it is black-letter law that "[o]n a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). Given this standard, Sri Lanka cannot introduce untimely expert opinions that are concededly ***inadmissible*** at trial. Otherwise, any party opposing summary judgment could sandbag its adversary with new experts on the pretense that they would not be used "at trial."

<u>Second</u>, Sri Lanka cannot escape Rule 37 preclusion by arguing that the expert testimony would only be used for "non-merits purposes." Indeed, Sri Lanka's Rule 56(d) arguments are intertwined with the key and sole issue in dispute—Plaintiff's ownership of the Bonds. Sri Lanka even cited the Persaud Declaration in its Rule 56.1 Counterstatement (ECF 58 ¶11). To argue that the only disputed issue at summary judgment is not a "merits" issue is pure sophistry.



February 6, 2025
Page 4

  The only case Sri Lanka cites, *Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 31 (S.D.N.Y. 2014), is readily distinguishable. There, the expert had "already submitted three prior reports and provided testimony"; even then, the court largely ***rejected*** the untimely report and only considered a narrow portion responding to a *Daubert* motion. *Id.* at 41. Here, Sri Lanka did not disclose Mr. Persaud at all during discovery, and his opinions relate to the only issue in dispute. Rule 37 prevents Sri Lanka from using the untimely expert report "to oppose plaintiff's summary judgment motion or from using it in connection with any other aspect of the litigation." *F.D.I.C. v. Wrapwell Corp.*, 2000 WL 1576889, at *2 (S.D.N.Y. Oct. 23, 2000).

  Third, Sri Lanka's Rule 37 violation was neither substantially justified nor harmless, and each factor under *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006), supports preclusion:

  1. "There is no justification for [Sri Lanka's] failure to timely disclose," since "[i]t was not a secret" that Plaintiff's ownership was at issue. *Kelly v. Beliv LLC*, 2024 WL 1076217, at *7 (S.D.N.Y. Mar. 12, 2024). Sri Lanka could have disclosed Mr. Persaud during the 10-month discovery period. Indeed, Sri Lanka told the Court in the parties' September 2022 Rule 26(f) report that it would "seek to reach agreement on the timing and form of disclosures" if it determined that "disclosures under Rule 26(a)(2)" (*i.e.*, expert testimony) "may be required" (ECF 16 at 7 of 8). That Sri Lanka waited until the last day of discovery to raise a discovery dispute with the Court (ECF 41) does not justify its failure to timely disclose Mr. Persaud. *See In re Motel 6 Secs. Litig.,* 161 F. Supp. 2d 227, 243 (S.D.N.Y. 2001) (striking defendant's untimely expert affidavit and rejecting excuse that plaintiffs had stonewalled discovery requests, since defendant had sufficient time to address putative deficiencies before end of discovery).

  2. The Persaud Declaration's claimed importance supports preclusion. A party's late filing of an expert report that is critical to its case "only serves to underscore the inexcusable quality of its delayed submission." *Point Prods. A.G. v. Sony Music Ent., Inc.*, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 20, 2004).

  3. Plaintiff is clearly prejudiced by Sri Lanka's effort to delay judgment by introducing an untimely expert report after discovery closed. *See Kelly*, 2024 WL 1076217 at *8 ("significant prejudice" from untimely expert disclosure where "[s]ummary judgment briefing would essentially have to be redone" and responding party "would likely have to designate a rebuttal witness, develop rebuttal evidence, defend and take depositions, and then engage in additional motion practice, all at considerable expense").

  4. Finally, a continuance is inappropriate given that this action was filed nearly three years ago and discovery closed in June 2023. Indeed, a continuance "would only encourage [Sri Lanka and its] counsel to attempt to utilize the same tactic—filing expert declarations after the deadline to do so has passed—in future cases before this Court and others." *Id.* Thus, "exclusion of the newly offered evidence, and not a continuance of discovery, is now the proper resolution." *Point Prods.,* 2004 WL 345551 at *13.

Case 1:22-cv-05199-DLC   Document 141   Filed 02/06/25   Page 5 of 7



February 6, 2025
Page 5

In sum, preclusion is "necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger." *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988). The Persaud Declaration should be precluded under Rule 37(c)(1).[3]

### B. Sri Lanka's "New Evidence" Is Irrelevant

Contrary to Sri Lanka's assertion, its purported "new evidence" has no bearing on Plaintiff's Bond ownership. Simply put, Sri Lanka's only strategy here is delay.

#### i. *Financial Times* Article

Sri Lanka first invokes a September 8, 2023 *Financial Times* article about this case. Although Sri Lanka fails to mention it, the article was largely prompted by Sri Lanka's own accusations in its original stay motion, which is quoted at length. (ECF 140-1 at 2-3.) The article—which is neither "new" nor "evidence"— lends no support to Sri Lanka's speculative arguments about Bond ownership and does not warrant any further discovery under Rule 56(d).

First, as Sri Lanka concedes, the same article was cited in several of Sri Lanka's stay motions. (*See* ECF 86 at 5; ECF 108 n.4; ECF 127 at 7 of 17.)

Second, the article contains nothing new or relevant to Plaintiff's ownership of the Bonds. Sri Lanka highlights the article's references to Fintech Holdings, Ltd. and a presentation describing potential litigation against Sri Lanka, but Sri Lanka has known about Fintech's role since at least 2022, and Plaintiff has explained it several times:

- On May 4, 2022, Sri Lanka received a letter from Plaintiff's counsel referring to Fintech and Plaintiff. (ECF 59-25.)

- On April 17, 2023—eight months after discovery commenced—Sri Lanka requested documents "sufficient to show the relationship between [Plaintiff] and Fintech with respect to any ownership interests in the Bonds, as referenced in the May 4, 2022 Letter" (ECF 59-1, RFP No. 2);

- In May 2023, the parties conferred, and Plaintiff's counsel advised that "Hamilton has satisfied this RFP by producing Hamilton's Nevis Certificate of Incumbency stating that the Sole Shareholder of Hamilton is Fintech (HRB_024); there is no 'shared ownership interest with Fintech' with respect to the Bonds";

---

[3] Rule 37 preclusion also applies to the 140 pages of banking regulatory materials that Sri Lanka failed to produce during discovery, which are tied to Mr. Persaud's speculative arguments. (*See* ECF 56 at 24 of 32.)



February 6, 2025
Page 6

- While that should have put the matter to rest, at the June 23, 2023 Court conference, Sri Lanka's counsel argued that the May 2022 letter referring to Fintech raised "questions"; Plaintiff's counsel again confirmed that "Hamilton is the owner of the [B]onds, not its parent company Fintech."  (Ex. A at 8:5-12.)

- After Sri Lanka raised Fintech again in its July 17, 2023 opposition to summary judgment (ECF 56 at 13 of 32), Plaintiff explained again on reply that Fintech is simply Plaintiff's corporate parent (ECF 46-5); Plaintiff, not Fintech, owns the Bonds.  (ECF 60 at 12 of 16 (citing ECF 61 ¶3).)

The article adds nothing to the above record.  In short, as Plaintiff's CFO recently re-affirmed, Plaintiff—not Fintech or anyone else—is the sole owner of the Bonds at issue and holds them for its own name and for its own account.  (ECF 138 ¶3.)  No other person or entity is a beneficial owner (or has any beneficial interest) in Plaintiff's Bonds.  (*Id.*)

In addition, Sri Lanka's claim that the presentation "indicates apparent sensitivity about the nature of HRB's claimed ownership and its potential status as a plaintiff" is overblown.  Hamilton's Bond ownership and status as Plaintiff have been matters of public record since this case was filed in June 2022 (ECF 1).

Sri Lanka also asserts that the presentation describes an "early 2022 meeting in Sri Lanka" involving the then-Governor of the Central Bank of Sri Lanka (CBSL)—but Sri Lanka can hardly claim surprise about a meeting with its own officials.  Plaintiff's visit to Sri Lanka and meetings with CBSL officials were also described in Plaintiff's October 2022 Amended Complaint, which made clear that "Sri Lanka has long known that Hamilton is a significant bondholder" (ECF 23 ¶¶4-5).  The 2022 meeting underscores, not undermines, Plaintiff's Bond ownership.

### ii.  Unrelated Lawsuit Resolved Last Year

Finally, Sri Lanka cites an unrelated case filed against Plaintiff by a purported customer that was dismissed with prejudice on July 25, 2024, only 17 days after it was filed ("*Grand Fame*").

Nothing about *Grand Fame* supports "Sri Lanka's position that HRB may be holding the purported investment in the Bonds on behalf of some other person."  Like the Guzman intervention motion this Court denied in April 2024 (ECF 103), *Grand Fame* alleged that Plaintiff had refused to repay certain deposited funds.  As the Court recognized, however, such claims "do not share a common nucleus of operative fact with Hamilton's claims against Sri Lanka," which concern "a default on sovereign debt."  (*Id.* at 4-5.)

Sri Lanka argues that *Grand Fame* shows funds were transferred to Plaintiff "during the time HRB claims to have purchased the Bonds" (Ltr. at 6-7), but Sri Lanka never explains why this assertion would have any bearing on Plaintiff's Bond ownership or warrant further discovery.



February 6, 2025
Page 7

Indeed, far from disputing Plaintiff's Bond ownership, the *Grand Fame* pleading itself alleged that Plaintiff "is the beneficial owner of $250,490,000" in Bonds (ECF 140-2 ¶52).

### III.    Sri Lanka Still Fails to Satisfy Rule 56(d)

Discovery closed on June 20, 2023, nearly 20 months ago, and Sri Lanka continues to fail every element required to obtain additional discovery under Rule 56(d).  *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919 (2d Cir. 1985).

As to the first two elements, the existing record is more than sufficient to prove Plaintiff's ownership (*supra* at 1-2), while Sri Lanka merely offers generic speculation about what further discovery might show.  (ECF 60 at 12-14 of 16.)  The Court has already expressed skepticism about Sri Lanka's demand for financial statements (*supra* at 3), and Plaintiff has already produced Board materials that confirm Plaintiff's Bond ownership (ECF 46-11).  Sri Lanka's demand for a presentation described in the 2023 article (discussed above) does not change the analysis, since Sri Lanka merely states that the presentation "has been reported to describe the circumstances of purchasing the Bonds, to solicit participation in a lawsuit over the Bonds, and to have been made on behalf of Fintech Holdings."  (ECF 140 ¶10.)  None of those assertions, even if credited, could overcome the clear documentary evidence of Plaintiff's Bond ownership.  As a result, Sri Lanka fails to "show that the information sought, if discovered, would be sufficient to overcome summary judgment." *SATCOM Int'l Grp. PLC v. ORBCOMM Int'l Partners, L.P.*, 2000 WL 729110, at *23 (S.D.N.Y. June 6, 2000).

Sri Lanka also fails the third and fourth elements, since it had "ample time in which to pursue the discovery that it now claims is essential." *Burlington Coat Factory*, 769 F.2d at 927.  Indeed, the Circuit has made clear that higher scrutiny applies to a party "who has allowed months to pass unused." *Id*.  Here, Sri Lanka pursued no discovery at all for nearly eight months of the ten-month discovery period and never served Rule 34 requests for the materials it now seeks.  And crucially, Sri Lanka itself agreed to the June 20, 2023 discovery cutoff (ECF 40), then waited until the last day to request further discovery and an extension (ECF 41)—a request the Court properly denied (ECF 49).  Nearly three years after this action was filed, and nearly 20 months after discovery closed, it is too late for Sri Lanka to invoke Rule 56(d) to delay judgment.

We appreciate the Court's attention to this matter.

                                                                            Respectfully submitted,

                                                                            */s/ Javier Bleichmar*
                                                                              Javier Bleichmar