# Exhibit A

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   HAMILTON BANK RESERVE LTD.,

 4                  Plaintiff,

 5             v.                              22 Civ. 5199 (DLC)
                                               Remote Proceeding
 6   THE DEMOCRATIC SOCIALIST
     REPUBLIC OF SRI LANKA,
 7
                    Defendant.
 8
     ------------------------------x
 9                                             New York, N.Y.
                                               June 23, 2023
10                                             3:35 p.m.

11   Before:

12                      HON. DENISE L. COTE,

13                                             U.S. District Judge

14
                              APPEARANCES
15

16   BLEICHMAR FONTI & AULD LLP
          Attorneys for Plaintiff
17   BY:  EVAN A. KUBOTA

18
     CLIFFORD CHANCE US, LLP
19        Attorneys for Defendant
     BY:  ROBERT G. HOUCK
20        JOHN P. ALEXANDER

21

22

23

24

25
```

1           (The Court and all parties appearing telephonically)

2           THE DEPUTY CLERK:  Hamilton Reserve against Sri Lanka,

3  22 Civ. 5199.  I am going to ask counsel to buy or order a copy

4  of the transcript.  Why don't I ask you to do that, plaintiff's

5  counsel.  Who is going to be speaking on behalf of the

6  plaintiff today?

7           MR. KUBOTA:  Yes, your Honor.  Evan Kubota from

8  Bleichmar Fonti & Auld.  We will do that.

9           THE COURT:  Thank you so much.

10          And who will be appearing on behalf of the divest

11 today.

12          MR. HOUCK:  Good afternoon, Judge Cote.  It is Robert

13 Houck from Clifford Chance.  Today, John Alexander from

14 Clifford chance will be speaking on behalf of defendant.

15          THE COURT:  Thank you so very much.

16          MR. ALEXANDER:  Good afternoon, your Honor.

17          THE COURT:  Good afternoon.

18          I have letters of June 20th from the parties and the

19 question is whether or not further discovery is necessary with

20 respect to the ownership of the bonds.  Just give me one second

21 here, reaching for my glasses to make sure I have them at hand

22 in case I need to look at any individual representation in the

23 letters.

24          I think, having reviewed the letters, that no further

25 documentation need be produced at this time.  We have a summary

1   judgment motion due June 26 that is Monday, and I think we
2   should go ahead with that, and of course parties have the
3   opportunity under Rule 56 in opposing any motion if they need
4   further discovery and believe that's important to have to make
5   the appropriate showing.
6              Let me ask the plaintiff, do you plan to bring,
7   Mr. Kubota, a summary judgment motion?
8              MR. KUBOTA:  Yes, your Honor.  The papers are ready to
9   be filed on Monday and, as you can imagine, very short and
10  straightforward.
11             THE COURT:  OK.  Good.
12             So, having heard my preliminary ruling, Mr. Alexander,
13  did you wish to be heard?
14             MR. HOUCK:  Yes.  Thank you, your Honor.  And we
15  understand what you have advised so far.  I would just like to
16  explain a bit maybe where we are coming from and why we think
17  that additional document discovery is necessary here.
18             So, as is described a little bit in the letter from
19  plaintiff Hamilton Reserve, there have been some documents
20  produced, very few, that show account statements that Hamilton
21  holds with third-party brokers.  But the reason that we are
22  looking for more, your Honor, is that the question here is
23  whether Hamilton, on its own books, actually holds these
24  interests for its own account and we have reason to believe,
25  just as a matter of how we understand the banking industry to

1    work, is that Hamilton would be unlikely, as a regulated bank,
2    to place an investment for its own proprietary account for
3    $250 million worth of Sri Lankan bonds which, since 2020, have
4    been rated triple C or lower.  We understand that there are
5    regulatory capital requirements for banks, and beyond those
6    general requirements, Hamilton on its websites, touts the
7    safety and security of its investment stating that they only
8    invest in cash or government bonds, and by government bonds we
9    presume that means not triple C rated bonds.  And so, I just
10   wanted to explain that that is where we are coming from and
11   that's why we are seeking the additional documentation we are,
12   to get at whether it seems clear from the documentation that
13   Hamilton holds accounts that these interests are held in but we
14   would like to understand the way in which it, for its own
15   account, it so holds those interests.
16            THE COURT:  What specific documents -- and I am
17   looking at page 2 of your letter -- what specific documents are
18   going to answer that question for you?
19            MR. ALEXANDER:  Well, what we have done in our letter
20   and in our discussions with plaintiff is try to identify the
21   documents that we think would show, one way or the other, that
22   that is the case but we would think that, you know, the audited
23   financial statements, the board minutes, related to the board
24   minutes the investment committee, whatever committee it was at
25   Hamilton that made this investment, we expect there would be

1    some discussion or analysis of the fact that they are putting
2    up so much money in bonds that are rated triple C or lower, and
3    the analysis of the fact that that is an appropriate risk for
4    them to take.  If there is not, then we would suspect that it's
5    being held for some other person or entity.  But, that's the
6    type of document that would show the initial investment
7    decision to put that type of capital at risk, that's the kind
8    of document that we are seeking.
9            THE COURT:  But why wouldn't security held for the
10   benefit of another be held in an account reflecting that?  Why
11   would it be held in the account in the plaintiff's own name?
12           MR. ALEXANDER:  Well, the account is held in
13   Hamilton's own name I guess but our question, your Honor, is
14   how does Hamilton account for that itself?  So the third-party
15   may have given Hamilton funds and Hamilton took those funds and
16   invested them in a way that we would expect would be reflected
17   in the documentation we are seeking.
18           THE COURT:  So, you list here, on page 2, that you
19   wanted audited financial statements, annual financial reports.
20   Those two categories I am at a loss to understand how they
21   would show ownership or lack of ownership of the bonds.
22           MR. ALEXANDER:  Well, I guess from our perspective,
23   your Honor, what we had supposed is that if Hamilton has made
24   this investment for its own account it would put that on its
25   own books as an asset or liability but it would be reflected as

1   something that they hold and not held in some custodial

2   capacity for some other investor.

3       THE COURT:  When you hold bonds -- and counsel, thank

4   you for helping to educate me about this, but when you own or

5   hold bonds for the benefit of another, don't you hold them in a

6   separate kind of account as opposed to an account in your own

7   name?

8       MR. ALEXANDER:  Well, your Honor, certainly that would

9   be possible, we suspect that would be one way of holding them,

10  but without knowing how Hamilton actually does hold them, we

11  don't know one way or the other how Hamilton would do that.

12      THE COURT:  OK.  So, Mr. Kubota, what can you tell me

13  here?

14      MR. KUBOTA:  Sure, your Honor.  I can respond to that

15  pretty succinctly, and I think the Court got it right at the

16  very beginning, that further production is not warranted.

17      Just to unpack these issues a little bit, I think your

18  Honor immediately identify the key point which is that these

19  accounts are in Hamilton's name, it is not an FBO or for

20  benefit of situation.  The bonds are held in Hamilton's own

21  accounts, we produced not only the account statements but a

22  letter from Morgan Stanley where most of the position is held

23  confirming that Hamilton is the owner of the account so there

24  is no issue of any third-party beneficiary, nor would that make

25  any sense.  Investments are certainly not held in an account

1   under the name of someone other than the owner, that just isn't
2   how things work, and I think Mr. Alexander just recognized
3   that.  So, in our view, the existing production is more than
4   sufficient and we have actually repeatedly told Sri Lanka that
5   these accounts are held on Hamilton's own books in accounts in
6   its own name, and we have also provided a declaration from the
7   CFO saying that, which as you can imagine, is also going to be
8   repeated in our summary judgment papers.
9           THE COURT:  OK.  Thank you.
10          MR. ALEXANDER:  Your Honor, if I might?  Sorry to
11  interrupt, but can I make one further comment please, your
12  Honor?
13          THE COURT:  Is this Mr. Alexander?
14          MR. ALEXANDER:  I'm sorry.  Yes, your Honor.
15          THE COURT:  Yes.  Mr. Alexander.
16          MR. ALEXANDER:  Thank you.
17          So, I just wanted to pick up on the point from
18  Mr. Kubota.  We received a letter before the lawsuit being
19  filed.  The letter was provided to Sri Lanka by counsel for
20  Hamilton Reserve Bank and the letter said that Hamilton
21  Reserve, and its affiliate Fintech held the interests that they
22  are claiming in this case.  So that already itself is, we
23  think, evidence that there may be some other person that owns
24  these bonds whether it is Hamilton's affiliate Fintech or
25  someone else, but there are questions that we think are worth

1   exploring here in terms of who owns and how they do.

2           So, I just wanted to note that, your Honor.

3           THE COURT:  So what's the role, Mr. Kubota, of Fintech

4   in this?

5           MR. KUBOTA:  Yes, your Honor.  We have actually

6   explained this to Sri Lanka and they served a discovery request

7   on it and we responded to it and it is not an issue.  Simply

8   stated, the role is that Fintech is the shareholder of

9   Hamilton, the full shareholder.  So, the letter that

10  Mr. Alexander is referring to may have been a little imprecise

11  but the complaint is what governs here and Hamilton is the

12  owner of the bonds, not its parent company Fintech.

13          THE COURT:  OK.  So we will proceed with the summary

14  judgment motion as scheduled, and of course the defendant has

15  its right or its rights under Rule 56 if it believes further

16  discovery is necessary to make that showing in response to the

17  motion and applying the guidance given under Second Circuit

18  law.  I thank counsel for your correspondence and wish you good

19  luck.  Look forward to getting the motion.

20          Thank you very much.

21                              o0o