USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 02, 2025

24-1459-cv
Hamilton Reserve Bank v. Sri Lanka

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2024

(Argued: February 27, 2025     Decided: April 10, 2025)

Docket No. 24-1459-cv

————————

HAMILTON RESERVE BANK LTD.,

*Plaintiff-Appellee,*

JESSE GUZMAN, ULTIMATE CONCRETE, LLC, INTERCOASTAL FINANCE LTD.,

*Intervenors–Appellants,*

— v. —

THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA,

*Defendant.*

————————

B e f o r e :

LYNCH, ROBINSON, and NATHAN, *Circuit Judges.*

————————

Jesse Guzman, Ultimate Concrete LLC, and Intercoastal Finance Ltd. appeal the denial of their motion to intervene in a suit brought by Hamilton Reserve Bank against the Democratic Socialist Republic of Sri Lanka. They argue that the district court erred when it applied a "common nucleus of operative fact" standard to conclude that it lacked supplemental jurisdiction over their claims under 28 U.S.C. § 1367(a). They contend that that analysis "ignored the well-established principle that a court *necessarily* possesses supplemental jurisdiction over intervention claims when the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2) are met." Appellants' Br. 8 (underlining omitted). Because their claims met the Rule 24(a)(2) standard, they argue, their motion to intervene should have been granted.

We disagree. Section 1367(a) explicitly sets out the requirements for supplemental jurisdiction over "claims that involve the . . . intervention of additional parties." That provision grants a district court supplemental jurisdiction over claims that "derive from a common nucleus of operative fact" shared with other claims over which the district court has jurisdiction. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006), quoting *Promise v. First American Artificial Flowers, Inc.*, 943 F.2d 251, 254 (2d Cir. 1991); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025). It may be true that claims that meet the standard for intervention as of right under Rule 24(a)(2) will often also meet that standard. But ultimately, Section 1367(a) – not the Federal Rules of Civil Procedure – defines the boundaries of a federal court's supplemental jurisdiction over a would-be intervenor's claims. As the Rules explicitly state, a Federal Rule of Civil Procedure does not "extend . . . the jurisdiction of the district courts." Fed. R. Civ. P. 82. Thus, the district court applied the correct standard when it dismissed Appellants' claims here. And because Appellants did not allege claims that share a "common nucleus of operative fact" with Hamilton Reserve Bank's claims against Sri Lanka, the district court correctly concluded that it lacked jurisdiction over those claims. Accordingly, we **AFFIRM** the district court's order denying intervention.

———————

GRANT L. JOHNSON, McKool Smith P.C., New York, NY (James H. Smith, McKool Smith P.C., New York, NY, and Robert L. Edwards, Gordon Davis Johnson & Shane P.C., El Paso, TX, *on the brief*), *for Intervenors-Appellants*.

TOM M. FINI, Catafago Fini LLP, New York, NY, *for Plaintiff-Appellee*.

––––––––––––––

GERARD E. LYNCH, *Circuit Judge*:

Hamilton Reserve Bank, the Appellee in this case, is the beneficial owner of $250,490,000 in Sri Lankan government bonds that matured on July 25, 2022. When Sri Lanka refused to pay on the bonds, Hamilton sued its government in the United States District Court for the Southern District of New York.

Over a year and a half later, after discovery had concluded, Jesse Guzman, Ultimate Concrete LLC, and Intercoastal Finance Ltd. (collectively, "Appellants") moved to intervene, in order to assert claims that Hamilton had defrauded them and converted their property when it refused to permit them to withdraw funds that had been deposited by Ultimate Concrete (a company wholly owned by Guzman) into a Hamilton account held by Intercoastal Finance (also a Guzman company). They alleged that they have a property interest in the Sri Lankan bonds because, according to them, Hamilton purchased the bonds using (in part)

3

their deposited funds. The district court denied the motion, holding that it lacked

jurisdiction over Appellants' claims because Appellants had failed to show that

those claims derived from a "common nucleus of operative fact" shared with

Hamilton's claims against Sri Lanka, as required to support supplemental

jurisdiction under 28 U.S.C. § 1367(a). *Hamilton Reserve Bank Ltd. v. Democratic*

*Socialist Republic of Sri Lanka*, 22-cv-5199, 2024 WL 1743423, at *2 (S.D.N.Y. Apr.

23, 2024).

Appellants now argue that the district court erred when it applied the

"common nucleus of operative fact" standard to conclude that it lacked

supplemental jurisdiction over their claims. We disagree. The "common nucleus

of operative fact" standard is the correct standard for evaluating supplemental

jurisdiction over claims under Section 1367(a). *See Royal Canin U.S.A., Inc. v.*

*Wullschleger*, 604 U.S. 22, 31 (2025); *Achtman v. Kirby, McInerney & Squire, LLP*, 464

F.3d 328, 335 (2d Cir. 2006). The statutory text and structure make clear that that

standard applies to "claims that involve the . . . intervention of additional

parties" exactly as it applies to other claims subject to supplemental jurisdiction

under that section. 28 U.S.C. § 1367(a). Thus, the district court did not err when it

4

applied that standard here. And because Appellants' claims indeed do not share a common nucleus of operative fact with Hamilton's claims against Sri Lanka, the district court correctly concluded that it lacked jurisdiction over those claims.

We therefore AFFIRM the district court's order denying Appellants' motion to intervene.

## BACKGROUND

### I.    Factual Background

#### A.    *Hamilton's investment in Sri Lankan bonds*

In July 2012, Sri Lanka issued $1 billion in 5.875% international sovereign bonds. Under the terms of the bonds, bondholders were supposed to receive semi-annual interest payments, and the principal was to be repaid on July 25, 2022.

In August 2021, Hamilton, a St. Kitts and Nevis company with its principal place of business in San Juan, Puerto Rico, began to acquire some of those bonds. By the end of 2021, it had invested $143 million in principal in the bonds. It acquired even more of the bonds in 2022, relying on assurances from the Central Bank of Sri Lanka that the country's bond obligations would be paid on time and

in full in July 2022. By April 5, 2022, Hamilton held almost $243 million in principal in the bonds.

On April 12, 2022, Sri Lanka declared a moratorium on principal and interest payments on its external debt, including the bonds held by Hamilton. Following that announcement, it ceased making payments on the bonds, and it failed to pay either the principal or the interest owed when the bonds matured on July 25, 2022.

### B.    *Appellants' banking relationship with Hamilton*

Jesse Guzman is a New Mexico resident and the sole owner of Intercoastal Finance, Ltd., a company organized in Belize, and of Ultimate Concrete, LLC, a Texas company with its principal place of business in Texas.

Guzman, Intercoastal, and Ultimate Concrete allege that they established a banking relationship with Hamilton on October 12, 2021. On December 9, 2021, they wired $50 million to a Hamilton account in the name of Intercoastal from a Bank of America account in the name of Ultimate Concrete. Hamilton returned the money five days later. The next day, they again wired $50 million to

Hamilton, this time through Hamilton's San Juan branch. That time, the money was not returned.

In May 2022, Appellants began requesting to withdraw a portion of the $50 million held in the Intercoastal account. In June 2022, $200,000 was returned to them. However, they allege that when they requested to withdraw another $27 million later that month, Hamilton responded with "a series of endless questions and a request for documents and information," rather than releasing the money. App'x at 108. Initially, Hamilton's questions and requests came from an account representative, Oksana Williams. But eventually Hamilton required Appellants to deal directly with its compliance department, which communicated only through email. They allege that from that point forward, even though they complied fully with Hamilton's demands, the bank refused their withdrawal requests, citing "compliance issues." Appellants' Br. 1. As of July 2022, Hamilton confirmed that the value of Intercoastal's account was over $50.2 million.

Appellants allege on information and belief that Hamilton used their full $50 million deposit, plus interest, to purchase some of the Sri Lankan bonds in Fall 2021.

## II.    Procedural Background

On June 21, 2022, just over two months after Sri Lanka announced the moratorium on payments on external debt and approximately one month before the bonds matured on July 25, 2022, Hamilton sued Sri Lanka in federal district court in the Southern District of New York. Hamilton's October 13, 2022, amended complaint alleges a single breach of contract claim based on Sri Lanka's failure to pay the bonds.

The suit went forward apace for the next year and a half. Sri Lanka moved to dismiss the amended complaint on November 4, 2022, and the district court denied the motion on March 24, 2023. A June 20, 2023, deadline was set for the end of discovery, and on June 26, 2023, Hamilton moved for summary judgment. Just under a month later, Sri Lanka moved to stay the proceedings, in light of an international effort to restructure the debt. On November 1, 2023, the Court stayed the action through February 29, 2024.

On February 29, 2024 (the same day the stay was set to be lifted[1]), Guzman, Intercoastal, and Ultimate Concrete moved to intervene in the suit. They asserted claims for conversion and fraud against Hamilton, based on Hamilton's refusal to permit their requested withdrawals. Because Hamilton acquired some of the bonds between August and December 2021, around the time when they made their $50 million deposit, they alleged that that deposit was "misappropriated" to fund the purchase of the bonds. App'x at 109. As a result, they argued, they had a sufficient property interest in the bonds to justify intervention as of right under Federal Rule of Civil Procedure 24(a). Hamilton opposed the motion.

On April 23, 2024, the district court denied the motion, holding that Appellants had failed to demonstrate that the court had subject matter jurisdiction over their complaint. *Hamilton Reserve Bank*, 2024 WL 1743423, at *1-2. The court noted that it had jurisdiction over the initial suit under 28 U.S.C. § 1330(a), which provides that district courts "shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a

---

[1] Ultimately, the stay was extended through January 15, 2025. *See* Opinion and Order, No. 22 Civ. 5199 (S.D.N.Y. Dec. 20, 2024), ECF No. 132. Litigation has now resumed, and Hamilton has renewed its motion for summary judgment. *See* Letter, No. 22 Civ. 5199 (S.D.N.Y. Jan. 17, 2025), ECF No. 135.

foreign state" so long as that foreign state is not entitled to immunity. *See Hamilton Reserve Bank,* 2024 WL 1743423, at *1. It further observed that under 28 U.S.C. § 1367(a), a district court may exercise supplemental jurisdiction over claims by would-be intervenors "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Id.,* quoting 28 U.S.C. § 1367(a). Under that provision, it held, only claims that "derive from a common nucleus of operative fact" are susceptible to supplemental jurisdiction.  *Id.,* quoting *Achtman,* 464 F.3d at 335.[2]

But according to the district court, Appellants' "claims against Hamilton do not share a common nucleus of operative fact with Hamilton's claims against Sri Lanka," because Hamilton's claims "concern[] a default on sovereign debt and, in connection with the stay of the litigation, an international effort to restructure that debt," while Appellants' "claims against Hamilton arise from their deposit of funds with Hamilton and Hamilton's refusal to repay deposited

---

[2] Appellants' claims do not raise a question of federal law, and diversity jurisdiction is lacking because both Intercoastal and Hamilton are citizens of foreign states. "[T]he presence of aliens on two sides of a case destroys diversity jurisdiction." *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.,* 875 F.2d 388, 391 (2d Cir. 1989), quoting *Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 790 (2d Cir. 1980); *see also Mazaya Trading Co. v. Li & Fung Ltd.,* 833 F. App'x 841, 843 (2d Cir. 2020) (same).

funds to the account holder." *Id.* at *2. As a result, the district court concluded

that it lacked supplemental jurisdiction over Appellants' claims.

Guzman, Intercoastal, and Ultimate Concrete now appeal, arguing that the

district court applied the wrong standard and that, in any event, their claims *do*

share a "common nucleus of operative fact" with Hamilton's claim against Sri

Lanka.

## DISCUSSION

## I.  Standard of Review

The parties disagree over the proper standard of review in this case.

Hamilton urges us to review the district court's decision that it lacked

supplemental jurisdiction over Appellants' claims for abuse of discretion.

Appellants counter that while the denial of their motion to intervene may be

reviewed for abuse of discretion, the district court's purely legal decision

regarding whether it had jurisdiction to exercise over their claims under Section

1367 should be reviewed *de novo.*

Appellants are correct. There are some circumstances under which we

review a district court's decision regarding jurisdiction under Section 1367 for

abuse of discretion. For example, Section 1367(c) permits a district court to

decline to exercise supplemental jurisdiction on the basis of certain factors, and

we review a district court's weighing of those factors under the deferential abuse

of discretion standard. *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234,

246 (2d Cir. 2011). But where, as here, we review a district court's evaluation of

whether it *has* supplemental jurisdiction under Section 1367(a) in the first place,

we review the factual findings underpinning that decision for clear error and the

legal conclusions *de novo*. *See Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004).

## II. The district court applied the correct "common nucleus of operative fact" standard to determine whether it had jurisdiction under Section 1367(a).

"The district courts of the United States . . . are courts of limited

jurisdiction. They possess only that power authorized by Constitution and

statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005)

(internal quotation marks omitted). "In order to provide a federal forum for

plaintiffs who seek to vindicate federal rights, Congress has conferred on the

district courts original jurisdiction in federal-question cases—civil actions that

arise under the Constitution, laws, or treaties of the United States." *Id.*, citing 28

U.S.C. § 1331. "In order to provide a neutral forum for what have come to be

known as diversity cases, Congress also has granted district courts original

jurisdiction in civil actions between citizens of different States, between U.S.

citizens and foreign citizens, or by foreign states against U.S. citizens." *Id.*, citing

28 U.S.C. § 1332.

Prior to 1990, however, there was no similar statute granting district courts

"supplemental" jurisdiction over claims that did not have an independent basis

for federal jurisdiction but were so closely related to other claims that did have

such a basis that efficiency demanded they be adjudicated together. 13D Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3567 (3d ed.

2024). Instead, "[s]upplemental jurisdiction developed for well over a century

through case law." *Id.* Under that case law, "the [Supreme] Court had recognized

a presumption that claims sharing a common nucleus of operative fact with a

jurisdiction-invoking claim would invoke supplemental jurisdiction unless

Congress indicated a contrary intent." *Id.*, citing *Aldinger v. Howard*, 427 U.S. 1

(1976), and *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365 (1978).

In 1989, however, "the Court reversed th[at] presumption[] and declared

that supplemental jurisdiction could be upheld only if Congress had made an

affirmative grant of jurisdiction." *Id.,* citing *Finley v. United States,* 490 U.S. 545, 551 (1989). Because Congress had never passed a general law granting supplemental jurisdiction over non-federal claims, the *Finley* decision threatened to undermine all exercises of supplemental jurisdiction that had been recognized to date. *Id.*

In response, Congress quickly passed the Judicial Improvements Act, which included a new statutory grant of supplemental jurisdiction, ultimately codified in Section 1367. *Id.; see also* 28 U.S.C. § 1367, Pub. L. No. 101–650, § 310, 104 Stat 5089, 5113-14 (1990).  That legislation provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The statute also clarifies that "[s]uch supplemental jurisdiction shall include claims that involve the . . . intervention of additional parties." *Id.*

Since the Judicial Improvements Act took effect, "we have held that disputes are part of the 'same case or controversy' within [Section] 1367 when they derive from a common nucleus of operative fact." *Achtman*, 464 F.3d at 335 (internal quotation marks omitted). The Supreme Court has done the same, holding that under Section 1367, "[t]he federal court has supplemental jurisdiction over state-law claims sharing a common nucleus of operative fact with the federal-law ones." *Royal Canin*, 604 U.S. at 31 (internal quotation marks omitted). Thus, when a district court evaluates whether certain claims are part of the same "case or controversy" as other claims before the district court, such that they are subject to supplemental jurisdiction under Section 1367, the "common nucleus of operative fact" standard applies.

Nevertheless, Appellants argue that courts in this circuit and others have carved out a different test specifically for intervenor claims, pointing to the allegedly "well-established principle that a court *necessarily* possesses supplemental jurisdiction over intervention claims when the requirements for intervention as of right under Fed. R. Civ. P. 24(a)(2) are met."[3] Appellants' Br. 8,

---

[3] Rule 24(a)(2) requires that "[o]n timely motion, the [district] court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that

10-11 (underlining omitted), citing *Md. Cas. Co. v. W.R. Grace & Co.*, No. 88 Civ.

4337, 1996 WL 34154, at *1 (S.D.N.Y. Jan. 30, 1996); *Mut. Fire, Marine & Inland Ins.*

*Co. v. Adler*, 726 F. Supp. 478, 481 (S.D.N.Y. 1989); *York Rsch. Corp. v. Landgarten*,

No. 89 Civ. 5556, 1992 WL 373268, at *1 (S.D.N.Y. 1992); *Grace United Methodist*

*Church v. City of Cheyenne*, 451 F.3d 643, 673 (10th Cir. 2006); *United States v.*

*Mitchell*, No. 7 Civ. 150, 2008 WL 11454765, at *2 (S.D. Ohio July 22, 2008).

It is important to note, however, that Appellants' assertedly "well-

established principle" predates the codification of Section 1367 in 1990. *See, e.g.,*

*Mut. Fire, Marine & Inland Ins. Co.*, 726 F. Supp. at 481. That is a problem for

Appellants' argument, because the Supreme Court has cautioned that courts

should not assume that Section 1367 "did no more than . . . to codify the existing

state of the law of supplemental jurisdiction." *Exxon Mobil,* 545 U.S. at 558.

Instead, district courts have been instructed to "examine the statute's text in light

of context, structure, and related statutory provisions." *Id.* And nothing in the

---

is the subject of the action, and is so situated that disposing of the action may as a practical
matter impair or impede the movant's ability to protect its interest, unless existing parties
adequately represent that interest." Fed. R. Civ. P. 24(a)(2). To meet this standard, the
interest alleged must be "direct, substantial, and legally protectable." *Wash. Elec. Co–op.,*
*Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *see also XL Specialty Ins.*
*Co. v. Lakian*, 632 F. App'x 667, 669 (2d Cir. 2015).

text, context, or structure of Section 1367 supports Appellants' proposed approach to intervenor claims here. The text and structure of Section 1367(a) make no distinction between intervenor claims and other non-federal claims: the "same case or controversy" language applies to all claims that require supplemental jurisdiction to be heard in federal court. 28 U.S.C. § 1367(a). Moreover, the Federal Rules of Civil Procedure expressly provide that those Rules (of course including Rule 24) "do not extend or limit the jurisdiction of the district courts." Fed. R. Civ. P. 82. Thus, there is no reason to think that a special standard of supplemental jurisdiction applies solely to intervenor claims under Rule 24(a)(2), distinct from the standard applied under Section 1367(a) to all other claims that, under that statute, are subject to the "common nucleus" standard.

The cases Appellants cite offer nothing to overcome that deficit, because they all either are or rely on pre-1990 case law. For example, *Mutual Fire, Marine, & Inland Insurance Co.* pre-dates Section 1367, 726 F. Supp. at 479, and *Maryland Casualty Co.* cites that case without engaging substantively with the intervening change in the law, 1996 WL 34154, at *1. *York Research Corporation* does the same. 1992 WL 373268, at *1-2. And Appellants' two out-of-circuit cases, *Grace United*

*Methodist Church* and *Mitchell*, share that problem as well. In *Grace United Methodist Church*, the Tenth Circuit explicitly assumed that Section 1367 merely codified its existing case law, without tying that assumption in any way to the statutory text. 451 F.3d at 673. *Mitchell*, in turn, did not even mention Section 1367. *Mitchell*, 2008 WL 11454765, at *2. Given the Supreme Court's instructions in *Exxon Mobil*, those cases do not change our conclusion here.

Ultimately, it may be true that "[i]ntervention as of right under Rule 24(a) normally suffices to demonstrate [supplemental] jurisdiction." *York Rsch. Corp.*, 1992 WL 373268, at *1. In general, someone who can show that they have a direct interest in the property or transaction at issue in a case that will be impaired or impeded if the case is decided without them, as required under Rule 24(a)(2), would also seem to have a high likelihood of showing a "common nucleus of operative fact" between their claim and the existing case, as required under Section 1367. But even acknowledging that likelihood, the standard for supplemental jurisdiction under Section 1367 is still the "common nucleus" standard – not Rule 24(a)(2)'s interest test.  *See Royal Canin*, 604 U.S. at 31;

*Achtman*, 464 F.3d at 335. Thus, the district court applied the correct standard in this case.

### III.   The district court correctly concluded it lacked jurisdiction under Section 1367(a).

Appellants argue in the alternative that even if the district court applied the correct standard, it nevertheless applied it incorrectly, because they have demonstrated a "common nucleus of operative fact" between their claims and Hamilton's suit against Sri Lanka. Again, we disagree.

"In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court.'" *Achtman*, 464 F.3d at 335, quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Id.*, quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004).

Appellants argue that the alleged use of their deposits to purchase the bonds entitles them to direct payment under the bonds, via a constructive trust

19

theory. As a result, they argue, they too will have to prove Sri Lanka's liability to

Hamilton to vindicate their claims, causing their claims to overlap substantially

with Hamilton's.

Even assuming for the sake of argument that Appellants' legal theory is

tenable,[4] the facts necessary to prove Appellants' claims – and the relationship

between those claims and the bonds – are still almost entirely unrelated to the

facts relevant to the underlying case. Appellants' complaint alleges a long list of

---

[4] It almost certainly is not. "When a customer deposits funds, the bank ordinarily becomes the owner of the funds and consequently has the right to use the funds . . . [to] help the bank earn profits (though the customer retains the right, for example, to withdraw funds)." *Shaw v. United States*, 580 U.S. 63, 66 (2016). Essentially, "[a] deposit establishes a debtor-creditor relationship between the bank and the depositor in which the former becomes indebted to the latter for the amount of the deposit." *In re Refco Sec. Litig.*, 759 F. Supp. 2d 301, 328 (S.D.N.Y. 2010). The depositor is not entitled to the profits earned by the bank, even if those profits could in theory be traceable to his deposited funds. Indeed, "[b]ecause money is fungible, identifying the use of borrowed funds" – which is what Appellants' deposits became, once they were entrusted to Hamilton – "is virtually impossible." *Est. of Newman v. Comm'r*, 934 F.2d 426, 431 (2d Cir. 1991). As a result, "[a] deposit account with a banking institution does not generally create a trust relationship." *In re Carrozzella & Richardson*, 237 B.R. 536, 541 (Bankr. D. Conn. 1999); *see also* 11 Am. Jur. 2d Banks and Financial Institutions § 1084 (2025).

Here, Appellants have alleged nothing to suggest that they established anything other than a traditional banking relationship with Hamilton, and their Customer Account Agreement reflects precisely such a relationship. Thus, the fact that they believe their funds are being withheld on pretext – specifically, to cover the fact that Hamilton made a so-far fruitless investment in the bonds that are the subject of the underlying case here – in all likelihood does not transform their right to withdraw their deposits into a constructive trust entitling them to payment under the bonds themselves.

financial transactions and interactions with Hamilton employees that have nothing to do with the bonds. In fact, only the final two paragraphs of their complaint's factual recitations even mention the bonds. And the wrongs alleged in the two complaints are entirely different: the essence of Appellants' claim is that Hamilton refuses to pay its debt to Appellants; the essence of Hamilton's claim is that Sri Lanka refuses to pay its debt to Hamilton. Thus, it is clear on the face of Appellants' complaint that the facts underlying their claims do not "*substantially* overlap[]" with the facts relevant to Hamilton's case against Sri Lanka. *Achtman*, 464 F.3d at 335 (emphasis added). Nor would that case "necessarily [bring] the facts underlying [Appellants'] state claim[s] before the court." *Id.* Thus, the district court properly concluded that Appellants' claims lacked a "common nucleus of operative fact" with the claims in the underlying litigation and that, as a result, it lacked subject matter jurisdiction under Section 1367.

## CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.