June 6, 2025

**BY ECF**

Hon. Denise Cote
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, New York 10007

Re:  *Hamilton Reserve Bank Ltd. v. The Democratic Socialist Republic of Sri Lanka*,
  No. 1:22-cv-05199-DLC (S.D.N.Y.)

Dear Judge Cote:

 Counsel for Plaintiff Hamilton Reserve Bank Ltd. ("Plaintiff" or "Hamilton") and Defendant the Democratic Socialist Republic of Sri Lanka ("Sri Lanka") respectfully submit this joint status letter pursuant to the Court's April 24, 2025 Order (ECF 143).

**Plaintiff's Statement**

**I. Hamilton Owns the Bonds**

 Hamilton has produced all documents responsive to the requests on page 7 of Sri Lanka's January 31, 2025 letter (ECF 139). These documents and Hamilton's prior productions conclusively prove that Hamilton owns the Bonds. Nonetheless, Sri Lanka—citing no contrary evidence—attempts to put Hamilton on trial to waste time and delay judgment in this three-year-old action. There is no basis for further discovery. Summary judgment is warranted.

 **a. Hamilton's Additional Production Confirms That It Owns the Bonds**

 The additional documents confirm Hamilton's ownership of the Bonds.

 First, on May 6, Hamilton produced financial statements for 2021, 2022 and 2023.[1] These financial statements conclusively prove that Hamilton—in the words of Sri Lanka and its "expert"–holds the Bonds "for its own account" and "own[s] this asset." Specifically, Sri Lanka's counsel has stated that "if Hamilton has made this investment for its own account it would put that on its own books as an asset or liability." (Ex. 1 (June 23, 2023 Tr.) at 5:22-23.)

 It did: Hamilton's financial statements confirm that the Bonds are held on Hamilton's books as an asset of Hamilton. For example, the audited 2021 financial statements address Hamilton's position in the Bonds, Sri Lanka's default and this litigation (Ex. 2, HRB_144 at 146).[2]

---

[1] Financial statements for 2024 are not yet available.

[2] Hamilton has filed redacted excerpts of the financial statements given the presence of non-public financial information unrelated to the issues in this case. Hamilton will provide unredacted versions for *in camera* review.

June 6, 2025
Page 2

The following note in the financial statements expressly discusses Hamilton's Bond position:

> As of December 31, 2021, **the Bank's investments in debt securities** amounting to $122,620,140 **consisted of sovereign bonds issued by the Republic of Sri Lanka**. The bonds had maturity dates of January 18, 2022 and July 25, 2022. Subsequent to December 31, 2021, the Bank collected the principal balance of bonds maturing on January 18, 2022, with a face value of $1,000,000 and carrying amount of $901,960. The Bank also collected the semi-annual interest due in January 2022 on the July 25, 2022 bonds. **In July 2022, the Republic of Sri Lanka delayed payment of principal and interest on the bonds maturing on July 25, 2022, with a face value of $143,960,000 and carrying value of $121,718,180. The Bank filed suit against Sri Lanka** in the United States District Court for the Southern District of New York for breach of contract. The Bank seeks compensatory damages in the amount of unpaid principal of $250,190,000 (which includes purchases subsequent to December 31, 2021) and accrued interest of $7,349,331 (as of July 25, 2022) on the bonds, plus interest that continues to accrue daily on the Bank's bonds and pre-judgment and post-judgment interest, costs, attorneys' fees, and such other and further legal and equitable relief as the Court may deem just and proper.

(*Id.*, HRB_144 at -164 (emphasis added).)  Likewise, the 2022 and 2023 financial statements confirm that "**Hamilton Reserve Bank Ltd. owns** a long term investment in the Sri Lanka Government International Bonds, specifically the Sri Lanka 5 7/8 07/25/22 sovereign bond issue [*i.e.*, the Bonds]" and include a long-term receivable for the principal amount of the Bonds ($250.49 million as of December 31, 2023).  (Ex. 3, HRB_166 at -176-77 (emphasis added).)

Further, Sri Lanka's purported expert, Mr. Persaud, has asserted that "[i]f, for some reason, HRB did own this asset, its poor and worsening credit and liquidity would have created substantial issues that would be identified by their external auditors.  The position would be discussed in the notes to their audited annual reports . . . ."  (ECF 57 ¶24.)

It was.  As set forth above, Hamilton's financial statement notes extensively discuss the Bonds, issues with their credit rating, and the pending litigation.  Similarly, Hamilton's 2022 and 2023 financial statements address this litigation and management's consideration of whether to record an allowance for credit losses on the Bonds, including with respect to "current conditions affecting the Sri Lanka sovereign's creditworthiness."  (HRB_166 at -176-77.)

Second, Sri Lanka requested "minutes and resolutions of HRB's board of directors, investment committee, or any other HRB committee or governing body authorized or required to approve investment decisions, with respect to HRB's investment decision regarding the Bonds." (ECF 139 at 7.)  Hamilton has produced all such documents that exist, including a Board resolution confirming that it "owns" the Bonds (ECF 46-11).  It has confirmed in writing that there are no additional minutes or resolutions from Hamilton's Board, committee or any other governing body concerning the Bonds.

Case 1:22-cv-05199-DLC    Document 147    Filed 06/06/25    Page 3 of 8


June 6, 2025
Page 3

  <u>Third</u>, Sri Lanka requested any "agreements concerning the transaction(s) in connection with HRB's interest." (ECF 139 at 7.) Hamilton has confirmed that no such agreements exist.

  <u>Fourth</u>, Sri Lanka demanded a presentation apparently transmitted from one non-party to another non-party discussed in a September 8, 2023 *Financial Times* article. Hamilton has produced two versions of an April 27, 2022 memorandum that contains language quoted in the article. These documents again confirm Hamilton's ownership of the Bonds. For example, one version states that Hamilton "***is the holder*** of the sovereign bonds," that "we invested in the July 2022 ISB [i.e., the Bonds] in large quantities," and that "[w]e currently hold these July ISB positions in our account in the U.S." (HRB_184 at -187, -190, -192 (emphasis added).)

### b. Hamilton's Prior Production Confirms That It Owns the Bonds

  As the Court has recognized, Hamilton previously provided "evidence of beneficial ownership" (ECF 143 at 3), including:

- Account statements from Morgan Stanley and Interactive Brokers showing that Hamilton purchased the Bonds and holds them under Hamilton's own name and for its own account (ECF 46-7, 46-8 & 46-10);

- An April 24, 2023 letter from Morgan Stanley confirming that Hamilton's account is in Hamilton's name and "owns" the Bonds (ECF 46-6);

- A resolution of Hamilton's Board confirming that Hamilton "owns" the Bonds and "acquired" them "from the public market" (ECF 46-11);

- Four declarations from Hamilton's CFO, including from January 2025, confirming that Hamilton is the "sole owner" of the Bonds and "holds them in its own name and for its own account" (ECF 48, 52, 61, 138).

## II. There Is No Genuine Dispute as to Hamilton's Bond Ownership

  The evidence described above establishes Hamilton's Bond ownership. As the Second Circuit and courts in this District have repeatedly held, "account statements, computer printouts of the account statements, and custodial letters" are "sufficient evidence to establish ownership of the bonds." *Mazzini v. Republic of Argentina*, 282 F. App'x 907, 909-10 (2d Cir. 2008).[3]

  By contrast, Sri Lanka has never provided ***any*** factual basis for disputing Hamilton's Bond ownership and there is zero evidence to the contrary.

---

[3] *See also NML Cap., Ltd. v. Republic of Argentina*, 2011 WL 4529332, at *1, *3 (S.D.N.Y. Sept. 28, 2011) ("plaintiff has adequately demonstrated through account statements from JP Morgan that it owned the beneficial interests"); *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 230 (S.D.N.Y. 2020) (granting summary judgment for plaintiffs based on account statements and CFO declaration that established beneficial ownership).

June 6, 2025
Page 4

Sri Lanka apparently speculates that an unidentified third party somehow owns the Bonds—contrary to all evidence, including that the Bonds are (1) held on Hamilton's balance sheet as an asset of Hamilton; (2) extensively discussed in Hamilton's financial statement notes; (3) held in an account solely under Hamilton's name, as shown in the account statements and other documents; and (4) discussed in a resolution of Hamilton's Board.

Sri Lanka offers no evidence in support of its speculation, which is just another pretext for further delay. As the Court has noted, securities "held for the benefit for another would be held in an account reflecting that," not "an account in the plaintiff's own name" (Ex. 1 at 5:9-11). Likewise, securities held for a third party would not be held on Hamilton's balance sheet and discussed in its financial statements and Board materials.

Given the undisputed facts and documentary evidence, Sri Lanka's "bald assertion, completely unsupported by evidence," that Hamilton is "not the beneficial owner of" the Bonds, despite its name being "on the [account statements]," cannot prevent summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (affirming summary judgment for plaintiff and rejecting defendants' "implausible claim" that person named on deed "was not the beneficial owner of the property").

## III. Sri Lanka's Demands For Further Discovery Seek Irrelevant Information

Unable to raise any genuine issue as to Hamilton's Bond ownership, Sri Lanka apparently intends to raise purported "deficiencies" in Hamilton's production and demand yet more discovery. Sri Lanka is wrong on both counts.

<u>First</u>, Hamilton's production is complete. There are no "deficiencies":

- Sri Lanka has complained that Hamilton's 2022 and 2023 financial statements are unaudited, but as Hamilton has explained, the audited statements do not yet exist because Hamilton's auditor has been unable to complete the audit ***due to the pending litigation caused by Sri Lanka's default***. That should be no surprise, since the Bonds do not trade, and Sri Lanka's conduct and this litigation renders their value uncertain. The fact that Hamilton's 2022 and 2023 financial statements are unaudited thus confirms Hamilton's ownership of the Bonds.

- Contrary to Sri Lanka's assertion that Hamilton "asserts that it does not have any responsive board materials" discussing the Bonds, Hamilton has produced the materials that exist, which clearly state that Hamilton "owns" the Bonds, which it "acquired from the public market as part of the Company's investment management portfolio." (ECF 46-11.) It is not clear what additional materials Sri Lanka thinks should exist, but Sri Lanka's speculation is irrelevant because Hamilton has produced all the materials that do exist.

- Sri Lanka has complained that Hamilton does not have "cover correspondence" transmitting a presentation described in the *Financial Times* article. Again, Hamilton has produced the materials that exist. Hamilton's counsel also voluntarily inquired of Benjamin Wey (a non-party to the lawsuit who is not employed by Hamilton) as part

June 6, 2025
Page 5

of their efforts to identify responsive documents in Hamilton's possession, custody and control.  In all events, the presentation and any "cover correspondence" are wholly irrelevant to Hamilton's Bond ownership.

<u>Second</u>, just three days ago (on June 3), Sri Lanka suddenly indicated that it intends to "seek permission to take additional discovery," to "submit expert evidence in support of" its motion, and to designate one or more experts "for use at trial."

Hamilton opposes any further discovery.  Sri Lanka's assertion below that it "is unable to accomplish the purpose of the [previously] requested discovery—*i.e.*, to determine whether, in fact, HRB is the Bonds' beneficial owner, which would be confirmed in the kinds of material Sri Lanka sought" is simply untrue.  As detailed above, Hamilton's Bond ownership is crystal clear and confirmed in the documents Sri Lanka requested:  the Bonds are recorded directly on Hamilton's balance sheet, discussed extensively in Hamilton's 2021, 2022 and 2023 financial statements, and held in accounts under Hamilton's own name.  Thus, Hamilton's financial statements and other materials fully confirm—rather than refute—Hamilton's Bond ownership.

Given this record, Sri Lanka is plainly pursuing additional, irrelevant discovery because its prior discovery requests failed to pan out.  The Court should reject this further delay tactic.

Further, Sri Lanka's proposed document requests (provided only yesterday in "draft" form) are grossly overbroad and irrelevant.  For example, they seek (among other things) "[a]ll communications from January 1, 2021 to the present concerning the Bonds" and an intrusive and wholly irrelevant request, for "the identity of each depositor holding deposits of $1 million or more at any time between January 1, 2021 and the present."  None of this has any relevance to Hamilton's Bond ownership.

## **Defendant's Statement**

For the reasons briefly summarized below, Sri Lanka believes that HRB has not complied with the Court's Order of April 24, 2025 (ECF No. 143, the "April 24 Order").  Moreover, what limited information HRB has produced only raises more questions about its claimed beneficial ownership.  In the circumstances, additional discovery is necessary.

As previously discussed in detail, there are significant reasons to doubt HRB's claimed beneficial ownership of approximately $250 million in Sri Lanka-issued international sovereign bonds (the "Bonds").  (*See* ECF Nos. 56-59, 139-40.)  In short, it is highly unlikely that HRB—a regulated bank, not a hedge fund—would make such a massive investment in below-investment grade sovereign debt for its own account.  Instead, it is far more likely that HRB holds its purported interest in the Bonds on behalf of some third person or persons who have the real economic interest.  In that case, HRB is not the Bonds' beneficial owner, and the case should be dismissed for lack of standing.  (*See* April 24 Order, at 2.)

Based on these reasonable inferences—and because HRB had failed to provide meaningful discovery of its internal documents—Sri Lanka requested targeted and limited discovery in order to oppose summary judgment.  Among other things, Sri Lanka asked for discrete categories of internal documents—*e.g.*, audited financial statements for 2021-2024, and

June 6, 2025
Page 6

board materials from 2021-2024 concerning the purported investment decision.  In the April 24 Order, the Court directed HRB to produce these and the other materials set out in Sri Lanka's letter of January 31, 2025.

However, HRB now claims (for the first time) that it does not have many of the documents called for by the April 24 Order.  For example:

- HRB states that it **does not have audited financial statements for 2022, 2023, or 2024**. This appears to conflict with applicable Nevis banking regulations, which require the submission of annual audited financial statements.  HRB asserts that its auditor cannot complete an audit because of this pending litigation.  But that is obviously incorrect, as the accounting guidelines address the appropriate treatment of pending litigation.

- HRB asserts that it **does not have any responsive board materials**.  In other words, HRB would have us believe that it purchased approximately $143 million in Bonds during 2021 (Am. Compl. ¶ 3), with the remaining $100 million in the first few months of 2022, but that the first time any board material even references this investment is after a dispute arose in May 2022 (*see* ECF No. 46-11).  And although HRB claims that the investment was "vetted by the Company's CEO, CFO, and an investment team" (*see id.*), it now states that this supposed vetting did not result in the creation of a single document.  This is wholly implausible, especially for a regulated bank.  HRB claims (as it has before) that the above-referenced May 2022 document somehow proves its ownership.  But as previously discussed (*see* ECF No. 56, at p. 19 n.20), that self-serving document was created after the dispute arose, and well after HRB supposedly purchased the Bonds at issue.  It does not show any contemporaneous analysis of the investment decision.

- HRB also claims not to have a copy of the presentation and cover email from Benjamin Wey that were discussed and quoted from at length in a September 8, 2023 Financial Times ("FT") article.  (*See* ECF No. 140-1.)  In particular, the article states that Mr. Wey "emailed a presentation" to creditors, and that the presentation includes the following language: "we need to limit public exposure of HRB as a private bank."  HRB states that it does not have either that email or the above-quoted presentation, and that neither does Benjamin Wey.  We find it hard to believe that the FT imagined the existence of these documents.

- As a result of HRB's purported inability to produce these and other documents called for by the April 24 Order, HRB produced a grand total of 12 documents.

Sri Lanka reasonably expected that HRB would have the above-referenced documents, which is why we asked for them.  Because HRB has not produced them, however, Sri Lanka is unable to accomplish the purpose of the requested discovery—*i.e.*, to determine whether, in fact, HRB is the Bonds' beneficial owner, which would be confirmed in the kinds of material Sri Lanka sought.  Indeed, if HRB had told us during the meet-and-confer process in 2022 that it did not have these documents (which the parties have been at odds over ever since), Sri Lanka would have sought the necessary information through different requests—*e.g.,* for communications involving HRB's decision-makers on the subject.

June 6, 2025
Page 7

Moreover, the few documents HRB did produce only heighten our concerns. HRB has designated these documents as confidential under the protective order in this matter (ECF No. 38), which limits our ability to describe them in this joint public filing. In this letter, we had proposed to summarize certain information in HRB's purported financial statements in order to explain our position—*i.e.*, that the documents support Sri Lanka's argument that HRB is likely not the beneficial owner of the Bonds. However, HRB refused to remove its confidentiality designation as to the information at issue, ***despite selectively quoting from the same documents in its own portion of this letter***. This is highly unfair. And the parties' disagreement about the meaning of the information only underscores the need for additional discovery and fuller briefing. In any event, we expect to explain the significance of this new information in an anticipated motion for additional discovery. In support of that motion, we expect to submit, among other things, a further declaration from Avinash Persaud (*see* ECF No. 57) to address the new information provided by HRB (and which HRB's confidentiality objection prevented us from previewing here).

In sum, Sri Lanka anticipates seeking further relief from the Court by motion as briefly set out below. Given the complexity of the issues, the need for expert evidence, and HRB's failure to make its position sufficiently clear until just last week, Sri Lanka proposes to file this motion on or before July 10, 2025:

- **Compliance with the April 24 Order.** Sri Lanka will seek to compel the production of all documents required by the April 24 Order.

- **Leave to Take Additional Discovery.** Sri Lanka will seek leave to take certain additional discovery designed to elicit the information sought in the initial requests (but which HRB claims largely does not exist). We are still developing the precise form of these requests, but at a high-level, plan to seek:

  o Document requests (a draft of which we have shared with HRB for discussion purposes, but reserving the right to modify or supplement) including internal communications regarding HRB's purported investment decision;

  o Written discovery, including interrogatories and requests for admission, concerning HRB's claimed compliance with applicable banking regulations; and

  o Depositions of an HRB corporate witness (both as to HRB's claimed beneficial ownership and its document collection and retention in this case), and if that witness is not Benjamin Wey, then also Mr. Wey in his personal capacity.

- **Expert Designation.** Sri Lanka will seek leave to designate an expert witness (or witnesses) for potential use at trial. At this point, we expect to designate at least Mr. Persaud as a banking regulatory expert. (This would be in addition to the anticipated use of Mr. Persaud in support of the motion for additional discovery.)

Finally, after the conclusion of any additional discovery period, Sri Lanka would seek to supplement its summary judgment opposition to update its factual and legal arguments based on the additional information from HRB.

June 6, 2025
Page 8


Dated:  June 6, 2025

                                                    Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**        **CLIFFORD CHANCE US LLP**

By:  */s/ Javier Bleichmar*                   By:  */s/ Robert G. Houck*

    Javier Bleichmar                              Robert G. Houck
    Evan A. Kubota                                John P. Alexander
300 Park Avenue, Suite 1301                   Benjamin A. Berringer
New York, NY  10022                        Two Manhattan West
Telephone: (212) 789-1340                  375 9th Avenue
Facsimile: (212) 205-3960                  New York, NY 10001
jbleichmar@bfalaw.com                      Telephone: (212) 878-8000
ekubota@bfalaw.com                         Facsimile: (212) 878-8375
                                           Robert.Houck@cliffordchance.com
**JENNER & BLOCK LLP**               John.Alexander@cliffordchance.com
Lee Wolosky                                Benjamin.Berringer@cliffordchance.com
1155 Avenue of the Americas
New York, NY 10036                         *Counsel for Defendant*
Telephone: (212) 891-1600
lwolosky@jenner.com


*Counsel for Plaintiff*