# EXHIBIT 1

N6N5hamC                           phone conference

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  HAMILTON BANK RESERVE LTD.,

4              Plaintiff,

5          v.                           22 Civ. 5199 (DLC)
                                        Remote Proceeding
6  THE DEMOCRATIC SOCIALIST
   REPUBLIC OF SRI LANKA,

7
             Defendant.
8
   ------------------------------x
9                                       New York, N.Y.
                                        June 23, 2023
10                                      3:35 p.m.

11 Before:

12                 HON. DENISE L. COTE,

13                                      U.S. District Judge

14
                         APPEARANCES
15

16 BLEICHMAR FONTI & AULD LLP
        Attorneys for Plaintiff
17 BY:  EVAN A. KUBOTA

18
   CLIFFORD CHANCE US, LLP
19      Attorneys for Defendant
   BY:  ROBERT G. HOUCK
20      JOHN P. ALEXANDER

21

22

23

24

25

N6N5hamC                          phone conference

1              (The Court and all parties appearing telephonically)

2              THE DEPUTY CLERK:  Hamilton Reserve against Sri Lanka,

3     22 Civ. 5199.  I am going to ask counsel to buy or order a copy

4     of the transcript.  Why don't I ask you to do that, plaintiff's

5     counsel.  Who is going to be speaking on behalf of the

6     plaintiff today?

7              MR. KUBOTA:  Yes, your Honor.  Evan Kubota from

8     Bleichmar Fonti & Auld.  We will do that.

9              THE COURT:  Thank you so much.

10              And who will be appearing on behalf of the divest

11    today.

12              MR. HOUCK:  Good afternoon, Judge Cote.  It is Robert

13    Houck from Clifford Chance.  Today, John Alexander from

14    Clifford chance will be speaking on behalf of defendant.

15              THE COURT:  Thank you so very much.

16              MR. ALEXANDER:  Good afternoon, your Honor.

17              THE COURT:  Good afternoon.

18              I have letters of June 20th from the parties and the

19    question is whether or not further discovery is necessary with

20    respect to the ownership of the bonds.  Just give me one second

21    here, reaching for my glasses to make sure I have them at hand

22    in case I need to look at any individual representation in the

23    letters.

24              I think, having reviewed the letters, that no further

25    documentation need be produced at this time.  We have a summary

N6N5hamC                          phone conference

1    judgment motion due June 26 that is Monday, and I think we

2    should go ahead with that, and of course parties have the

3    opportunity under Rule 56 in opposing any motion if they need

4    further discovery and believe that's important to have to make

5    the appropriate showing.

6              Let me ask the plaintiff, do you plan to bring,

7    Mr. Kubota, a summary judgment motion?

8              MR. KUBOTA:  Yes, your Honor.  The papers are ready to

9    be filed on Monday and, as you can imagine, very short and

10   straightforward.

11             THE COURT:  OK.  Good.

12             So, having heard my preliminary ruling, Mr. Alexander,

13   did you wish to be heard?

14             MR. HOUCK:  Yes.  Thank you, your Honor.  And we

15   understand what you have advised so far.  I would just like to

16   explain a bit maybe where we are coming from and why we think

17   that additional document discovery is necessary here.

18             So, as is described a little bit in the letter from

19   plaintiff Hamilton Reserve, there have been some documents

20   produced, very few, that show account statements that Hamilton

21   holds with third-party brokers.  But the reason that we are

22   looking for more, your Honor, is that the question here is

23   whether Hamilton, on its own books, actually holds these

24   interests for its own account and we have reason to believe,

25   just as a matter of how we understand the banking industry to

1    work, is that Hamilton would be unlikely, as a regulated bank,

2    to place an investment for its own proprietary account for

3    $250 million worth of Sri Lankan bonds which, since 2020, have

4    been rated triple C or lower.  We understand that there are

5    regulatory capital requirements for banks, and beyond those

6    general requirements, Hamilton on its websites, touts the

7    safety and security of its investment stating that they only

8    invest in cash or government bonds, and by government bonds we

9    presume that means not triple C rated bonds.  And so, I just

10   wanted to explain that that is where we are coming from and

11   that's why we are seeking the additional documentation we are,

12   to get at whether it seems clear from the documentation that

13   Hamilton holds accounts that these interests are held in but we

14   would like to understand the way in which it, for its own

15   account, it so holds those interests.

16            THE COURT:  What specific documents -- and I am

17   looking at page 2 of your letter -- what specific documents are

18   going to answer that question for you?

19            MR. ALEXANDER:  Well, what we have done in our letter

20   and in our discussions with plaintiff is try to identify the

21   documents that we think would show, one way or the other, that

22   that is the case but we would think that, you know, the audited

23   financial statements, the board minutes, related to the board

24   minutes the investment committee, whatever committee it was at

25   Hamilton that made this investment, we expect there would be

1    some discussion or analysis of the fact that they are putting

2    up so much money in bonds that are rated triple C or lower, and

3    the analysis of the fact that that is an appropriate risk for

4    them to take.  If there is not, then we would suspect that it's

5    being held for some other person or entity.  But, that's the

6    type of document that would show the initial investment

7    decision to put that type of capital at risk, that's the kind

8    of document that we are seeking.

9              THE COURT:  But why wouldn't security held for the

10   benefit of another be held in an account reflecting that?  Why

11   would it be held in the account in the plaintiff's own name?

12             MR. ALEXANDER:  Well, the account is held in

13   Hamilton's own name I guess but our question, your Honor, is

14   how does Hamilton account for that itself?  So the third-party

15   may have given Hamilton funds and Hamilton took those funds and

16   invested them in a way that we would expect would be reflected

17   in the documentation we are seeking.

18             THE COURT:  So, you list here, on page 2, that you

19   wanted audited financial statements, annual financial reports.

20   Those two categories I am at a loss to understand how they

21   would show ownership or lack of ownership of the bonds.

22             MR. ALEXANDER:  Well, I guess from our perspective,

23   your Honor, what we had supposed is that if Hamilton has made

24   this investment for its own account it would put that on its

25   own books as an asset or liability but it would be reflected as

N6N5hamC                              phone conference

1    something that they hold and not held in some custodial

2    capacity for some other investor.

3              THE COURT:  When you hold bonds -- and counsel, thank

4    you for helping to educate me about this, but when you own or

5    hold bonds for the benefit of another, don't you hold them in a

6    separate kind of account as opposed to an account in your own

7    name?

8              MR. ALEXANDER:  Well, your Honor, certainly that would

9    be possible, we suspect that would be one way of holding them,

10   but without knowing how Hamilton actually does hold them, we

11   don't know one way or the other how Hamilton would do that.

12             THE COURT:  OK.  So, Mr. Kubota, what can you tell me

13   here?

14             MR. KUBOTA:  Sure, your Honor.  I can respond to that

15   pretty succinctly, and I think the Court got it right at the

16   very beginning, that further production is not warranted.

17             Just to unpack these issues a little bit, I think your

18   Honor immediately identify the key point which is that these

19   accounts are in Hamilton's name, it is not an FBO or for

20   benefit of situation.  The bonds are held in Hamilton's own

21   accounts, we produced not only the account statements but a

22   letter from Morgan Stanley where most of the position is held

23   confirming that Hamilton is the owner of the account so there

24   is no issue of any third-party beneficiary, nor would that make

25   any sense.  Investments are certainly not held in an account

1    under the name of someone other than the owner, that just isn't

2    how things work, and I think Mr. Alexander just recognized

3    that.  So, in our view, the existing production is more than

4    sufficient and we have actually repeatedly told Sri Lanka that

5    these accounts are held on Hamilton's own books in accounts in

6    its own name, and we have also provided a declaration from the

7    CFO saying that, which as you can imagine, is also going to be

8    repeated in our summary judgment papers.

9               THE COURT:  OK.  Thank you.

10              MR. ALEXANDER:  Your Honor, if I might?  Sorry to

11   interrupt, but can I make one further comment please, your

12   Honor?

13              THE COURT:  Is this Mr. Alexander?

14              MR. ALEXANDER:  I'm sorry.  Yes, your Honor.

15              THE COURT:  Yes.  Mr. Alexander.

16              MR. ALEXANDER:  Thank you.

17              So, I just wanted to pick up on the point from

18   Mr. Kubota.  We received a letter before the lawsuit being

19   filed.  The letter was provided to Sri Lanka by counsel for

20   Hamilton Reserve Bank and the letter said that Hamilton

21   Reserve, and its affiliate Fintech held the interests that they

22   are claiming in this case.  So that already itself is, we

23   think, evidence that there may be some other person that owns

24   these bonds whether it is Hamilton's affiliate Fintech or

25   someone else, but there are questions that we think are worth

N6N5hamC                              phone conference

1   exploring here in terms of who owns and how they do.

2              So, I just wanted to note that, your Honor.

3              THE COURT:  So what's the role, Mr. Kubota, of Fintech

4   in this?

5              MR. KUBOTA:  Yes, your Honor.  We have actually

6   explained this to Sri Lanka and they served a discovery request

7   on it and we responded to it and it is not an issue.  Simply

8   stated, the role is that Fintech is the shareholder of

9   Hamilton, the full shareholder.  So, the letter that

10  Mr. Alexander is referring to may have been a little imprecise

11  but the complaint is what governs here and Hamilton is the

12  owner of the bonds, not its parent company Fintech.

13             THE COURT:  OK.  So we will proceed with the summary

14  judgment motion as scheduled, and of course the defendant has

15  its right or its rights under Rule 56 if it believes further

16  discovery is necessary to make that showing in response to the

17  motion and applying the guidance given under Second Circuit

18  law.  I thank counsel for your correspondence and wish you good

19  luck.  Look forward to getting the motion.

20             Thank you very much.

21                              o0o

22

23

24

25