**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HAMILTON RESERVE BANK LTD.,

           Plaintiff,

v.

THE DEMOCRATIC SOCIALIST REPUBLIC OF
SRI LANKA,

           Defendant.

No. 22 Civ. 5199 (DLC)

**DECLARATION OF ROBERT G. HOUCK**

Robert G. Houck declares and states as follows:

1.      I am a member of the firm Clifford Chance US LLP, counsel for Defendant The Democratic Socialist Republic of Sri Lanka ("Sri Lanka") in the above-captioned action. I submit this Declaration in connection with Sri Lanka's supplemental opposition to Plaintiff Hamilton Reserve Bank, Ltd.'s ("HRB") motion for summary judgment, and including pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

**Relevant Procedural Background**

2.      I hereby incorporate my Declaration dated July 17, 2023 and my Declaration dated January 31, 2025 as if fully set forth herein. (ECF 59 ("July 17, 2023 Houck Declaration"); ECF 140 ("January 31, 2025 Houck Declaration").)

*Initial Summary Judgment Motion*

3.      On June 26, 2023, HRB moved for summary judgment, claiming that it had established its beneficial ownership of certain international sovereign bonds issued by Sri Lanka (the "Bonds"). (ECF 44.)

1

4.     Sri Lanka opposed that motion on July 17, 2023.  Among other things, Sri Lanka argued that HRB had failed to show as a matter of law that it was the beneficial owner of the Bonds, and that additional discovery was necessary under Rule 56(d) of the Federal Rules of Civil Procedure.  In support, Sri Lanka submitted the Declaration of Avinash Persaud dated July 17, 2023 (ECF 57).  Sri Lanka also submitted the July 17, 2023 Houck Declaration (ECF 59) pursuant to Rule 56(d), addressing the need for additional discovery.  The discovery sought included, *e.g.*, HRB's 2021-2023 audited financial statements and "minutes and resolutions of HRB's board of directors, investment committee, or any other HRB committee or governing body authorized or required to approve investment decisions, with respect to HRB's investment decision regarding the Bonds."  (*Id.* ¶ 22.)  Sri Lanka also requested a deposition of HRB pursuant to Rule 30(b)(6).  (*Id.*)

5.     On November 1, 2023, the Court granted Sri Lanka's request for a stay of proceedings in connection with Sri Lanka's then-ongoing sovereign debt restructuring process.  (ECF 77.)  That day, the Court denied HRB's summary judgment motion without prejudice to renewal when the stay was lifted.  (ECF 78.)  As the restructuring process continued, the Court granted further stays of proceedings on April 23, 2024 (ECF 102), November 15, 2024 (ECF 124), and December 20, 2024 (ECF 132).  HRB opposed all of Sri Lanka's requests to stay proceedings.

*Renewed Summary Judgment Motion*

6.     By letter dated January 6, 2025, Sri Lanka provided the Court with a status report explaining that the sovereign debt restructuring process had largely concluded and, therefore, that Sri Lanka did not intend to seek a further stay of proceedings at that time.  (ECF 133.)

7.     By letter dated January 17, 2025, HRB renewed its motion for summary judgment. (ECF 135.)

8.      By letter dated January 31, 2025, Sri Lanka opposed HRB's renewed motion. (ECF 139.) Among other things, Sri Lanka cited new information concerning a September 8, 2023 *Financial Times* ("FT") article, which described Benjamin Wey as the "mysterious 'global financier' suing Sri Lanka." The article stated that, in 2022, Mr. Wey had sought to solicit creditor interest in a joint lawsuit against Sri Lanka. Specifically, Mr. Wey had reportedly emailed a presentation to creditors on behalf of HRB's parent company, Fintech Holdings, stating, among other things, that "we need to limit public exposure of HRB as a private bank." Sri Lanka also submitted the January 31, 2025 Houck Declaration pursuant to Rule 56(d) (ECF 140), addressing the need for additional discovery. The discovery sought included Sri Lanka's prior requests, updated to include HRB's 2024 financial statements as well as information described in the September 2023 FT article. (*Id.* ¶¶ 9-10.) Attached as **Exhibit 1** is a true and correct copy of an article from the Financial Times, dated September 8, 2023, and titled, "The mysterious 'global financier' suing Sri Lanka," as obtained from the Financial Times website on January 31, 2025, available at: https://www.ft.com/content/663cc8e6-e2ad-4f25-b473-ea2f33c6b4f6.

*HRB's Response to the April 24, 2025 Order*

9.      By Order dated April 24, 2025 (the "April 24, 2025 Order") the Court granted Sri Lanka's request to take additional discovery. (ECF 143.)

10.     During May 2025, HRB made some small productions of documents (about twenty in total). ███████████████████████████████████████████████ ████████ HRB claimed that, due to the litigation, it had no audited financial statements after 2021. (ECF 161, 29:14-18.) On May 30, 2025, HRB stated that, among other things, HRB had no responsive board materials. HRB also stated that it had asked Benjamin Wey and Warren Raiti whether they had copies of the presentation and cover correspondence described in the September

2023 FT article, and they said they did not. Attached as **Exhibit 2** is a true and correct copy of a May 30, 2025 email from HRB. To date, HRB has never produced the cover correspondence referenced in the September 2023 FT article, nor has it produced a version of the presentation that includes the language quoted in the article ("we need to limit public exposure of HRB as a private bank").

11.    On June 5, 2025, Sri Lanka provided HRB with draft document requests seeking, among other things, HRB's communications about the Bonds and information concerning HRB's depositors holding $1 million or more. Attached as **Exhibit 3** is a true and correct copy of an email exchange dated June 5, 2025. We have omitted communications in this exchange prior to that date.

12.



Attached as **Exhibit 4** is a true and correct copy of an email exchange dated June 6, 2025.

13.    Also on June 6, 2025, the parties submitted a joint status letter to the Court. (ECF 147.) Sri Lanka submitted that HRB had not complied with the April 24, 2025 Order, and that the limited information produced by HRB raised more questions about HRB's claimed beneficial ownership of the Bonds. Sri Lanka also argued that—due to HRB's failure to produce documents that it should have had—additional discovery was necessary, and detailed that proposed discovery. Sri Lanka explained that it expected to file a motion to compel compliance with the

4

April 24, 2025 Order and seek leave to take additional discovery, among other things.  HRB argued against any additional discovery.

*The Court Allows Additional Discovery*

14.    By Order dated June 10, 2025, the Court ordered that "Sri Lanka's request to take additional discovery is granted."  (ECF 148.)

15.    On June 24, 2025, Sri Lanka served discovery requests on HRB.  This included: (1) Defendant's Second Request for Production of Documents; (2) Defendant's First Interrogatories; (3) Defendant's First Requests for Admission; (4) Notice of Deposition Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure; and (5) Notice of Deposition of Benjamin Wey A/K/A Benjamin Tianbing Wei.  Attached as **Exhibits 5-9** are true and correct copies of the foregoing requests.

16.    The parties met-and-conferred over the following week, but it was clear that there was a dispute over several important issues.  Among other things, HRB refused to search for all communications about the Bonds, and refused to provide information about its relationship with Benjamin Wey or make him available for deposition.  HRB also refused to provide information about its depositors, purporting to object to that discovery under Nevis' Confidential Relationships Act ("CRA"), Chapter 21.02.  Attached as **Exhibit 10** is a true and correct copy of an email exchange between HRB and Sri Lanka dated June 30-July 1, 2025.

17.    By letter dated July 1, 2025, Sri Lanka asked for the Court's intervention in the discovery dispute. (ECF 151.)  Sri Lanka argued that the available evidence supported Sri Lanka's position that HRB was likely not the beneficial owner of the Bonds, and that HRB should provide all the requested discovery, including communications about the Bonds, discovery concerning Benjamin Wey, and information on its customer depositors.  With its letter, Sri Lanka attached a

5

Declaration from Avinash Persaud dated July 1, 2025 (ECF 151-6), and a Declaration from Juan Migone dated July 1, 2025 (ECF 151-7).

18.    Also on July 1, 2025, HRB submitted its own discovery dispute letter objecting to Sri Lanka's discovery requests.  (ECF 149.)  HRB submitted another letter on July 2, 2025 (ECF 153), to which Sri Lanka replied later that day (ECF 154).

19.    The parties continued to meet-and-confer, during which time Sri Lanka agreed to withdraw some of its requests.  Among other things, to address HRB's claims of burden, Sri Lanka generally agreed to limit the time period for its requests to January 1, 2021 to July 6, 2023 (Sri Lanka had initially sought communications through the present), and to limit the request for depositor information to depositors holding $5 million or more (Sri Lanka had initially sought such information for depositors holding $1 million or more).  Attached as **Exhibit 11** is a true and correct copy of a July 9, 2025 email from Sri Lanka.

*July 10, 2025 Conference*

20.    On July 10, 2025, the Court held a conference regarding the discovery disputes (the "July 10, 2025 Conference").  (ECF 161.)

21.    During the July 10, 2025 Conference, the Court stated that it would permit discovery to "go forward to a significant degree," and that the "defendant is entitled to…test whether or not the bank is the beneficial owner of the bonds." (*Id.* 3:2–3, 11:1–3.)  Among other things:

- The Court stated that HRB should produce all communications about the Bonds (RFP 2). (*Id.* 24:14-28:6.)  In response, HRB's counsel noted that "there really is not going to be a lot of email traffic about decision-making because it was done orally." (*Id.* 28:8-22.)

- The Court stated that HRB should produce depositor information (RFP 4), notwithstanding HRB's Nevis law objection. (*Id.* 19:8-20:12.)  HRB indicated that it wanted to brief the issue, and the Court stated "you're the plaintiff here, and I am happy to have you brief that issue too." (*Id.* 19:8-20:12.)

6

- As to discovery concerning Benjamin Wey, Sri Lanka's counsel noted Mr. Wey's apparent involvement and explained: "it may be the case that the officials at HRB are unaware of agreements with depositors, but those agreements have been negotiated by people who control HRB but who might not be parties in interest." (*Id.* 21:19-22:13.) HRB reiterated its position that "Mr. Wey is not an agent, director, officer, or employee of the bank," but agreed to respond to the relevant interrogatory. (*Id.* 22:19-23:8.)

- As to the requested deposition of Mr. Wey, the Court decided to "table for now Mr. Wey's deposition and see what the production of the other discovery materials reveals. But if he is connected with the bank, and is part of this transaction, I expect I will allow his deposition to be taken as well, but we will take it one step at a time." (*Id.* 8:8-23.)

*Subsequent Discovery Process*

22.    On July 16, 2025, the parties submitted a joint status letter to the Court. (ECF 160.) HRB reported that "Benjamin Wey will be available for a deposition without a subpoena, to the extent necessary after the Rule 30(b)(6) deposition of Hamilton." (*Id.*)

23.    On July 30, 2025, HRB served objections and responses to Sri Lanka's Second Request for Production of Documents, First Interrogatories, and First Requests for Admission. Attached as **Exhibits 12-14** are true and correct copies of the foregoing. In response to RFP 1 (seeking documents concerning HRB's investment decision) and RFP 2 (seeking all communications about the Bonds), HRB stated that it would search only email. As to RFP 4 (seeking certain depositor information), HRB asserted some objections but stated: "For the time period of January 1, 2021 to present, HRB ***will produce*** responsive documents, if any, with respect to depositors at HRB holding deposits of $5 million or more." (**Ex. 12** (emphasis added).)[1]

24.    On August 6, 2025, the parties had a meet-and-confer discussion. Sri Lanka sought clarification as to whether HRB was willing to produce documents besides email, including text messages. HRB said it was not proposing to search for text messages.

---

[1]    During the July 10, 2025 conference, the Court had suggested that a possible alternative ███████████████████████████████████ (ECF 161, 15:14-17:11.) HRB has not proposed making a production along those lines.

25.  On October 3, 2025, HRB provided Sri Lanka with a proposed search protocol for electronically stored information ("ESI") (the "October 3, 2025 Proposal").  The October 3, 2025 Proposal included a total of just five search terms: "Sri Lanka," "USY2029SAH77," "US85227SAK24," "Y2029SAH7," "85227SAK2".  HRB proposed to search the documents of ten individuals: Andrew Zuo Guo, Anthony Gajor, Antonio Kenyatta, Ghassan Nasr, Herbert Rossevelt, Howard Anthony Lewis, Prabhakar Kaza, Sam Yee, Sir Tony Baldry, and Yingmao Wei.  Attached as **Exhibit 15** are the parent correspondence and the October 3, 2025 Proposal.

26.  On October 7, 2025, Sri Lanka asked HRB to clarify whether its proposal applied to all documents, or only email.  On October 14, 2025, HRB stated that the proposal was only to search email.  Attached as **Exhibit 16** is a true and correct copy of that email exchange.

27.  During October-December 2025, the parties negotiated a search protocol.  Attached as **Exhibits 17-21** are true and correct copies of correspondence on these issues.

28.  The parties discussed potential search terms.  After HRB provided a hit count for Sri Lanka's proposed search terms, Sri Lanka agreed to drop or narrow several of its proposed terms that hit on large numbers of documents.

29.  Sri Lanka argued that HRB should search not only emails, but all documents including those contained on custodians' personal phones.  (**Exs. 17** (10/27/25 counterproposal); **19** (11/26/25 letter); **21** (12/4/25 email).)  HRB stated that "HRB employees are not issued company cell phones" and declined to "collect data from personal cell phones[.]"  (Exs. **18** (11/18/25 letter); **20** (12/1/25 letter).)

30.  As to document custodians, HRB eventually agreed to search the emails of 13 custodians: the original ten it had proposed (*see supra* ¶ 25), as well as Vinay Ganga, Fayola Olugbala, and Charles Shearer.  Sri Lanka argued that HRB also should search the files of

8

Benjamin Wey and Warren Raiti.  (**Exs. 17** (10/27/25 email & counterproposal); **19** (11/26/25 letter); **21** (12/4/25 email).)  HRB refused, claiming that they lacked possession, custody, or control over documents in the possession of Mr. Wey and Mr. Raiti.  As to Mr. Wey, HRB reiterated its position that Mr. Wey "is not and has never been an officer, director, or employee of HRB," and stated that Mr. Wey "does not owe the bank's stakeholders fiduciary duties."  (**Exs. 18** (11/18/25 letter); **20** (12/1/25 letter).)  As to Mr. Raiti, HRB claimed that it was unnecessary to search his documents because, among other reasons, any non-privileged communications would be captured by HRB's "more-than-reasonable search of HRB mailboxes."  (**Ex. 20** (12/1/25 letter).)

31.     In October and November 2025, Sri Lanka asked HRB when it would begin to produce non-ESI documents, including, *e.g.*, depositor information in response to RFP 4.  (**Exs. 17** (10/27/25 email); **19** (11/26/25 letter).)  HRB did not initially respond to that point.

32.     On December 8, 2025, the parties had a meet-and-confer discussion.  During that discussion, HRB indicated that, notwithstanding its July 30, 2025 responses (*see* **Ex. 12**), HRB still maintained its Nevis law objection to producing depositor information.

*Initial Productions by HRB*

33.     On December 9, 2025, HRB made its first production of documents since the July 10, 2025 Conference.  The production consisted of approximately 17 documents, including,

34.     On December 9, 2025, the parties filed a joint update. (ECF 172.)  HRB stated that it "expects to substantially complete document production in the next two weeks."  As to RFP 4, HRB stated that it was "considering options for how to produce depositor information without violating Nevis law and has advised Sri Lanka that it will abide by any applicable court orders."

Sri Lanka stated that the parties disagreed regarding RFP 4 (*i.e.*, redacting personal identifying information on depositors precluded meaningful review), and the proposed search protocol.

35.    In mid-December to mid-January, HRB made some productions of documents that included, for the first time, internal HRB emails.  As of January 16, 2026, HRB had produced a total of 425 documents, and a total of 306 emails.  ███████████████████████████

████████████████████████████████████████████████████████████

███████████████████████        █████████████████████████████████

█████████████████████████████



36.    On January 5, 2026, HRB served amended responses and objections to RFP 4 and RFP 8 (a true and correct copy of which is attached as **Exhibit 22**).  As to RFP 4, HRB now cited Nevis law as a purported basis for not responding and stated only that it was "willing to meet and confer" on this request.

*HRB Seeks to Close Discovery*

37.    On January 8, 2026, HRB wrote to the Court requesting judicial intervention to close discovery.  (ECF 174.)  Sri Lanka responded by letter dated January 9, 2026.  (ECF 176.)  Noting that HRB had not first met-and-conferred on the dispute, Sri Lanka detailed the parties' disagreements regarding, *e.g.*, limiting searches to email, and collecting documents from Mr. Wey and Mr. Raiti.  As to RFP 4, Sri Lanka noted that HRB should not be permitted to withdraw its agreement to make responsive productions and, in any event, that such productions were necessary.

38.    By Order dated January 12, 2026, the Court directed the parties to meet-and-confer and then submit letters detailing remaining disputes.

39.    The parties met-and-conferred over the coming weeks.  Among other things, Sri Lanka agreed to limit its request that HRB search all documents (including personal phones) to seven (7) individuals (see below).  However, HRB stood on its position on these issues.  Attached as **Exhibit 23** is a true and correct copy of a January 20-21, 2026 email exchange on these matters.

40.    Both parties submitted dispute letters on January 21, 2026.  (ECF 185; ECF 186.)

41.    Sri Lanka argued, among other things:

- Document Sources – HRB "should not limit its search to company email" and should search other sources, including phones and document drives.

- Custodians – HRB should search the documents (including but not limited to information on personal phones) of the following: (1) HRB Board Chair Tony Baldry; (2) HRB CEO Prabhakar Kaza; (3) HRB CFO Antonio Kenyatta; (4) HRB International CEO Ghassan Nasr; (5) Yingmao Wei; (6) Benjamin Wey; and (7) Warren Raiti.

- Depositor Information – Sri Lanka noted that HRB had produced no evidence for its purported Nevis law objection "other than a conclusory citation to the statute."  In any event, Sri Lanka argued that the relevant comity factors warranted disclosure notwithstanding any purported foreign law conflict.

(ECF 185.)

42.     HRB asserted that it had already performed a reasonable search, stating that it had searched the files of 13 custodians, reviewed over 2,800 documents, and produced over 450 documents.  (ECF 186.)  HRB argued, among other things, that it lacked control over any custodians' personal phones and, in any event, that any such search would be "completely unnecessary."  As to Mr. Wey and Mr. Raiti, HRB maintained that the Court had not authorized "non-party discovery."  As to depositor information, HRB again cited the Nevis CRA (without any supporting evidence) and argued that the information sought was not relevant.

*January 23, 2026 Conference*

43.     On January 23, 2026, the Court held a conference to resolve outstanding discovery disputes (the "January 23, 2026 Conference").  (ECF 191.)  The Court stated that Sri Lanka was "entitled to understand the context for the bank's investment in the bonds," and noted that "the defendant has a good faith basis to believe that this was not an investment by the bank, and therefore the bank is not the true beneficial owner."  (*Id.* 2:18-3:10.)  However, the Court also recognized that "Hamilton Reserve wants this inquiry to come to an end, and it has either met its burden of showing it's the beneficial owner or not.  And that's a fair request."  (*Id.* 49:22-25.)

44.     During the January 23, 2026 Conference, HRB presented a chart listing HRB's deposit balances as of the end of 2021 (with depositor names redacted).  (*Id.* 25:6-19.)  This information had not previously been provided to Sri Lanka.

45.     On January 26, 2026, the Court issued an order explaining the parties' obligations following the January 23, 2026 Conference (the "January 26, 2026 Order").  (ECF 190.)  As detailed therein, HRB was to produce relevant materials from "the personal cellular phone of Mr. Antonio Kenyatta, including but not limited to his WhatsApp messages."  After meeting-and-conferring on the relevant date range, HRB was required to produce "redacted documents for those

dates reflecting information equivalent to that contained in the document distributed at the January 23 conference."  Finally, the Court directed the parties to propose a schedule for HRB's Rule 30(b)(6) deposition and supplemental briefing thereafter.  The Court also stated:

> As noted at the January 23 conference, defendant may argue in its opposition to summary judgment that additional discovery is required.

(*Id.*)

*HRB's Subsequent Productions*

46.    In February-March 2026, HRB made several productions of documents.  ███  ████████████████████████████████████████████████████  Based on a good faith review of the documents produced by HRB, none of these productions (or any other productions by HRB) include any communications about the Bonds prior to October 2021.  Based on a good faith review of the documents produced by HRB, none of HRB's productions include any other documents regarding the Bonds prior to October 2021.

47.    ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

48.    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

*Kenyatta Deposition and Expert Discovery*

49.    On March 13, 2026, the parties submitted a joint status letter to the Court. (ECF 194.)  HRB argued that Sri Lanka should not be permitted to rely on expert evidence in its supplemental brief.  For its part, Sri Lanka argued that its anticipated use of expert evidence was proper and should be permitted.  The same day, the Court issued a memo endorsement permitting Sri Lanka to rely on additional expert testimony.  (ECF 195.)

50.    On March 20, 2026, the parties submitted competing proposed schedules for expert discovery and briefing.  (ECF 196.)  By Order dated March 23, 2026, the Court adopted Sri Lanka's proposed schedule.  (ECF 197.)

51.    On April 14, 2026, HRB served amended objections and responses to certain of Sri Lanka's interrogatories, a true and correct copy of which is attached as **Exhibit 25**.

52.    On April 16, 2026, Sri Lanka took the deposition of HRB's Rule 30(b)(6) witness, Antonio Kenyatta (the "Kenyatta Deposition").  Attached as **Exhibit 26** is a true and correct copy of a transcript of that deposition (cited herein as "Kenyatta").

53.    By letter dated April 24, 2026, Sri Lanka posed several questions to HRB regarding ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████  Sri Lanka also asked about the documents described in the September 2023 FT article that still had not been produced.

14

54.    On May 6, 2026, the parties exchanged initial expert reports.  Sri Lanka provided the Expert Report of Avinash Persaud dated May 6, 2026 (a copy of which is attached to the Declaration of Avinash Persaud filed concurrently herewith), and the Expert Report of Juan Migone dated May 6, 2026 (a copy of which is attached to the accompanying Declaration of Juan Migone filed concurrently herewith).  HRB provided expert reports from Benedict Roth and Paul Noring.

55.    On May 22, 2026, HRB provided rebuttal expert reports from Benedict Roth and Paul Noring.

56.    Also on May 22, 2026, HRB responded to Sri Lanka's April 24, 2026 Letter (the "May 22, 2026 Letter," a true and correct copy of which is attached as **Exhibit 28**). ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮  Regarding the September 2023 FT article, HRB stated that it had asked Mr. Wey and Mr. Raiti if they had the presentation quoted in the article, and they said they do not have such a presentation.

57.    On June 3, 2026, Sri Lanka took the deposition of HRB's expert, Benedict Roth. Attached as **Exhibit 29** is a true and correct copy of a transcript of that deposition.

58.    On June 9, 2026, HRB took the deposition of Sri Lanka's expert, Avinash Persaud. Attached as **Exhibit 30** is a true and correct copy of a transcript of that deposition.

59.    On June 10, 2026, HRB took the deposition of Sri Lanka's expert, Juan Migone. Attached as **Exhibit 31** is a true and correct copy of a transcript of that deposition.

60.     On June 12, 2026, Sri Lanka took the deposition of HRB's expert, Paul Noring. Attached as **Exhibit 32** is a true and correct copy of a transcript of that deposition.

*Late Production by HRB*

61.     By letter dated June 16, 2026, HRB complained that Sri Lanka was supposedly seeking to "reprise" its "prior" theory that HRB's depositors (or some of them) may be the true beneficial owners of the Bonds.  HRB purported to "reserve all rights," including a purported right to "produce additional documents that further undermine Sri Lanka's heretofore undisclosed theory."

62.     Sri Lanka responded by letter dated June 18, 2026.  Attached as **Exhibit 34** is a true and correct copy of Sri Lanka's letter.

63.     On Thursday June 18, 2026, HRB made an additional production which included a

**Application Pursuant to Fed. R. Civ. P. 56(d).**

64.     Pursuant to Rule 56(d), for the reasons set forth in my July 17, 2023 Declaration and my January 31, 2025 Declaration, and based on the Declaration of Avinash Persaud dated June 18, 2026 (with accompanying report), the Declaration of Juan Migone dated June 18, 2026 (with accompanying report), the Declaration of Nicholas Peacock dated June 22, 2026, and all the exhibits attached hereto (all of which are incorporated herein by reference), and for the reasons set

16

forth below, Sri Lanka submits that additional discovery is required in order to oppose HRB's summary judgment motion.

65. As previously detailed, Sri Lanka submits that it is likely that some person other than HRB is the genuine beneficial owner of the Bonds at issue. (*See* ECF 59, ¶¶ 14-27.) The additional evidence uncovered since then further supports Sri Lanka's position, including, *e.g.*,

████████████████████████████████████████████████

(Persaud Report ¶¶ 38-51, 100.) Sri Lanka also submits that HRB's explanation of its purported

████████████████████████████████████ no contemporaneous

documents concerning that decision. (*Id.* ¶ 74.) These matters are discussed in detail in Sri Lanka's accompanying Supplemental Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (the "Supplemental Brief").

*The Facts Sought and How They Are to Be Obtained*

66. In order to oppose summary judgment, Sri Lanka seeks evidence regarding whether HRB really purchased the Bonds for its own account, and not on behalf of some other person. Specifically, Sri Lanka seeks compliance with its Second Requests for Production served on June 24, 2025 (**Ex. 5**), and a deposition of Benjamin Wey.

67. As to the document requests, Sri Lanka requests that HRB conduct a reasonable search for the documents (including but not limited to information held on personal phones) of the following six custodians:

- Tony Baldry;

- Prabhakar Kaza;

- Ghassan Nasr;

- Yingmao Wei;

- Benjamin Wey;

- Warren Raiti.

68.     As detailed in Sri Lanka's Supplemental Brief, Sri Lanka submits that documents from these individuals likely would address whether HRB purchased the Bonds for its own account, and not on behalf of some other person.  In addition, Sri Lanka submits that a reasonable search should not be limited to email, but should include other sources such as personal phones.  Sri Lanka also submits that, for the reasons detailed in its Supplemental Brief and prior dispute letter dated January 21, 2026 (ECF 185), HRB has the practical ability to obtain the requested documents from the above-referenced custodians.

69.     In addition, Sri Lanka requests that HRB produce the depositor information

70.     Sri Lanka submits that this information sought in RFP 4 is necessary to understand HRB's customer deposit relationships (*i.e.*, whether HRB and some or all of its depositors had an

---

2    Here, Sri Lanka refers to the documents bearing Bates numbers HRB-VOL6-000008-HRB-VOL6-000028, inclusive.

agreement related to the ownership of the Bonds), and that this cannot be accomplished without knowing the depositors' identities.

71.    As to the requested deposition of Benjamin Wey, Sri Lanka submits that this deposition is necessary given Mr. Wey's important role at HRB, as detailed in the Supplemental Brief.    Sri Lanka requests to take this deposition after production of the above-referenced documents.

*The Facts Are Reasonably Expected to Create a Genuine Issue of Material Fact*

72.    For the reasons discussed *supra*, Sri Lanka reasonably expects that the requested discovery is likely to create a genuine issue of material fact (if there is not one already).    In particular, Sri Lanka submits that the requested discovery likely will show that HRB's claimed ownership interest is far more complicated than HRB suggests, and, in fact, that another person holds the real economic interest in the Bonds.    If HRB is not a beneficial owner, then Sri Lanka submits that HRB lacks standing to sue and the case should be dismissed.

*Efforts to Obtain the Requested Discovery*

73.    As discussed *supra* (*see* ¶¶ 15-19; 37-42), Sri Lanka has attempted to obtain this discovery through repeated requests to HRB and through two applications to the Court. (ECF 152; ECF 185.)

74.    Specifically, Sri Lanka served the requests at issue in accordance with the Court's June 10, 2025 Order (ECF 148) and brought a dispute to the Court's attention on July 1, 2025 (ECF 152).    At the July 10, 2025 Conference, the Court largely rejected HRB's arguments and required discovery to go forward. (*See supra* ¶¶ 20, 21.)    After months of delay, HRB began producing documents in December 2025, but refused to search for communications other than email, and refused to produce any documents from Benjmain Wey and Warren Raiti.    HRB also

initially agreed to produce information in response to RFP 4, but then purported to revoke that agreement.  (*Supra* ¶¶ 23, 36.)  On January 21, 2026 Sri Lanka brought a dispute about these matters to the Court's attention.  (ECF 185.)

*Why Sri Lanka Was Unsuccessful in Its Discovery Efforts*

75.     Sri Lanka was unsuccessful in its efforts because, as discussed *supra*, HRB refused to provide the requested documents.  In the January 26, 2026 Order, the Court required HRB to produce some additional discovery (though not the particular discovery requested herein), but stated that Sri Lanka could argue for additional discovery in its Supplemental Brief.  (ECF 190.)

**Miscellaneous**

76.     Attached as **Exhibit 35** is a true and correct copy of an undated document produced by HRB bearing Bates numbers HRB-VOL2-000137 to 000168.

77.     Attached as **Exhibit 36** is a true and correct copy of Chapter 7.05 (N) Nevis International Banking Ordinance and Subsidiary Legislation dated December 31, 2017, retrieved from https://www.nevisfsrc.com/services/international-banking/.

78.     Attached as **Exhibit 37** is a true and correct copy of a short message report dated October 1, 2020 produced by HRB bearing Bates numbers HRB-VOL9-000013 to 000016.

79.     Attached as **Exhibit 38** is a true and correct copy of a document dated October 7, 2020 produced by HRB bearing Bates numbers HRB-VOL2-000174 to 000177.

80.     Attached as **Exhibit 39** is a true and correct copy of a document dated October 8, 2020 produced by HRB bearing Bates number HRB-VOL2-000105.

81.     Attached as **Exhibit 40** is a true and correct copy of a short message report dated February 11, 2021 produced by HRB bearing Bates numbers HRB-VOL7-003387 to 003401.

82. Attached as **Exhibit 41** is a true and correct copy of a document dated May 11, 2021 produced by HRB bearing Bates numbers HRB-VOL2-000285 to 000323.

83. Attached as **Exhibit 42** is a true and correct copy of a tab ("Bond Investment Portfolio") extracted from a spreadsheet produced by HRB dated October 5, 2021 bearing Bates number HRB-VOL7-000674. Columns have been adjusted for readability. Parent has been omitted.

84. Attached as **Exhibit 43** is a true and correct copy of a short message report dated October 8, 2021 produced by HRB bearing Bates numbers HRB-VOL7-000675 to 000677.

85. Attached as **Exhibit 44** is a true and correct copy of a short message report dated October 11, 2021 produced by HRB bearing Bates numbers HRB-VOL7-000015 to 000019.

86. Attached as **Exhibit 45** is a true and correct copy of a short message report dated October 20, 2021 produced by HRB bearing Bates numbers HRB-VOL7-002928 to 002929.

87. Attached as **Exhibit 46** is a true and correct copy of a short message report dated December 20, 2021 produced by HRB bearing Bates numbers HRB-VOL7-000771 to 000776.

88. Attached as **Exhibit 47** is a true and correct copy of a short message report dated December 29, 2021 produced by HRB bearing Bates numbers HRB-VOL7-001367 to 001371.

89. Attached as **Exhibit 48** is a true and correct copy of a document dated November 1, 2022, produced by HRB bearing Bates numbers HRB_144 to 165.

90. Attached as **Exhibit 49** is a true and correct copy of a short message report dated December 31, 2021 produced by HRB bearing Bates numbers HRB-VOL7-001372 to 001376.

91. Attached as **Exhibit 50** is a true and correct copy of a short message report dated January 2, 2022 produced by HRB bearing Bates numbers HRB-VOL7-001377 to 001379.

92.     Attached as **Exhibit 51** is a true and correct copy of a short message report dated January 5, 2022 produced by HRB bearing Bates numbers HRB-VOL7-000090 to 000194.

93.     Attached as **Exhibit 52** is a true and correct copy of a short message report dated January 5, 2022 produced by HRB bearing Bates numbers HRB-VOL7-001389 to 001393.

94.     Attached as **Exhibit 53** is a true and correct copy of an email dated January 25, 2022 produced by HRB bearing Bates numbers HRB-VOL4-001151 to 001159.

95.     Attached as **Exhibit 54** is a true and correct copy of a short message report dated January 28, 2022 produced by HRB bearing Bates numbers HRB-VOL7-002825 to 002829.

96.     Attached as **Exhibit 55** is a true and correct copy of a short message report dated February 24, 2022 produced by HRB bearing Bates number HRB-VOL7-000236 to 000253.

97.     Attached as **Exhibit 56** is a true and correct copy of a document from a case captioned *Digital Security Services Ltd. v. Nevis International Bank & Trust Ltd.,* NEVHCVAP2021/0003, (ECSC Court of Appeal, SKN 2022) dated March 24; April 7, 2022. This document is taken from the Eastern Caribbean Supreme Court website.

98.     Attached as **Exhibit 57** is a true and correct copy of a short message report dated April 20, 2022 produced by HRB bearing Bates numbers HRB-VOL7-001178 to 001188.

99.     Attached as **Exhibit 58** is a true and correct copy of an undated document produced by HRB bearing Bates numbers HRB_184 to 193.

100.     Attached as **Exhibit 59** is a true and correct copy of a document dated April 16, 2022 produced by HRB bearing Bates numbers HRB_203 to 205.

101.     Attached as **Exhibit 60** is a true and correct copy of a letter from Lee Wolosky to members of the Sri Lankan government dated May 4, 2022.

22

102.    Attached as **Exhibit 61** is a true and correct copy of an email dated May 13, 2022 produced by HRB bearing Bates number HRB-VOL4-000992 to HRB-VOL4-000995.

103.    Attached as **Exhibit 62** is a true and correct copy of a short message report dated June 7, 2022 produced by HRB bearing Bates numbers HRB-VOL7-001237 to 001238.

104.    Attached as **Exhibit 63** is a true and correct copy of a short message report dated June 21, 2022 produced by HRB bearing Bates numbers HRB-VOL7-002612 to 002614. Attachments have been omitted.

105.    Attached as **Exhibit 64** is a true and correct copy of a tab titled "Bond Investment Portfolio" extracted from a spreadsheet produced by HRB dated June 22, 2022 bearing Bates number HRB-VOL7-001260.  Columns have been adjusted for readability.  Parent has been omitted.

106.    Attached as **Exhibit 65** is a true and correct copy of a document dated June 30, 2022 produced by HRB bearing Bates numbers HRB-VOL10-000046 to 000050.

107.    Attached as **Exhibit 66** is a true and correct copy of an email dated July 29, 2022 produced by HRB bearing Bates numbers HRB-VOL4-000366 to 000389.

108.    Attached as **Exhibit 67** is a true and correct copy of an email dated August 2, 2022 produced by HRB bearing Bates numbers HRB-VOL4-000278 to 000279.

109.    Attached as **Exhibit 68** is a true and correct copy of a short message report dated August 22, 2022 produced by HRB bearing Bates numbers HRB-VOL7-001290 to 001296.

110.    Attached as **Exhibit 69** is a true and correct copy of a document dated September 1, 2022 produced by HRB bearing Bates numbers HRB-VOL8-000641 to 000652.  The parent email and other attachments are omitted.  A certified English translation of the document is included.

111. Attached as **Exhibit 70** is a true and correct copy of a tab titled "FBL" extracted from a spreadsheet produced by HRB dated September 21, 2022 bearing Bates number HRB-VOL6-000002. Parent has been omitted.

112. Attached as **Exhibit 71** is a true and correct copy of a short message report dated October 7, 2022 produced by HRB bearing Bates numbers HRB-VOL7-001673 to 001676.

113. Attached as **Exhibit 72** is a true and correct copy of a document dated December 28, 2022 produced by HRB bearing Bates numbers HRB-VOL10-000001 to 000035.

114. Attached as **Exhibit 73** is a true and correct copy of a short message report dated February 9, 2023 produced by HRB bearing Bates numbers HRB-VOL7-002966 to 002970.

115. Attached as **Exhibit 74** is a true and correct copy of a document dated February 27, 2023 produced by HRB bearing Bates numbers HRB-VOL7-003087 to 003088. The parent email and other attachments are omitted.

116. Attached as **Exhibit 75** is a true and correct copy of a document dated April 12, 2023 produced by HRB bearing Bates numbers HRB-VOL4-001368 to 001369.

117. Attached as **Exhibit 76** is a true and correct copy of an email dated July 5, 2023 produced by HRB bearing Bates numbers HRB-VOL3-000136 to 000150.

118. Attached as **Exhibit 77** is a true and correct copy of a printout of the "FAQ" page on HRB's website on July 17, 2023, available at: https://hrbank.com/faq-frequently-asked-questions/.

119. Attached as **Exhibit 78** is a true and correct copy of excerpts of the S&P, Moody's, and FitchRatings for the Sri Lanka 5.875 July 25, 2022 bonds, as obtained from Bloomberg Finance L.P. on July 7, 2023, available by searching the ISIN identifier number USY2029SAH77.

120.     Attached as **Exhibit 79** is a true and correct copy of an email dated October 2, 2023 produced by HRB bearing Bates numbers HRB-VOL8-000920 to 000934.

121.     Attached as **Exhibit 80** is a true and correct copy of a printout of a screenshot taken of Benjamin Wey's LinkedIn profile on June 23, 2026.  *See also* the copy of the same filed in this case at ECF 107-11 on July 30, 2024.

122.     Attached as **Exhibit 81** is a true and correct copy of a document dated September 4, 2025 produced by HRB bearing Bates numbers HRB-VOL2-000433 to 000447.

123.     Attached as **Exhibit 82** is a true and correct copy of a document dated October 30, 2025 produced by HRB bearing Bates numbers HRB-VOL2-000448 to 000461.

124.     Attached as **Exhibit 83** is a true and correct copy of Plaintiff's privilege log dated January 22, 2026.

125.     Attached as **Exhibit 84** is a true and correct copy of a July 30, 2025 letter from Sebastian Ambrose, General Counsel for HRB, to Phil Jones of the Regulator of International Banking, NFSRC, Nevis, which was part of an exhibit attached to the Complaint in the case captioned *Liberty Legal Services. Inc. v. Sibew Pty Ltd.*, 9:26-cv-80093-EA (S.D. Fla. Jan. 27, 2026), filed on January 27, 2026, as obtained from the docket for that case.

126.     Attached as **Exhibit 85** is a true and correct copy of Plaintiff's supplemental privilege log dated March 10, 2026.

127.    Attached as **Exhibit 86** is a true and correct copy of Plaintiff's redaction log dated March 10, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 24, 2026
        New York, New York

/s Robert G. Houck

Robert G. Houck