**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HAMILTON RESERVE BANK LTD., <br><br>         Plaintiff, <br><br>   v. <br><br> THE DEMOCRATIC SOCIALIST REPUBLIC OF SRI LANKA. <br><br>         Defendant. | No. 22 Civ. 5199 (DLC) |

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT**
**OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Lee Wolosky
Justin Garbacz
Willkie Farr & Gallagher LLP
787 7th Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
lwolosky@willkie.com
jgarbacz@willkie.com

Tom M. Fini
CATAFAGO FINI LLP
One Grand Central Place
47th Floor
New York, NY 10165
Telephone: (212) 239-9669
tom@catafagofini.com

*Attorneys for Plaintiff Hamilton Reserve Bank Ltd.*

Dated:  July 15, 2026

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ...................................................................................................................5

    I.      HRB's Family-Owned Structure And Delegation of Investment Authority to An Investment Committee ............................................................................................5

    II.     HRB's Initial Investments in Sri Lanka (2020) .........................................................6

    III.    HRB's Investment In The At-Issue Bonds ...............................................................6

    IV.    HRB's Depositors .....................................................................................................8

    V.      FBL .........................................................................................................................9

    VI.    Consequences of Defendant's Default.....................................................................10

ARGUMENT ......................................................................................................................10

    I.      HRB IS ENTITLED TO SUMMARY JUDGMENT ..............................................10

        A.    The Factual Record Uniformly Supports HRB's Beneficial Ownership Of The Bonds ..............................................................................................................10

        B.    Defendant's Arguments About Plausibility Mischaracterize The Record.................12

        C.    Defendant's Theory Is Nonsensical .......................................................................14

        D.    No Evidence of HRB's Ownership Is "Missing" And HRB Has Fully Complied With Its Discovery Obligations ...............................................................................14

        E.    No Factual Issues Preclude Summary Judgment ....................................................15

            1.    Mr. Kenyatta's 30(b)(6) Testimony..............................................................16

            2.    HRB's Audited Financial Statements ............................................................17

            3.    FBL ............................................................................................................18

        F.    Defendant's Expert Testimony Is Both Irrelevant And Unreliable ..........................18

            1.    Persaud......................................................................................................19

            2.    Migone ......................................................................................................22

    II.     No Additional Discovery Is Necessary....................................................................22

CONCLUSION...................................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*,
  2022 WL 955476 (S.D.N.Y. Mar. 30, 2022) ............................................................................15

*Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*,
  415 F.3d 242 (2d Cir. 2005).......................................................................................................1

*Buckley v. Deloitte & Touche USA LLP*,
  888 F. Supp. 2d 404 (S.D.N.Y. 2012)......................................................................................22

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
  492 F. Supp. 3d 222 (S.D.N.Y. 2020).......................................................................................1

*D'Amico v. City of New York*,
  132 F.3d 145 (2d Cir. 1998)......................................................................................................2

*Fed. Trade Comm'n v. Moses*,
  913 F.3d 297 (2d Cir. 2019)....................................................................................................10

*Giallanzo v. City of New York*,
  630 F. Supp. 3d 439 (S.D.N.Y. 2022)......................................................................................17

*Gottlieb v. Cnty. of Orange*,
  84 F.3d 511 (2d Cir. 1996).................................................................................................3, 12

*Jackson v. Edwards*,
  2000 WL 782947 (S.D.N.Y. June 16, 2000) ...........................................................................24

*Kean v. Iolab Corp.*,
  1987 WL 16959 (S.D.N.Y. Sep. 8, 1987)................................................................................23

*Knox v. Cnty. of Putnam*,
  2012 WL 4462011 (S.D.N.Y. Sep. 27, 2012)....................................................................16, 17

*LinkCo, Inc. v. Fujitsu Ltd.*,
  2002 WL 1585551 (S.D.N.Y. July 16, 2002) ..........................................................................22

*Mazzini v. Republic of Argentina*,
  282 F. App'x 907 (2d Cir. 2008) .........................................................................................1, 10

*In re Mirena IUD Prods. Liab. Litig.*,
  169 F. Supp. 3d 396 (S.D.N.Y. 2016)......................................................................................20

*NML Cap., Ltd. v. Republic of Argentina*,
2011 WL 4529332 (S.D.N.Y. Sep. 28, 2011)........................................................................3, 25

*Robinson v. Concentra Health Servs., Inc.*,
781 F.3d 42 (2d Cir. 2015)..............................................................................................10

*Sec. P. Mortg. & Real Est. Servs., Inc. v. Canadian Land Co. of Am., N.V.*,
690 F. Supp. 1214 (S.D.N.Y. 1988)..............................................................................23

*Secs. & Exch. Comm'n v. Lek Sec. Corp.*,
370 F. Supp. 3d 384 (S.D.N.Y. 2019)..........................................................................22

*Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*,
708 F. Supp. 3d 450 (S.D.N.Y. 2023)......................................................................20, 22

*Shaw v. United States*,
580 U.S. 63 (2016)...........................................................................................................8

*Sprint Commc'ns. Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008)....................................................................................................3, 25

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008)............................................................................................3

**Other Authorities**

Fed. R. Civ. P. Rule 56(d)..................................................................................................23

Fed. R. Evid. 702 ...............................................................................................................21

**PRELIMINARY STATEMENT**

Plaintiff Hamilton Reserve Bank Ltd.'s ("HRB") Motion for Summary Judgment (ECF 44, "Motion") has been pending since July 31, 2023. The sole remaining issue before this Court is whether HRB is the beneficial owner of the at-issue bonds that matured on July 25, 2022 (the "Bonds"). The record establishes that it is, and that it has standing. The Court should grant the Motion, as Defendant the Democratic Socialist Republic of Sri Lanka ("Defendant") has no defense in this straightforward breach of contract action.

\*\*\*

How does one prove that they own a bond? Because most bonds are purchased through brokers and held in street name, a bond owner generally cannot offer a certificate of ownership. ECF 233-1 ¶ 44; https://www.sec.gov/answers/street.htm. Instead, title to the bonds is held by the Depository Trust Company ("DTC") and its nominee Cede and Co. ("Cede"), and the beneficial owner's title is recorded in book entry form by the broker. *Id.* Accordingly, the Second Circuit has recognized that a beneficial owner can establish standing by obtaining an authorization letter from Cede. *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 246 (2d Cir. 2005); ECF 33. The Second Circuit has also recognized that a bondholder can establish beneficial ownership at summary judgment by submitting brokerage account statements and/or a declaration affirming that it is the beneficial owner. *Mazzini v. Republic of Argentina*, 282 F. App'x 907, 909-10 (2d Cir. 2008); *see also Casa Express Corp. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 230 (S.D.N.Y. 2020).

1

At the outset of this case, HRB submitted an authorization letter from Cede confirming that HRB is the "Beneficial Owner" of the Bonds.  ECF 23-1.[1] And in support of the Motion, it has submitted account statements that show it purchased the Bonds for its own account, and a declaration from its CFO, Antonio Kenyatta, affirming the same.  ECF 227.  This affirmatively establishes HRB's beneficial ownership.

Beginning in April 2025—at Defendant's request, and based largely on post-discovery expert declarations of Avinash Persaud, who speculated that HRB might be a private equity fund that purchased the Bonds on behalf of investors disguised as depositors—the Court permitted "limited additional discovery" to "explore whether [HRB's] internal records reflect that it is the beneficial owner of the [B]onds, and whether any other person or entity holds a beneficial interest." ECF 143.

Over a year of supplemental discovery has confirmed HRB's beneficial ownership.  HRB's internal records, including its brokerage account statements, its financial statements, and its corporate records uniformly reflect that HRB holds the Bonds for its own account.  So too do its communications.   In all of HRB's correspondence—both internal and external (including communications with one of HRB's external advisors, Mr. Benjamin Wey)—HRB's employees and advisors speak of the Bonds as HRB's property.  The same is true regarding communications with regulators and auditors. There are no references to any agreements with depositors or third

---

[1]     Cede authorized HRB and only HRB to bring suit in respect of the Bonds, now worth over $350 million (with interest). If HRB does not have standing to sue, then no one does—not even Defendant's hypothesized, unidentified true beneficial owner.  Defendant would therefore escape liability and massively enrich itself for its undisputed breach of contract.  That may be the outcome Defendant seeks, but it should not be the outcome this Court permits.

2

parties regarding the Bonds, and no mention of any interest of another party. **There is no evidence—none—that HRB holds the Bonds for the benefit of someone else.**

In order to defeat summary judgment, Defendant must come forward with "hard evidence" showing that its speculative theory is not "wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). Defendant's Supplemental Memorandum (ECF 206, the "Brief") does not. Instead, Defendant recycles the argument it made over a year ago, saying that HRB's ownership for its own account is, in its view, "implausible." This argument fails, for many reasons.

As an initial matter, a non-moving party's bare assertion of implausibility is not sufficient to defeat summary judgment. *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Even if it were, Defendant's claim of implausibility relies on an inaccurate account of the factual record—one that simply ignores the chronology of HRB's investment, and any facts that are inconvenient to its speculation. Defendant's assertion of implausibility rings especially hollow given that its evidence-free counter-theory—that HRB is an investment fund masquerading as a bank—is not just "fanciful," but nonsensical.

That is because even if HRB were a fund (it is not), it would have standing to sue on behalf of its funders. *See NML Cap., Ltd. v. Republic of Argentina*, 2011 WL 4529332, at *3 (S.D.N.Y. Sep. 28, 2011). The same would be true if HRB held title to the Bonds on behalf of depositors (it does not). As the U.S. Supreme Court held in 2008, an aggregator entity who brings suit on behalf of others is not deprived of standing simply by virtue of the fact that it is not the ultimate beneficiary of proceeds. *Sprint Commc'ns. Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 287 (2008) (holding that aggregator entity had standing notwithstanding contractual obligation to pay

3

out proceeds, noting "[w]hat does it matter what the aggregators do with the money afterward?").[2]

So even if Defendant's baseless theory had any grounding in reality (and it does not), it would not deprive HRB of standing.

All of which is not to say that HRB is a "normal bank" against which the governance standards of more traditional banks should be applied ("HRB's purported investment makes no sense for a normal bank."). Brief p. 13. HRB is owned by a single individual who ultimately makes all investment (and other) decisions, and who ultimately captures all profits. Because Defendant has no hard evidence to rebut HRB's beneficial ownership, its opposition to summary judgment ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████ And there are deeper problems with Sri Lanka's expert testimony. Having now been subject to the rigors of the adversarial process, it is clear that this testimony is speculative, untethered to methodology or data, based on a selective review of the factual record, and by all indications designed to give Defendant's bald speculation a false patina of credibility. The testimony is not reliable, and does not provide a basis to deny the Motion.

The Court should grant the Motion, and deny Defendant's request for additional discovery.

---

[2]    In its initial request for additional discovery (ECF 56), Defendant cited *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, a case that involved an investment advisor suing on behalf its clients. 549 F.3d 100, 107-109 (2d Cir. 2008). HRB does not provide investment advisory services (ECF 227), and Defendant's Brief does not argue that it does. The investment advisor argument is therefore irrelevant, even more so because it has been abandoned.

**BACKGROUND**

**I.    HRB's Family-Owned Structure And Delegation of Investment Authority to An Investment Committee**

HRB is a private bank incorporated and duly licensed in Nevis.[3] HouckEx. 35.[4] Ultimately, HRB is owned by a single shareholder, Yingmao Wei (the "UBO"). *Id.* Unlike large institutional banks like JP Morgan Chase that report to public shareholders, because HRB is owned and controlled by a single person, it maintains a modest governance structure, where decisions are often made informally. HouckEx. 26 (HRB's 30(b)(6) Transcript, or "Tr.") 394:4-395:25.



---

[3]    At incorporation, HRB was named Nevis International Bank & Trust Ltd. On March 3, 2021, it changed its name to Hamilton Reserve Bank Ltd. *See* HouckEx. 35 at HRB-VOL2-000142.
[4]    Reference is made to the June 24, 2026 Houck Declaration ("HouckDecl."; "HouckEx.") submitted in support of Defendant's Brief (ECF. 207-214). "WoloskyEx." refers to the Exhibits to the Wolosky Declaration, which is being filed in tandem with this supplemental brief in support of the Motion.

███████████████████████████████████████████████████████

████████████████████████████████████████████

## II.    HRB's Initial Investments in Sri Lanka (2020)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

## III.    HRB's Investment In The At-Issue Bonds

HRB regarded its initial Sri Lanka investments as highly successful.  Tr. 178:12-179:15.
As each investment matured, HRB took the proceeds and invested them in the next one-year
duration bond: the July 2022 series (the "Bonds"), "continu[ing] this existing strategy[.]"  *Id*.

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



In 2022, the Bank continued to grow, and Sri Lanka continued to uphold its debt obligations. When the January 2022 bonds matured, Defendant paid in full. HouckEx. 65 at HRB-VOL10-000048. Informed by the success of its prior investments, as new deposits came into the bank, HRB bought more Bonds. Tr. 178:24–179:15.

In light of the growing size of its investment, HRB conducted additional diligence in January 2022, sending HRB executives and representatives to Sri Lanka to meet with officials of the Central Bank of Sri Lanka ("CBSL"), who personally reassured HRB leadership that Defendant would not default. HouckExs. 59; 65. Then, between February and April, CBSL made a series of public statements assuring investors that Defendant would pay. *Id*.

By April 5, 2022, HRB held $242.965 million in principal amount of Bonds. WoloskyEx. 12 at HRB-VOL12-000038. Then, on April 12, 2022, Defendant shocked the world by issuing a moratorium on debt payments. ECF 47 ¶ 22; HouckEx. 59. To protect itself, HRB purchased additional Bonds to secure a blocking position under the Indenture, which required holding $250 million. Tr. 180:15–182:12. In June 2022, HRB initiated suit in this Court pursuant to the terms of the Indenture, which require suit to be brought in Federal Court in New York. ECF 47 ¶ 32.

7

### IV.    HRB's Depositors

When HRB's customers open a deposit account, they sign a standard depositor agreement that does not give the depositor any interest in HRB's investments.  Tr. 414:18-416:2.  An example of that standard agreement was filed on the docket in connection with Intercoastal Finance's motion to intervene (ECF 93-1), which reflects a boilerplate, traditional banking relationship.  *See* ECF 145 at fn. 4 ("[Intervenor has] alleged nothing to suggest that they established anything other than a traditional banking relationship with [HRB], and their Customer Account Agreement reflects precisely such a relationship.").  HRB does not act as an investment advisor to any of its customers.  ECF 237.  And HRB has not entered into any agreements with any depositors or any other third party regarding the Bonds.  *Id*.

During the course of this lawsuit, one of HRB's largest depositors, Intercoastal Finance, sought to intervene in the case.  ECF 80-82.  Intercoastal Finance did not allege that it had any contractual interest in the Bond; instead it argued that because HRB used its deposits to purchase the Bonds, it had a beneficial interest in the Bonds via a constructive trust.  ECF 145 at 19.  As the Second Circuit noted when it affirmed this Court's denial of Intercoastal's motion to intervene, that argument lacked merit because "[w]hen a customer deposits funds, the bank ordinarily becomes the owner of the funds and consequently has the right to use the funds . . . [to] help the bank earn profits."  *Id*. at fn. 4 (citing *Shaw v. United States*, 580 U.S. 63, 66 (2016)).  Another depositor filed a petition against HRB in New York Supreme Court.  ECF 140-2.  That depositor also did not allege that it had any agreement with HRB regarding the Bonds; it asserted in its petition that HRB is the "beneficial owner" of the Bonds.  *See id*. ¶ 52.

Over the past four years HRB has continued to grow while also experiencing depositor turnover.  ECF 227.  Today HRB has over 3,000 customers. *Id*.  Many of the depositors who

8

maintained large accounts during the period in which HRB purchased the Bonds have since closed their accounts. *Id.*



## V.    FBL

In April 2021, HRB acquired a 90% stake in Fintech Bank Limited ("FBL"), a Malaysian-licensed entity holding a Labuan banking license. HouckEx. 41 at HRB-VOL2-000322. FBL functioned solely as a marketing office and introduction agent for HRB. Tr. 251:5-252:9. FBL did not hold depositor assets of its own; once FBL onboarded a client, the client became a client of HRB, and any funds it deposited became assets of HRB. *Id.* This arrangement was memorialized in the FBL customer agreement. ECF 140-4.

9

HRB sold its 90% ownership interest in FBL on July 11, 2023.  ECF 227.

## VI.    Consequences of Defendant's Default



## ARGUMENT

## I.    HRB IS ENTITLED TO SUMMARY JUDGMENT

To defeat summary judgment, a non-movant cannot rely on "mere speculation or conjecture as to the true nature of the facts," *Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019), and must "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact," *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015).

### A.    The Factual Record Uniformly Supports HRB's Beneficial Ownership Of The Bonds

In support of the Motion, HRB has submitted brokerage statements showing that the Bonds are held in HRB's own name, as well as a declaration of its CFO declaring that HRB is the beneficial owner.  ECF 227.  As the Second Circuit has held, "account statements, computer printouts of the account statements, and custodial letters" are "sufficient evidence to establish ownership of the bonds." *Mazzini*, 282 F. App'x 907, 909-10.

10

The supplemental record unambiguously confirms that HRB holds the Bonds for its own account.  HRB has produced over 1,500 documents and communications, including several hundred emails and text messages between and among HRB leadership discussing the Bonds; **not a single one** references an ownership interest of another party.  To the contrary, in all of HRB's produced correspondence, HRB's employees and advisors—including Benjamin Wey—discuss the Bonds as if they are owned by HRB.  *See, e.g.*, WoloskyExs. 17-20; HouckExs. 53 at HRB-VOL4-001155.  This is true both of HRB's internal communications, and its external communications, for example its communications with the Nevis regulator and with outside auditing firms and brokers.  *See e.g.*, WoloskyExs. 13-14, 21-22.  Moreover:

- HRB's independently audited financial statements for 2021-2024 reflect that the Bonds are held in HRB's name, for its own benefit.  HouckExs. 48, 81-82.

- The record shows that members of HRB's IC effectuated purchase of the Bonds for HRB's own account, after being delegated authority to manage HRB's investments in 2020.  *See* Factual Background.

- None of HRB's account statements or internal records contain any indication that HRB holds the Bonds for the benefit of someone else.  *See e.g.*, WoloskyEx. 23-26; ECF 46-12, 143.

HRB also engaged Paul Noring—a certified public accountant with over 40 years' experience auditing banks—to review HRB's internal records.  Mr. Noring testifies that "all the documents I have reviewed overwhelmingly support that HRB is the beneficial owner of the [ ] Bonds."  ECF 233-1 at ¶¶ 19-25.  Mr. Noring's testimony is **unrebutted**.

On top of all of this, HRB's CFO has repeatedly testified that HRB does not have any agreements with depositors or any other parties regarding the Bonds.  ECF 48, 52, 61, 138, 227.

To summarize: HRB has established that it is the beneficial owners of the Bonds.  In all 28 pages of the Brief, Defendant does not point to *any* evidence to rebut HRB's beneficial ownership.  An more straightforward case for granting summary judgment would be difficult to find.

11

### B.    Defendant's Arguments About Plausibility Mischaracterize The Record

Because it has no evidence—none—that HRB holds the Bonds for the benefit of a third party, Defendant spends most of its Brief arguing that HRB's purchase of the Bonds for its own account is "implausible."    But a non-movant cannot defeat summary judgment with "mere assertions" that the movant's version of events is implausible. *Gottlieb*, 84 F.3d at 518.

Defendant's assertion of implausibility also defies the record.    In order to manufacture suspicion about HRB, Defendant suggests that out of the blue, HRB invested $250 million in Bonds in August of 2021, and then chastises HRB for not producing a formal board document approving the $250 million investment.    Brief p.1.    But HRB did not make its $250 million investment all-at-once in August of 2021.    At the recommendation of its then-President (who had ties to Sri Lanka), HRB embarked on a general strategy of investing in Sri Lankan bonds in 2020, and then—informed by the success of its initial, smaller investments—continued its investment strategy into 2021-2022. *See* Factual Background.    HRB's investment in the at-issue Bonds started in August 2021 as a rollover of its prior investments, and then grew overtime; as HRB attracted new depositors, both big and small, it invested the additional depositor funds into the Bonds. *Id*.; HouckEx. 65.    Before continuing to purchase Bonds in 2022, HRB conducted additional vetting of Sri Lanka, including having representatives travel to Sri Lanka in January 2022, where Defendant reiterated its commitment to pay, including by issuing press releases assuring the public there would be no default.    Factual Background.    Eventually, HRB ended up with a $242,965,000 position by April of 2022, and then—after Sri Lanka declared a moratorium on payment—decided to purchase the $250 million necessary to secure a blocking position to protect its investment. *Id*. With this context in mind, and considering that HRB is a privately-owned bank with a single shareholder, the lack of more formal board documentation from 2021 and 2022 is unremarkable.

13

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

## C.    Defendant's Theory Is Nonsensical

Defendant's theory about HRB's depositors is beyond speculative; it is nonsensical. Given the size of HRB's position in the Bonds, Defendant's theory requires accepting that a diverse group of investors from over 100 jurisdictions (many with small deposits) banded together and collectively agreed to invest in Sri Lankan bonds, and then went through enormous difficulty of (i) obtaining a banking license, (ii) enduring years of onerous bank regulation, (iii) disguising themselves as depositors among other actions when they could have just set up an investment fund to make the investment. This cannot be taken seriously.

## D.    No Evidence of HRB's Ownership Is "Missing" And HRB Has Fully Complied With Its Discovery Obligations

Defendant suggests that evidence is "missing," (Brief p. 16) but does not explain what additional evidence is needed to substantiate HRB's ownership of the Bonds. HRB has produced an abundance of evidence substantiating that it holds the Bonds in its own name for its own account, including the forms of evidence that courts in this Circuit routinely accept as sufficient proof of ownership. The only evidence that is "missing" is any evidence to support Defendant's speculative theory. That is because it does not exist.

As noted above, documents regarding HRB's investment decision are not missing, they just do not align with Defendant's speculation. In any event, unlike in *360 Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, HRB's decision-making is not the "central" issue in this case. 2022 WL 955476, at *3 (S.D.N.Y. Mar. 30, 2022). Defendant's insistence on third-party discovery into HRB's decision-making is a transparent effort to cause further delay.

14

Defendant points to missing emails from Andrew Guo—a former employee whose inbox was deleted pursuant to standard policy when he left HRB. WoloskyEx. 5 at 2-3. As HRB's counsel explained to Defendant's counsel in a letter dated May 22, 2026, Mr. Guo was a trader who worked at Mr. Kenyatta's direction, and HRB at the time had no reason to believe that a low-level trader's emails would be relevant to this lawsuit. *Id*. In that same letter, HRB's counsel asked Defendant's counsel to identify what if any material documents it believed would be in Mr. Guo's (or any other former employee's) possession that would not be in the possession of Mr. Kenyatta and HRB. *Id*. Tellingly, Defendant's counsel never responded to that request. Wolosky Declaration ¶ 32.

The notion that HRB has "stonewalled" discovery is completely false; HRB has fully complied with all of its discovery obligations, and the minor limitations it has placed on its productions (e.g. redaction of depositor names) are rooted in law and were approved by the Court. ECF 190. Even *after* the close of supplemental discovery HRB voluntarily answered supplemental interrogatories and made itself available to address any questions. Wolosky Declaration ¶¶ 26-36. Indeed, the "questions" that Defendant poses in the Brief have already been asked and answered. *See id.*; WoloskyEx. 5.

### E.  No Factual Issues Preclude Summary Judgment

On pages 13 through 21 of its Brief, Sri Lanka offers six arguments for why "factual issues preclude summary judgment." The heading of this section is a misnomer; Defendant does not identify a single piece of evidence that creates an issue of fact (much less a material one) regarding HRB's ownership of the Bonds. Instead it distracts by (i) arguing that HRB's ownership is "implausible," (ii) challenging the admissibility of evidence that it previously demanded HRB produce (financial statements and 30(b)(6) testimony) and (iii) listing some "questions" that it has

15

about FBL, a former subsidiary that HRB sold in July 2023.  Defendant's arguments about plausibility are addressed above.  The remainder of Defendant's arguments (and "questions") do not defeat summary judgment.

### 1.    Mr. Kenyatta's 30(b)(6) Testimony

At Defendant's insistence, HRB's CFO, Antonio Kenyatta, sat for a full-day 30(b)(6) deposition.  Because Mr. Kenyatta's testimony fully substantiates HRB's beneficial ownership, Defendant now argues the Court should ignore it.

As an initial matter, regardless of whether Mr. Kenyatta's 30(b)(6) testimony is admissible on summary judgment, HRB does not rely on it to prove its ownership; it has done that already by putting forward the type of documentary evidence that is customarily relied on to substantiate ownership.  The salient point about Mr. Kenyatta's testimony is that it does nothing to rebut HRB's beneficial ownership.

Defendant says that Mr. Kenyatta's testimony is inadmissible on summary judgment because it is "not credible," citing *Knox v. Cnty. of Putnam*, 2012 WL 4462011, at *5 (S.D.N.Y. Sep. 27, 2012).  But in *Knox*, the court denied summary judgment because the credibility of one of the moving party's key witnesses—an investigator who oversaw an investigation of the non-moving party—*was called into question by the testimony of another witness*, who testified that the investigator engaged in coercion and deceit.  *See id.*  Here, Defendant does not point to any admissible evidence that calls into question Mr. Kenyatta's credibility, or that contradicts his testimony about HRB's ownership; it simply asserts in generalized terms that Mr. Kenyatta's testimony is "implausible."  Brief p.15.  As the *Knox* court recognized, that is insufficient.  *Id.* at *4.

Defendant also says Mr. Kenyatta's testimony is inadmissible because he was not personally involved in "developing customer relationships."  Brief. p.16.  But Mr. Kenyatta was

16

testifying in the capacity of a 30(b)(6) corporate representative, and he stated under oath—both during his deposition and in numerous declarations—that based on his personal knowledge of HRB's acquisition of the Bonds (which he oversaw) and his review of corporate records, HRB does not hold the Bonds on behalf of any party but itself.  ECF 61, 138, 227. These sorts of affirmations, including the ones Mr. Kenyatta has made in declarations, are admissible on summary judgment. *See Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 458 (S.D.N.Y. 2022).

### 2.    HRB's Audited Financial Statements



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

### 3.    FBL

Defendant's "questions" about FBL—a former subsidiary of HRB that it sold in July 2023—have already been answered.  ███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████  FBL was an introductory agent for HRB, and per the terms of the FBL customer agreement, any funds that were deposited into FBL became funds of HRB.  ECF 140-4.  "[FBL] never purchased any bonds. All assets were held at HRB . . . in HRB's name." Tr. 214:23-215:3.  HRB is no longer affiliated with FBL, and nothing in HRB's brokerage statements or financial statements suggests that HRB holds $4.5 million in Bonds for FBL's benefit.  HRB's CFO has also confirmed in a sworn declaration that HRB does not hold any Bonds for the benefit of FBL.  ECF 227.

### F.    Defendant's Expert Testimony Is Both Irrelevant And Unreliable

Because supplemental discovery has turned up no hard evidence to support its theory, Defendant relies on the testimony of two purported experts—Mr. Persaud and Mr. Migone. Previously, Defendants unfairly placed these experts' testimony before the Court without providing HRB any opportunity to vet.  ECF 57; 152-6; 152-7.  This time around, HRB has evaluated Defendant's expert reports, and the outcome is clear: the purported "expert" testimony is wholly unreliable, and designed to mislead the Court.

18

Below, HRB highlights serious problems with Defendant's expert testimony. **But the most important point about Defendant's experts is this:** even if their reports are credited (and they should not be), neither report offers any testimony that rebuts HRB's beneficial ownership of the Bonds. █████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████

### 1.    Persaud

Mr. Persaud's report is largely a re-hash of his prior declarations. █████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

19

20



Mr. Persaud's report fails every test of expert reliability.  It is speculative, lacks a reliable methodology, and is predicated on a selective analysis of the factual record.  Mr. Persaud's biased and unscientific commentary about HRB places him "not in the role of expert, but of narrator — and not even a reliable narrator, at that."  *See Terraform Labs*, 708 F. Supp. 3d at 470-71.

### 2.    Migone

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

\*\*\*

Notwithstanding the foregoing, because Defendant's expert reports are irrelevant to whether HRB is the beneficial owner of the Bonds, HRB does not challenge their admissibility or move to strike them.  It simply asks the Court find them both irrelevant and unreliable.  HRB also notes that neither of HRB's two experts were rebutted.  Wolosky Declaration ¶ 24.

## II.    No Additional Discovery Is Necessary

Defendant's request for additional discovery—on top of the year of supplemental discovery that the parties have already engaged in—is not just unwarranted, but an abuse of Rule 56(d).  Even at the outset of a case, a district court has the authority to deny discovery if sought based on speculation rather than concrete factual allegations.  *Kean v. Iolab Corp*., No. 84 CIV. 446 (JFK), 1987 WL 16959, at \*1 (S.D.N.Y. Sep. 8, 1987).  If, *post*-discovery, parties could employ Rule 56(d) to repeatedly request more discovery in aid of conjecture—after discovery belies that conjecture—no civil case would ever come to an end.

22

"The Second Circuit has described the heavy burden faced by a party opposing summary judgment on the grounds that additional discovery is required." *Sec. P. Mortg. & Real Est. Servs., Inc. v. Canadian Land Co. of Am., N.V.*, 690 F. Supp. 1214, 1225 (S.D.N.Y. 1988).  Among other things, the requesting party must establish what *specific* facts it seek, how those facts are expected to create a genuine issue of material fact, and why its prior efforts to obtain the facts were unsuccessful. *See id*.  Defendant fails to do so.

Defendant "seeks evidence regarding whether HRB purchased the Bonds for its own account[.]" HouckDecl. ¶ 66.  Vague assertions of this sort are insufficient. *Sec. P. Mortg. & Real Est. Servs.,* 690 F. Supp. at 1225.

The only *specific* fact Defendant seeks is whether any depositor has an agreement regarding the Bonds.  HouckDecl. ¶ 70.  But HRB has repeatedly affirmed that no such agreement exists, and Defendant's mere assertion that the non-existence of an agreement is, in its view, implausible, does not entitle it to endless discovery. *See Jackson v. Edwards*, No. 99CIV.0982(JSR)(HBP), 2000 WL 782947, at *3 (S.D.N.Y. June 16, 2000).

On the "prior efforts" prong, Defendant blames HRB for redacting personally identifying information (PII) of depositors in compliance with Nevis law (which it did with this Court's permission (ECF 190)), insisting they need this information to "understand HRB's customer deposit relationships." HouckDecl. ¶ 70.  But again, HRB has already affirmed that it has no agreement with any depositor regarding the Bonds, and the wealth of already-produced depositor spreadsheets and data completely undermines Defendant's theory that HRB is a small club of patient investors.  How will un-redacting the names of HRB's depositors create an issue of material fact?  Defendant's Brief does not say.  Disclosure of depositor PII in violation of Nevis law is entirely unnecessary.

23

Third party discovery is also unnecessary. Defendant insists it must know more about Benjamin Wey, pointing to produced communications that include him and noting that he plays an "important role"—something HRB has never denied. Tr. 54:3-5. Defendant misses the more important point about Mr. Wey's communications, which is that when he discussed the Bonds, he never refers to the Bonds as if he or any depositor owns them, never refers to an agreement with any depositor, and always refers to the Bonds as HRB's property. *See e.g.* WoloskyEx. 21; HouckEx. 46, 54, 57,59, Defendant's suggestion that somehow Mr. Wey might know something about HRB's ownership of the Bonds that HRB does not (Brief. p. 3) is entirely without foundation. And Mr. Wey has affirmed that he has no knowledge of any agreement that would give a third party an interest in the Bonds. ECF 228.

Defendant also insists that HRB should collect email from Warren Raiti. But HRB has repeatedly explained that Mr. Raiti is HRB's outside legal counsel, and that his email is not in HRB's custody or control. *See* ECF 174, 186; WoloskyExs. 5. Defendant does not explain what questions it must direct to HRB's outside counsel that HRB has not already (repeatedly) answered. Defendant's request to inspect the inbox of HRB's outside counsel is unwarranted, and borders on harassment.

Defendant's request rings especially hollow because since supplemental discovery closed in April, HRB has repeatedly offered to engage in targeted additional discovery to address any specific question that Defendant might have. Wolosky Declaration ¶¶ 26-36. Rather than engage, Defendant ignored HRB's offer, eventually repeating the same vague "implausibility" argument it made over a year ago. *Id*. This further demonstrates that Defendant's strategy is to prolong the resolution of this case for as long as possible. The Court should reject this out of hand.

24

**CONCLUSION**

HRB has established that it is the beneficial owner of the Bonds.  Defendant has failed to come forward with any hard evidence to rebut HRB's beneficial ownership, thus there is no genuine issue of material fact regarding the sole issue before the Court.  All Defendant offers is speculation, which cannot defeat summary judgment.  And even if HRB were, as Defendant speculates, a fund, or an aggregator holding title on behalf of depositors, it would still have standing in this case. *See NML Cap., 2011 WL 4529332, at \*3; Sprint*, 554 U.S. at 287-289.

HRB's Motion should be granted, and Defendant's request for additional discovery denied.

Dated:  July 15, 2026

New York, New York

**WILLKIE FARR & GALLAGHER LLP**

/s/ Lee Wolosky
Lee Wolosky
Justin Garbacz
787 7th Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
lwolosky@willkie.com
jgarbacz@willkie.com

CATAFAGO FINI LLP
Tom M. Fini
One Grand Central Place
47th Floor
New York, NY 10165
Telephone: (212) 239-9669
tom@catafagofini.com

*Counsel for Plaintiff*

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1, and this Court's Order dated March 23, 2026 (ECF 197), I certify that this brief complies with the word-count limit. This brief contains 7480 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Local Civil Rule 7.1.

Dated: July 15, 2026

<u>/s/ Lee Wolosky</u>

141170887.v16